**08 C 184**

**Exhibit A**

**JUDGE ST. EVE**
**MAGISTRATE JUDGE COX**

| 2120 - Served | 2121 - Served | |
|---|---|---|
| 2220 - Not Served | 2221 - Not Served | |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| SUMMONS | ALIAS - SUMMONS | CCG N001-10M-1-07-05 (    ) |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

(Name all parties)

LAURA M. SWANSON, on behalf of herself and all other Illinois residents similarly situated,

Plaintiff,

v.

BANK OF AMERICA, N.A., AND FIA CARD SERVICES, N.A.,

Defendant.

No. 07 CH 32248

### ALIAS SUMMONS

To each Defendant: BANK OF AMERICA, N.A., c/o Bank of America Legal Department, or any officer or agent authorized to accept service on Defendant's behalf, 231 South LaSalle Street, Eleventh Floor, Chicago, Illinois 60604

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 802, Chicago, Illinois 60602

☐ District 2 - Skokie  
5600 Old Orchard Rd.  
Skokie, IL 60077

☐ District 3 - Rolling Meadows  
2121 Euclid  
Rolling Meadows, IL 60008

☐ District 4 - Maywood  
1500 Maybrook Ave.  
Maywood, IL 60153

☐ District 5 - Bridgeview  
10220 S. 76th Ave.  
Bridgeview, IL 60455

☐ District 6 - Markham  
16501 S. Kedzie Pkwy.  
Markham, IL 60426

☐ Child Support  
28 North Clark St., Room 200  
Chicago, Illinois 60602

You must file within 30 days after service of this Summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

Atty. No.: 10264  
Name: LAWRENCE WALNER & ASSOCIATES, LTD.  
Atty. for: PLAINTIFF  
Address: 150 N. WACKER DRIVE, #2150  
City/State/Zip: CHICAGO, IL 60606  
Telephone: (312) 201-1616  
Service by Facsimile Transmission will be accepted at: _____
(Area Code)   (Facsimile Telephone Number)

WITNESS, _____, _____

NOV 15 2007

Clerk of Court

Date of service: _____,
(To be inserted by officer on copy left with defendant or other person)

Exhibit A

DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Firm No. 10264

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION



| | |
|---|---|
| LAURA M. SWANSON, on behalf of herself and all other Illinois residents similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) Case No. |
| v. | ) ) ) 07CH32248 |
| BANK OF AMERICA, N.A., and FIA CARD SERVICES, N.A., | ) ) ) ) |
| Defendants. | ) |

### CLASS ACTION COMPLAINT

Plaintiff, Laura M. Swanson ("Swanson"), on behalf of herself and all other similarly situated residents of the State of Illinois, alleges:

#### Nature of the Case

1. This is a class action on behalf of all consumers with billing addresses in the State of Illinois who have or had credit card accounts with Defendants Bank of America, N.A. or FIA Card Services, N.A. (collectively "the Bank"), and whose interest rates on their outstanding balances were retroactively increased by the Bank.

#### Jurisdiction and Venue

2. The Court has jurisdiction over this case because Defendants transact business and have committed tortious acts in the State of Illinois.

3. Venue is proper because Defendants are nonresidents, Defendants transact business in Cook County and Bank of America maintains an office in Chicago.

1

## The Parties

4. Plaintiff, Laura M. Swanson, resides in the State of Illinois. Swanson has a Bank of America credit card account.

5. Defendants, Bank of America, N.A. and FIA Card Services, N.A., f/k/a MBNA America Bank, N.A., are corporate affiliates owned by Bank of America Corporation. FIA was recently acquired by Bank of America Corporation in connection with a merger. Defendants administer and have administered Bank of America credit card accounts. On information and belief, both Defendants have administered Plaintiff's credit card account. The Defendants are collectively referred to here as "the Bank".

## Fact Allegations

6. This case arises out of the Bank's practice of reviewing its credit card accounts at the end of each account's billing cycle, targeting selected cardholders for interest rate increases as a result of that review, and then retroactively imposing the selective rate increases on the cardholders' outstanding balances for the billing cycle that has already passed.

