**08 C 184**

Exhibit B

JUDGE ST. EVE
MAGISTRATE JUDGE COX

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| LAURA M. SWANSON, an individual, on behalf of herself and all others similarly situated,<br><br>                     Plaintiff,<br><br>        v.<br><br>BANK OF AMERICA, N.A. and FIA CARD SERVICES, N.A.<br><br>                     Defendants. | Case No.<br><br>**DECLARATION OF RUSSELL C. SMALL IN SUPPORT OF NOTICE OF REMOVAL** |

I, Russell C. Small, declare:

1. I am a Vice President and Card Marketing Manager for Bank of America Card Services. My responsibilities include supporting, from the operations side, all selection and implementation activities regarding existing account pricing strategy functions within U.S. Card Marketing for Bank of America. I have been employed by Bank of America since the merger between Bank of America and MBNA, and was employed previously by MBNA since 1997. I have personal knowledge of the facts set forth in this declaration, and if called as a witness, I could and would competently testify thereto.

2. The complaint filed by Laura M. Swanson against Bank of America and FIA (collectively, "Defendants") requests restitution of allegedly improper finance charges on credit card accounts in Illinois. Customers impacted by an increased finance charge are customers who are in default under the terms of their cardholder agreement by, for example, not making their monthly payments timely or by exceeding their agreed-upon credit limit. The

complaint alleges that these customers are subjected to "retroactive" increases in the interest rate applied to their account, "without advanced notice." The complaint describes these alleged practices as an unfair business practice, subject to the remedy of restitution. Defendants do not agree with these characterizations.

3. It is apparent from the complaint that the plaintiff's class, if certified and successful, will request at a minimum the restitution of one month's increased finance charges -- the period of time during which they claim to have been subject to those charges retroactively, without notice. The increased finance charge would be the difference between the interest rate charged before, and after the increase, as applied to the account balance. The restitution request would be, presumably, for all such first-month's finance charge differentials, in Illinois, for the period of time covered by the applicable statute of limitations (3 or 5 years, respectively).

4. In the ordinary course of their business, Defendants store and maintain data concerning their credit card accounts, and have the capacity to retrieve information concerning the number and identity of accounts maintained, balances on those accounts, and finance charges to those accounts. I am personally familiar with the nature of the information stored, and the retrieval of that information, as it relates to the facts described in this declaration.

5. In connection with assessing the potential dollar impact of plaintiff's claim for restitution, we (meaning me and persons working with me) pulled monthly data concerning all credit card accounts with billing addresses in the State of Illinois. The data reflects that, in the past 12 months, Defendants have maintained over 4 million such accounts. During that period, the number of such accounts, each month, which have experienced a new increase in finance charges due to a recent default in terms (the "Impacted Accounts") has fluctuated from between approximately 5,900 and approximately 8,300 accounts. These are the accounts which are entering the pool of accounts which are subjected to higher finance charges for a period of time, pursuant to the terms of the cardholder agreement.

6. For a one-year period, I examined the Impacted Account data, and specifically, the following:

(a) The account balance on the Impacted Accounts;

(b) The finance charges, in dollars, on the Impacted Accounts before the finance charge increase;

(c) The finance charges, in dollars, on the Impacted Accounts after the finance charge increase; and

(d) The difference between (b) above and (c) above (the "Differential Charge").

7. The potential dollar impact of an order of restitution in this case would, at a very minimum, include the Differential Charge for one month experienced by class members for all Impacted Accounts, during the class period dictated by the applicable statute of limitations.

8. In reviewing the data described above for just the past 12 months, the total first month Differential Charge for this 12 month period, in dollars, exceeded $4,500,000. Again, this represents the total amount in dollars of Differential Charges being experienced for the first time by the individual cardholder, which charges are, according to the complaint, "retroactive" and "without warning." Thus, it is clear that a restitution order addressed to all Impacted Accounts, requiring restitution of one-month's Differential Charge to all class members having experienced a Differential Charge during the past five, or even three years, would involve a sum well in excess of $5,000,000.

I declare under penalty of perjury under the laws of the United States, that the foregoing is true and correct, and that this declaration was executed on __January 7__, 2008, in __Wilmington, DE.__

_____
Russell C. Small