IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| LAURA M. SWANSON, an individual, on behalf of herself and all others similarly situated, | ) ) ) | |
| | ) | Case No. 1:08-cv-00184 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Amy St. Eve |
| | ) | |
| BANK OF AMERICA, N.A. and FIA CARD SERVICES, N.A. | ) ) | |
| | ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF
BANK OF AMERICA, N.A. AND FIA CARD SERVICES, N.A.**

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................ 1

SUMMARY OF PLAINTIFF'S PURPORTED CAUSES OF ACTION ..................................... 3

STANDARD FOR GRANTING A RULE 12(b)(6) MOTION ................................................... 4

ARGUMENT ............................................................................................................................... 5

   I.    FEDERAL LAW PREEMPTS PLAINTIFF'S CLAIMS IN THEIR ENTIRETY. ........... 5

      A.   The NBA and OCC Regulations Expressly Preempt Plaintiff's Claims. ...................... 6

         1.   Plaintiff's Claims Are Expressly Preempted Because They Attack the Interest Rates Charged By National Banks............................................................................ 7

         2.   Plaintiff's Claims Are Expressly Preempted Because They Attack Terms of Credit. ............................................................................................................... 9

         3.   Plaintiff's Claims Are Expressly Preempted to the Extent They Seek To Impose a New Disclosure Regime Under State Law............................................... 11

      B.   The NBA Also *Impliedly* Preempts Plaintiffs' Claims Because They Conflict with Congressional Intent. ............................................................................................ 12

  II.   PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND................................................................................................................... 14

CONCLUSION.......................................................................................................................... 15

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

Abel v. Keybank USA, Inc.,
    313 F. Supp. 2d 720 (N.D. Ohio 2004)...........................................................................10

America Bankers Ass'n v. Lockyer,
    239 F. Supp. 2d 1000 (E.D. Cal. 2002)...........................................................................14

Augustine v. FIA Card Services, N.A.,
    Case No. 2:06-CV-2013 (E.D. Cal. April 20, 2007)..................................................1, 3, 15

Balistreri v. Pacifica Police Department,
    901 F.2d 696 (9th Cir. 1988) ...........................................................................................5

Bank of America v. City and County of San Francisco,
    309 F.3d  551 (9th Cir. 2002) ...................................................................................10, 15

Bank One v. Guttau,
    190 F.3d 844 (8th Cir. 1999) ..........................................................................................14

Barnett Bank of Marion County, N.A. v. Nelson,
    517 U.S. 25 (1996)..................................................................................................2, 6, 13

Beneficial National Bank v. Anderson,
    539 U.S. 1 (2003)..........................................................................................................2, 8

Boursiquot v. Citibank F.S.B,
    323 F. Supp. 2d 350 (D. Conn. 2004)...............................................................................5

Budnik v. Bank of America Mortgage,
    Case No. 03 C 6116, 2003 U.S. Dist. LEXIS 22542 (N.D. Ill. Dec. 16, 2003)...................8

In re Burlington Coat Factory Security Lit.,
    114 F.3d 1410 (1st Cir. 1996).........................................................................................15

Cal Federal Savings & Loan Association v. Guerra,
    479 U.S. 272 (1987)..........................................................................................................6

Lockyer v. Dynegy, Inc.,
    375 F.3d 831 (9th Cir. 2004), cert. denied, 544 U.S. 974 (2005).......................................5

Cipollone v. Liggett Group, Inc.,
    505 U.S. 504 (1992)..........................................................................................................6

Cmty. Bankers As n of lnd., Inc. v Clarke,
    766 F. Supp. 1519 (S.D. Ind. 1990) ...................................................................12

Conference of State Bank Supervisors v. Conover,
    710 F.2d 878 (D.C. Cir 1983) ...........................................................................6

Conley v. Gibson,
    *355* U.S. 41 (1957) ........................................................................................5

Davis v. Elmira Savings Bank,
    161 U.S. 275 (1896) ........................................................................10, 13, 15

Doherty v. City of Chicago,
    75 F.3d 318 (7th Cir. 1996) ...........................................................................1, 3

Easton v. Iowa,
    188 U.S. 220 (1903) ......................................................................2, 10, 13

Evans v. Chase Manhattan Bank USA, N.A.,
    Case No. C-05-3968, 2006 WL 213740 (N.D. Cal. Jan. 27, 2006 ....................1, 3, 15

Farmers' & Mechs' National Bank v. Dearing,
    91 U.S. 29 (1875) ...........................................................................................12

Fid. Federal Savings & Loan Ass'n v. de la Cuesta,
    458 U.S. 141 (1982) ....................................................................................5, 6, 7

Forness v. Cross Country Bank, Inc.,
    Case No. 05-CV-417, 2006 U.S. Dist. LEXIS 3423 (S.D. Ill. Jan. 13, 2006) ...................8

Franklin National Bank v. New York,
    347 U.S. 373 (1954) ..................................................................................13, 14

Free v. Bland,
    369 U.S. 663 (1962) ........................................................................................5

Gomez v. Ill. State Bd of Education,
    811 F.2d 1030 (7th Cir. 1987) ........................................................................4

Gray v. County of Dane,
    854 F.2d 179 (7th Cir. 1988) ..........................................................................4

Haehl v. Wash. Mutual Bank, N.A.,
    277 F. Supp. 2d 933 (S.D. Ind. 2003) ...........................................................5

