## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| LAURA M. SWANSON, on behalf of herself and all other Illinois residents similarly situated, | ) ) | |
| | ) | No. 08 C 184 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge St. Eve |
| | ) | |
| | ) | |
| BANK OF AMERICA, N.A., and FIA CARD SERVICES, N.A., | ) ) | Magistrate Judge Cox |
| | ) | |
| Defendants. | ) | |

### FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff, Laura M. Swanson ("Swanson"), on behalf of herself and all other similarly situated residents of the State of Illinois, alleges:

### Nature of the Case

1.      This is a class action on behalf of all consumers with billing addresses in the State of Illinois who have or had credit card accounts with Defendants Bank of America, N.A. (USA), f/k/a Bank of America, N.A., or FIA Card Services, N.A. (collectively "the Bank"), and whose interest rates on their outstanding balances were retroactively increased by the Bank.

### Jurisdiction and Venue

2.      Defendants removed this case from state court based on the diversity-of-citizenship and amount-in-controversy requirements for class actions under 28 U.S.C. § 1332(d).

3.      Venue is proper because Defendants transact business in this District, Bank of America maintains an office in Chicago, and substantial events giving rise to Plaintiff's claim occurred in this district.

**The Parties**

4.      Plaintiff, Laura M. Swanson, resides in the State of Illinois.  Swanson has a Bank of America credit card account.

5.      Defendants, Bank of America, N.A. (USA), f/k/a Bank of America, N.A., and FIA Card Services, N.A., f/k/a MBNA America Bank, N.A., are corporate affiliates owned by Bank of America Corporation.  FIA was recently acquired by Bank of America Corporation in connection with a merger.  Defendants administer and have administered Bank of America credit card accounts.  On information and belief, both Defendants have administered Plaintiff's credit card account.  The Defendants are collectively referred to here as "the Bank".

**Fact Allegations**

6.      This case arises out of the Bank's practice of reviewing its credit card accounts at the end of each account's billing cycle, targeting selected cardholders for interest rate increases as a result of that review, and then retroactively imposing the selective rate increases on the cardholders' outstanding balances for the billing cycle that has already passed.

7.      The Bank reviews its cardholders' accounts once a month (at the end of each billing cycle) to determine whether to increase the interest rate for each account and, if so, by how much.  If the Bank decides to impose a rate increase at the end of the billing cycle, and if there has been a late payment or the account balance exceeds the account's limit during the billing cycle, the Bank automatically backdates the effective date of the increase to the start of that cycle (which has already ended).  Then the Bank recalculates the interest charges for that billing cycle at the new, higher rate, adding the additional "interest" charges resulting from this recalculation to the cardholder's bill.  As a result of this practice, the Bank imposes a penalty charge on the cardholder in the form of additional "interest" charges.

8.      To illustrate with a hypothetical cardholder who is carrying a $10,000 balance at

an interest rate of 11.99%, and for whom the Bank decides to increase the interest rate to 26.99%,

the Bank tells the cardholder in their monthly statement at the start of the billing cycle that their

interest rate is 11.99%.  At the 11.99% rate, about $100 in interest will accrue on the

cardholder's balance during the billing cycle.  The Bank does not decide to increase the

cardholder's rate to 26.99% until it conducts its monthly review at the end of the billing cycle,

but the Bank applies the increase as if it occurred at the start of the billing cycle.  This results in

an after-the-fact assessment of about $125 in additional "interest" on the cardholder's balance for

that billing cycle, or about $225 in total "interest" charges instead of $100.

9.      The Bank decides to impose these selective, retroactive rate increases based on a

methodology that it does not disclose to cardholders.  Moreover, the Bank imposes the increases

without advance notice.  As a result, cardholders who are subjected to this practice, who were led

to believe that they were being charged at the rate shown on their billing statement before the

billing cycle began, are subjected to a higher interest rate for that cycle than what the Bank

represented.

