IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| LAURA M. SWANSON, an individual, on behalf of herself and all others similarly situated, | ) ) ) | |
| | ) | Case No. 1:08-cv-00184 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Amy St. Eve |
| | ) | |
| BANK OF AMERICA, N.A. and FIA CARD SERVICES, N.A. | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**BANK OF AMERICA, N.A.'S AND FIA CARD SERVICES, N.A.'S MEMORANDUM IN
SUPPORT OF THE MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................ 1

SUMMARY OF PLAINTIFF'S PURPORTED CAUSES OF ACTION ..................................... 3

ARGUMENT ............................................................................................................................... 3

   I.    PLAINTIFF CANNOT SUCCESSFULLY PLEAD A VIOLATION OF TILA............... 4

      A.   The Plaintiff Was Given Notice That The APR Applicable To Her Account
          Could Change Based Upon The Occurrence Of Certain Default Events. ...................... 4

      B.   The Court May Take Judicial Notice Of The Applicable Cardholder Agreements
          And Account Statements.................................................................................................. 6

      C.   The Disclosures Contained In The CCA And Amendments Thereto More Than
          Satisfy TILA. ................................................................................................................... 7

   II.   FEDERAL LAW PREEMPTS PLAINTIFF'S TWO STATE LAW CLAIMS IN
       THEIR ENTIRETY. ............................................................................................................ 8

      A.   The NBA and OCC Regulations Expressly Preempt Plaintiff's Claims. ...................... 9

         1.   Plaintiff's Claims Are Expressly Preempted Because They Attack the Interest
            Rates Charged By National Banks.................................................................................. 9

         2.   Plaintiff's Claims Are Expressly Preempted For The Additional Reason That
            They Attack Terms of Credit. ......................................................................................... 11

         3.   Plaintiff's Claims Are Also Expressly Preempted to the Extent They Seek To
            Impose a New Disclosure Regime Under State Law...................................................... 13

      B.   The NBA Also *Impliedly* Preempts Plaintiffs' Claims Because They Conflict
          with Congressional Intent. ............................................................................................. 13

CONCLUSION.......................................................................................................................... 15

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

Abel v. Keybank USA, Inc.,
    313 F. Supp. 2d 720 (N.D. Ohio 2004)............................................................................12

ABN Amro v. Capital Int'l Ltd.,
    Case No. 04 C 3123, 2007 U.S. Dist. LEXIS 19601
    (N.D. Ill March 16 2007) ..........................................................................................6

Augustine v. FIA Card Services, N.A.,
    Case No. 2:06-CV-2013, 2007 U.S. Dist. LEXIS 66382
    (E.D. Cal. April 20, 2007).........................................................................................1

Bank of America v. City and County of San Francisco,
    309 F.3d 551 (9th Cir. 2002) ..................................................................................12

Bank One v. Guttau,
    190 F.3d 844 (8th Cir. 1999) ..................................................................................14

Barnett Bank of Marion County, N.A. v. Nelson,
    517 U.S. 25 (1996).....................................................................................................8

Barrer v. Chase Bank, USA, N.A., Case No. 06-415, 2007 U.S. Dist. LEXIS 26571
    (D. Ore Jan. 23, 2007) ...........................................................................................2, 6

Beneficial National Bank v. Anderson,
    539 U.S. 1 (2003)......................................................................................................10

Budnik v. Bank of America Mortgage,
    Case No. 03 C 6116, 2003 U.S. Dist. LEXIS 22542 (N.D. Ill. Dec. 16, 2003)................10

In re Burlington Coat Factory Security Lit.,
    114 F.3d 1410 (1st Cir. 1996)..................................................................................15

Cal Federal Savings & Loan Association v. Guerra,
    479 U.S. 272 (1987)...................................................................................................8

Cipollone v. Liggett Group, Inc.,
    505 U.S. 504 (1992)...................................................................................................8

Conference of State Bank Supervisors v. Conover,
    710 F.2d 878 (D.C. Cir 1983) ...................................................................................9

Conley v. Gibson,
    *355* U.S. 41 (1957) ...................................................................................3

Cortec v. Sum Holding L.P., et al
    949 F.2d 42 (2d Cir. 1991) ......................................................................6

Davis v. Elmira Savings Bank,
    161 U.S. 275 (1896)...........................................................................12, 14

Easton v. Iowa,
    188 U.S. 220 (1903)..................................................................................14

Evans v. Chase Manhattan Bank USA, N.A.,
    Case No. C-05-3968, 2006 U.S. Dist. LEXIS 5259
    (N.D. Cal. Jan. 27, 2006) ...........................................................1, 2, 8, 10

Evans v. Chase Manhattan Bank USA, N.A.,
    Case No. 06-15212, 2008 U.S. App. LEXIS 1481
    (9th Cir. February 22, 2008) ......................................................1, 2, 8, 10

Federal Savings & Loan Ass'n v. de la Cuesta,
    458 U.S. 141 (1982)...............................................................................8, 9

Forness v. Cross Country Bank, Inc.,
    Case No. 05-CV-417, 2006 U.S. Dist. LEXIS 3423
    (S.D. Ill. Jan. 13, 2006)...........................................................................10

Franklin National Bank v. New York,
    347 U.S. 373 (1954)..................................................................................14

Free v. Bland,
    369 U.S. 663 (1962)....................................................................................8

Glassman v. Computervision Corp.,
    90 F.3d 617 (1st Cir. 1996) ......................................................................15

