# EXHIBIT A

**7.11.3: Recurring Transactions.** If you authorize a merchant to charge your Account for repeat transactions without your Card, you must notify the merchant when you want to discontinue the repeat transactions or if your Account is closed or a new Account number is issued by us.

**7.11.4: Dispute Assistance.** If you disagree with a transaction on your Statement or have a dispute with the merchant as a result of the transaction, you will provide information or assistance we reasonably request. Otherwise, you will pay us for any resulting loss we have unless we are prohibited by applicable law from holding you liable for our loss.

**7.12: Default.** Your Account is in default if you fail to comply with any of the terms of this Agreement or any other loan agreement with us or anyone else; in the event of your death, incompetency, bankruptcy, insolvency, fraud or misrepresentation; or if we reasonably believe that you will be unwilling or unable to pay debts you owe to anyone. If you are in default, we may close your Account without notice, and you must immediately pay your unpaid balance. To the extent not prohibited by law, if you are in default, you will pay our collection costs, attorney fees (including allocated costs for attorneys who are employed by us), court costs and all other expenses of enforcing our rights under this Agreement.

**7.13: Closing Your Account.** You may close your Account by notifying us. We may close your Account or suspend your credit privileges at any time without prior notice except as required by law. You will stop using your Account and destroy all Cards and Checks on your Account. All Liable Parties' and Authorized Users' liability will apply to all balances and transactions made on the Account even if they are made or processed after the date the Account is closed.

If we receive a request from any Liable Party to remove another Liable Party from the Account, we may honor or refuse the request without prior notice.

**7.14: AMENDMENT OF THIS AGREEMENT. WE MAY AMEND THIS AGREEMENT BY CHANGING, ADDING OR DELETING ANY TERM, CONDITION, SERVICE OR FEATURE ("NEW TERM") OF YOUR ACCOUNT OR OF THIS AGREEMENT AT ANY TIME. WE WILL PROVIDE YOU WITH NOTICE OF THE AMENDMENT TO THE EXTENT REQUIRED BY LAW. UNLESS WE STATE OTHERWISE, ANY NEW TERM WILL APPLY TO YOUR ACCOUNT'S UNPAID BALANCE AND TO NEW ACTIVITY ON YOUR ACCOUNT. IF THE AMENDMENT INCLUDES ANY CHANGE TO THE RATE OR RATES OF PERIODIC INTEREST THAT APPLIES TO YOUR EXISTING BALANCES, WE WILL OBTAIN YOUR CONSENT BEFORE THAT NEW TERM BECOMES EFFECTIVE. IF WE NEED TO DO SO, WE MAY OBTAIN YOUR CONSENT IN ANY ONE OR MORE OF THE FOLLOWING WAYS: (A) BY YOUR USAGE OF THE ACCOUNT AFTER WE GIVE YOU NOTICE OF THE AMENDMENT; (B) BY YOUR FAILURE TO WRITE TO US ON-TIME IF WE REQUEST THAT YOU WRITE TO US TO REJECT A NEW TERM; OR (C) BY YOUR AFFIRMATIVE AGREEMENT WHICH MAY BE OBTAINED VERBALLY, IN WRITING OR ELECTRONICALLY. ANY OTHER TERM IN THE AMENDMENT WILL BECOME EFFECTIVE WITHOUT YOUR CONSENT, ALTHOUGH YOU MAY BE ABLE TO AVOID A FEE OR CHARGE BY NOT MAKING THE TYPE OF TRANSACTION TO WHICH IT APPLIES AFTER THE EFFECTIVE DATE OF THE AMENDMENT.**

**7.15: Foreign Currency Transactions/Fees.** If you make a transaction in currency other than U.S. dollars, MasterCard or Visa will convert the charge or credit into a U.S. dollar amount. The conversion rate on the processing date may differ from the rate on the date of your transaction.

The exchange rate used by Visa will either be (i) a rate selected by Visa from a range of rates available in wholesale currency markets for the applicable central processing date, which rate may differ from the rate Visa receives, or (ii) the government-mandated rate in effect for the central processing date. MasterCard will use an exchange rate of either (i) a wholesale market rate or (ii) a government-mandated rate. We will charge you a Foreign Currency Conversion Fee of 3% of the U.S. Dollar amount for each converted purchase and cash advance transaction. These amounts will be added together for each converted purchase and cash advance transaction made during a billing cycle and the total amount will appear on your billing statement as a "Foreign Currency Conversion Fee."

