# EXHIBIT D

F01-C1125  6/29/06  8:46 AM  Page 1

under this Agreement. This means that no payment, including those marked with "paid in full" or with any other restrictive words, shall operate as an accord and satisfaction without the prior written approval of one of our senior officers. You may not use a postdated check to make a payment. If you do postdate a payment check, we may elect to honor it upon presentment or return it uncredited to the person that presented it, without in either case waiting for the date shown on the check. We are not liable to you for any loss or expense incurred by you arising out of the action we elect to take.

**30. PAYMENT HOLIDAYS AND REDUCED PAYMENT OFFERS**
We may allow you, from time to time, to omit a monthly payment or make a reduced payment. We will notify you when these options are available. If you omit a payment or make a reduced payment, finance charges, applicable fees, and other regular transactions, if any, will accrue on your account balances in accordance with this Agreement. The reduced payment amount may be less than your finance charges. You must make the reduced payment on time to avoid a late fee. You must resume making your regular Total Minimum Payment Due each month following a payment holiday or reduced payment offer.

**31. YOUR CREDIT LIMIT**
Your credit limit is disclosed to you when you receive your card and, generally, on each monthly statement. We may change your credit limit from time to time. You may also learn about your monthly statement as Cash or Credit Available does not take into account any Purchases, Cash Advances, finance charges, fees, any other transactions, or credits which "post to" your account after the Closing Date of that monthly statement. Such transactions could result in your credit limit being exceeded and result in the assessment of Overlimit Fees, loss of Promotional Rates, and Default Pricing.

**32. WHAT WE MAY DO IF YOU ATTEMPT TO EXCEED YOUR CREDIT LIMIT**
The total outstanding balance on your account plus authorizations at any time must not be more than your credit limit. If you attempt a transaction which results in your total outstanding balance (plus authorizations) exceeding your credit limit, we may: (1) permit the transaction without raising your credit limit; (2) permit the transaction and treat the amount of the transaction that is more than the credit limit as immediately due; or (3) refuse to permit the transaction.

If we refuse to permit the transaction, we may advise the person who attempted the transaction that it has been refused. If we refuse to permit a Check Cash Advance or Balance Transfer, we may do so by advising the person presenting the Check Cash Advance or Balance Transfer that credit has been refused, that there are insufficient funds to pay the Check Cash Advance or Balance Transfer, or in any other manner.

If we have previously permitted you to exceed your credit limit, it does not mean that we will permit you to exceed your credit limit again. If we decide to permit you to exceed your credit limit, which could trigger a promotion turn-off event, we may also charge an Overlimit Fee and/or apply Default Pricing as provided in this Agreement.

**33. WE MAY AMEND THIS AGREEMENT**
We may amend this Agreement at any time. We may amend it by adding, deleting, or changing provisions of this Agreement. We may increase or decrease any or all of your APRs. We may increase any or all of your APRs to rates which exceed the Default Rate. When we amend this Agreement we will comply with the applicable notice requirements of federal and Delaware law that are in effect at that time. The amended Agreement (including any higher rate or other higher charges or fees) will apply to the total outstanding balance, including the balance existing before the amendment became effective. If an amendment gives you the opportunity to reject the change, and if you reject the change in the manner provided in such amendment, we may terminate your right to receive credit and may ask you to return all credit devices as a condition of your rejection. We may replace your card with another card at anytime.

**34. WE MAY SUSPEND OR CLOSE YOUR ACCOUNT**
We may suspend or close your account or otherwise terminate your right to use your account. We may do this at any time and for any reason. Your obligations under this Agreement continue even after we have done this. You must destroy all cards, access checks or other credit devices on the account when we request.

**35. YOU MAY CLOSE YOUR ACCOUNT**
You may close your account by notifying us in writing or by telephone, and destroying all cards, access checks or other credit devices on the account. Your obligations under this Agreement continue even after you have done this.

**36. TRANSACTIONS AFTER YOUR ACCOUNT IS CLOSED**
When your account is closed, you must contact anyone authorized to charge transactions to your account, such as internet service providers, health clubs or insurance companies. These transactions may continue to be charged to your account until you change the billing. Also, if we believe you have authorized a transaction or are attempting to use your account after you have requested to close the account, we may allow the transaction to be charged to your account.

**37. REFUSAL TO HONOR YOUR ACCOUNT**
We are not liable for any refusal to honor your account. This can include a refusal to honor your card or account number or any check written on your account. We are not liable for any retention of your card by us, any other financial institution, or any provider of goods or services.

**38. HOW YOU MAY STOP PAYMENT ON AN ACCESS CHECK**
You may request a stop payment on an access check by providing us with the access check number, dollar amount, and payee exactly as they appear on the access check. Oral and written stop payment requests on an access check are effective for six months from the day that we place the stop payment.

**39. YOU MAY NOT POSTDATE AN ACCESS CHECK**
You may not issue a postdated access check on your account. If you do postdate an access check, we may elect to honor it upon presentment or return it unpaid to the person that presented it to us for payment, without in either case waiting for the date shown on the access check. We are not liable to you for any loss or expense incurred by you arising out of the action we elect to take.