7. The Bank reviews its cardholders' accounts once a month (at the end of each billing cycle) to determine whether to increase the interest rate for each account and, if so, by how much. If the Bank decides to impose a rate increase at the end of the billing cycle, and if there has been a late payment or the account balance exceeds the account's limit during the billing cycle, the Bank automatically backdates the effective date of the increase to the start of that cycle (which has already ended). Then the Bank recalculates the interest charges for that billing cycle at the new, higher rate, adding the additional "interest" charges resulting from this recalculation to the cardholder's bill. As a result of this practice, the Bank imposes a penalty charge on the cardholder in the form of additional "interest" charges.

2

8.   To illustrate with a hypothetical cardholder who is carrying a $10,000 balance at an interest rate of 11.99%, and for whom the Bank decides to increase the interest rate to 26.99%, the Bank tells the cardholder in their monthly statement at the start of the billing cycle that their interest rate is 11.99%. At the 11.99% rate, about $100 in interest will accrue on the cardholder's balance during the billing cycle. The Bank does not decide to increase the cardholder's rate to 26.99% until it conducts its monthly review at the end of the billing cycle, but the Bank applies the increase as if it occurred at the start of the billing cycle. This results in an after-the-fact assessment of about $125 in additional "interest" on the cardholder's balance for that billing cycle, or about $225 in total "interest" charges instead of $100.

9.   The Bank decides to impose these selective, retroactive rate increases based on a methodology that it does not disclose to cardholders. Moreover, the Bank imposes the increases without advance notice. As a result, cardholders who are subjected to this practice, who were led to believe that they were being charged at the rate shown on their billing statement before the billing cycle began, are subjected to a higher interest rate for that cycle than what the Bank represented.

10.   The Bank's practice of retroactively increasing interest rates is immensely profitable to the Bank, but is unfair to cardholders because: (a) the rate increases are unilaterally imposed without advance notice; (b) the rate increases are based on the Bank's secret methodology so that consumer has no way of knowing in advance what rate he or she will be charged for a billing cycle; (c) the rate increases are imposed retroactively for billing cycles that have already ended; (d) the consumer is denied the opportunity to avoid the additional charges, e.g., by paying off their balance; and (e) the Bank imposes the additional "interest" charges

3

resulting from this practice in addition to other fees, such as late charges and over-the-limit fees. The Bank's scheme cheats a large number of consumers out of relatively small sums of money.

### Plaintiff's Particular Facts

11. In the February billing statement that the Bank sent Swanson for her Bank of America credit card account, the Bank told Swanson that the rate at which interest was accruing on her balance was 11.99% for purchases and 11.99% for balance transfers and checks. The Bank made no mention of any impending increase in the interest rate for the next billing cycle, which began on February 10, 2007 and ended on March 12, 2007.

12. On or about March 12, 2007, *i.e.*, at the end of the February 10th-to-March 12th billing cycle, the Bank conducted a monthly review of Swanson's account and decided to increase her interest rate for purchases, and for balance transfers and checks, to 26.99%.

13. The Bank did not impose the increase only on a going-forward basis. To the contrary, the Bank also made the increase retroactive to February 10, 2007, *i.e.*, the beginning of the billing cycle that had just ended.

14. The Bank did not give Swanson advance notice that it was going to impose the increase or the amount of the increase.

15. As a result of the retroactive rate increase, the Bank added more than $90.00 worth of "interest" charges to Swanson's account for the February 10th-to-March 12th billing cycle, in addition to the interest charge that accrued on her account for that cycle at the 11.99% rate.

16. The Bank also imposed a $39 late fee on Swanson for the February 10th-to-March 12th billing cycle.

4

## Class Allegations

17.  Plaintiff brings this action on behalf of herself and the following class of similarly situated people ("the class"):

> All natural persons with billing addresses in the State of Illinois who have or had credit card accounts with the Bank and whose interest rates were retroactively increased within the applicable statute of limitations.