Hines v. Davidowitz,

312 U.S. 52 (1941) ................................................................................6, 13, 14

Marquette National I Bank of Minneapolis v. First of Omaha Service Corp.,
    439 U.S. 299 (1978) ................................................................8, 10, 11

M'Cullough v. Maryland
    17 U.S. (4 Wheat.) 316, 427 (1819) ..........................................................6

McCoy v. Chase Manhattan Bank USA,
    Case No. SACV 06-107 (C.D. Cal. Aug. 1, 2006) ...........................................1

National City Bank of Ind. v. Turnbaugh,
    463 F.3d 325 (4th Cir. 2006) *cert. denied* 127 S. Ct. 2096 (2007) ...................................14

Penner v. Chase Bank USA, NA.,
    Case No. C06-5092, 2006 WL 2192435 (W.D. Wash. Aug. 1, 2006) ..............................12

Rice v. Santa Fe Elevator Corp.,
    331 U.S. 218 (1947) ..............................................................................6

Smiley v. Citibank (S.D.), N.A.,
    517 U.S. 735 (1996) ...............................................................2, 7, 8, 10, 11

Talbott v. Board of County Comm'rs,
    139 U.S. 438 (1891) ..............................................................................11

Thomas v. Farley,
    31 F.3d 557 (7th Cir. 1994) .....................................................................5

Transmission Agency of N Cat v. Sierra Pacific Power Co.,
    295 F.3d 918 (9th Cir. 2002) (affirming Rule 12(b)(6) ........................................5

Wachovia Bank, N.A. v. Burke,
    414 F.3d 305 (2d Cir. 2005) cert denied 127 S. Ct. 2093 (2007) .............................6, 7, 14

Wachovia Bank, N.A. v Watters,
    431 F.3d 556 (6th Cir. 2005) aff'd 127 S. Ct. 1559 (2007) ..................................14

Wells Fargo Bank v. Boutris,
    419 F.3d 949 (9th Cir. 2005) ...................................................................7, 14

Whirlpool Finance Corp. v. GN Holdings, Inc.,
    67 F.3d 605 (7th Cir. 1995) .....................................................................4

## STATE CASES

U.S. Bank of Wash., NA.,
  865 P.2d 536 (Wash. Ct. App. 1994) ................................................................12

## FEDERAL STATUTES AND REGULATIONS

12 C.F.R. § 226.28 ...........................................................................................3

12 C.F.R. §226.4 .............................................................................................7

12 C.F.R. § 7.4000 ........................................................................................3, 7

12 C.F.R. § 7.4001 ..............................................................................2, 6, 7, 9, 12

12 C.F.R. § 7.4008 ............................................................................2, 7, 9, 10, 12

12 U.S.C. § 21 .................................................................................................2

12 U.S.C. § 24 ...............................................................................................12

12 U.S.C. § 43 .................................................................................................7

12 U.S.C. § 484 ...............................................................................................3

12 U.S.C. § 85 ......................................................................................2, 6, 7, 8, 9, 10, 12

12 U.S.C. § 86 .................................................................................................8

12 U.S.C. § 93 .................................................................................................6

15 U.S.C. § 1610 ..............................................................................................3

15 U.S.C. § 1640 ..............................................................................................3

## STATE STATUTES

Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 ....................3, 4

## OTHER AUTHORITIES

Interpretive Rulings, 61 Fed. Reg. 4849, 4858 (Feb. 9, 1996) & Investment Securities.................7

Leasing, 66 Fed. Reg. 34,784, 34,786-87 (July 2, 2001)................................................................7

Real Estate Lending and Appraisals, 69 Fed. Reg. 1904, 1905-07 (Jan. 13, 2004) .......................7

## INTRODUCTION AND SUMMARY OF ARGUMENT

In this putative class action, attorneys for Plaintiff Laura M. Swanson ("Plaintiff") challenge the same practices that they have *unsuccessfully* challenged in at least four previous lawsuits against national banks, including Defendants Bank of America N.A. ("BofA") and FIA Card Services, N.A. ("FIA") (collectively, "Defendants"). Specifically, in at least four prior cases, Plaintiff's counsel has attacked the same "default interest" practices alleged here, under analogous state law theories. In every one of these cases, the respective courts have dismissed the lawsuits on preemption grounds, with prejudice.[1]

The legal theories advanced under Illinois law in this case, by the same counsel concerning the same general practices, have no more merit than those rejected in the prior cases. Like the prior lawsuits, this case should be dismissed because the claims asserted are entirely and expressly preempted by federal banking law.

Plaintiff's Complaint (the "Complaint") invokes Illinois law as a purported basis for regulating and limiting Defendants' alleged imposition of "additional 'interest' charges" resulting from "retroactive" interest rate increases on Defendants' credit cardholders, "without advance notice." (Compl. ¶ 10.) Plaintiff alleges that the imposition of these interest charges, although *authorized and permitted by the credit card agreements* between FIA[2] and its respective cardholders (the "Cardholder Agreement"), is an "illegal penalty" and, as such,

---

[1] *See, e.g.*, *Augustine v. FIA Card Services, N.A.*, Case No. 2:06-CV-2013 (E.D. Cal. April 20, 2007) (appeal to Ninth Circuit pending); *McCoy v. Chase Manhattan Bank USA*, Case No. SACV 06-107 (C.D. Cal. Aug. 10, 2006); *Penner v. Chase Bank USA, NA.*, Case No. C06-5092, 2006 WL 2192435 (W.D. Wash. Aug. 1, 2006); *Evans v. Chase Manhattan Bank USA, N.A.*, Case No. C-05-3968, 2006 WL 213740 (N.D. Cal. Jan. 27, 2006) (appeal to Ninth Circuit pending). These decisions are attached hereto as Exhibits A through D, respectively. A district court may take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment. *See, e.g., Doherty v. City of Chicago*, 75 F.3d 318, 325 n.4 (7th Cir. 1996).