10.      The Bank's practice of retroactively increasing interest rates is immensely

profitable to the Bank, but is unfair to cardholders because:  (a) the rate increases are unilaterally

imposed without advance notice; (b) the rate increases are based on the Bank's secret

methodology so that consumer has no way of knowing in advance what rate he or she will be

charged for a billing cycle; (c) the rate increases are imposed retroactively for billing cycles that

have already ended; (d) the consumer is denied the opportunity to avoid the additional charges,

*e.g.*, by paying off their balance; (e) the Bank imposes the additional "interest" charges resulting

from this practice in addition to other fees, such as late charges and over-the-limit fees; and (f)

this practice violates the federal Truth-in-Lending Act.  The Bank's scheme cheats a large

number of consumers out of relatively small sums of money.

### Plaintiff's Particular Facts

11.     In the February 2007 billing statement that the Bank sent Swanson for her Bank of

America credit card account, the Bank told Swanson that the rate at which interest was accruing

on her balance was 11.99% for purchases and 11.99% for balance transfers and checks.  The

Bank made no mention of any impending increase in the interest rate for the next billing cycle,

which began on February 10, 2007 and ended on March 12, 2007.

12.     On or about March 12, 2007, *i.e.*, at the end of the February 10th-to-March 12th

billing cycle, the Bank conducted a monthly review of Swanson's account and decided to

increase her interest rate for purchases, and for balance transfers and checks, to 26.99%.

13.     The Bank did not impose the increase only on a going-forward basis.  To the

contrary, the Bank also made the increase retroactive to February 10, 2007, *i.e.*, the beginning of

the billing cycle that had just ended.

14.     The Bank did not give Swanson advance notice that it was going to impose the

increase or the amount of the increase.

15.     As a result of the retroactive rate increase, the Bank added more than $90.00

worth of "interest" charges to Swanson's account for the February 10th-to-March 12th billing

cycle, in addition to the interest charge that accrued on her account for that cycle at the 11.99%

rate.

16.     The Bank also imposed a $39 late fee on Swanson for the February 10th-to-March

12th billing cycle.

### Class Allegations

17.    Plaintiff brings this action on behalf of herself and the following class of similarly situated people ("the class"):

> All natural persons with billing addresses in the State of Illinois who have or had credit card accounts with the Bank and whose interest rates were retroactively increased within the applicable statute of limitations.

18.    The class is so numerous that joinder is impracticable. The class contains thousands of persons.

19.    This case gives rise to one or more common questions of law or fact that predominate over any individual questions that might arise. The common questions that predominate include, but are not limited to:

a)    whether the Bank retroactively increased the interest rates for Plaintiff and the class members;

b)    whether the Bank imposed the rate increases without advance notice to Plaintiff and the class members;

c)    whether the manner in which the Bank imposed the retroactive interest rate increases on Plaintiff and the class members denied them the opportunity to avoid the increases;

d)    whether the Bank's retroactive interest rate increases and the resulting additional "interest" charges imposed on Plaintiff and the class members constitute an illegal penalty;

e)      whether the Bank's failure to give notice of the retroactive interest rate increases violates the Truth-in-Lending Act, 15 U.S.C. § 1601, *et seq.*;

f)      whether the Bank's retroactive interest rate increases and its imposition of the resultant additional "interest" charges are unfair or deceptive in violation of the Illinois Consumer Fraud & Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.*; and

g)      whether the Bank is liable for punitive damages for its actions.

20.     Plaintiff and her counsel will adequately protect and represent the class because she has the same claims, based on the same facts, as those of the class.  Moreover, Plaintiff's counsel are experienced in class action litigation.

21.     For many reasons, a class action is an appropriate method for resolving this case. First, the claims of Plaintiff and the class can and will be established by common proof, and thus a class action provides an efficient mechanism for resolving hundreds of claims in one action. Second, Plaintiff's and the class members' losses are small compared to the cost and difficulty of prosecuting their individual claims and thus, as a practical matter, the members of the class will not obtain relief without a class action.  Third, even if Plaintiff and the class members could afford to prosecute their claims individually, and even if they each were able to find a lawyer who would do so, a class action avoids the burden that the resulting multitude of lawsuits would impose on the court system.  Fourth, a class action promotes justice by avoiding the potential for contradictory or inconsistent rulings on the common issues that this case presents.