Hines v. Davidowitz,
    312 U.S. 52 (1941)................................................................................8, 14

Marquette National I Bank of Minneapolis v. First of Omaha Service Corp.,
    439 U.S. 299 (1978)...........................................................................11, 12

M'Cullough v. Maryland
    17 U.S. (4 Wheat.) 316, 427 (1819)..........................................................8

McCabe v. Crawford
210 F.R.D. 631 (N.D. Ill 2002)......................................................................6

McCoy v. Chase Manhattan Bank USA,
Case No. SACV 06-107 2006 U.S. Dist. LEXIS 97257
(C.D. Cal. Aug. 10, 2006).................................................................1, 2, 6, 8

National City Bank of Ind. v. Turnbaugh,
463 F.3d 325 (4th Cir. 2006) *cert. denied* 127 S. Ct. 2096 (2007)....................................15

Penner v. Chase Bank USA, NA.,
Case No. C06-5092, 2006 U.S. Dist. LEXIS 53179 WL 2192435
(W.D. Wash. Aug. 1, 2006) ................................................................1, 8, 13

Prince-Servance v. Bank United,
2007 U.S. Dist. LEXIS 81774,
Case No. 07 C 1259 (N.D. Ill Nov. 1, 2007) ....................................................3

Rice v. Santa Fe Elevator Corp.,
331 U.S. 218 (1947)......................................................................................8

Smiley v. Citibank (S.D.), N.A.,
517 U.S. 735 (1996)........................................................................10, 11, 12

Tierney v. Vahle
304 F.3d 734 (7th Cir. 2002) ........................................................................6

Wachovia Bank, N.A. v. Burke,
414 F.3d 305 (2d Cir. 2005) *cert denied* 127 S. Ct. 2093 (2007) ..................................9, 15

Wachovia Bank, N.A. v Watters,
431 F.3d 556 (6th Cir. 2005) *aff'd* 127 S. Ct. 1559 (2007).................................15

Wells Fargo Bank v. Boutris,
419 F.3d 949 (9th Cir. 2005) ....................................................................9, 15

Williams v. Wash. Mut. Bank
Case No. 07-2418, 2008 U.S. Dist. LEXIS 5325
(E.D. Cal. Jan. 11, 2008)..............................................................................2, 6, 7

## STATE CASES

U.S. Bank of Wash., NA.,
865 P.2d 536 (Wash. Ct. App. 1994)............................................................13

## FEDERAL STATUTES AND REGULATIONS

12 C.F.R. § 226 ............................................................................................... 3, 7, 10

12 C.F.R. § 7.4000 ................................................................................................... 9

12 C.F.R. § 7.4001 ................................................................................ 9, 10, 11, 13

12 C.F.R. § 7.4008 ................................................................................ 9, 11, 12, 13

12 U.S.C. § 21 ......................................................................................................... 21

12 U.S.C. § 24 ......................................................................................................... 13

12 U.S.C. § 43 ........................................................................................................... 9

12 U.S.C. § 85 ..................................................................................... 9, 10, 11, 13

12 U.S.C. § 86 ......................................................................................................... 10

12 U.S.C. § 93 ........................................................................................................... 9

15 U.S.C. § 1601 ....................................................................................................... 2

## STATE STATUTES

Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 ....................... 2

## OTHER AUTHORITIES

Interpretive Rulings, 61 Fed. Reg. 4849, 4858 (Feb. 9, 1996) & Investment Securities ................ 9

Interpretive Rulings, 69 Fed. Reg. 1904, 1905-07 (Jan. 13, 2004) & Investment
Securities .............................................................................................................. 9

Leasing, 66 Fed. Reg. 34,784, 34,786-87 (July 2, 2001) .......................................... 9

Real Estate Lending and Appraisals, 69 Fed. Reg. 1904, 1905-07 (Jan. 13, 2004) ........................ 9

## INTRODUCTION AND SUMMARY OF ARGUMENT

In this putative class action, attorneys for Plaintiff Laura M. Swanson ("Plaintiff") challenge the same practices that they have *unsuccessfully* challenged in at least four previous lawsuits against national banks, including Defendants Bank of America N.A. ("BofA") and FIA Card Services, N.A. ("FIA") (collectively, "Defendants"). Specifically, in at least four prior cases, Plaintiff's counsel has attacked the same "default interest" practices alleged here, under analogous federal and state law theories. In every one of these cases, the respective courts have dismissed the lawsuits, with prejudice.[1] Further, the decision in *Evans v. Chase Manhattan* was recently affirmed by the Ninth Circuit, although the opinion was designated as unpublished. Case No. 06-15212, 2008 U.S. App. LEXIS 4581 (9th Cir. February 22, 2008).

Plaintiff's initial Complaint (the "Complaint") invoked Illinois law as a purported basis for regulating and limiting Defendants' alleged imposition of "additional 'interest' charges" resulting from "retroactive" interest rate increases on Defendants' credit cardholders, "without advance notice." (Compl. ¶ 10.) Plaintiff alleges that the imposition of these interest charges, although *authorized and permitted by the credit card agreements* between FIA[2] and its respective cardholders (the "Cardholder Agreement"), is an "illegal penalty" and, as such, constitutes an unfair trade practice in violation of applicable Illinois law. (Compl. ¶¶ 23, 24, 30, 31.) However, under the National Bank Act ("NBA"), 12 U.S.C. § 21 *et seq.,* as well as the

---

[1] *See, e.g., Augustine v. FIA Card Services, N.A.*, Case No. 2:06-CV-2013, 2007 U.S. Dist. LEXIS 66382 (E.D. Cal. April 20, 2007) (appeal to Ninth Circuit pending); *McCoy v. Chase Manhattan Bank USA*, Case No. SACV 06-107, 2006 U.S. Dist. LEXIS 97257 (C.D. Cal. Aug. 10, 2006); *Penner v. Chase Bank USA, NA.*, Case No. C06-5092, 2006 U.S. Dist. LEXIS 53197 (W.D. Wash. Aug. 1, 2006); *Evans v. Chase Manhattan Bank USA, N.A.*, Case No. C-05-3968, 2006 U.S. Dist. LEXIS 5259 (N.D. Cal. Jan. 27, 2006) *aff'd* 2008 U.S. App. LEXIS 4581 (9th Cir. February 22, 2008).