**7.16: Telephone Monitoring.** We may listen to and record telephone calls between you and us for the purpose of monitoring and improving the quality of service you receive.

**7.17: Enforceability.** Our failure to exercise any of our rights under this Agreement will not waive any of our rights in the future. If any terms of this Agreement are found to be unenforceable, all other provisions will remain in full force.

**7.18: Governing Law. THIS AGREEMENT IS GOVERNED BY APPLICABLE ARIZONA AND FEDERAL LAW.**

**7.19: Arbitration.** Any dispute, claim, or controversy ("Claim") by or between you and us (including each other's employees, agents, or assigns) arising out of or relating to this Agreement, your Account, or the validity or scope of any provision of this Agreement including this arbitration clause shall, upon election by either you or us, be resolved by binding arbitration. Arbitration shall take place before a single arbitrator on an individual basis without resort to any form of class action. Arbitration may be selected at any time unless a judgment has been rendered or the other party would suffer substantial prejudice by the delay in demanding arbitration.

Arbitration, including selection of an arbitrator, shall be conducted in accordance with the rules and procedures for initiating arbitration of the American Arbitration Association ("AAA"). You may contact AAA at 335 Madison Avenue, Floor 10, New York, NY 10017-4604 or http://www.adr.org, to obtain rules and forms to initiate arbitration. If AAA is unable or unwilling to serve as the provider of the arbitration or enforce any of the provisions of this agreement, we may substitute another national arbitration organization with similar procedures. This arbitration section of this Agreement shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1-16. Judgment upon arbitration may be entered in any court having jurisdiction. Arbitration shall be conducted in the federal judicial district in which your billing address is located at the time the claim is filed. If we request arbitration, we will advance applicable AAA fees and expenses. If the arbitrator rules in favor of one party against the other, the other party shall pay all reasonable attorney's fees and costs of the action on behalf of both parties (including any fees and expenses paid by one party on behalf of the other) unless the arbitrator or court decides such an award would cause a substantial injustice based on the facts and legal arguments set forth in the action.

YOU UNDERSTAND AND AGREE THAT IF EITHER YOU OR WE ELECT TO ARBITRATE A CLAIM, THIS ARBITRATION SECTION PRECLUDES YOU AND US FROM HAVING A RIGHT OR OPPORTUNITY TO LITIGATE CLAIMS THROUGH COURT, OR TO PARTICIPATE OR BE REPRESENTED IN LITIGATION FILED IN COURT BY OTHERS. EXCEPT AS OTHERWISE PROVIDED ABOVE, ALL CLAIMS MUST BE RESOLVED THROUGH ARBITRATION IF YOU OR WE ELECT TO ARBITRATE.

**7.20: Payment by Phone.** When using the Payment by Phone option, you authorize us to initiate electronic payments from your designated account at the financial institution you indicate for the purpose of making any payment on your Account. You must authorize the timing and amount of each payment transaction by using your Payment by Phone Personal Identification Number (PIN).

**7.20.1: Effective Date of Payment.** Payment will occur on the date you requested.

**7.20.2: Dishonored Request for Payment.** If a payment is dishonored for any reason, including insufficient funds, we, in accordance with your Cardholder Agreement, and your financial institution may assess a fee. If a payment is dishonored by your financial institution for "insufficient funds", we will attempt to initiate the electronic payment one more time before deeming the payment unpaid. **You understand that if a payment is dishonored, your Account will be considered due for that payment (if the minimum payment due has not been met), and other payment arrangements will need to be made.**

**7.20.3: Revocation of a Payment.** You have until 4:00 PM EST the day of the scheduled payment to cancel or revoke that payment.

**7.20.4: Payment by Phone Personal Identification Number (PIN).** You acknowledge the PIN issued by us to authorize and authenticate a Payment by Phone transaction will be kept confidential.

**7.20.5: Authorization and Security Procedure.** A Payment by Phone transaction will not occur unless you initiate the payment through the Bank's automated response unit or speak with a Bank customer service representative. You agree that the security procedures followed by the Bank to authenticate your consent to a Payment by Phone transaction, although not in writing, are reasonable, and agree to be bound by them as if you had signed this Authorization in writing.