**40. TRANSACTIONS MADE IN FOREIGN CURRENCIES**
If you make a transaction in a foreign currency, the transaction will be converted by Visa International or MasterCard International, depending on which card you use, into a U.S. dollar amount in accordance with the operating regulations or conversion procedures in effect at the time that the transaction is processed. Currently, those regulations and procedures provide that the currency conversion rate to be used is either (1) a wholesale market rate or (2) a government-mandated rate in effect one day prior to the processing date. The currency conversion rate in effect on the processing date may differ from the rate in effect on the transaction date or the posting date.

**41. BENEFITS**
We may offer you certain benefits and services with your account. Any benefits or services are not a part of this Agreement, but are subject to the terms and restrictions outlined in the benefits brochure and other official documents provided to you from time to time by or on behalf of FIACS. While any benefits or services described in the previous sentence are not a part of this Agreement, any claim or dispute related to any such benefit or service shall be subject to the Arbitration and Litigation section of this Agreement. We may adjust, add, or delete benefits and services at any time and without notice to you.

**42. WE MAY SELL YOUR ACCOUNT**
We may at any time, and without notice to you, sell, assign or transfer your account, any sums due on your account, this Agreement, or our rights or obligations under your account or this Agreement to any person or entity. The person or entity to whom we make any such sale, assignment or transfer shall be entitled to all of our rights and/or obligations under this Agreement, to the extent sold, assigned or transferred.

**43. YOU MUST NOTIFY US WHEN YOU CHANGE YOUR ADDRESS**
We strive to keep accurate records for your benefit and ours. The post office and others may notify us of a change to your address. When you change your address, you must notify us promptly of your new address.

**44. WHAT LAW APPLIES**
This Agreement is made in Delaware and we extend credit to you from Delaware. This Agreement is governed by the laws of the State of Delaware (without regard to its conflict of laws principles) and by any applicable federal laws.

**45. THE PROVISIONS OF THIS AGREEMENT ARE SEVERABLE**
If any provision of this Agreement is found to be invalid, the remaining provisions will continue to be effective.

**46. OUR RIGHTS CONTINUE**
Our failure or delay in exercising any of our rights under this Agreement does not mean that we are unable to exercise those rights later.

**47. UNAUTHORIZED USE OF YOUR CARD**
Please notify us immediately of the loss, theft, or possible unauthorized use of your account at (800) 732-9194 and (800) 681-2803 for Spanish.

**48. ARBITRATION AND LITIGATION**
This Arbitration and Litigation provision applies to you unless you were given the opportunity to reject the Arbitration and Litigation provisions and you did so reject them in the manner and timeframe required. If you did reject effectively such a provision, you agreed that any litigation brought by you against us, regarding this account or this Agreement shall be brought in a court located in the State of Delaware.

Any claim or dispute ("Claim") by either you or us against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or any prior Agreement or your account (whether under a statute, in contract, tort, or otherwise and whether for money damages, penalties or declaratory or equitable relief), shall, upon election by either you or us, be resolved by binding arbitration. The arbitrator shall resolve any Claims, including the applicability of this Arbitration and Litigation Section or the validity of the entire Agreement or any prior Agreement, except for any Claim challenging the validity of the Class Action Waiver, which shall be decided by a court.

In addition, we will not choose to arbitrate an individual Claim that you bring against us in small claims court or an equivalent court, if any. But if that Claim is transferred, removed or appealed to a different court, we then have the right to choose arbitration.

Arbitration shall take place before a single arbitrator and on an individual basis without resort to any form of class action. Arbitration may be selected at any time unless a judgment has been rendered or the other party would suffer substantial prejudice by the delay in demanding arbitration.

The arbitration shall be conducted by the National Arbitration Forum ("NAF"), under the Code of Procedure in effect at the time the Claim is filed. Rules and forms of the National Arbitration Forum may be obtained and Claims may be filed at any National Arbitration Forum office, **www.arb-forum.com** or P.O. Box 50191, Minneapolis, Minnesota 55405, telephone (800) 474-2371. If the NAF is unable or unwilling to act as arbitrator, we may substitute another nationally recognized, independent arbitration organization that uses a similar code of procedure. At your written request, we will advance any arbitration filing fee, administrative and hearing fees which you are required to pay to pursue a Claim in arbitration. The arbitrator will decide who will be ultimately responsible for paying those fees. If you file a claim against us, in no event will you be required to reimburse us for any arbitration filing, administrative or hearing fees in an amount greater than what your court costs would have been if the Claim had been resolved in a state court with jurisdiction.

Any arbitration hearing at which you appear will take place within the federal judicial district that includes your billing address at the time the Claim is filed. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"). Judgment upon any arbitration award may be entered in any court having jurisdiction. The arbitrator shall follow existing substantive law to the extent consistent with the FAA and applicable statutes of limitations and shall honor any claims or privilege recognized by law. If any party requests, the arbitrator shall write an opinion containing the reasons for the award.