On information and belief, the aggregate damages suffered by the class is less than $5,000,000.

18.  The class is so numerous that joinder is impracticable. The class contains at least several hundred people.

19.  This case gives rise to one or more common questions of law or fact that predominate over any individual questions that might arise. The common questions that predominate include, but are not limited to:

a) whether the Bank retroactively increased the interest rates for Plaintiff and the class members;

b) whether the Bank imposed the rate increases without advance notice to Plaintiff and the class members;

c) whether the manner in which the Bank imposed the retroactive interest rate increases on Plaintiff and the class members denied them the opportunity to avoid the increases;

d) whether the Bank's retroactive interest rate increases and the resulting additional "interest" charges imposed on Plaintiff and the class members constitute an illegal penalty;

e) whether the Bank's retroactive interest rate increases and its imposition of the resultant additional "interest" charges are unfair or deceptive in violation of the

5

Illinois Consumer Fraud & Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*; and

    f)  whether the Bank is liable for punitive damages for its actions.

20. Plaintiff and her counsel will adequately protect and represent the class because she has the same claims, based on the same facts, as those of the class. Moreover, Plaintiff's counsel are experienced in class action litigation.

21. For many reasons, a class action is an appropriate method for resolving this case. First, the claims of Plaintiff and the class can and will be established by common proof, and thus a class action provides an efficient mechanism for resolving hundreds of claims in one action. Second, Plaintiff's and the class members' losses are small compared to the cost and difficulty of prosecuting their individual claims and thus, as a practical matter, the members of the class will not obtain relief without a class action. Third, even if Plaintiff and the class members could afford to prosecute their claims individually, and even if they each were able to find a lawyer who would do so, a class action avoids the burden that the resulting multitude of lawsuits would impose on the court system. Fourth, a class action promotes justice by avoiding the potential for contradictory or inconsistent rulings on the common issues that this case presents.

### COUNT I
### Unjust Enrichment
### Collection of Illegal Penalties

22. Plaintiff adopts and realleges the allegations contained in paragraphs 1-21, above.

23. The Bank's retroactive increase of Plaintiff's and the class members' interest rates, and the additional finance charges the Bank imposed as a result, are void and unenforceable because they constitute illegal penalties.

24. The Bank's retroactive increase of Plaintiff's and the class members' interest rates and the additional finance charges the Bank imposed as a result are illegal penalties because:

    a) They were not intended to compensate the Bank for damages as a result of the cardholder's failure to make a timely payment or as a result of the account being over the limit;

    b) They bear no relationship to any damages the Bank allegedly incurred as a result of the cardholder's failure to timely make their monthly payment or as a result of the account being over the limit – particularly because the conduct allegedly justifying the increase occurs *after* the effective date of the increase;

    c) The Bank imposes the "interest" charges in addition to other charges it imposes, *e.g.* late fees and over-the-limit fees, for the conduct allegedly justifying the retroactive rate increase;

    d) The additional "interest" charges resulting from the retroactive rate increase are not a pre-determined sum – instead, they depend on the cardholder's outstanding balance, whether the Bank decides to impose the rate increase, and the amount of the increase the Bank decides to impose; and

    e) The retroactive rate increase and the additional "interest" charges that the Bank imposes as a result of the increase are discretionary. The Bank does not impose a retroactive rate increase on every occasion that a cardholder is late on their monthly payment or goes over their limit, and the Bank does not increase every cardholder's rate by the same amount. The Bank only imposes retroactive rate increases in accordance with its undisclosed methodology.

7

25. Because the Bank's practice of imposing retroactive rate increases and the resulting charges constitute illegal penalties, the Bank's collection of the charges was wrongful. Plaintiff and the class members have a superior claim to the charges collected by the Bank as a result of its retroactive rate increases.

26. Allowing the Bank to keep the charges would be contrary to principles of justice, equity and good conscience. Accordingly, Plaintiff and the class members are entitled to recover the charges.