[2] Bank of America, N.A. is an improper defendant in this case as it does not administer *any* of the credit card accounts purportedly at issue in this case. For that reason BofA has requested that Plaintiff voluntary dismiss it from this lawsuit. While BofA is not a proper defendant regardless of the federal preemption issue, for purposes of this motion it seeks the same relief as FIA—a dismissal with prejudice on the grounds of express federal preemption.

constitutes unfair trade practice in violation of applicable Illinois law.  (Compl. ¶¶ 23, 24, 30, 31.)  However, under the National Bank Act ("NBA"), 12 U.S.C. § 21 *et seq.,* as well as the regulations of the Office of the Comptroller of the Currency ("OCC"), which have the same preemptive effect as a federal statute, state law cannot apply to the setting of interest rates and the calculation of finance charges by national banks.  This is so for several reasons.

First, the NBA and the OCC regulations *exclusively* govern the rates of interest, including finance charges, that may be imposed by national banks.  12 U.S.C. § 85; 12 C.F.R. §§ 7.4001, 7.4008(d).  Thus, there is no basis for state-law claims, such as those Plaintiff purports to present in this case, that finance charges imposed by a national bank *in accordance with federal law* are "excessive," "unfair," "unconscionable," or "illegal" under state law.  *Smiley v. Citibank (S.D.), N.A.,* 517 U.S. 735, 744 (1996); *Beneficial Nat'l Bank v. Anderson, 539* U.S. 1, 9-10 (2003).  To hold otherwise would be to make state law the arbiter of the exercise of federal rights, in contravention of the Supremacy Clause.

Second, the OCC's regulations *expressly* preempt any application of state law, such as Plaintiff seeks here, that would restrict, limit, or condition the "terms of credit" set by a national bank with respect to non-real estate loans such as credit card accounts.  12 C.F.R. § 7.4008(d)(2)(iv).  Because granting any relief on Plaintiff's state law claims would have just such an effect, they are expressly preempted on this ground as well.[3]

Finally, Plaintiff's claims are not only expressly preempted by the NBA and OCC regulations; they are also impliedly preempted because they *conflict* with congressional intent.  *Easton v. Iowa,* 188 U.S. 220, 229 (1903) (finding that Congress gave national banks authority to exercise their federally authorized banking powers, including lending, "independent . . . of state . . . limitations and restrictions"); *Barnett Bank of Marion County, N.A. v. Nelson,* 517 U.S. 25, 34 (1996) (since "Congress has not expressly conditioned the grant of 'power' [to national banks]

---

[3] Here, Plaintiff seeks to regulate the manner in which interest and other charges are applied to particular accounts and the amount of such charges.  (Compl. ¶¶ 10, 24).  As such, Plaintiff is seeking to regulate Defendants' terms of credit via state law claims.

upon a grant of state permission,. . . no such condition applies.").

Inasmuch as the Complaint raises no claim that, construed most favorably to Plaintiff, could possibly provide a basis for the relief sought, Defendants respectfully request that the Court grant its Motion to Dismiss without leave to amend.[4]

At the very least, the Court should stay this proceeding until the Ninth Circuit has had the opportunity to rule on the issues presented herein. Both *Augustine v. FIA Card Services, N.A.* and *Evans v. Chase Manhattan Bank USA, N.A.* are currently on appeal to the Ninth Circuit. While a decision of the Ninth Circuit would not be binding upon this Court, it would certainly provide the Court with definitive guidance on this issue (counsel for Defendants have not located a single Federal appellate opinion that has ruled on the precise default pricing practice at issue herein). Plaintiff's counsel should not be allowed to continue to forum shop loss after loss. Plaintiff's counsel's actions needlessly waste judicial resources and are in violation of the Federal Rules of Civil Procedure.

## SUMMARY OF PLAINTIFF'S PURPORTED CAUSES OF ACTION

The Complaint asserts two purported causes of action against Defendants, one under the common law of Illinois for Unjust Enrichment (Compl., ¶¶ 23-27), and the other under Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* (Compl. ¶¶ 29-33), on behalf of a putative class of Illinois consumers who "have or have had credit accounts with [Defendants]. . . ."[5] (Compl., ¶ 17.)

---

[4]  If this action is not dismissed beforehand, Defendants intend to raise various factual and legal defenses to the Complaint including, but without limitation, that Plaintiff's claims are barred, in whole or in part, by the OCC's exclusive visitorial powers, 12 U.S.C. § 484 and 12 C.F.R. § 7.4000, and by the Truth in Lending Act, 15 U.S.C. §§ 1610(e) and 1640 *et seq.,* and its implementing regulations, including 12 C.F.R. § 226.28(d). Although this Motion to Dismiss is based solely on preemption under the NBA and OCC regulations, Defendants do not intend thereby to waive any of its other additional defenses.