**COUNT I**
**Failure to Give Notice of Retroactive Rate Increase**
**Violation of the Truth-in-Lending Act, 15 U.S.C. § 1601, *et seq.***

22.    Plaintiff adopts and realleges the allegations contained in paragraphs 1-21, above.

23.    Congress enacted the Truth-in-Lending Act ("TILA") to enhance economic

stabilization and promote competition by ensuring that consumers are provided "meaningful

disclosure of credit terms" and protected "against inaccurate and unfair credit billing and credit

card practices."  *See* 15 U.S.C. § 1601(a).

24.    Congress empowered and directed the Federal Reserve Board to promulgate

regulations that implement the TILA.  *See* 15 U.S.C. § 1604(a).

25.    The Board promulgated regulations that, *inter alia*, required the Bank to give

notice of any interest rate increase before the increase took effect.  *See* 12 C.F.R. § 226.9(c)(1)

("notice shall be given, however, before the effective date of the change."); *see also*, 12 C.F.R.

§ 226.6 (the terms for which a change triggers the notice requirement under § 226.9(c)(1) include

finance charges).  The Bank violated this requirement when it retroactively increased the interest

rates on Plaintiff's and the class members' credit cards because the Bank did not give notice of

the changes before they went into effect.

26.    The Bank's violation of TILA renders it liable to Plaintiff and the class for actual

damages, statutory damages, costs and attorneys' fees.  *See* 15 U.S.C. § 1640(a).

**COUNT II**
**Unjust Enrichment**
**Collection of Illegal Penalties**

27.    Plaintiff adopts and realleges the allegations contained in paragraphs 1-21, above.

28.    The Bank's retroactive increase of Plaintiff's and the class members' interest

rates, and the additional finance charges the Bank imposed as a result, are void and

unenforceable because they constitute illegal penalties.

29.    The Bank's retroactive increase of Plaintiff's and the class members' interest rates and the additional finance charges the Bank imposed as a result are illegal penalties because:

a)    They were not intended to compensate the Bank for damages as a result of the cardholder's failure to make a timely payment or as a result of the account being over the limit;

b)    They bear no relationship to any damages the Bank allegedly incurred as a result of the cardholder's failure to timely make their monthly payment or as a result of the account being over the limit – particularly because the conduct allegedly justifying the increase occurs *after* the effective date of the increase;

c)    The Bank imposes the "interest" charges in addition to other charges it imposes, *e.g.* late fees and over-the-limit fees, for the conduct allegedly justifying the retroactive rate increase;

d)    The additional "interest" charges resulting from the retroactive rate increase are not a pre-determined sum – instead, they depend on the cardholder's outstanding balance, whether the Bank decides to impose the rate increase, and the amount of the increase the Bank decides to impose; and

e)    The retroactive rate increase and the additional "interest" charges that the Bank imposes as a result of the increase are discretionary.  The Bank does not impose a retroactive rate increase on every occasion that a cardholder is late on their monthly payment or goes over their limit, and the Bank does not increase every cardholder's rate by the same amount.  The Bank only imposes retroactive rate increases in accordance with its undisclosed methodology.

30.     Because the Bank's practice of imposing retroactive rate increases and the

resulting charges constitute illegal penalties, the Bank's collection of the charges was wrongful.

Plaintiff and the class members have a superior claim to the charges collected by the Bank as a

result of its retroactive rate increases.

31.     Allowing the Bank to keep the charges would be contrary to principles of justice,

equity and good conscience.  Accordingly, Plaintiff and the class members are entitled to recover

the charges.

32.     The Bank's retroactive rate increases, and the charges resulting from them, should

be declared illegal.  Likewise, the Bank should be enjoined from imposing retroactive rate

increases in the future because the practice causes irreparable harm insofar as the inflated account

balances stemming from this practice reduce Plaintiff's and the class members' available credit,

and because there is no adequate remedy at law for the harm resulting from the increases.