[2] Bank of America, N.A. is an improper defendant in this case as it does not administer *any* of the credit card accounts purportedly at issue in this case. For that reason, BofA has requested that Plaintiff voluntary dismiss it from this lawsuit—Plaintiff's counsel acceded to this request in *Augustine v. FIA Card Services* and voluntarily dismissed BofA from that case. While BofA is not a proper defendant regardless of the federal preemption issue, for purposes of this motion it seeks the same relief as FIA—a dismissal with prejudice on the grounds of express federal preemption.

regulations of the Office of the Comptroller of the Currency ("OCC"), which have the same preemptive effect as a federal statute, state law cannot apply to the setting of interest rates and the calculation of finance charges by national banks.

In an apparent effort to save their latest lawsuit from dismissal on preemption grounds, Plaintiff's counsel filed a First Amended Complaint [20] ("FAC") to add a Federal claim for violation of the Truth In Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq.* Following Defendants' filing of their Motion to Dismiss the FAC [22] which disclosed that Plaintiff had in fact received specific notice *and* an opportunity to opt-out one month in advance of the interest rate increase about which she was complaining, Plaintiff abruptly sought leave to amend her complaint a second time in order to substitute the credit card account at issue (the "4156 Account") with another credit card (the "0832 Account") that she apparently hoped would provide a better factual basis for her TILA claim.

The 0832 Account now at issue in the Second Amended Complaint ("SAC"), however, provides no more support for Plaintiff's TILA claim than the 4156 Account at issue in the FAC. Indeed, the same TILA claim has already been unsuccessfully asserted in several previous lawsuits, including most recently the U.S. District Court for the Eastern District of California in *Williams v. Wash. Mut. Bank*, Case No. 07-2418, 2008 U.S. Dist. LEXIS 5325 (E.D. Cal. Jan. 11, 2008). *See also Evans v. Chase Manhattan Bank, supra; McCoy v. Chase Manhattan Bank, supra; Barrer v. Chase Bank, USA, N.A.*, Case No. 06-415, 2007 U.S. Dist. LEXIS 26571 (D. Ore. Jan. 23, 2007).

Inasmuch as the Second Amended Complaint ("SAC") raises no claim that, construed most favorably to Plaintiff, could possibly provide a basis for the relief sought, Defendants respectfully request that the Court grant their Motion to Dismiss without leave to amend. Plaintiff's counsel should not be allowed to continue to forum shop loss after loss. Plaintiff's counsel's actions needlessly waste judicial resources and are in violation of Rule 11 of the Federal Rules of Civil Procedure. Any future amendments should be conditioned upon payment of Defendants' attorneys' fees if they too are unsuccessful in stating a claim.

**SUMMARY OF PLAINTIFF'S PURPORTED CAUSES OF ACTION**

The SAC asserts three purported causes of action against Defendants for, (i) violations of TILA (SAC, ¶¶ 22-26); (ii) Unjust Enrichment under the common law of Illinois (SAC, ¶¶ 27-32); and (iii) violations of Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* (SAC ¶¶, 33-38), on behalf of a putative class of Illinois consumers who "have or have had credit accounts with [Defendants]. . . ."  (SAC, ¶ 17.)

In her purported TILA cause of action, Plaintiff alleges that Defendants violated the notice requirements set forth in Regulation Z, 12 C.F.R. § 226, *et seq.*, "when it retroactively increased the interest rates on Plaintiff's and the class members' credit cards because the Bank did not give notice of the changes before they went into effect."  (SAC, ¶ 25.)

In her purported Unjust Enrichment cause of action, Plaintiff alleges that "[t]he Bank's retroactive increase of Plaintiff's and the class members' interest rates and the additional finance charges the Bank impose as a result are illegal penalties . . . ."  (SAC, ¶ 28.)  Plaintiff further requests that "[t]he Bank's retroactive rate increases, and charges resulting from them, should be declared illegal." (SAC ¶ 32.)

Plaintiff's Unfair Competition claim under 815 ILCS 505/1, *et seq.* appears to be based on two grounds.  First, Plaintiff claims that Defendants' imposition of alleged "retroactive rate increases" is unfair because it constitutes an "illegal penalty" under Plaintiff's first cause of action for unjust enrichment.  (SAC, ¶ 35.)  Second, Plaintiff claims that the rate increases are unfair and deceptive because they are allegedly inadequately disclosed.  (SAC, ¶ 37.)