**BILLING RIGHTS SUMMARY**

**Notify Us in Case of Errors or Questions About Your Bill**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us in a separate letter at the address indicated in the Billing Rights Summary on your Statement. Write us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
- Your name and Account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notices**

We must acknowledge your letter within 30 days, unless we corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases**

If you have a problem with the quality of goods or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may not have to pay the remaining amount due on the goods or services. You may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

a. You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and

b. The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

F03-2111-0/M-79887        **Bank of America, N.A. (USA)**
                          © 2005 Bank of America



**CARDHOLDER AGREEMENT**

**We reserve the right to change the terms of this Agreement at any time, as further described in Section 7.14.**

**Section 1: INTRODUCTORY PROVISIONS**

**1.1: Contents and Effectiveness of Agreement.** This Agreement governs your credit card account ("Account") with us. It consists of this document, an enclosed "Additional Disclosure" and other documents that we may refer to as part of this Agreement. The Agreement becomes effective and you agree to its terms by either using your Account or by not closing your Account within 3 days of receipt of this Agreement.

**1.2: Parties to Agreement.** "We," "us," and "our" refer to Bank of America, N.A. (USA). "You," "your," and "yours" refer to any person (a) whose name appears on a Card or Statement or who uses this Account, or (b) who otherwise agrees to be liable on the Account.

**1.3: Definitions.** In addition to other terms defined throughout the Agreement, the following terms have the meaning indicated in this Section:

**1.3.1:** "APR" means Annual Percentage Rate.
**1.3.2:** "Billing Cycle" means a period of about one month ending on a billing date.
**1.3.3:** "Card" means a Bank of America credit card issued on your Account.
**1.3.4:** "Convenience Check" means a non-promotional check drawn on your Account.
**1.3.5:** "Margin" means the number of percentage points added to the Index to determine an APR.
**1.3.6:** "MasterCard" means MasterCard International, Inc.
**1.3.7:** "Statement" means an Account billing statement.
**1.3.8:** "Unauthorized Charge" means a transaction made on your Account by a person, other than any one of you, who does not have actual, implied, or apparent authority to make such transaction, and from which none of you receive any benefit.
**1.3.9:** "Visa" means Visa U.S.A. Inc.
**1.3.10:** "Business Day" means Monday through Friday, excluding federal bank holidays.

**Section 2: USE OF YOUR ACCOUNT**

**2.1: Types of Transactions.** You may use your Account for the following types of consumer transactions:

**2.1.1: Purchases.** Purchase goods or services with your Card.
**2.1.2: Cash Advances.** Obtain cash from a participating financial institution or merchant ("Cash Disbursement") or from an ATM ("ATM Advance"), write a Convenience Check for any legal purpose ("Convenience Check Advance") or purchase money orders, travelers checks, foreign currency, lottery tickets, casino chips, racetrack wagers, vouchers redeemable for cash or other items readily convertible into cash ("Quasi Cash"), or transfer funds from your Account to your Bank of America personal checking account for overdraft protection ("Overdraft Protection").
**2.1.3: Balance Transfers.** Transferred balances to your Account from other creditors, except those made using a Convenience Check.

**2.2: Limitations on Use**

**2.2.1: General; Consumer Account.** In addition to any other contractual or legal restrictions, the use of your Account is limited as described below. Your Account is a consumer Account and should not be used for business purposes.
**2.2.2: Legal Transactions.** You will only use your Account for transactions that are legal where you conduct them. For example, Internet gambling transactions may be illegal in your state. Display of a payment card logo by an online merchant does not mean that an Internet transaction is legal where you conduct it. We may charge your account for such transactions. We will not be liable if you engage in an illegal transaction. We may deny authorization of any transactions identified as Internet gambling.

FIA0000233

**2.2.3: Credit Line and Cash Limit.** Your Account has a credit line ("Line") shown on your card carrier or Statement. You will not allow your Account balance to exceed the amount of this Line. If your Statement also shows a limit for Cash Advances ("Cash Limit"), you will not allow your Cash Advance balance to exceed your Cash Limit. We may change your Line or Cash Limit at any time. We may, but are not required to, approve transactions that exceed your available Line or Cash Limit.

**2.2.4: Authorizations.** Some transactions require our prior authorization. We may limit the number of authorizations we give in a day. We may deny authorization if you are in default (as defined in Section 7.12), if we suspect fraudulent activity or for other reasons. We are not liable for any failure to authorize a transaction. You are liable for any transaction we authorize even if we should not have authorized it because you are or would be in default as a result of the transaction.

**2.2.4.1: Internet Transactions:** If your card is a Visa branded card, then your card is automatically enrolled in the Verified by Visa program. In order to make transactions over the Internet merchants may request your Verified by Visa password to complete the transaction. If a password is not provided the merchant may deny the transaction. If the password is incorrect we may deny the transaction. You can select or change your password and view additional terms online at http://www.bankofamerica.com/creditcards/ and clicking on the Verified by Visa link. By allowing another to use your Verified by Visa password you are authorizing the transaction on your account.