No Claim submitted to arbitration is heard by a jury or may be brought as a class action or as a private attorney general. You do not have the right to act as a class representative or participate as a member of a class of claimants with respect to any Claim submitted to arbitration (Class Action Waiver). The parties to this Agreement acknowledge that the Class Action Waiver is material and essential to the arbitration of any disputes between the parties and is nonseverable from this agreement to arbitrate Claims. If the Class Action Waiver is limited, voided or found unenforceable, then the parties' agreement to arbitrate (except for this sentence) shall be null and void with respect to such proceeding, subject to the right to appeal the limitation or invalidation of the Class Action Waiver. **The Parties acknowledge and agree that under no circumstances will a class action be arbitrated.**

This Arbitration and Litigation Section applies to all Claims now in existence or that may arise in the future. This Arbitration and Litigation Section shall survive the termination of your account with us as well as any voluntary payment of the debt in full by you, any bankruptcy by you or sale of the debt by us.

For the purposes of this Arbitration and Litigation Section, "we" and "us" means **FIA Card Services, N.A.**, its parent, subsidiaries, affiliates, licensees, predecessors, successors, assigns, and any purchaser of your account, and all of their officers, directors, employees, agents and assigns or any and all of them. Additionally, "we" or "us" shall mean any third party providing benefits, services, or products in connection with the account (including but not limited to credit bureaus, merchants that accept any credit device issued under the account, rewards or enrollment services, credit insurance companies, debt collectors and all of their officers, directors, employees and agents) if, and only if, such a third party is named by you as a co-defendant in any Claim you assert against us.

**YOU UNDERSTAND AND AGREE THAT IF EITHER YOU OR WE ELECT TO ARBITRATE A CLAIM, THIS ARBITRATION SECTION PRECLUDES YOU AND US FROM HAVING A RIGHT OR OPPORTUNITY TO LITIGATE CLAIMS THROUGH COURT, OR TO PARTICIPATE OR BE REPRESENTED IN LITIGATION FILED IN COURT BY OTHERS. EXCEPT AS OTHERWISE PROVIDED ABOVE, ALL CLAIMS MUST BE RESOLVED THROUGH ARBITRATION IF YOU OR WE ELECT TO ARBITRATE.**

## YOUR BILLING RIGHTS

**Keep This Notice for Future Use:** This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us in Case of Errors or Questions About Your Bill:**
If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet (or use a copy of the form provided on your bill) at FIA Card Services, N.A., P.O. Box 15026, Wilmington, DE 19850. Write to us as soon as possible. Do not send the notice on or with your payment. We must hear from you no later than 60 days after we sent you the first bill on which the transaction or error appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information: (1) your name and account number; (2) the dollar amount of the suspected error; (3) the posting date of the transaction in question; and (4) a description of the error and an explanation, if you can, of why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account with us, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice:** We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we did not make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within twenty-five (25) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill, and we must tell you the name of anyone we report you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we do not follow these rules, we cannot collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases:** If you have a problem with the quality of the property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(1) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and

(2) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

F01-C1125                                Bank of America, N.A. (USA)
                                         © 2006 Bank of America



**IMPORTANT NOTICE OF CHANGE IN TERMS**

Bank of America Corporation and MBNA Corporation are pleased to announce our merger. In bringing the organizations together, we are creating a credit card bank that will provide our customers with a greater range of financial solutions than ever before. We are consolidating our credit card program into one bank: FIA Card Services, N.A. As a result, beginning October 19, 2006 (the "Effective Date"), your Bank of America credit card account will be issued and administered by FIA Card Services, N.A. This document, together with the enclosed statement, is your new "Credit Card Agreement" and replaces in whole, on the Effective Date, your existing Cardholder Agreement and will apply to all new and outstanding balances. Please read these documents carefully and retain them for your records.

Except for Section 12 and Section 13, all of the changes below will apply to your account as of the first day of your billing cycle that includes the Effective Date. Sections 12 and 13 will apply to your account as of the Effective Date.

As a part of the transition, we will be restructuring your account balances into four balance categories (as newly defined by your Credit Card Agreement): Category A, for Check Cash Advances and Balance Transfers; Category B, for Bank and ATM Cash Advances; Category C for Purchases; and Category D for Other Balances. In some cases we will consolidate existing balances into a single balance category. When we do so, we will honor, or lower, the existing Annual Percentage Rates, including any existing promotional rates or default rates that may be available on this account.

**CREDIT CARD AGREEMENT**

We reserve the right to change the terms of this Agreement at any time, as further described in the following sections: *Balance Categories* and *We May Amend This Agreement*.

**1. YOUR CONTRACT WITH US**
Your Agreement with us consists of this Credit Card Agreement and any changes we make to it from time to time. The terms of this Agreement apply to you if any of you applied for and were granted an account, used the account, maintained the account, and/or otherwise accepted the account. You agree to the terms and conditions of this Agreement.

F01-C1125                                Bank of America, N.A. (USA)
                                         © 2006 Bank of America

FIA0000230