27. The Bank's retroactive rate increases, and the charges resulting from them, should be declared illegal. Likewise, the Bank should be enjoined from imposing retroactive rate increases in the future because the practice causes irreparable harm insofar as the inflated account balances stemming from this practice reduce Plaintiff's and the class members' available credit, and because there is no adequate remedy at law for the harm resulting from the increases.

**Prayer for Relief for Count I**

Swanson prays that the Court:

a. Certify the class as to Count I, appoint Swanson as the representative of the class, and appoint her attorneys as counsel for the class.

b. Enter judgment in favor of Swanson and the class, and against the Bank, for restitution, costs, interest, declaratory relief, injunctive relief, and all other relief deemed just.

8

## COUNT II
### Violation of the Illinois Consumer Fraud & Deceptive
### Business Practices Act, 815 ILCS 505/1, *et seq.*

28. Plaintiff adopts and realleges the statements in paragraphs 1-21 and 23-27, above.

29. The Illinois Consumer Fraud & Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*, prohibits the Bank from engaging in *any* deceptive or unfair practice in the course of trade or commerce. *See* 815 ILCS 505/2. The Act must be liberally construed to effect its purposes. *See* 815 ILCS 505/11a.

30. The Bank's imposition of retroactive rate increases on Plaintiff and the class members, and its collection of the additional charges as a result of this practice, is unfair because it violates public policy. It violates public policy because the retroactive rate increases and the resulting charges are illegal penalties under the law, among other reasons.

31. The unfairness of the Bank's imposition of retroactive rate increases on Plaintiff and the class members is compounded by the fact that the cardholder has no advance notice of the additional charges imposed by the retroactive rate increase. The cardholder cannot know in advance whether they will incur a rate increase because that is the nature of a retroactive rate increase – it imposes additional "interest" on money loaned for a time period that has already passed. Moreover, the cardholder has no notice of whether the Bank will impose the retroactive rate increase, or how much it will be, because the Bank does not always impose a rate increase – the Bank only does so when the undisclosed methodology that it follows tells it to do so.

32. The Bank's practice of imposing retroactive rate increases also is deceptive. Each month the Bank sent Plaintiff and the class members a billing statement that reflected the applicable interest rate for the billing cycle just ended and the upcoming cycle, but the representation was false for Plaintiff and the class members because the actual rate of interest for

9

the upcoming cycle turned out to be higher due to the Bank's retroactive increase of the interest rate on their accounts. The Bank intended that Plaintiff and the class members would rely on its acts and omissions.

33. As a result of the Bank's actions, Plaintiff and the class members incurred additional charges they should not have had to pay. The Bank's actions render it liable to Plaintiff and the class members for actual damages, punitive damages, equitable relief (including an injunction to stop the practice at issue), costs, attorneys' fees and any other relief deemed just.

### Prayer for Relief as to Count II

Swanson prays that the Court:

a. Certify the class as to Count II, appoint Swanson as the representative of the class, and appoint her attorneys as counsel for the class.

b. Enter judgment in favor of Swanson and the class, and against the Bank, for actual damages, punitive damages, interest, declaratory relief, injunctive relief, attorneys' fees, costs and all other relief deemed just.

One of Plaintiff's Attorneys

Dated: November 6, 2007

Lawrence Walner
Michael S. Hilicki
Lawrence Walner & Associates, Ltd.
150 North Wacker Drive
Suite 2150
Chicago, Illinois 60606
Tel: (312) 201-1616
Fax: (312) 201-1538
Firm No. 10264

10

DEC 10 2007 12:48 FR BANK OF AMERICA          3129748014 TO 917046025707       P.12/12

Barry L. Kramer (pro hac vice)
Law Offices of Barry L. Kramer
11111 Santa Monica Blvd.
Suite 1860
Los Angeles, California 90025-3352
Tel: (310) 235-9980
Fax: (310) 235-9982

11

** TOTAL PAGE.12 **