[5]    Following a merger between Bank of America Corporation and MBNA Corporation, MBNA America Bank, National Association, changed its name to "FIA Card Services, National Association," effective June 10, 2006. As the Complaint acknowledges (Compl. ¶ 3), FIA is a federally chartered national banking association organized under the NBA. FIA has its headquarters and is located in the State of Delaware. *See* Exhibits E-G attached hereto. The Court is requested to, and may properly, take judicial notice of the bank charter and of OCC documents reflecting the change of name to FIA and PTA's location. *See, e.g., Doherty, supra*

In her purported Unjust Enrichment cause of action, Plaintiff alleges that "[t]he Bank's retroactive increase of Plaintiff's and the class members' interest rates and the additional finance charges the Bank impose as a result are illegal penalties . . . ." (Compl., ¶ 24). Plaintiff further requests that "[t]he Bank's retroactive rate increases, and charges resulting from them, should be declared illegal." (Compl. ¶ 27.)

Plaintiff's Unfair Competition claim under 815 ILCS 505/1, *et seq.* appears to be based on two grounds. First, Plaintiff claims that Defendants' imposition of alleged "retroactive rate increases" is unfair because it constitutes an "illegal penalty" under Plaintiff's first cause of action for unjust enrichment. (Compl., ¶ 31.) Second, Plaintiff claims that the rate increases are unfair and deceptive because they are inadequately disclosed. (Compl., ¶¶ 31-32.)

Plaintiff alleges that "Plaintiff and the class members are entitled to recover the charges" and seeks a judgment in favor of the class for "restitution, costs [and] interest.) (Compl. ¶ 27, Prayer for Relief I and II.) Plaintiff also demands an injunction prohibiting Defendants "from imposing retroactive rate increases in the future." (Compl., ¶¶ 27; Prayer for Relief I and II.)

## STANDARD FOR GRANTING A RULE 12(b)(6) MOTION

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." For purposes of a motion to dismiss, the Court should presume all well-pleaded allegations to be true. *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995). In order to prevail, the defendant must demonstrate that "the plaintiff's claim, as set forth by the complaint, is without legal consequence." *Gomez v. Ill. State Bd of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987).

To withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. *Gray v. County of Dane*, 854 F.2d 179, 182 (7th Cir. 1988). A plaintiff may plead herself out of court if the complaint includes particulars that

---

(noting that a court may take judicial notice of matters of public record outside the pleadings in considering a motion to dismiss pursuant to Rule 12(b)(6)).

show she cannot possibly be entitled to the relief she seeks. *Thomas v. Farley*, 31 F.3d 557, 558-59 (7th Cir. 1994). A motion to dismiss must be granted where the plaintiff "can prove no set of facts in support of [her] claim which would entitle [her] to relief," *Conley v. Gibson, 355* U.S. 41, 45-46 (1957), including where the plaintiff has presented no cognizable legal theory or has alleged insufficient facts under a cognizable theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1988).

A motion to dismiss also should be granted where, as here, a complaint based on state law is preempted by federal law. *See, e.g., Lockyer v. Dynegy, Inc.,* 375 F.3d 831, 849-53 & n.16 (9th Cir. 2004) (affirming Rule 12(b)(6) dismissal of California unfair and deceptive business practices claims as preempted by federal law) *cert. denied,* 544 U.S. 974 *(2005); Transmission Agency of N Cat v. Sierra Pac. Power Co.,* 295 F.3d 918, 927-33 (9th Cir. 2002) (affirming Rule 12(b)(6) dismissal of state law claims as preempted by federal law); *Boursiquot v. Citibank F.S.B,* 323 F. Supp. 2d 350, *355-56* (D. Conn. 2004) (dismissing under Rule 12(b)(6) Connecticut Unfair Trade Practices Act claims as preempted by federal law); *Haehl  v. Wash. Mut. Bank, N.A.,* 277 F. Supp. 2d 933, 940-43 (S.D. Ind. 2003) (dismissing under Rule 12(b)(6) Indiana Consumer Credit Code and common law fraud claims as preempted by federal law).

Because all of Plaintiff's allegations, even if they could be construed as cognizable under state law, are expressly preempted by federal law, the Complaint fails to state a claim upon which relief can be granted and thus should be dismissed.

## ARGUMENT

## I.    FEDERAL LAW PREEMPTS PLAINTIFF'S CLAIMS IN THEIR ENTIRETY.

Under the Supremacy Clause, article VI, clause 2 of the U.S. Constitution, federal law preempts state law where Congress so intends. *See Free v. Bland,* 369 U.S. 663, 666 (1962); *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 152-53 (1982). Congress may establish its intent to preempt state law expressly or impliedly: "Pre-emption may be either express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *de la Cuesta,* 458 U.S. at 152-53

(citation and internal quotation marks omitted).  Congressional intent to preempt will be "inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation," *Cal Fed. Sav. & Loan Ass'n. v. Guerra,* 479 U.S. 272, 281 (1987) (*citing Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230 (1947)), or wherever state law conflicts with federal law.  *Cipollone v. Liggett Group, Inc., 505* U.S. 504, 516 (1992) ("[S]ince [the Supreme Court's] decision in *M'Culloch v. Maryland,* 17 U.S. (4 Wheat.) 316,427... (1819), it has been settled that state law that conflicts with federal law is 'without effect.") (citation omitted).