**COUNT III**
**Violation of the Illinois Consumer Fraud & Deceptive**
**Business Practices Act, 815 ILCS 505/1, *et seq.***

33.     Plaintiff adopts and realleges the statements in paragraphs 1-21, 25, 28-31, above.

34.     The Illinois Consumer Fraud & Deceptive Business Practices Act, 815 ILCS

505/1, *et seq.*, prohibits the Bank from engaging in *any* deceptive or unfair practice in the course

of trade or commerce.  *See* 815 ILCS 505/2.  The Act must be liberally construed to effect its

purposes.  *See* 815 ILCS 505/11a.

35.     The Bank's imposition of retroactive rate increases on Plaintiff and the class

members, and its collection of the additional charges as a result of this practice, is unfair because

it violates public policy.  It violates public policy because the retroactive rate increases and the

resulting charges are illegal penalties under the law, among other reasons.

9

36.     The unfairness of the Bank's imposition of retroactive rate increases on Plaintiff

and the class members is compounded by the fact that the cardholder has no advance notice of

the additional charges imposed by the retroactive rate increase.  The cardholder cannot know in

advance whether they will incur a rate increase because that is the nature of a retroactive rate

increase – it imposes additional "interest" on money loaned for a time period that has already

passed.  Moreover, the cardholder has no notice of whether the Bank will impose the retroactive

rate increase, or how much it will be, because the Bank does not always impose a rate increase –

the Bank only does so when the undisclosed methodology that it follows tells it to do so.

37.     The Bank's practice of imposing retroactive rate increases also is deceptive.  Each

month the Bank sent Plaintiff and the class members a billing statement that reflected the

applicable interest rate for the billing cycle just ended and the upcoming cycle, but the

representation was false for Plaintiff and the class members because the actual rate of interest for

the upcoming cycle turned out to be higher due to the Bank's retroactive increase of the interest

rate on their accounts.  The Bank intended that Plaintiff and the class members would rely on its

acts and omissions.

38.     As a result of the Bank's actions, Plaintiff and the class members incurred

additional charges they should not have had to pay.  The Bank's actions render it liable to

Plaintiff and the class members for actual damages, punitive damages, equitable relief (including

an injunction to stop the practice at issue), costs, attorneys' fees and any other relief deemed just.

**Prayer for Relief**

Swanson prays that the Court:

a.      Certify the class as to Counts I-III, appoint Swanson as the representative of the

class, and appoint her attorneys as counsel for the class.

b.      Enter judgment in favor of Swanson and the class, and against the Bank, for

restitution, actual damages, statutory damages, punitive damages, interest, declaratory relief,

injunctive relief, attorneys' fees, costs and all other relief deemed just.


                                              ___s/Michael S. Hilicki___
                                              One of Plaintiff's Attorneys


Dated:  February 25, 2008

Lawrence Walner
Michael S. Hilicki
Lawrence Walner & Associates, Ltd.
150 North Wacker Drive
Suite 2150
Chicago, Illinois 60606
Tel:  (312) 201-1616
Fax:  (312) 201-1538

Barry L. Kramer (pro hac vice)
Law Offices of Barry L. Kramer
11111 Santa Monica Blvd.
Suite 1860
Los Angeles, California 90025-3352
Tel: (310) 235-9980
Fax: (310) 235-9982

## CERTIFICATE OF SERVICE

I, Michael S. Hilicki, certify that on February 25, 2008, I caused a copy of the attached **First Amended Class Action Complaint** to be served on the persons on the service list and at the email addresses below via the Court's ECF filing system.


        s/Michael S. Hilicki   .
        Michael S. Hilicki



## Service List

Robert M. Dawson (c/o Brandon Fernald)
Brandon C. Fernald
Fulbright & Jaworski L.L.P.
555 South Flower Street
Forty-First Floor
Los Angeles, CA 90071
Tel:    (213) 892-9215
Fax:    (213) 892-9494
bfernald@fulbright.com

William J. McKenna
Katherine E. Licup
Foley & Lardner LLP
321 North Clark
Suite 2800
Chicago, IL 60610
Tel:    (312) 832-4500
Fax:    (312) 832-4700
wmckenna@foley.com
klicup@foley.com