**ARGUMENT**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted where the plaintiff "can prove no set of facts in support of [her] claim which would entitle [her] to relief," *Conley v. Gibson, 355* U.S. 41, 45-46 (1957).  A motion to dismiss also should be granted where, as here, a complaint based on state law is preempted by federal law.  *See, e.g., Prince-Servance v. BankUnited,* 2007 U.S. Dist. LEXIS 81774, Case No. 07 C 1259 (N.D. Ill. Nov. 1, 2007) (granting Rule 12(b)(6) motion to dismiss state law claims based

on preemption by the regulations of the Office of Thrift Supervision ("OTS")).

## I.    PLAINTIFF CANNOT SUCCESSFULLY PLEAD A VIOLATION OF TILA.

### A.    The Plaintiff Was Given Notice That The APR Applicable To Her Account Could Change Based Upon The Occurrence Of Certain Default Events.

The facts of this case unequivocally establish that Plaintiff received notice on at least two occasions that the interest rate applicable to the 0832 Account was subject to change as a result of a default, including going over-limit. Accordingly, Plaintiff cannot plead facts that would establish a violation of TILA and therefore her TILA claim should be dismissed with prejudice.

Plaintiff opened the 0832 Account in May 2006. When Plaintiff received her initial credit card for this account, she also received the applicable Credit Card Agreement ("CCA") as well as an "Additional Disclosure." (Declaration of David O'Connell ["O'Connell Decl."], Ex. A, B, FIA0000233-234, FIA0000231-232.)

Section 3.3.1.c of the Additional Disclosure accompanying the CCA, entitled "Penalty APRs", provided:

> If at any time during any rolling consecutive 12 billing cycle period you either fail to make two required monthly Minimum Payments by your payment due date *or you exceed your credit limit twice*, we may elect to increase your Purchase, Cash Advance and/or Balance Transfer APRs to the Penalty APRs. We may elect to set your Penalty APRs on Purchases, Cash Advances and/or Balance Transfers to different levels. Your Penalty APRs will vary and are determined by adding a margin of up to 23.99% to the Index, currently up to 31.49% (0.08628% corresponding Daily Periodic Rate).

(Id., Ex. B, FIA0000231) (emphasis added).

In June 2006, Bank of America, N.A. merged with MBNA America Bank, N.A. As a result, the banks' respective credit card operations were consolidated and placed under the auspices of FIA Card Services, N.A. (O'Connell Decl., ¶¶ 6-7.) Following the merger, Plaintiff received a new credit card agreement and supplemental change in terms with her August 18, 2006 billing statement. These documents essentially reiterated the default pricing provisions set forth in the original CCA referenced above.

On the first page of the August 2006 billing statement the following notice was prominently displayed:

> **IMPORTANT NOTICE.** We are changing the terms of the Cardholder Agreement that governs your credit card Account with us. These changes are described in the *Important Notice of Change in Terms* enclosed with this statement.

(O'Connell Decl., Ex. C, FIA0000161) (emphasis in original).

The Supplement to the Notice of Change in Terms also enclosed with the August 2006 statement provided as follows under the heading "**Section 5.   Default Pricing**" (emphasis in original):

> For each balance category, we may increase the APR on all new and outstanding balances up to the Default Rate, *without giving you additional notice*, when, during any twelve consecutive rolling billing cycles: (1) we do not receive to Total Minimum Payments to either respective Payment Due Dates; or (2) *your total outstanding balance exceeds your credit limit on your Closing Dates in two billing cycles. Each such increase will be effective as of the first date of the billing cycle in which the Default Rate is applied.*

(O'Connell Decl., Ex. E, FIA0000164) (emphasis added)

Plaintiff alleges that the rate on her credit card account went from an APR of 18.24% in her November 2007 statement to 32.24% in her December 2007 statement. (SAC, ¶¶ 11-15.) She further alleges that the increase was retroactive, in that it began, allegedly without notice, at the beginning of the November-December 2007 billing cycle. (Id., ¶¶ 13-15.) While the rate increase itself is borne out by a review of the November and December 2007 account statements (O'Connell Decl., Ex. F, FIA0000199-204), Plaintiff's allegation that the increase was without notice, is not.

As set forth above, the CCA and amendments thereto explicitly advised Plaintiff of the following two facts: (1) If Plaintiff exceeded her credit limit twice within 12 consecutive billing cycles the bank had the right to implement a default rate; and (2) the default rate, if implemented, would be effective as of the first date of the billing cycle in which it applied.

Here, as Plaintiff's account statements plainly reveal, Plaintiff exceeded the $5,000 credit limit applicable to the 0823 Account in August 2007 and again in November 2007. (O'Connell Decl., Ex. F, FIA0000192, FIA0000199.) Per the explicit terms of the CCA and amendments thereto (Id., Exs. A-B, D-E, FIA0000231, FIA0000164), having twice exceeded the credit limit applicable to the account within 12 consecutive billing cycles, it was now eligible for default

pricing. In accordance with these agreements, the December 2007 Statement reflects application of a Default Rate. (Id., Ex. F, FIA0000202.) Accordingly, Plaintiff had explicit notice of when and how a Default Rate would be applied to her account, as well as explicit notice of how to avoid application of a Default Rate.