**2.2.5: Unpaid Checks.** We may reject and return unpaid a Check you write because:
(a) Your available Line or Cash Limit has been or would be exceeded by paying the Check at the time it is presented to us;
(b) Your Check is post-dated. If a post-dated Check is paid, resulting in another check being returned or not paid, we are not responsible;
(c) The date of your Check is more than 6 months old;
(d) Your Account is closed or suspended;
(e) You are in default or would be so if we paid the Check;
(f) Your signature or the payee's name or endorsement is missing on the Check, or the Check appears altered.

If we pay any Check under any condition, you must pay us the amount of the Check plus applicable fees and charges unless such liability is precluded by law.

### Section 3: FINANCE CHARGES
**3.1: Grace Period.** We do not charge any periodic Finance Charges on your new Purchases if: (1) You pay your New Balance in full by your Payment Due Date, or (2) Your previous New Balance was zero or a credit balance. There is no grace period for Cash Advances and Balance Transfers.

**3.2: Periodic Finance Charge Calculation.** For each day in the Billing Cycle, we take your beginning balance, add any new transactions or other debits, and subtract any payments or other credits. This gives us that day's Daily Balance. We multiply this Daily Balance by the Daily Periodic Rate to get your Periodic Finance Charges for that day. We add these Periodic Finance Charges to your Daily Balance to get the beginning balance for the next day.

To get your total Periodic Finance Charges for that Billing Cycle, we add all the Daily Periodic Finance Charges and round the sum to the next highest cent. This amount is also equal to the Average Daily Balance multiplied by the Daily Periodic Rate and then multiplied by the number of days in the Billing Cycle. To determine the Average Daily Balance, we add all your Daily Balances and divide by the number of days in the Billing Cycle.

We do this calculation separately for each feature such as Purchases, Cash Advances, Balance Transfers or Promotional Balances. Periodic Finance Charges begin to accrue from the later of the transaction date or the billing date of the Statement on which the transaction appears.

**3.3: Periodic Rates and Annual Percentage Rates**
**3.3.1: Rates.** The Daily Periodic Rates and the corresponding Annual Percentage Rates for your Account are listed on the "Additional Disclosure". The Daily Periodic Rate is the corresponding Annual Percentage Rate divided by the number of days in a year rounded to the next highest hundred thousandth of a percentage point.

**3.3.2: Variable Rate Information.** One or more of the APRs described in your Additional Disclosure may vary with changes in the Prime Rate. All such variable APRs are determined by adding the appropriate Margin, as set forth in your Additional Disclosure, to the Index. The Margin is the percentage that we add to the Index to calculate your APRs. The Index is determined on the last day of each month and is the highest prime rate published in the Money Rates section of The Wall Street Journal at any time within the immediately preceding three months (the "Index Date(s)"). This rate does not necessarily represent the lowest prime rate or Bank of America's lowest rate. The variable Periodic Rates and corresponding Annual Percentage Rates will increase if the Index increases and decrease if the Index decreases. All rate changes take effect on the first day of the Billing Cycle that ends in the calendar month following the most recent Index Date. An increase to your Periodic Rate and the corresponding Annual Percentage Rate will increase the amount of Finance Charges on your Account and may also increase your Minimum Payment Due.

**3.4: Minimum Purchase Finance Charge.** Whenever the Purchase balance is subject to a periodic Finance Charge, we will charge the greater of that periodic Finance Charge or the Minimum Finance Charge for Purchases shown in the "Additional Disclosure".

**3.5: Cash Advance and Balance Transfer Fees.** For each Cash Advance, we will charge the Cash Advance Fees shown on the "Additional Disclosure", rounded to the next highest cent, and add the fee to the Cash Advance balance on the transaction date. Balance Transfers and Promotional Balances will also incur these Cash Advance Fees unless we state otherwise in our offer.