A "conflict" arises where, as here, state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Hines v. Davidowitz,* 312 U.S. 52, 67 (1941).  In the specific context of banking, one way a state law presents an impermissible "obstacle" to Congress' objectives is by conditioning, restricting, or limiting the exercise of a power conferred by federal law.  *Barnett Bank,* 517 U.S. at 32 (grants of powers to national banks are "grants of authority not normally limited by, but rather ordinarily pre-empting, contrary state law"); *Id.* at 34 ("where Congress has not expressly conditioned the grant of 'power' upon a grant of state permission, the Court has ordinarily found that no such condition applies").  This is precisely the situation presented by Plaintiff's claims here, which seek to use state law to limit Defendants' full exercise of their federal powers.

### A.    The NBA and OCC Regulations Expressly Preempt Plaintiff's Claims.

This case involves *express* preemption, both by the NBA itself, 12 U.S.C. § 85, and by regulations of the OCC issued thereunder, particularly (insofar as germane to this action) 12 C.F.R. §§ 7.4001 and 7.4008.  The OCC has broad statutory authority to promulgate regulations concerning the business of banking that preempt inconsistent state law. 12 U.S.C. § 93a; *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 314 (2d Cir. 2005) *cert denied* 127 S. Ct. 2093 (2007); *Conference of State Bank Supervisors v. Conover,* 710 F.2d 878, 885 (D.C. Cir 1983).  The OCC also has specific statutory authority to issue regulations that preempt state laws concerning consumer protection, provided such regulations are the product of a public notice-

and-comment procedure.  12 U.S.C. § 43; *Wells Fargo Bank v. Boutris,* 419 F.3d 949, 962-63 & n.16 (9th Cir. 2005); *Burke,* 414 F.3d at 314.

Both 12 C.F.R. § 7.4001 and 12 C.F.R. § 7.4008 are products of exactly such a procedure.  *See* Interpretive Rulings, 61 Fed. Reg. 4849, 4858 (Feb. 9, 1996) & Investment Securities; Bank Activities and Operations; Leasing, 66 Fed. Reg. 34,784, 34,786-87 (July 2, 2001) (§ 7.4000; Bank Activities and Operations; Real Estate Lending and Appraisals, 69 Fed. Reg. 1904, 1905-07 (Jan. 13, 2004) (§ 7.4008).  Therefore, the OCC's regulations have the full force and effect of federal law.  *de la Cuesta,* 458 U.S. at 153 ("Federal regulations have no less pre-emptive effect than federal statutes.").

### 1.    Plaintiff's Claims Are Expressly Preempted Because They Attack the Interest Rates Charged By National Banks.

Plaintiff's Complaint is an attack on Defendants' federal right to charge interest and to impose finance charges on the accounts of its credit card customers.  More particularly, Plaintiff complains that she and the members of her putative class were charged a default interest rate, effective as of the first day of the billing cycle in the which the default occurred, and as a result incurred finance charges imposed by "retroactive" application of an increased rate of interest.[6] (Compl., ¶¶ 7, 8).

Plaintiff's challenge to Defendants' default interest charges is expressly preempted because the NBA expressly grants a national bank the power to charge interest on loans, including finance charges, at a rate up to that permitted by the law of the state in which the bank is located (*i.e.,* its "home" state), ***irrespective of all other state law***.  12 U.S.C. § 85 ("Section 85") ("Any association [national bank] may . . . charge on any loan or discount made . . . interest at the rate allowed by the laws of the State. . . where the bank is located").  Any claim that a

---

[6]    Finance charges imposed by a national bank are "interest" as defined by federal banking law. *See* 12 C.F.R. § 7.4001(a) ("'interest' as used in 12 U.S.C. 85 includes any payment compensating a creditor or prospective creditor for an extension of credit"); *see also* 12 C.F.R §226.4(b)(1) (defining "finance charges" as, *inter alia,* "interest"); *Smiley,* 517 U.S. 735 (upholding definition of "interest" in 12 C.F.R. § 7.4001(a) and its inclusion of credit card "late fees").

national bank charged interest in excess of the lawful rate may only be brought under *federal* law, not state law. 12 U.S.C. § 86; *Beneficial Nat'l Bank,* 539 U.S. at 9.[7]

Further, Plaintiff does ***not*** allege that Defendants ever charged her interest at rates in excess of those allowable under the law of Delaware, the state in which the holder of the credit card accounts at issue in this case—FIA—is located.  (Exhibits E-G.)  Nor could she make such an allegation.  And the fact that Delaware law does not limit Defendants' interest rates does not give Plaintiff a basis for invoking Illinois law to challenge Defendants' interest rates.  Indeed, that was the precise conclusion of the Supreme Court in *Smiley*, 517 U.S. 735, with respect to another credit cardholder who sought to use California law to challenge late-payment fees imposed by a national bank located in South Dakota.

In *Smiley*, following the state trial court's dismissal of the plaintiffs' claims on grounds of preemption under Section 85, as affirmed by both the Court of Appeal and Supreme Court of California, the U.S. Supreme Court held that the late-payment fees at issue were "interest" within the meaning of Section 85 and that, because "there is no doubt that § 85 pre-empts state law," the plaintiffs California law claims of allegedly excessive interest, in the form of late-payment fees, had properly been dismissed. *Id.* at 744 (*citing Marquette Nat'l Bank of Minneapolis v. First of Omaha Serv. Corp.*, 439 U.S. 299, 318-19 (1978)).