### B. The Court May Take Judicial Notice Of The Applicable Cardholder Agreements And Account Statements.

In *Tierney v. Vahle*, 304 F.3d 734 (7th Cir. 2002), Justice Posner outlined an exception to the general rule that on a 12(b)(6) motion the trial court is limited in its review to the operative complaint, and documents attached thereto and incorporated therein. *Id.* at 738. According to the decision, a document that is authentic and dispositive of the asserted claims, may be considered by the trial court on a 12(b)(6) motion to dismiss though it is not attached to the complaint, without converting the motion to one for summary judgment under Rule 56. The Seventh Circuit reasoned that in the absence of such an exception, "the plaintiff could evade dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that proved that his claim had no merit." *Id.*[3] All of the recent decisions cited herein that have addressed the issues presented by Plaintiff's SAC, did so on Rule 12(b)(6) motions, in which the applicable cardholder agreements and amendments were considered by the respective courts. *See, e.g., Williams v. Wash. Mut. Bank, supra; Evans v. Chase Manhattan Bank, supra; McCoy v. Chase Manhattan Bank, supra; Barrer v. Chase Bank, supra.*

This exception applies with equal force in this case. First, Plaintiff received and had notice of the CCA and amendments thereto, as well as her account statements. Second, these documents are integral to Plaintiff's claims and prove that her claims are without merit. Finally,

---

[3] This exception was further explained and applied by the court in *ABN Amro v. Capital Int'l Ltd.*, Case No. 04 C 3123, 2007 U.S. Dist. LEXIS 19601 (N.D. Ill. March 16, 2007) (*citing McCabe v. Crawford & Co.*, 210 F.R.D. 631, 635-639 (N.D. Ill. 2002) (ruling that it was appropriate to consider the contract not attached to the complaint because it was dispositive of plaintiff's claims); *Cortec Indus., Inc. v. Sum Holding L.P., et al.*, 949 F.2d 42, 48 (2d Cir. 1991) (holding in a securities fraud cause that it was proper to consider an offering memorandum and stock purchase agreement at issue because the plaintiff had notice of the documents and the documents were integral to their claim, even though those documents were not incorporated into the complaint by reference nor attached to it)).

there can be no serious dispute about the authenticity of these documents. Accordingly, the Court should consider these documents in deciding Defendants' 12(b)(6) motion to dismiss.

### C.    The Disclosures Contained In The CCA And Amendments Thereto More Than Satisfy TILA.

Plaintiff claims that Defendants violated TILA and specifically Regulation Z when they increased the rate applicable to Plaintiff's credit card account, because Defendants "did not give notice of the changes before they went into effect." (SAC, ¶ 25.) As set forth above, Plaintiff received notice in accordance with TILA and Regulation Z.

Regulation Z requires a creditor to provide written notice whenever a finance charge is changed. 12 C.F.R. § 226.9(c)(1) (requiring written notice whenever "any term required to be disclosed under section 226.6 is changed"). However, the Official Staff Commentary to Regulation Z specifically provides that no additional notice need be given "if the specific change is set forth initially, such as: [r]ate increases under a properly disclosed variable-rate plan." 12 C.F.R. pt. 226, Supp. 1, § 226.9(c), cmt. 1.

Applied here, Plaintiff received explicit notice in the CCA and amendments thereto that the 0832 Account was subject to rate increases based upon specific defaults. One such default was going over limit on the account twice within 12 consecutive billing cycles. These notices more than satisfy the requirements of TILA and Regulation Z.

Indeed, this same factual scenario has been specifically addressed and rejected as an adequate basis for alleging a TILA violation in several prior cases. As an example, in *Williams v. Wash. Mut. Bank*, *supra*, the plaintiff similarly alleged that by failing to provide additional notice at the time of the alleged increase in the applicable APR, the bank failed to comply with TILA. The court in *Williams* rejected the argument, finding that the applicable credit card agreement and change in terms notices provided more than adequate notice to the consumer of the actions that would trigger application of a default rate. According to the court, "because the disclosures provide notice of the maximum default APR and the consumer's acts that can trigger an increase, Defendants' notice sufficiently provides the 'specific terms for an increase.'" 2008

U.S. Dist. LEXIS at *8-9; *accord Evans v. Chase Manhattan Bank*, *supra*, 2006 U.S. Dist. LEXIS 5259 at *6-8; *McCoy v. Chase Manhattan Bank, supra,* 2006 U.S. Dist. LEXIS 97257 at *7-9; *Penner v. Chase Bank USA, supra,* 2006 U.S. Dist LEXIS 53197 at *8-10.

Accordingly, Plaintiff's TILA claim should be dismissed with prejudice.

## II.    FEDERAL LAW PREEMPTS PLAINTIFF'S TWO STATE LAW CLAIMS IN THEIR ENTIRETY.

Under the Supremacy Clause, article VI, clause 2 of the U.S. Constitution, federal law preempts state law where Congress so intends. *See Free v. Bland,* 369 U.S. 663, 666 (1962); *Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 152-53 (1982). Congress may establish its intent to preempt state law expressly or impliedly: "Pre-emption may be either express or implied, and is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *de la Cuesta,* 458 U.S. at 152-53 (citation and internal quotation marks omitted). Congressional intent to preempt will be "inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation," *Cal Fed. Sav. & Loan Ass'n. v. Guerra,* 479 U.S. 272, 281 (1987) (*citing Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230 (1947)), or wherever state law conflicts with federal law. *Cipollone v. Liggett Group, Inc., 505* U.S. 504, 516 (1992) ("[S]ince [the Supreme Court's] decision in *M'Culloch v. Maryland,* 17 U.S. (4 Wheat.) 316,427... (1819), it has been settled that state law that conflicts with federal law is 'without effect.'") (citation omitted).