### Section 4: OTHER FEES AND CHARGES
**4.1: Types of Other Fees and Charges.** We will charge the following fees and other charges:
**4.1.1: Annual Fee.** If an Annual Fee applies to your Account, it will be billed each year.
**4.1.2: Late Payment Fee.** A Late Payment Fee if we do not receive at least the Minimum Payment Due by its Payment Due Date.
**4.1.3: Overlimit Fee.** An Overlimit Fee if your Account exceeds its Line at any time during a Billing Cycle.
**4.1.4: Returned Payment Fee.** A Returned Payment Fee for any payment on your Account that is returned to us unpaid.
**4.1.5: Stop Payment Fee.** A Stop Payment Fee for any request made to stop payment on a Check unless we have posted the Check to your Account before your request.
**4.1.6: Copy Charge.** A Copy Charge for a Statement, sales draft, Check, or other record of your Account other than for a billing dispute you may assert against us pursuant to applicable law.
**4.1.7: Research Fee.** A Research Fee for our time researching something requested on your Account other than for a billing dispute you may assert against us pursuant to applicable law.
**4.1.8: Photo Expressions Photo Change Fee.** If you have Photo Expressions on your Card, a Photo Change Fee for changing the photograph.

**4.2: Amount of Other Fees and Charges.** The amount of Other Fees and Charges are listed on the "Additional Disclosure" and added to the Purchase balance of the Account on the date they are assessed.

### Section 5: YOUR LIABILITY
**5.1: Liable Parties.** If your name appears on a Statement, our records show that you are liable for the full balance due on the Account. By using your Account or making a payment on the Account knowing that your name appears on any Statement, you agree that our records are accurate. In addition, you are liable for the full balance due on the Account if you have agreed to be liable (even if your name does not appear on a Statement). In each case described above, you will be individually and jointly liable ("Liable Party") for all credit extended on the Account (other than for Unauthorized Charges) including any Finance Charges, Other Fees and Charges, and expenses as provided in this Agreement. If your legal residence or Statement address is in a country outside the United States, the government of that country may impose a withholding tax on the Finance Charges due on your Account. You are liable for such tax and we may charge the amount of the tax to your Account if you do not pay.

**5.2: Other Users of the Account.** If you are not a Liable Party and you use this Account, you are liable for each transaction you make on the Account plus any Finance Charges, Other Fees and Charges, and expenses provided in this Agreement and related to such transactions. If you are an Authorized User (as defined in Section 7.9), your liability does not relieve any Liable Party under this Agreement from liability for the Authorized User's transactions until paid.

### Section 6: YOUR PAYMENTS
**6.1: Promise to Pay.** You promise to pay us for all transactions on your Account for which you are liable under Section 5 or by law. If a bank branch or office sponsors your Account, you promise to pay it any unpaid Account balance it pays us within 30 days. If an Account payment is invalid, we will reverse any credit previously provided for such payment.

In addition, we will credit your payment to your Account upon receipt; however, we may not immediately make credit available on your Line for the amount of any payment received.

Where you have provided a cell phone number directly to us, or placed a cell phone call to us, you consent and agree to accept collection calls to your cell phone from us. For any telephone or cell phone calls we place to you, you consent and agree that those calls may be automatically dialed and/or use recorded messages.

**6.2: Allocation of Payments.** We will allocate your payments in the manner we determine. In most instances, we will allocate your payments to balances (including transactions made after your latest statement) with lower APRs before balances with higher APRs. This will result in balances with lower APRs (such as new balances with promotional APR offers) being paid before any other existing balances.

**6.3: Minimum Payment Due.** You will pay at least the Minimum Payment Due in the amount shown in your "Additional Disclosure" by the Payment Due Date on your Statement.

**6.4: Form of Payment.** For all amounts you owe on your Account, you will pay us in U.S. dollars. All payments (other than cash payments at our Banking Centers or ATM's) must be drawn from funds on deposit in a U.S. depository financial institution. We may, at our option, accept payments made in foreign currency or checks drawn on non-U.S. banks. If we do, we may impose service and collection charges. Our determination of service and collection charges will be final. We are not required to accept any payment that we deem to require special handling.

**6.5: Payments Marked "Paid In Full".** We may accept letters, checks or other types of payment showing "payment in full" or using other language to indicate satisfaction of your debt, without waiving any of our rights to receive full payment under this Agreement. You must send any such communication to the "Billing Rights Summary" address on your Statement. Satisfaction of your debt for less than the full amount due requires a written agreement, signed by one of our authorized associates.

### Section 7: OTHER IMPORTANT INFORMATION
**7.1: Signature.** You should sign the back of your Card as soon as you receive it to help protect your Account from unauthorized use. However, your liability under Section 5 does not depend on whether you sign your Card.

**7.2: No Security Interest on Purchases.** This Agreement does not grant us a security interest in Purchases you charge to your Account.