In addition to Section 85, the OCC's implementing regulations also expressly preempt Plaintiff's claims in this case.  These regulations state, in pertinent part: "[A] national bank may. . . charge late fees to its interstate customers because the fees are interest under the Federal definition of interest and an allowable charge under state law where the national bank is located,"

---

[7]        Two Illinois district courts have also ruled that state law claims challenging interest rates charged by national banks are preempted under the NBA, in the removal context.  *Forness v. Cross Country Bank, Inc.*, Case No. 05-CV-417, 2006 U.S. Dist. LEXIS 3423 (S.D. Ill. Jan. 13, 2006); *Budnik v. Bank of America Mortgage*, Case No. 03 C 6116, 2003 U.S. Dist. LEXIS 22542 (N.D. Ill. Dec. 16, 2003).  (Attached hereto as Exhibits H and I, respectively.)  In both cases, the respective courts denied motions to remand on the grounds that the claims, which challenged interest and fees charges by national banks, were expressly preempted under the NBA.  Both decisions specifically follow the United States Supreme Court's decision in *Beneficial Nat'l Bank.*

12 C.F.R. § 7.4001(c), and a national bank may make loans "*without regard to state law limitations* concerning. . . [r]ates of interest on loans." *Id.* § 7.4008(d)(2)(x) (emphasis added). Such state law limitations are precisely what Plaintiff seeks to impose on Defendants: by her Complaint, Plaintiff seeks to use Illinois law to nullify Defendants' federal and contractual right to charge default rate interest within the ceiling imposed by Section 85, and to charge such interest as of the first day of the billing cycle in which the triggering act of default occurred.

In short, both the NBA and the OCC's regulations expressly preclude any state-law claims seeking to impose limits or restrictions beyond Section 85 on a national bank's choice of interest rates on credit card loans. Plaintiff does not and cannot allege that Defendants' interest rates exceeded those permissible under Section 85. Consequently, there is no viable legal basis for Plaintiff's claims of allegedly excessive finance charges.

      **2.    Plaintiff's Claims Are Expressly Preempted Because They Attack Terms of Credit.**

Section 85 and the OCC's regulations implementing it are themselves sufficient ground for dismissing the Complaint. As noted, they expressly preempt any challenge to the *rate* of interest and resulting *amount* of finance charges imposed by Defendants. Plaintiff's claims are also expressly preempted on an entirely independent ground, because they directly attack Defendants' terms of credit.

The OCC regulation section 7.4008 specifically states that state law is preempted with respect to the exercise of a national bank's power of lending, including setting terms of credit-card lending. 12 C.F.R. § 7.4008 ("Section 7.4008"). As such, this regulation expressly preempts state law in a variety of specifically enumerated areas where the application of state law would necessarily "obstruct, impair, or condition a national bank's ability to fully exercise its federally authorized non-real estate lending powers . . . ." *Id.* § 7.4008(d)(1). Among the types of state laws that are thus expressly preempted are laws purporting to affect the terms of credit on national bank non-real estate loans: "A national bank may make non-real estate loans *without regard to state law limitations* concerning. . . [t]he *terms of credit,* including the

schedule for repayment of principal and interest, amortization of loans, balance, payments due, minimum payments, or term to maturity of the loan. . . . "*Id.* § 7.4008(d)(2)(iv) (emphasis added).[8]

Section 7.4008 thus *expressly* precludes the relief sought by Plaintiff. By challenging conduct provided for in Defendants' Cardholder Agreement, Plaintiff directly attacks Defendants' terms of credit. To rule in her favor, the Court would have to determine that Illinois law may impose unique limitations or conditions upon Defendants' terms of credit and repayment schedules, and thus on the exercise of Defendants' lending powers. Such a result is precisely what the OCC's regulation prohibits. *Abel v. Keybank USA, Inc.,* 313 F. Supp. 2d 720, 728-29 (N.D. Ohio 2004).

Under the NBA, the terms of credit set by national banks are not subject to challenge under state law -- whether as "unconscionable," "unfair," or otherwise. *See, e.g., Smiley v. Citibank,* 11 Cal. 4th 138, 157-58 (1995) *aff'd* 517 U.S. 735 (1996); *Marquette Nat 'I Bank of Minneapolis v. First of Omaha Serv. Corp.,* 439 U.S. 299, 312 (1978). Indeed, allowing individual states to regulate lending by a national bank would be contrary to the purpose and intent of the NBA, which was to create national banks that could operate nationwide subject to a *uniform* set of *federal* regulations. *See Easton,* 188 U.S. at 229.

The essence of a national bank's lending power is the authority to set terms of credit. Congress specifically intended to remove from the states any authority to regulate, limit, condition, or interfere with the exercise of the lending powers it granted to national banks under the NBA. *Davis v. Elmira Sav. Bank,* 161 U.S. 275, 283 (1896) ("an attempt by a state to define [national banks'] duties or control . . . of their affairs is absolutely void" where it "frustrates the purpose of the national legislation"); *Bank of Am. v. City and County of San Francisco,* 309 F.3d *551,* 561 (9th Cir. 2002) (the NBA "was enacted to protect national banks against intrusive

---

8       As noted above, this same regulation expressly preempts state law limitations concerning rates of interest on loans, in accordance with Section 85 of the NBA. 12 C.F.R. § 7.4008(d)(2)(x).