A "conflict" arises where, as here, state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz,* 312 U.S. 52, 67 (1941). In the specific context of banking, one way a state law presents an impermissible "obstacle" to Congress' objectives is by conditioning, restricting, or limiting the exercise of a power conferred by federal law. *Barnett Bank of Marion County, N.A. v. Nelson,* 517 U.S. 25, 32 (1996) (grants of powers to national banks are "grants of authority not normally limited by, but rather ordinarily pre-empting, contrary state law"); *Id.* at 34 ("where Congress has not

expressly conditioned the grant of 'power' upon a grant of state permission, the Court has ordinarily found that no such condition applies"). This is precisely the situation presented by Plaintiff's claims here, which seek to use state law to limit Defendants' full exercise of their federal powers.

**A.    The NBA and OCC Regulations Expressly Preempt Plaintiff's Claims.**

This case involves *express* preemption, both by the NBA itself, 12 U.S.C. § 85, and by regulations of the OCC issued thereunder, particularly (insofar as germane to this action) 12 C.F.R. §§ 7.4001 and 7.4008. The OCC has broad statutory authority to promulgate regulations concerning the business of banking that preempt inconsistent state law. 12 U.S.C. § 93a; *Wachovia Bank, N.A. v. Burke,* 414 F.3d 305, 314 (2d Cir. 2005) *cert denied* 127 S. Ct. 2093 (2007); *Conference of State Bank Supervisors v. Conover,* 710 F.2d 878, 885 (D.C. Cir 1983). The OCC also has specific statutory authority to issue regulations that preempt state laws concerning consumer protection, provided such regulations are the product of a public notice-and-comment procedure. 12 U.S.C. § 43; *Wells Fargo Bank v. Boutris,* 419 F.3d 949, 962-63 & n.16 (9th Cir. 2005); *Burke,* 414 F.3d at 314. Both 12 C.F.R. § 7.4001 and 12 C.F.R. § 7.4008 are products of exactly such a procedure[4] and therefore have the full force and effect of federal law. *de la Cuesta,* 458 U.S. at 153 ("Federal regulations have no less pre-emptive effect than federal statutes.").

**1.    Plaintiff's Claims Are Expressly Preempted Because They Attack the Interest Rates Charged By National Banks.**

Plaintiff's SAC is an attack on Defendants' federal right to charge interest and to impose finance charges on the accounts of its credit card customers. More particularly, Plaintiff complains that she and the members of her putative class were charged a default interest rate, effective as of the first day of the billing cycle in which the default occurred, and as a result

---

[4] *See* Interpretive Rulings, 61 Fed. Reg. 4849, 4858 (Feb. 9, 1996) & Investment Securities; Bank Activities and Operations; Leasing, 66 Fed. Reg. 34,784, 34,786-87 (July 2, 2001) (§ 7.4000; Bank Activities and Operations; Real Estate Lending and Appraisals, 69 Fed. Reg. 1904, 1905-07 (Jan. 13, 2004) (§ 7.4008).

incurred finance charges imposed by "retroactive" application of an increased rate of interest.[5] (SAC, ¶¶ 7-9).

Plaintiff's challenge to Defendants' default interest charges is expressly preempted because the NBA expressly grants a national bank the power to charge interest on loans, including finance charges, at a rate up to that permitted by the law of the state in which the bank is located (*i.e.,* its "home" state), ***irrespective of all other state law***.  12 U.S.C. § 85 ("Section 85") ("Any association [national bank] may . . . charge on any loan or discount made . . . interest at the rate allowed by the laws of the State. . . where the bank is located").  Any claim that a national bank charged interest in excess of the lawful rate may only be brought under *federal* law, not state law. 12 U.S.C. § 86; *Beneficial Nat'l Bank,* 539 U.S. at 9.[6]

Further, Plaintiff does ***not*** allege that Defendants ever charged her interest at rates in excess of those allowable under the law of Delaware, the state in which the holder of the credit card accounts at issue in this case—FIA—is located.[7]  Nor could she make such an allegation. And the fact that Delaware law does not limit Defendants' interest rates does not give Plaintiff a basis for invoking Illinois law to challenge Defendants' interest rates.  Indeed, that was the precise conclusion of the Supreme Court in *Smiley,* 517 U.S. 735, with respect to another credit

---

[5] Finance charges imposed by a national bank are "interest" as defined by federal banking law. *See* 12 C.F.R. § 7.4001(a) ("'interest' as used in 12 U.S.C. 85 includes any payment compensating a creditor or prospective creditor for an extension of credit"); *see also* 12 C.F.R. §226.4(b)(1) (defining "finance charges" as, *inter alia,* "interest"); *Smiley,* 517 U.S. 735 (upholding definition of "interest" in 12 C.F.R. § 7.4001(a) and its inclusion of credit card "late fees").

[6] Two Illinois district courts have also ruled that state law claims challenging interest rates charged by national banks are preempted under the NBA, in the removal context.  *Forness v. Cross Country Bank, Inc.*, Case No. 05-CV-417, 2006 U.S. Dist. LEXIS 3423 (S.D. Ill. Jan. 13, 2006); *Budnik v. Bank of America Mortgage*, Case No. 03 C 6116, 2003 U.S. Dist. LEXIS 22542 (N.D. Ill. Dec. 16, 2003).  In both cases, the respective courts denied motions to remand on the grounds that the claims, which challenged interest and fees charges by national banks, were expressly preempted under the NBA.  Both decisions specifically follow the United States Supreme Court's decision in *Beneficial Nat'l Bank.*

[7] The SAC does allege, for the first time, that the retroactive nature of the alleged rate increase violations 5 Del. Code § 944.  This allegation is not new, and has been previously dispensed with by other courts.  Indeed, the court in *Evans v. Chase Manhattan Bank*, *supra*, ruled that the materially identical credit card agreement at issue in that case complied with the requirements of 5 Del. Code § 944.

cardholder who sought to use California law to challenge late-payment fees imposed by a national bank located in South Dakota.