**7.3: Account Materials.** We may send Account materials (Cards, Statements and notices) to any Liable Party, and that person will be responsible for delivering those materials to the other Liable Parties and Authorized Users. Notice to any of you will be considered notice to all of you.

**7.4: Change of Personal Information.** You will notify us in writing immediately if you change your name, address or home or business telephone number. If we do not have a valid address because you failed to update your information, then you are responsible for obtaining any account materials we would normally have delivered to your address.

**7.5: Credit Information.** We may periodically review your credit standing by obtaining information from credit reporting agencies and others concerning your accounts. You will provide updated financial information upon our request. In addition, we may report information about you to credit reporting agencies. You have the right to dispute the accuracy of information we have reported. If you wish to do so, write to: Bank of America, P.O. Box 1598, Norfolk, VA 23510 Attn: CBR Disputes (VA6-300-08-09). Please include your name, address, Account number, telephone number, social security number and a brief description of the problem. If available, please include a copy of the credit report in question.

**7.6: Stopping Payment on Checks.** To stop payment on a Check you write, you must call us at the Customer Service number shown on your Statement with all the following information: the exact dollar amount of the Check; the Check number; your Account number; the name of the party to whom the Check was written and the name of the person who signed the Check.

We will stop payment on the Check if we receive your stop payment request by the business day before the day we pay your Check. The date we pay the Check may be before the date it posts to your Account. The stop payment order will remain effective for 6 months. You may write us to cancel the order at any time.

**7.7: Sharing Information.** We share information with our affiliates and others as described below:

**7.7.1: Sharing Information with Affiliates and Others.** We may share information that is solely about our transactions or experiences with you or your Account ("Experience Information") with our affiliates and others such as Visa, MasterCard, or your other creditors. We may also share with our affiliates non-experience information ("Non-Experience Information") such as information contained in your credit application or obtained by us from other sources. You can instruct us not to share Non-Experience Information by calling us toll-free at 1-888-341-5000, or by sending a written request to: Bank of America Customer Information Operations, P.O. Box 27025, Richmond, VA 23261-7025. Please be sure to include your name, address, telephone number, Account number, and social security number with your correspondence.

**7.7.2: Sharing Information with Companies that Work for Us.** We may occasionally share information with outside companies that work for us. These companies act on our behalf and are obligated to keep the information that we provide to them confidential.

**7.8: Solicitations.** We carefully select quality products and services to offer you discount savings and other valuable benefits arranged specially for our cardholders. You have choices when it comes to learning about new offers and services. For example, you can choose not to receive notification about any offers made by mail, telephone or e-mail. To tell us your preferences, you can: (1) Visit your nearby Banking Center, (2) Call us at the telephone number listed on your Statement, (3) Send us an e-mail, or (4) Write to us at the address indicated in the Billing Rights Summary on your Statement. Please be sure to include your name, address, telephone number, Account number, and social security number with your correspondence.

**7.9: Authorized Users.** You may allow Authorized Users on your Account in the following ways: (1) by notifying us that you want someone added to your Account as an Authorized User; (2) by lending your Card or Account number to another; or (3) by any other ways in which you would be legally considered to have allowed another to use your Account or to be legally prevented from denying that you did so. You must think carefully before you allow anyone to become an Authorized User. By doing so, you authorize the person to use your Account to the same extent you can, including but not limited to making any Purchases, Cash Advances, Balance Transfers and allowing others to use your Account. Your Account does not permit you to limit the nature or amount of authority you give to any Authorized User and you will not attempt to do so. An Authorized User's authority will continue until you both notify us that you are terminating the authority and you physically retrieve the Card. If you cannot retrieve the Card, you will remain liable for any transactions that we cannot prevent after you notify us.

**7.10: Lost or Stolen Cards and Checks.** If your Card or Checks are lost or stolen, or if you think your Account is being used without your permission, you must notify us immediately by calling the "Lost or Stolen Card" number on your Statement.

**7.11: Transactions with Merchants**
**7.11.1: Return Policy.** If a merchant discloses a policy such as "no returns", "no refund", "no return or credit without receipt", "as is", "store credit only", or "all sales final", you will be bound by that policy when you use your Account to buy goods or services from that merchant.

**7.11.2: Reservations.** When using your Account to make travel or lodging reservations, obtain the merchant's cancellation policy and follow it if you cancel. If you cancel, obtain the merchant's cancellation number that it is required to give you. The merchant may charge you for a cancelled transaction unless you can provide us with the merchant's cancellation number.

FIA0000234