regulations by the States"). Because setting terms of credit is a fundamental power of national banks, any state law claims of unconscionability with respect to a national bank's terms of credit are preempted, as expressly provided in Section 7.4008. As the California Supreme Court found in *Smiley v. Citibank* (as affirmed by the United States Supreme Court)*,* any legal interpretation must be rejected if such interpretation,

> might effectively limit the variety of credit terms permitted on an interstate loan by a national bank, because any such term beyond [the definition's] scope would be subject to the varying laws of the several states -- a result that might "throw into confusion the complex system of modem interstate banking" *(Marquette Nat Bank v. First of Omaha Corp* 439 U.S. at p. 312. . . , and thereby undermine the conditions for uniformity and efficiency that would otherwise obtain.
>
> To limit the variety of credit terms would obviously have an adverse effect on the national bank itself, whose freedom to lend on conditions it deems reasonable would be restricted.

11 Cal. 4th at 158.

Plaintiff's claims herein are consequently preempted as at attempt to restrict and control a national bank's terms of credit.

### 3. Plaintiff's Claims Are Expressly Preempted to the Extent They Seek To Impose a New Disclosure Regime Under State Law.

Section 7.4008 also expressly preempts Plaintiff's claims to the extent that they could be construed to allege that it was "unfair" or "deceptive" of Defendants' not to provide, in addition to the of the terms of credit in the Cardholder Agreement, some further "warning or advance notice" of the interest rates and finance charges to be charged upon a cardholder's default. (Compl., ¶¶ 31-32.). Under Section 7.4008:

> A national bank may make non-real estate loans **without regard to state law limitations** concerning. . . [d]isclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents.

*Id.* § 7.4008(d)(2)(viii) (emphasis added).

This regulation could not be more clear or categorical. Any requirement premised on state law for specific disclosures or content in billing statements or other credit-related documents *cannot be applied to national banks.* A requirement for a new notice or warning,

such as that which Plaintiff seeks to impose by her claims, is therefore preempted.  There simply is no basis for any Illinois law claims of insufficient "warning or advance notice" by Defendants in this case, especially since the Cardholder Agreement provides for the very rights Defendants allegedly exercised and gave her notice of those rights.  *Penner v. Chase Bank USA, NA.,* No. C06-5092 FDB, 2006 WL 2192435, at *4-5 (W.D. Wash. Aug. 1, 2006) (*citing U.S. Bank of Wash., NA., 865* P.2d 536 (Wash. Ct. App. 1994)) (holding a claim under Washington's Consumer Protection Act against a national bank for allegedly not disclosing credit card interest rate increases preempted by the NBA because the relationship between a national bank and its customers concerning whether the bank's loan collection practices are unfair or deceptive is specifically regulated by the OCC).

### B.　　The NBA Also *Impliedly* Preempts Plaintiffs' Claims Because They Conflict with Congressional Intent.

Even absent the *express* preemption of Plaintiff's claims by Section 85 and 12 C.F.R. §§ 7.4001 and 7.4008, the NBA itself, as a whole, *impliedly* preempts Plaintiffs' claims on the basis of "conflict" preemption.  The NBA confers on national banks the "power" to "loan[] money on personal security." 12 U.S.C. § 24 (Seventh).[9]  Congress did not condition its grant of the lending power to national banks on the banks' compliance with any state law lending requirements.  Quite the contrary, as the Supreme Court stated shortly after the NBA's enactment in 1864:

> [T]he States can exercise no control over [national banks], nor in any wise affect their operation, except in so far as Congress may see proper to permit. Any thing beyond this is "an abuse, because it is the usurpation of power which a single State cannot give."

*Farmers' & Mechs' Nat'l Bank v. Dearing,* 91 U.S. 29, 34 (1875); *see also Talbott v. Bd. of County Comm'rs,* 139 U.S. 438, 443 (1891) ("[The NBA's] various provisions . . . . emphasize. . . an intent to create a national banking system co-extensive with the territorial limits of the

---

9　　Indeed, lending is one of the "core powers" of national banks. See *Cmty. Bankers As 'n of lnd., Inc. v Clarke*, 766 F. Supp. 1519, 1528 (S.D. Ind. 1990) ("There are three functions considered by the courts to constitute the core of the banking business: accepting deposits, lending, and cashing checks.").

United States, and with *uniform* operation within those limits. . . .") (emphasis added).

Because "[n]ational banks are instrumentalities of the federal government, created for a public purpose, and as such necessarily subject to the paramount authority of the United States," the Court has found that "an attempt by a state to define the duties or control the conduct of [a national bank's] affairs is absolutely void, wherever such attempted exercise of authority expressly conflicts with the laws of the United States, and either frustrates the purpose of the national legislation or impairs the efficiency of these agencies of the federal government to discharge the duties for the performance of which they were created." *Davis,* 161 U.S. at 283. Accordingly, national banks are "independent, so far as powers conferred are concerned, of state legislation which, if permitted to be applicable, might impose limitations and restrictions as various and as numerous as the states." *Easton,* 188 U.S. at 229.

Under the Supreme Court's consistent approach to NBA preemption, as summarized in *Barnett Bank v. Nelson,* all state laws that impair the efficiency of national banks' exercise of their federally authorized banking powers -- *i.e.,* state laws that interfere with, encroach upon, or hamper the exercise of such powers-- are preempted. 517 U.S. at 33-34; *Hines,* 312 U.S. at 67. When Congress confers a power on a national bank by providing that it "may" engage in certain business, the states cannot prevent or to limit the exercise of that power. *Franklin Nat'l Bank* v. *New York,* 347 U.S. 373, 377-79 (1954).