In *Smiley*, following the state trial court's dismissal of the plaintiffs' claims on grounds of preemption under Section 85, as affirmed by both the Court of Appeal and Supreme Court of California, the U.S. Supreme Court held that the late-payment fees at issue were "interest" within the meaning of Section 85 and that, because "there is no doubt that § 85 pre-empts state law," the plaintiffs California law claims of allegedly excessive interest, in the form of late-payment fees, had properly been dismissed. *Id.* at 744 (*citing Marquette Nat'l Bank of Minneapolis v. First of Omaha Serv. Corp.*, 439 U.S. 299, 318-19 (1978)).

In addition to Section 85, the OCC's implementing regulations also expressly preempt Plaintiff's claims in this case. These regulations state, in pertinent part: "[A] national bank may . . . charge late fees to its interstate customers because the fees are interest under the Federal definition of interest and an allowable charge under state law where the national bank is located," 12 C.F.R. § 7.4001(c), and a national bank may make loans "***without regard to state law limitations*** concerning . . . [r]ates of interest on loans." *Id.* § 7.4008(d)(2)(x) (emphasis added). Such state law limitations are precisely what Plaintiff seeks to impose on Defendants: by her Complaint, Plaintiff seeks to use Illinois law to nullify Defendants' federal and contractual right to charge default rate interest within the ceiling imposed by Section 85, and to charge such interest as of the first day of the billing cycle in which the triggering act of default occurred.

In short, both the NBA and the OCC's regulations expressly preclude any state-law claims seeking to impose limits or restrictions beyond Section 85 on a national bank's choice of interest rates on credit card loans. Consequently, there is no viable legal basis for Plaintiff's claims of allegedly excessive finance charges.

## 2. Plaintiff's Claims Are Expressly Preempted For The Additional Reason That They Attack Terms of Credit.

The OCC regulation section 7.4008 specifically states that state law is preempted with respect to the exercise of a national bank's power of lending, including setting terms of credit-

card lending.   12 C.F.R. § 7.4008 ("Section 7.4008").   As such, this regulation expressly preempts state law in a variety of specifically enumerated areas where the application of state law would necessarily "obstruct, impair, or condition a national bank's ability to fully exercise its federally authorized non-real estate lending powers . . . ." *Id.* § 7.4008(d)(1).

Among the types of state laws that are thus expressly preempted are laws purporting to affect the terms of credit on national bank non-real estate loans: "A national bank may make non-real estate loans *without regard to state law limitations* concerning. . . [t]he *terms of credit,* including the schedule for repayment of principal and interest, amortization of loans, balance, payments due, minimum payments, or term to maturity of the loan. . . . "*Id.* § 7.4008(d)(2)(iv) (emphasis added).[8]

Section 7.4008 thus *expressly* precludes the relief sought by Plaintiff, which directly attacks Defendants' terms of credit as set forth in its CCA.   To rule in her favor, the Court would have to determine that Illinois law may impose unique limitations or conditions upon Defendants' terms of credit and repayment schedules, and thus on the exercise of Defendants' lending powers.   Such a result is precisely what the OCC's regulation prohibits.  *Abel v. Keybank USA, Inc.,* 313 F. Supp. 2d 720, 728-29 (N.D. Ohio 2004); *see also Davis v. Elmira Sav. Bank,* 161 U.S. 275, 283 (1896) ("an attempt by a state to define [national banks'] duties or control . . . of their affairs is absolutely void" where it "frustrates the purpose of the national legislation"); *Bank of Am. v. City and County of San Francisco,* 309 F.3d *551,* 561 (9th Cir. 2002) (the NBA "was enacted to protect national banks against intrusive regulations by the States").   As the California Supreme Court found in *Smiley v. Citibank* (as affirmed by the United States Supreme Court)*,* any legal interpretation must be rejected if such interpretation,

> might effectively limit the variety of credit terms permitted on an interstate loan by a national bank, because any such term beyond [the definition's] scope would be subject to the varying laws of the several states -- a result that might "throw into confusion the complex system of modem interstate banking" *(Marquette Nat Bank v. First of Omaha Corp* 439 U.S. at p. 312**. . .** , and thereby undermine the

---

[8] As noted above, this same regulation expressly preempts state law limitations concerning rates of interest on loans, in accordance with Section 85 of the NBA. 12 C.F.R. § 7.4008(d)(2)(x).

conditions for uniformity and efficiency that would otherwise obtain.

To limit the variety of credit terms would obviously have an adverse effect on the national bank itself, whose freedom to lend on conditions it deems reasonable would be restricted.

11 Cal. 4th at 158.

Plaintiff's claims herein are consequently expressly preempted as an attempt to restrict and control a national bank's terms of credit.

> **3.    Plaintiff's Claims Are Also Expressly Preempted to the Extent They Seek To Impose a New Disclosure Regime Under State Law.**

Under Section 7.4008:

A national bank may make non-real estate loans **without regard to state law limitations** concerning. . . [d]isclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents.

*Id.* § 7.4008(d)(2)(viii) (emphasis added).