In this case, Plaintiff seeks, among other relief, an injunction under state law that would, *inter alia:* (1) impose limits on Defendants' default interest rates for cardholder accounts, (2) restrict the manner in which Defendants may calculate interest in accordance with its cardholder agreements, and (3) require specific "advance" disclosures by Defendants of future interest rates to be applied beyond the Cardholder Agreement itself. Such an injunction necessarily would "interfere with" the exercise of Defendants' federally granted lending power and, thus, be in direct conflict with Congress' intent underlying the NBA. Indeed, the intrusion on Defendants' exercise of its lending powers that Plaintiff requests is considerably more obvious and extreme than the types of state law "limitations," "conditions" and "restrictions" that courts have found to

be preempted by the NBA in other cases, because it would preclude Defendants from charging and collecting interest and fees that are perfectly permissible under federal law. *See, e.g., Id.* at 378-79 (holding that the NBA preempted a New York State statute that forbade banks to use the words "saving" and "savings" in advertising because there was "no indication that Congress intended to make this phase of national banking subject to local restrictions"); *Bank One v. Guttau,* 190 F.3d 844, 849-50 (8th Cir. 1999) (holding that the NBA preempted an Iowa statute imposing requirements relating to the operation of ATMs because, although the burdens of the Iowa statute were not severe, they nonetheless touched on an activity that was specific to banking); *Nat'l City Bank of Ind. v. Turnbaugh,* 463 F.3d 325 (4th Cir. 2006) (holding that the NBA preempts state licensing and registration requirements from application to national bank operating subsidiaries) *cert. denied* 127 S. Ct. 2096 (2007); *Wells Fargo Bank,* 419 F.3d 949 (same); *Wachovia Bank v. Burke,* 414 F.3d 305 (same); *Wachovia Bank, N.A. v Watters,* 431 F.3d 556 (6th Cir. 2005) *aff'd* 127 S. Ct. 1559 (2007).

In effect, Plaintiff seeks to condition Defendants' exercise of its federal lending power in Illinois on the permissibility of Defendants' practices as determined under state law, *i.e.,* the Illinois common law and the Illinois Unfair Competition Act. But "Congress has not expressly conditioned the grant of 'power' upon a grant of state permission," and, thus "no such condition applies." *Barnett Bank,* 517 U.S. at 34. Plaintiff's attempt to use Illinois law to impose conditions, restrictions, and limitations on Defendants' right to engage in lending is, therefore, squarely preempted by the NBA. *See, e.g., Franklin,* 347 U.S. at 378 ("We find no indication that Congress intended to make this phase of national banking subject to local restrictions"); *Am. Bankers Ass 'n v. Lockyer,* 239 F. Supp. 2d 1000 (E.D. Cal. 2002) (holding that certain state law credit card disclosure requirements were preempted as applied to national banks). Accordingly, there is no ground upon which to grant Plaintiff's requested relief.

## II.  PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND

The pervasive infirmities of Plaintiff's claims discussed above are not mere linguistic

pleading problems that could possibly be cured through an amended complaint. Rather, Plaintiff's Complaint is fundamentally and fatally flawed by the very essence of her claims. Plaintiff attacks the exercise of a core power of national banks and seeks to use state law to impose limits that she defines on the interest rate national banks may charge and the manner in which interest is calculated. Federal law permits no such attack, as national banks are "instrumentalities of the federal government, created for a public purpose, and as such necessarily subject to the paramount authority of the United States." *Davis,* 161 U.S. at 283.

The irreducible fact is that, *as sought to be applied by Plaintiff* the Illinois common law and unfair competition claims are expressly and impliedly preempted by federal law. *Bank of Am.,* 309 F.3d at 561 ("State attempts to control the conduct of national banks are void if they conflict with federal law"). Because Plaintiff's claims, however worded, cannot escape federal preemption, any attempt to amend the Complaint to survive dismissal would necessarily fail. The opportunity to amend a complaint is futile if "'the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *In re Burlington Coat Factory Sec. Lit.*, 114 F.3d 1410, 1434 (*quoting Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)). This standard is the same standard of legal sufficiency that applies under Rule 12(b)(6). *Id.*

<u>CONCLUSION</u>

Plaintiff's claims are both expressly and impliedly preempted by federal law. Therefore, Defendants' Motion to Dismiss should be granted without leave to amend. At the very least, this case should be stayed pending the outcome of the appeals in *Evans* and *Augustine*, which are presently pending in the Ninth Circuit.

Dated:     January 30, 2008                    BANK OF AMERICA, N.A. and FIA CARD
                                               SERVICES, N.A.


Robert M. Dawson, Esq.
Brandon C. Fernald, Esq.
FULBRIGHT & JAWORSKI, L.L.P.              _____/s Brandon C. Fernald_____
555 South Flower Street, 41st Floor       *One of the attorneys for Defendants*
Los Angeles, California  90071
Telephone:  (213) 892-9200
Facsimile:  (213) 892-9494

William J. McKenna, Esq.
Katherine E. Licup, Esq.
FOLEY & LARDNER LLP
321 North Clark
Suite 2800
Chicago, IL 60610
Telephone:  (312) 832-4541
Facsimile:  (312) 832-4700