As such, any requirement premised on state law for specific disclosures or content in billing statements or other credit-related documents *cannot be applied to national banks.  See, e.g., Penner v. Chase Bank USA, NA.,* No. C06-5092 FDB, 2006 WL 2192435, at *4-5 (W.D. Wash. Aug. 1, 2006) (*citing U.S. Bank of Wash., NA., 865* P.2d 536 (Wash. Ct. App. 1994)) (holding a claim under Washington's Consumer Protection Act against a national bank for allegedly not disclosing credit card interest rate increases preempted by the NBA because the relationship between a national bank and its customers concerning whether the bank's loan collection practices are unfair or deceptive is specifically regulated by the OCC).

> **B.    The NBA Also *Impliedly* Preempts Plaintiffs' Claims Because They Conflict with Congressional Intent.**

Even absent the *express* preemption of Plaintiff's claims by Section 85 and 12 C.F.R. §§ 7.4001 and 7.4008, the NBA itself, as a whole, *impliedly* preempts Plaintiffs' claims on the basis of "conflict" preemption.  The NBA confers on national banks the "power" to "loan[] money on personal security." 12 U.S.C. § 24 (Seventh).  Congress did not condition its grant of the lending power to national banks on the banks' compliance with any state law lending

requirements. Because "[n]ational banks are instrumentalities of the federal government, created for a public purpose, and as such necessarily subject to the paramount authority of the United States," the Supreme Court has found that "an attempt by a state to define the duties or control the conduct of [a national bank's] affairs is absolutely void, wherever such attempted exercise of authority expressly conflicts with the laws of the United States, and either frustrates the purpose of the national legislation or impairs the efficiency of these agencies of the federal government to discharge the duties for the performance of which they were created." *Davis,* 161 U.S. at 283. Accordingly, national banks are "independent, so far as powers conferred are concerned, of state legislation which, if permitted to be applicable, might impose limitations and restrictions as various and as numerous as the states." *Easton,* 188 U.S. at 229.

Under the Supreme Court's consistent approach to NBA preemption, as summarized in *Barnett Bank v. Nelson,* all state laws that impair the efficiency of national banks' exercise of their federally authorized banking powers -- *i.e.,* state laws that interfere with, encroach upon, or hamper the exercise of such powers-- are preempted. 517 U.S. at 33-34; *Hines,* 312 U.S. at 67. When Congress confers a power on a national bank by providing that it "may" engage in certain business, the states cannot prevent or to limit the exercise of that power. *Franklin Nat'l Bank* v. *New York,* 347 U.S. 373, 377-79 (1954).

In this case, Plaintiff seeks, among other relief, an injunction under state law that would, *inter alia:* (1) impose limits on Defendants' default interest rates for cardholder accounts, (2) restrict the manner in which Defendants may calculate interest in accordance with its cardholder agreements, and (3) require specific "advance" disclosures by Defendants of future interest rates to be applied beyond the Cardholder Agreement itself. Such an injunction necessarily would "interfere with" the exercise of Defendants' federally granted lending power and, thus, be in direct conflict with Congress' intent underlying the NBA. *See, e.g., Id.* at 378-79 (holding that the NBA preempted a New York State statute that forbade banks to use the words "saving" and "savings" in advertising because there was "no indication that Congress intended to make this phase of national banking subject to local restrictions"); *Bank One v. Guttau,* 190 F.3d 844, 849-

50 (8th Cir. 1999) (holding that the NBA preempted an Iowa statute imposing requirements relating to the operation of ATMs because, although the burdens of the Iowa statute were not severe, they nonetheless touched on an activity that was specific to banking); *Nat'l City Bank of Ind. v. Turnbaugh,* 463 F.3d 325 (4th Cir. 2006) (holding that the NBA preempts state licensing and registration requirements from application to national bank operating subsidiaries) *cert. denied* 127 S. Ct. 2096 (2007); *Wells Fargo Bank,* 419 F.3d 949 (same); *Wachovia Bank v. Burke,* 414 F.3d 305 (same); *Wachovia Bank, N.A. v Watters,* 431 F.3d 556 (6th Cir. 2005) *aff'd* 127 S. Ct. 1559 (2007).

Accordingly, there is no ground upon which to grant Plaintiff's requested relief.

## <u>CONCLUSION</u>

Plaintiff's TILA claim is meritless in light of the explicit disclosures contained in the CCA and amendments thereto concerning default events.  Further, Plaintiff's state law claims, however worded, cannot escape federal preemption.  The opportunity to amend a complaint is futile if "'the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *In re Burlington Coat Factory Sec. Lit.*, 114 F.3d 1410, 1434 (*quoting Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)).  This standard is the same standard of legal sufficiency that applies under Rule 12(b)(6).  *Id.*  Accordingly, because Plaintiff can allege no set of facts necessary to state a claim in his case, her claims should be dismissed with prejudice.  Any further amendments sought by Plaintiff should be conditioned upon the payment of Defendants' attorneys' fees if they are unsuccessful.

Dated:      April 28, 2008                    BANK OF AMERICA, N.A. and FIA CARD
                                              SERVICES, N.A.


Robert M. Dawson, Esq.
Brandon C. Fernald, Esq.
FULBRIGHT & JAWORSKI, L.L.P.                          /s Brandon C. Fernald
555 South Flower Street, 41st Floor           *One of the attorneys for Defendants*
Los Angeles, California  90071
Telephone:  (213) 892-9200
Facsimile:  (213) 892-9494

William J. McKenna, Esq.
Katherine E. Licup, Esq.
FOLEY & LARDNER LLP
321 North Clark
Suite 2800
Chicago, IL 60610
Telephone:  (312) 832-4541
Facsimile:  (312) 832-4700