IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| LAURA M. SWANSON, an individual, on behalf of herself and all others similarly situated, | ) ) ) | |
| | ) | Case No. 1:08-cv-00184 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Amy St. Eve |
| | ) | |
| BANK OF AMERICA, N.A. and FIA CARD SERVICES, N.A. | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**BANK OF AMERICA, N.A.'S AND FIA CARD SERVICES, N.A.'S REPLY IN SUPPORT OF THE MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ......................................................................................................... 1

ARGUMENT ............................................................................................................... 1

I.    PLAINTIFF'S INTERPRETATION OF 12 CFR 226, *et seq.,* IS CONTRARY TO
      EVERY LEGAL AUTHORITY TO HAVE ADDRESSED THE ISSUE. ....................... 1

      A.    Where Default Events Are Initially Disclosed In The Cardholder Agreement, No
            Additional Disclosure Is Required When Default Pricing Is Activated. ................ 2

      B.    The Fact That Defendants Have Discretion To Initiate Default Pricing Does Not
            Alter The Above Analysis. .................................................................................... 5

II.   DEFENDANTS' COMPLIANCE WITH TILA ALSO DEFEATS PLAINTIFF'S
      STATE LAW CLAIMS. ...................................................................................... 7

III.  FEDERAL LAW PREEMPTS PLAINTIFF'S TWO STATE LAW CLAIMS IN THEIR
      ENTIRETY. ...................................................................................................... 8

      A.    Plaintiff's State Law Claims Seek To Regulate Defendants' Assessment of
            Interest. ............................................................................................................. 8

      B.    Plaintiff Directly Attacks Defendants' Lending Practices. ................................ 12

IV.   PLAINTIFF'S SHOULD NOT BE REWARDED FOR JUDGE-SHOPPING. ............. 13

CONCLUSION ......................................................................................................... 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

Abel v. Keybank USA, Inc.,
    313 F. Supp. 2d 720 (N.D. Ohio 2004)..............................................................13

Anderson Brothers Ford v. Valencia,
    452 U.S. 205 (1981)..........................................................................................3

Barnett Bank v. Nelson,
    517 U.S. 25 (1996)..........................................................................................13

Budnik v. Bank of America Mort.,
    Case No. 03 C. 6116, 2003 U.S. Dist. LEXIS 22542  (N.D. Ill. Dec. 16, 2003)
    (Exh. A)..........................................................................................................11

Cross-Country Bank v. Klussman,
    Case No. C-01-4190, 2004 U.S. Dist. LEXIS 7835 (N.D. Cal. April 30, 2004)
    (Exh. B)......................................................................................................10, 11

Evans v. Chase Manhattan Bank USA,
    Case No. C-05-3968 SC, 2006 U.S. Dist. LEXIS 5259 (N.D. Cal. Jan. 27, 2006)
    (Exh. C) ..............................................................................................3, 6, 7, 8, 10

Evans v. Chase Manhattan Bank, USA
    2008 U.S. App. LEXIS 4581 (9th Cir. Feb. 22, 2008)
    (Exh. D)............................................................................................................4

First National Bank of Mena v. Nowlin,
    509 F.2d 872 (8th Cir. 1975) ............................................................................9

Forness v. Cross-Country Bank,
    Case No. 05-CV-417, 2006 U.S. Dist. LEXIS 3423 (S.D. Ill. Jan. 13, 2006)
    (Exh. E) ..........................................................................................................11

Franklin National Bank v. New York,
    347 U.S., 373 (1954)........................................................................................13

Greenwood Tmst Co. v. Commonwealth of Mass.,
    971 F.2d 18 (1st Cir. 1992)................................................................................9

McCoy v. Chase Manhattan Bank USA,
    Case No. 06-107, 2006 U.S. Dist. LEXIS 97257 (C.D. Dist. LEXIS 97257)
    (Exh. F) ........................................................................................................4, 9

Patterson v. Regions Bank,
    Case No. 06-cv-469, 2003 U.S. Dist. LEXIS 22542 (S.D. Ill. Nov. 27, 2006)
    (Exh. G)..................................................................................................................10

Penner v. Chase Bank USA, N.A.,
    Case No. C06-5092, 2006 U.S. Dist. LEXIS 53197 (W.D. Wash. Aug. 1, 2006)
    (Exh. H)...............................................................................................................4, 7

Saxton v. Capital One Bank,
    392 F. Supp. 2d 772 (S.D. Miss. 2005)..................................................10, 11

Williams v. Wash. Mutual Bank,
    Case No. 07-2418, 2008 U.S. Dist. LEXIS 5325 (E.D. Cal. Jan. 11, 2008)
    (Exh. I) .............................................................................................................4, 7, 5

## STATE CASES

Attorney General, of Md. v. Equitable Trust Co.,
    450 A.2d 1273 (Md. 1982) ....................................................................................8

Lanier v. Associate Finance, Inc.,
    114 Ill. 2d 1, 499 N.E.2d 440 (1986) ..............................................................7

Smiley v. Citibank,
    11 Cal. 4th 138 (1995), affd, 517 US. 735 (1996 ) ......................................9, 13

Wash. Mutual Bank v. Superior Ct.,
    95 Cal. App. 4th 606 (2002) ............................................................................12

## FEDERAL STATUTES AND REGULATIONS

12 C.F.R. § 226.9 ...........................................................................1, 2, 3, 4, 5, 6, 7

12 C.F.R. § 7.4001 .........................................................................................................8

12 C.F.R. § 7.4008 ..................................................................................................12, 13

12 U.S.C. § 85................................................................................................8, 9, 10

72 F.R. 32948....................................................................................................................3

72. F.R. 33009..................................................................................................................3

# REGULATIONS

47 Fed. Reg. 41338 ...................................................................................................2, 6

47 Fed. Reg. 41346 ...................................................................................................2, 6

69 Fed. Reg. 1904 .......................................................................................................12

**INTRODUCTION**

Counsel for Plaintiff Laura M. Swanson reverts to the arguments in Opposition to Defendants' Motion to Dismiss the Second Amended Complaint that he has already made and lost in other federal courts. For example, with respect to the Truth in Lending ("TILA") cause of action, Plaintiff's counsel inexplicably holds on to his tortured construction of Regulation Z notice, which has been rejected by every federal court to review the matter to date, as well as by the Board of Governors of the Federal Reserve System. Plaintiff's counsel also argues that because the Defendants have discretion in deciding whether or not to activate default pricing in a particular instance, additional notice is required under Regulation Z. This argument too is contrary to the plain language of Regulation Z and has been rejected time and again.

Turning to the state law claims, Plaintiff actually concedes the preemption issue by averring that she seeks only to implement a disclosure scheme that is *already* mandated by TILA and Regulation Z. To the extent that the state law claims purport to address disclosure issues already addressed by federal statute, they should be dismissed.

Finally, Plaintiff seeks disingenuously to avoid preemption by claiming, once again, that her complaint has nothing to do with interest rates or terms of credit offered by national banks. This argument ignores the fact that implementation of Plaintiff's proposed changes to the banking system would fundamentally alter the lending practices of national banks, including the assessment of interest and fees. It is precisely for this reason that Federal Banking law and regulation has been found to expressly and impliedly preempt state laws, which attempt to regulate the same, so as to avoid a patchwork of inconsistent banking laws across the nation. The Federal Reserve and the OCC, not Plaintiff's counsel, regulate the lending practices at issue here. Accordingly, all of Plaintiff's claims should be dismissed in their entirety, with prejudice.

**ARGUMENT**

I.     **PLAINTIFF'S INTERPRETATION OF 12 CFR 226, *et seq.,* IS CONTRARY TO EVERY LEGAL AUTHORITY TO HAVE ADDRESSED THE ISSUE.**

Plaintiff's counsel's interpretation of 12 CFR § 226, *et seq.*, has been *rejected* by *each*

*and every* United States District Court to consider it. Plaintiff's interpretation is also directly contrary to that which has been rendered *twice* by the Board of Governors of the Federal Reserve System. Accordingly, Plaintiff's TILA claim should be dismissed, with prejudice.

Plaintiff's Opposition once again argues that Defendants violated 12 C.F.R. § 226.9(c) when they purportedly failed to provide advance notice of the implementation of default pricing on Plaintiff's '0832 Account. Plaintiff's argument rests on two related (but flawed) propositions: First, that the activation of default pricing, the terms of which are expressly and admittedly disclosed in Plaintiff's cardholder agreement, constitutes a "change in terms" under 12 C.F.R. § 226.9(c)(1) and therefore requires additional notice at the time of activation; and second, that even if "automatic" events disclosed in the cardholder agreements would not require such additional notice under § 226.9(c)(1), "discretionary" events (i.e., events that the bank *may* implement under certain circumstances) do require additional notice. Both propositions are not in accord with the language of Regulation Z and the official comments thereto, and have been soundly rejected.

### A. Where Default Events Are Initially Disclosed In The Cardholder Agreement, No Additional Disclosure Is Required When Default Pricing Is Activated.

Regulation Z provides that written notice is required "[w]henever any term required to be [initially] disclosed under § 226.6 is changed or the required minimum periodic payment is increased. . . ." 12 C.F.R. § 226.9(c)(1). The Official Staff Commentary to Regulation Z ("Commentary") provides with respect to this subsection that, "[n]o notice of a change in terms need be given if the specific change is set forth initially. . . ." 12 C.F.R. pt. 226, Supp. I, § 226.9(c), cmt. 1 (Truth in Lending, Official Staff Commentary, 47 Fed. Reg. 41338, 41346 (Sept. 20, 1982)). As Plaintiff correctly points out, the Commentary does not contain a specific example that is analogous to the situation presented here. However, the Board of Governors *did* contemplate precisely the situation presented here, when it proposed amendments to Regulation Z in June 2007.

In support of its proposed amendments to section 226, including specifically,

§ 226.9(c)(1), the Board of Governors confirmed Defendants' interpretation of the notice

requirement under § 226.9(c)(1) at issue in this case:

> Advance notice currently is not required in all cases. For example, if an interest
> rate or other finance charge increases due to a consumer's default or delinquency,
> notice is required, but need not be given in advance. See current § 226.9(c)(1);
> comment 9(c)(1)-3. Furthermore, no change-in-terms notice is required if the
> specific change is set forth initially by the creditor in the account-opening
> disclosures. See current comment 9(c)-1. ***For example, some credit card account
> agreements permit the card issuer to increase the periodic rate if the consumer
> makes a late payment. Because the circumstances of the increase are specified
> in advance in the account agreement, the creditor currently need not provide a
> change-in-terms notice; under current § 226.7(d) the new rate will appear on
> the periodic statement for the cycle in which the increase occurs.***

Proposed Rule; request for public comments, 72 FR 32948, 33009 (June 2007) (emphasis

added).

The Commentary put forth by the Board of Governors of the Federal Reserve System is

entitled to substantial deference. *Anderson Bros. Ford v. Valencia*, 452 U.S. 205, 219 (1981).

Here, not only is the Board's interpretation completely contrary to the interpretation proposed by

Plaintiff, the Board has now proposed an amendment to section 226.9 which, if enacted, would

implement the *very notice provision* that Plaintiff claims is already contained in the regulation.

Thus, to adopt Plaintiff's interpretation, the Court must necessarily find that the Board's initial

interpretation of the regulation *it* implemented is inaccurate, *and* that the proposed amendment to

section 226.9 is unnecessary, because the regulation *already contains* the requisite notice

provisions.   Plaintiff has provided absolutely no statutory authority for ascribing a notice

requirement to a federal regulation, which is contrary to both the plain language of that

regulation, *as well as* the implementing agency's interpretation of that regulation, *as well as* the

implementing agency's proposed amendment which is intended to implement the very notice

requirement Plaintiff claims is already there.

Given the above, it is perhaps not surprising that *every* court to have addressed this issue

has rejected Plaintiff's counsel's position.  In *Evans v. Chase Manhattan Bank USA*, Case No. C-

05-3968 SC, 2006 U.S. Dist. LEXIS 5259 (N.D. Cal. Jan. 27, 2006), the court was presented

with exactly the same argument in opposition to the defendant's motion to dismiss.  The court

rejected it, ruling that additional notice at the time default pricing is activated is not required under 12 C.F.R. § 226.9(c)(1), where notice of the circumstances under which default pricing can be implemented are initially disclosed in the cardholder agreement. *Id.* at *7. This court's opinion was recently affirmed by the Ninth Circuit in an unpublished opinion. 2008 U.S. App. LEXIS 4581 (9th Cir. Feb. 22, 2008).

In August 2006, two more district courts rejected Plaintiff's counsel's interpretation. According to the court in *Penner v. Chase Bank USA, N.A.*, Case No. C06-5092, 2006 U.S. Dist. LEXIS 53197 (W.D. Wash. Aug. 1, 2006),

> Chase discloses the maximum rate it will set an APR in the event of a cardmembers default. Thus, the increase in rates based upon a cardmembers default is not a "change in terms" under the TILA because the rate increase has been previously disclosed.

*Id.* at *8-9.

Similarly, in *McCoy v. Chase Manhattan Bank USA*, Case No. 06-107, 2006 U.S. Dist. LEXIS 97257 (C.D. Dist. LEXIS 97257), the court ruled that:

> As Chase avers, because it discloses the basis on which it will increase interest rates due to default, and discloses the basis on which it will increase interest rates due to default, and discloses the highest rate that could apply, an increase in the interest rate based on these specified circumstances is not a change in terms within the meaning of Regulation Z, and no additional notice to the cardmember is required.

*Id.* at *9.

Finally, and most recently, the court in *Williams v. Wash. Mut. Bank*, Case No. 07-2418, 2008 U.S. Dist. LEXIS 5325 (E.D. Cal. Jan. 11, 2008) came to the very same conclusion:

> Therefore, the federal cases addressing the same issue and the Board's recent comments about potential amendments lead this court to conclude that defendant's practice of notifying consumers about default rate increases only in its initial disclosures does not violate TILA.

*Id.* at *7-8.

Defendants' practices challenged in this case, comply with both the letter of Regulation Z, the interpreting Board Commentary, and the case law. Here, Plaintiff received two separate disclosures, well prior to the default pricing event at issue in this case, that by exceeding

her credit limit twice within 12 consecutive billing cycles the '0832 Account could be subject to default pricing. (Declaration of David O'Connell ["O'Connell Decl."], Ex. B, FIA0000231, Ex. E, FIA0000164.) Plaintiff was further advised of what the maximum default rate would be. (*Id.*) Finally, Plaintiff was advised that any interest rate increase would become effective as of the first date of the billing cycle in which the default rate was activated. (*Id.*, Ex. E, FIA0000164.) Accordingly, the actual implementation of default pricing in December 2007, following Plaintiff going over limit on the '0832 Account in August and again in November 2007, does not constitute a "change in terms" under 12 C.F.R. § 226.9(c)(1). As a result, no additional notice was required under TILA and Regulation Z.

Finally, Plaintiff's argument that the above interpretation of § 226.9(c)(1) would make it redundant to § 226.6(a)(2), actually supports Defendants' motion to dismiss. (Opp., 4.) Section 226.6(a)(2) requires the initial disclosure of each periodic rate that may be used to compute the finance charge, the range of balances to which the respective rates are applicable, and the corresponding annual percentage rates. If § 226.9(c)(1) is construed in accordance with Plaintiff's interpretation, only then does it become redundant to § 226.6(a)(2), as it would require the *same notice* as required at the opening of the account, to be given again at the time that default pricing is activated. Contrary to Plaintiff's argument, § 226.9(c)(1) only requires such additional notice, where there is a change in terms that is *inconsistent* with the initial disclosures under § 226.6(a)(2). If the default rate and circumstances under which it applies are fully disclosed in the initial cardholder agreement under § 226.6(a)(2), there is no requirement that they be disclosed *again* under § 226.9(c)(1).

**B.    The Fact That Defendants Have Discretion To Initiate Default Pricing Does Not Alter The Above Analysis.**

Plaintiff also argues, *again*, that the activation of default pricing constitutes a "change in terms" because Defendants have discretion to determine whether a card holder is in default and whether to apply the highest disclosed default rate, or some lesser rate. (Opp. 5-7.) Plaintiff concedes that if the activation of default pricing were *automatic*—e.g., applied automatically

after the cardholder goes over limit twice within 12 consecutive billing cycles—then notice *would not* be required under § 226.9(c)(1).  (Opp., 5.)  Thus, according to Plaintiff, because the applicable cardholder agreement in this case grants Defendants discretion with respect to whether or not to apply default pricing once the specified circumstances occur, § 226.9(c)(1) requires that additional notice be given at the time that default pricing is activated.

In addition to defying common sense, Plaintiff's argument is contrary to the plain language of Regulation Z.  Section 226.9(c)(2) specifically provides that, "[n]o notice . . . is required when the change involves . . . *a reduction of any component* of a finance or other charge."  12 C.F.R. § 226.9(c)(2) (emphasis added).  Defendants' discretion *not* to raise a cardholder's interest rate upon default, to the maximum disclosed penalty rate, despite the provisions in the cardholder agreement authorizing Defendants to do so, fits squarely within this provision and does not require additional notice.  The applicable cardholder agreement grants Defendants discretion *only to apply a lower interest rate upon default*; such *downward* discretion does not change the above analysis.

This interpretation is also consistent with the Commentary.  The Commentary provides that "notice must be given if the contract allows the creditor to *increase* the rate at its discretion but does not include specific terms for an increase."  12 C.F.R. pt. 226, Supp. I, § 226.9(c), cmt. 1 (Truth in Lending, Official Staff Commentary, 47 Fed. Reg. 41338, 41346 (Sept. 20, 1982)) (emphasis added).  Here, Defendants *do* identify the specific terms that might result in a higher interest rate—e.g., going over limit twice within 12 consecutive billing cycles—as well as the maximum default interest rate.  The applicable cardmember agreement does *not*, however, give Defendants discretion to *increase* the interest rate for any reason that is not specified in that agreement, *nor does Plaintiff claim otherwise.*

Finally, Plaintiff's contention has once again been rejected by each and every court that has addressed it.  According to the Court in *Evans v. Chase Manhattan Bank*,

> On a final note, the Court is unimpressed by Plaintiffs' complaints that the rate increases are discretionary, that they are based on unknown factors, and that the

rate increases are retroactive. ***These complaints have nothing to do with Regulation Z's notice requirements.***

2006 U.S. Dist. LEXIS 5259 at *7 (emphasis added); *accord Penner v. Chase Bank USA,* 2006 U.S. Dist. LEXIS 53179 at * 9 (ruling that "[a] decision not to increase the interest rate to the maximum allowed has the same effect as a reduction in the maximum default to a lower rate" and therefore no notice is required under § 226.9(c)(2)); *Williams v. Wash. Mut. Bank*, 2008 U.S. Dist. LEXIS 5325 at *10 ("because the Terms Sheet allows defendant to increase the default APR to the maximum stated in the Terms Sheet, defendant's decision not to do so is akin to a reduction of the consumer's finance charge, which does not require notice").

In sum, the fact that Defendants have discretion *not* to apply penalty pricing in no way alters the fact that section 226.9(c)(1) does not require additional notice of the activation of default pricing, where notice is given in the initial cardholder agreement.

## II.    DEFENDANTS' COMPLIANCE WITH TILA ALSO DEFEATS PLAINTIFF'S STATE LAW CLAIMS.

According to the Illinois Supreme Court's decision in *Lanier v. Assoc. Finance, Inc.*, 114 Ill. 2d 1, 17, 499 N.E. 2d 440, 447 (1986),

> the Consumer Fraud Act's general prohibition of fraud and misrepresentation in consumer transactions [does] not require more extensive disclosure in the plaintiff's loan agreement than the disclosure required by the comprehensive provisions of the Truth in Lending Act.

Thus, Defendants' "compliance with the disclosure requirements of the Truth in Lending Act is a defense to liability under the Illinois Consumer Fraud Act. . . ." *Id.* Indeed, Plaintiff admits as much when she claims that she is not seeking to impose a "state law disclosure regime distinct from TILA." (Opp., 12.)

Here, to the extent Plaintiff's state law claims rest on issues surrounding disclosure, they must be dismissed for two reasons. First, there is full disclosure under TILA. Second, it is undisputed that the practices at issue in this case—the implementation of default pricing at the beginning of the billing cycle—were fully disclosed in the applicable cardholder agreements:

> For each balance category, we may increase the APR on all new and outstanding balances up to the Default Rate, *without giving you additional notice*, when, during any twelve consecutive rolling billing cycles: (1) we do not receive to

Total Minimum Payments to either respective Payment Due Dates; or (2) *your total outstanding balance exceeds your credit limit on your Closing Dates in two billing cycles. Each such increase will be effective as of the first date of the billing cycle in which the Default Rate is applied.*

(O'Connell Decl., Ex. E, FIA0000164) (emphasis added)

As the court noted in *Evans v. Chase Manhattan Bank, supra*,

[r]ather than practicing concealment or making false promises, Chase, from the beginning of the contractual relationship, notifies cardmembers of the actions it may take in the event of default.

2006 U.S. Dist. LEXIS at *15-16.

Accordingly, because Defendants provided full disclosure of the practices at issue in this case, *in compliance with TILA*, Plaintiff cannot state a claim for deceptive business practices under the ICFA, and any such claim is preempted in any event.

## III.    FEDERAL LAW PREEMPTS PLAINTIFF'S TWO STATE LAW CLAIMS IN THEIR ENTIRETY.

As set forth above, to the extent Plaintiff's state law claims are directed to proper disclosure they should be dismissed. Thus, there remain only Plaintiff's state law challenges to the practices themselves. These claims fail as well because they attack both Defendants' assessment of interest as well as Defendants' Terms of Credit. As a result, they are preempted by Federal law.

### A.    Plaintiff's State Law Claims Seek To Regulate Defendants' Assessment of Interest.

Plaintiff disavows that her Complaint challenges the amount or type of interest charged by Defendants and argues that, since the Complaint does not allege "usury," it cannot be preempted by Section 85. (Opp., 10.)    Plaintiff's argument reflects a fundamental misunderstanding about the scope of preemption under Section 85.

Section 85 does not merely preempt state law claims regarding numerical rates of interest. Rather, Section 85 preempts *any* state law challenges to national bank interest assessments made in accordance with the law of the state in which the bank is located. 12 C.F.R. § 7.4001 (b) ("A national bank located in a state . . . is subject to the provisions of [that state's] law . . . that are material to the determination of the permitted interest."); *Attorney Gen, of Md. v.*

*Equitable Trust Co.,* 450 A.2d 1273, 1291 (Md. 1982) ("Consequently, the national bank that takes [its home state's] most favored lender's rate may not take only the numerical rate. It must also take the method of calculating that rate."). *See also First Nat'l Bank of Mena v. Nowlin,* 509 F.2d 872, 876 (8th Cir. 1975) ("The primary principle of construction of 12 U.S.C. § 85 . . . is that the federal Act adopts the entire case law of the state interpreting the state's limits on usury; it does not merely incorporate the numerical rate adopted by the state.") (citations omitted); *Greenwood Tmst Co. v. Commonwealth of Mass.,* 971 F.2d 18 (1st Cir. 1992) ("[F]ederal tribunals . . . have interpreted . . .section 85 of the Bank Act as adopting definitions drawn from the law of the state where the bank is located.") (citations omitted). It is therefore irrelevant that Plaintiff's Complaint does not point to a *particular numerical* rate: The SAC clearly challenges Defendants' assessment of interest based on Illinois law, going so far as to declare it a "illegal penalty" because it does not reflect the actual harm to Defendants resulting from the default.

Indeed, in *Smiley v. Citibank (S.D.), N.A.*, 517 U.S. 735 (1996), in which the Court held that "late fees" charged by a national bank were "interest" under Section 85 and, therefore, not subject to regulation by state law, the plaintiff did not specifically claim violation of any state "usury" statute. Rather, the plaintiff in Smiley alleged that the practice of charging a certain type of interest (late fees) was "unconscionable" and violated the California Unfair Competition Law, as does Plaintiff here with respect to the ICFA. *Id.* at 738 n.1. Despite the fact that there was no specific contention regarding "interest," and no allegation of any violation of a state "usury" law, the Court found that the complaint was nevertheless preempted under Section 85, because it sought to prohibit charges that were properly understood to be "interest" within the meaning of Section 85. *Id.* at 747. Plaintiff's allegations that Defendants have violated Illinois law by imposing "retroactive rate increases . . . and "collect[ing] . . . additional charges as a result of this practice" (SAC, ¶ 36-38) are similarly preempted.

This is especially true where, as here, the challenged practices are expressly permitted under Delaware law. Once again, another United States District Court has already addressed this issue. In *McCoy v. Chase Manhattan Bank, supra*, the court ruled as follows:

> Pursuant to section 85 of the National Bank Act, *12 U.S.C. § 85*, Delaware law governs the interest rate charged by Chase and the methodology used to determine that rate. Section 994 of the Delaware Banking Act provides:
>
> > If the agreement governing the revolving credit plan so provides, the periodic percentage rate or rates of interest under such plan may vary in accordance with a schedule or formula. . . . Without limitation, a permissible schedule or formula hereunder may include provision in the agreement governing the [*12] plan for a change in the periodic percentage rate or rates of interest applicable to all or any part of outstanding unpaid indebtedness . . . contingent upon the happening of any event or circumstances specified in the plan, which event or circumstance may include the failure of the borrower to perform in accordance with the terms of the plan.
>
> > *5 Del. C. § 944*. As Judge Conti noted, the "statute declares that a permissible formula or schedule can be based on the occurrence or non-occurrence of an event or circumstance described in the agreement, such as we see in the Cardmember Agreement." *Evans, 2006 U.S. Dist. LEXIS 5259 at * 3*. Judge Conti further noted, "[t]he Cardmember Agreement, by describing what events will cause default rates to go into effect, complies with these requirements." *Id.* Judge Conti therefore concluded, and this Court agrees, that the terms of the Agreement are not unconscionable, but rather the are specifically authorized by statute. *Id.*

2006 U.S. Dist. LEXIS 5259 at *11-12 (*citing Evans v. Chase Manhattan Bank*, 2006 U.S. Dist. LEXIS 97257 at *3).

In sum, because under Section 85, Delaware law governs the practices at issue here, and because those practices are "specifically authorized by [Delaware] statute," Plaintiff's Illinois state law claims, which seek to regulate the manner in which interest and other fees are assessed by national banks, are preempted. *Id.*

Finally, Plaintiff's case citations are inapposite. First, each involved preemption issues under the Depository Institutions Deregulation and Monetary Control Act of 1980 ("DIDA"), *not* the National Bank Act. *Cross-Country Bank v. Klussman*, Case No. C-01-4190, 2004 U.S. Dist. LEXIS 7835, *3 (N.D. Cal. April 30, 2004); *Saxton v. Capital One Bank*, 392 F. Supp. 2d 772, 776 (S.D. Miss. 2005); *Patterson v. Regions Bank*, Case No. 06-cv-469, 2003 U.S. Dist. LEXIS 22542, *11 (S.D. Ill. Nov. 27, 2006).

More importantly, these cases are distinguished on their facts. First, *Patterson* involved what amounted to a contract dispute: "Plaintiffs do not appear to be alleging that the challenged interest rate is illegal—but merely appear to allege that Defendant is not charging the rate it said it would charge on the Note." 2003 U.S. Dist. LEXIS 22542 at *17. Similarly, the plaintiffs in

*Saxton* and *Klussman*, respectively, were primarily challenging the manner in which the fees at issue were allegedly disclosed, not the fees themselves. *Saxton*, 392 F. Supp. 2d at 783 ("Plaintiff's allege, *inter alia*, that defendant misrepresented the nature and benefit of its services, placed unauthorized and undisclosed charges on customers' accounts, assessed late fees and other interest . . . without informing customers, and breached their express agreements with customers. . . ."); *Klussman,* 2004 U.S. Dist. LEXIS 7835 at *19-20 ("Plaintiff alleges, *inter alia*, that Defendants misrepresented the nature and benefit of their services, . . . .")

As set forth above, to the extent Plaintiff's claims are premised on allegedly inadequate or deceptive disclosure, they fail for two reasons. First, Plaintiff has specifically limited her ICFA claim to disclosure that is required under TILA. (Opp., 12) Defendants are in full compliance with TILA and Regulation Z. Second, the circumstances surrounding implementation of default pricing are fully disclosed in the card holder agreement applicable to the '0832 Account. Accordingly, to the extent Plaintiff's claims are premised on inadequate or deceptive disclosure, they fail as a matter of law.

The claims at issue in this case are also directed at the *amount* of interest charged and whether that amount constitutes an "illegal penalty." The decision in *Forness v. Cross-Country Bank*, Case No. 05-CV-417, 2006 U.S. Dist. LEXIS 3423 (S.D. Ill. Jan. 13, 2006) is dispositive here. *Forness* also involved the issue of preemption of the plaintiff's claims under section 85 of the National Bank Act and specifically addressed the argument being made by Plaintiff here, that her claims do not involve usury. The court in *Forness* rejected this argument and in so doing, specifically distinguished *Klussman, supra.* The court reasoned the plaintiff's claim that the fees being charged by the defendant were illegal penalties because they were "significantly in excess of the amount required to cover its actual costs," sounded in usury—the plaintiff was challenging the amount of interest charged as constituting an illegal penalty. *Id.* at *11-12. Similarly, here, Plaintiff challenges as an "illegal penalty" the "additional interest" charged by Defendants that "is not intended to compensate the Bank for damages. . . ." (SAC, ¶¶ 19(d), 29(a)-(d), 30, 35.) *See also Budnik v. Bank of America Mort.*, Case No. 03 C. 6116, 2003 U.S. Dist. LEXIS 22542

(N.D. Ill. Dec. 16, 2003). In other words, Plaintiff is claiming that the interest and fees being charged by Defendants constitutes an illegal penalty because it allegedly exceeds that which would compensate Defendants for the harm caused by the cardholder's default. As such, Plaintiff's state claims are completely preempted by the National Bank Act.

It should also be noted that none of these cases addresses the additional ground for preemption applicable in this case under 12 C.F.R. § 7.4008 *et seq.*, *infra*.

### B.    Plaintiff Directly Attacks Defendants' Lending Practices.

Plaintiff also attempts to avoid preemption under the NBA and the OCC's regulations by asserting that her causes of action only incidentally affect Defendants' lending practices. (Opp., 11.)[1] That contention is manifestly incorrect.

As Defendants explained in their moving papers, under Section 7.4008, "[a] national bank may make non-real estate loans *without regard to state law limitations* concerning . . . terms of credit." 12 C.F.R. 7.4008(d)(2)(iv) (emphasis added). By challenging conduct authorized by FIA's Cardholder Agreement, Plaintiff directly attacks FIA's terms of credit. Indeed, by challenging the process by which Defendant increases its interest rates, Plaintiff's claims go to the heart of the lending process. *See, e.g., Wash. Mut. Bank v. Superior Ct.*, 95 Cal. App. 4th 606, 61 9 (2002) ("Charging interest. . . , [t]he date interest begins to accrue and who pays it are [all] terms of credit . . . since all of these items center around the essential reason lenders issue . . . loans, to wit, charging and collecting interest."). As a result, Plaintiff's state law claims are preempted.

Furthermore, in challenging FIA's practice of retroactively increasing interest rates and finance charges as of the beginning of a billing cycle, based on certain cardholder activity or

---

[1] Under Section 7.4008, certain state laws apply to national banks "to the extent that they only incidentally affect the exercise of national banks' non-real estate lending powers." 12 C.F.R. § 7.4008(e). In contrast to state laws relating to charges of interest, terms of credit, or credit-related disclosures, which are categorically preempted from application to national banks, *id.* 9 7.4008(d)(2), "these types of laws typically do not regulate the manner or content of the business of banking authorized for national banks, but rather establish the legal infrastructure that makes practicable the conduct of that business." Bank Activities and Operations; Real Estate Lending Appraisals, 69 Fed. Reg. 1904, 191 3 (Jan. 13,2004).

default during that same billing cycle, Plaintiff seeks to prevent a national bank from engaging in that practice altogether; i.e., assessing a higher interest rate as of the beginning of the billing cycle in which an event triggering the increase occurs. Plaintiff is thus clearly seeking, through the imposition of an "advance notice" requirement, to alter the terms under which FIA provides credit (and charges interest). After all, a national bank necessarily cannot give advance notice at the beginning of a billing cycle of a triggering event that has not yet occurred. A new "advance notice" requirement would therefore have the intended and inevitable effect of preventing FIA from assessing a higher rate of interest as of the commencement of the billing cycle in which the triggering event occurs. The only way Plaintiff would be entitled to her requested relief would be for the Court to hold these terms of providing credit are illegal under Illinois law. Any such holding would necessarily conflict with federal law, which expressly provides that a national bank may make loans "without regard to state law limitations concerning. . . [r]ates of interest on loans," 12 C.F.R. § 7.4008(d)(2)(x), and without regard to state law limitations concerning "terms of credit, including the schedule for repayment of . . . interest." *Id.*, § 7.4008(d)(2)(iv).

Because Plaintiff's attempt to use Illinois law to prohibit Defendants from imposing "default interest" on a "retroactive" basis, as *provided for* in the applicable Cardholder Agreement, is in direct conflict with Defendants' rights under the NBA and the OCC's regulations, it is both expressly and impliedly preempted. *See Barnett Bank v. Nelson,* 517 U.S. 25, 33-34 (1996); *Franklin Nat'l Bank v. New York,* 347 U.S., 373, 377 (1954); *Abel v. Keybank USA, Inc.,* 313 F. Supp. 2d 720, 728-29 (N.D. Ohio 2004); *Smiley v. Citibank*, 11 Cal. 4th 138, 157-58 (1995), *affd,* 517 US. 735 (1996 ). Plaintiff's SAC must, therefore, be dismissed.

## IV.    PLAINTIFF'S SHOULD NOT BE REWARDED FOR JUDGE-SHOPPING.

It is clear that Plaintiff's counsel is on a mission to find a judge who will finally side with their arguments concerning Regulation Z and preemption. While this Court is not bound by the decisions of the Northern and Eastern Districts of California, the Western District of Washington, the District of Oregon, and the Ninth Circuit, it is nonetheless telling that not one of these federal courts have given any credence to the arguments now being made, for about the

sixth time, to this Court. Plaintiff's counsel should not be rewarded for their blatant attempt to find a more sympathetic ear for their stale arguments.

## **<u>CONCLUSION</u>**

For the above-stated reasons, Plaintiff's lawsuit should be dismissed in its entirety, with prejudice.

Dated:      June 13, 2008                                    BANK OF AMERICA, N.A. and FIA CARD
                                                            SERVICES, N.A.


Robert M. Dawson, Esq.
Brandon C. Fernald, Esq.
FULBRIGHT & JAWORSKI, L.L.P.                        _____/S/ Brandon C. Fernald_____
555 South Flower Street, 41st Floor                 *One of the attorneys for Defendants*
Los Angeles, California  90071
Telephone:  (213) 892-9200
Facsimile:  (213) 892-9494

William J. McKenna, Esq.
Katherine E. Licup, Esq.
FOLEY & LARDNER LLP
321 North Clark
Suite 2800
Chicago, IL 60610
Telephone:  (312) 832-4541
Facsimile:  (312) 832-4700

# EXHIBIT A

LEXSEE



Cited
As of: Jun 08, 2008

**TODD BUDNIK and DEBORAH BUDNIK, Plaintiffs, v. BANK OF AMERICA
MORTGAGE, Defendant.**

03 C 6116

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION**

**2003 U.S. Dist. LEXIS 22542**

**December 15, 2003, Decided
December 16, 2003, Docketed**

**DISPOSITION:**    [*1]  Plaintiffs' motion to remand
denied. Request for costs and fees incurred in connection
with removal of action denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff borrowers filed
an action in state court against defendant operating
division of a national bank, alleging that the operating
division improperly retained extra per diem interest on
their mortgage loan. The division removed the case to
the instant court. The borrowers moved to remand.

**OVERVIEW:** The division argued that the borrowers'
claims were federal because they were preempted by the
National Bank Act, 12 U.S.C.S. § 21 et seq. Regardless
of the borrowers' characterization of the unearned
interest, they were in fact attacking the overall amount of
interest charged by the division. The borrowers were
raising a state law usury claim based on an excessive
interest charge. The United States Supreme Court had
held that 12 U.S.C.S. §§ 85 and 86 provided an exclusive
cause of action for excessive interest claims and thus
there was no such thing as a state-law claim of usury
against a national bank. The unearned interest claims
were preempted by federal law.

**OUTCOME:** The motion to remand was denied.

**CORE TERMS:** mortgage, national bank, state law,
federal law, unearned, preempted, anticipated, rate of

interest, subsidiary, payoff, interest charge, federal
question, amount of interest, preemption, banking, duck,
law claims, mortgage loan, federal preemption, money
loaned, cause of action, illegal profit, greater sum,
excessive, borrower, raising, occupy, per diem,
contending, usurious

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Subject Matter
Jurisdiction > Federal Questions > General Overview
Civil Procedure > Removal > Basis > Federal
Questions*
[HN1]Under the well-pleaded complaint rule, a cause of
action arises under federal law when the plaintiff's
complaint raises issues of federal law. The plaintiff is
thus the master of her complaint and can control the
litigation through the issues she raises, as opposed to
those that the defendant includes in its response. This
means that a defendant cannot remove a case to federal
court under the guise of federal preemption simply by
raising a federal question as a defense.

*Civil Procedure > Jurisdiction > Subject Matter
Jurisdiction > Federal Questions > General Overview
Civil Procedure > Removal > Basis > Federal
Questions*
[HN2]A plaintiff may not prevent the defendant from
removing her case by framing her claims under state law

and omitting federal questions that are essential to her recovery. This principle is known as the artful pleading rule. If the plaintiffs' state law claims in fact raise a federal question, their claims arise under federal law and are removable.

*Banking Law > Federal Acts > National Bank Act*
*Banking Law > National Banks > General Overview*
*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions > General Overview*
[HN3]As a general rule, federal preemption is a federal defense to a state law cause of action and thus does not permit a defendant to remove a case from state court. In some instances, however, Congress has so completely preempted an area that a complaint is necessarily federal in character. If an area of state law is completely preempted by federal law, a claim purportedly based on state law is considered to be federal.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions > General Overview*
[HN4]Federal preemption of state law claims can be either express or implied. Where Congress expressly occupies a field, state law in that area is preempted. On the other hand, if a scheme of federal regulation is pervasive enough to support an inference that Congress meant to completely occupy that area, implied preemption applies and prevents a plaintiff from pursuing a claim premised on state law.

*Banking Law > Federal Acts > National Bank Act*
*Banking Law > National Banks > Affiliates & Subsidiaries*
[HN5]The National Bank Act, 12 U.S.C.S. § 21 et seq., empowers national banks to conduct banking business through operating subsidiaries. This power allows operating subsidiaries to make mortgage loans and engage in related mortgage banking activities.

*Banking Law > Bank Activities > General Overview*
*Banking Law > Federal Acts > National Bank Act*
*Real Property Law > Financing > Usury*
[HN6]Section 86 of the National Bank Act, 12 U.S.C.S. § 21 et seq., allows recovery for the taking, receiving, reserving, or charging a rate of interest greater than what is allowed under 12 U.S.C.S. § 85. 12 U.S.C.S. § 86. The United States Supreme Court has held that 12 U.S.C.S. §§ 85 and 86 provide an exclusive cause of action for excessive interest claims and thus there is no such thing as a state-law claim of usury against a national bank.

*Banking Law > National Banks > Interest & Usury > General Overview*
*Contracts Law > Defenses > Usury*
[HN7]Usury is the receiving, securing, or taking of a greater sum or value for the loan or forbearance of money, goods, or things in action than is allowed by law, the exaction of a greater sum for the use of money than the highest rate of interest allowed by law.

**COUNSEL:** For TODD P BUDNIK, DEBORAH N BUDNIK, plaintiffs: Brian J Wanca, Anderson & Wanca, Rolling Meadows, IL.

For BANK OF AMERICA MORTGAGE, defendant: Linda Beth Dubnow, Jeffrey C. Torres, McGuireWoods LLP, Chicago, IL.

**JUDGES:** Blanche M. Manning, United States District Judge.

**OPINION BY:** Blanche M. Manning

**OPINION**

**MEMORANDUM AND ORDER**

Plaintiffs Todd and Deborah Budnik filed suit against Bank of America Mortgage, an operating division of Bank of America, in state court. The Budniks' complaint, which is styled as a class action, alleges that Bank of America Mortgage improperly retained extra per diem interest on their mortgage loan. Bank of America Mortgage removed this case, alleging that the Budniks' claims were preempted by federal law. The Budniks' motion to remand is before the court. For the reasons set forth below, the motion is denied.

**I. Background**

The following allegations are drawn from the Budnicks's complaint. In December of 2002, the Budnicks sold a parcel of real estate. Bank of America Mortgage held the Budnick's mortgage. [*2]  In connection with the payoff of the mortgage, a third-party title insurance company collected money from the Budnicks. The payoff statement prepared by Bank of America Mortgage included an anticipated per diem interest charge for a date which turned out to be past the actual closing date. According to Bank of America Mortgage, it chose the date because it anticipated that the loan would be paid off but did not know when the closing would take place.

Bank of America failed to refund the anticipated but unearned interest after the Budnicks fully paid off their loan. The Budnicks' claims center on the anticipated but

unearned interest. They do not challenge the rate of interest charged by Bank of America Mortgage and expressly disclaim any usury or federal claims, as well as any recovery over $ 75,000 inclusive of damages and fees.

## II. Discussion

The fate of the motion to remand turns on whether the Budnicks' complaint is based on state or federal law. [HN1]Under the well-pleaded complaint rule, a cause of action arises under federal law when the plaintiff's complaint raises issues of federal law. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 95 L. Ed. 2d 55, 107 S. Ct. 1542 (1987). [*3] The plaintiff is thus master of her complaint and can control the litigation through the issues she raises, as opposed to those that the defendant includes in its response. *Jass v. Prudential Health Care Plan, Inc.,* 88 F.3d 1482, 1486 (7th Cir. 1996). This means that a defendant cannot remove a case to federal court under the guise of federal preemption simply by raising a federal question as a defense. *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 77 L. Ed. 2d 420, 103 S. Ct. 2841 (1983); *Speciale v. Seybold,* 147 F.3d 612, 615 (7th Cir. 1998).

[HN2]A plaintiff, however, may not prevent the defendant from removing her case by framing her claims under state law and omitting federal questions that are essential to her recovery. *Franchise Tax Board,* 463 U.S. at 22. This principle is known as the artful pleading rule. *Id.* Therefore, the court must determine whether the Budnicks couched a federal cause of action in terms of state law. *Burda v. M. Ecker Co.,* 954 F.2d 434, 438 (7th Cir. 1992). If the plaintiffs' state law claims in fact raise a federal question, their claims arise under federal [*4] law and are removable. *Id.*

Bank of America Mortgage contends that the plaintiffs' claims are federal because they are preempted by the National Bank Act, 12 U.S.C. § 21, *et seq.* [HN3]As a general rule, federal preemption is a federal defense to a state law cause of action and thus does not permit a defendant to remove a case from state court. *Bastien v. AT&T Wireless Servs., Inc.,* 205 F.3d 983, 986 (7th Cir. 2000). In some instances, however, Congress has so completely preempted an area that a complaint is "necessarily federal in character." *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. at 63-64. If an area of state law is completely preempted by federal law, a claim purportedly based on state law is considered to be federal. *Franchise Tax Board,* 463 U.S. at 24.

[HN4]Federal preemption of state law claims can be either express or implied. Where Congress expressly occupies a field, state law in that area is preempted.

*Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n,* 461 U.S. 190, 212-213, 75 L. Ed. 2d 752, 103 S. Ct. 1713 (1983). On the other hand, if a scheme of federal regulation [*5] is pervasive enough to support an inference that Congress meant to completely occupy that area, implied preemption applies and prevents a plaintiff from pursuing a claim premised on state law. *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 73 L. Ed. 2d 664, 102 S. Ct. 3014 (1982) ("the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the subject, or because the object sought to be obtained by federal law and the character of obligations imposed by it may reveal the same purpose").

So, does the National Bank Act preempt the Budnicks' claims? The Budnicks say "no," contending that Bank of America Mortgage is not a national bank and that, in any event, they are not challenging the interest rate charged by Bank of America Mortgage. Bank of America Mortgage says "yes," noting that the Budnicks are, in essence, claiming that the rate of interest is usurious since usury is defined as the making of an "illegal profit" on a sum of money loaned to a borrower.

The court will begin by addressing whether Bank of America Mortgage is entitled to invoke the National [*6] Bank Act in the first instance. According to Bank of America Mortgage, it can because it is an operating division of Bank of America, which is a national bank. This is correct. [HN5]The National Bank Act empowers national banks, such as Bank of America, to conduct banking business through operating subsidiaries, such as Bank of America Mortgage. See *Wells Fargo Bank, N.A. v. Boutris,* 265 F. Supp. 2d 1162, 1168-69 (E.D. Cal. 2003); *see also* 12 U.S.C. § 24a(g)(3). This power allows operating subsidiaries to make mortgage loans and engage in related mortgage banking activities. *Wells Fargo Bank, N.A., v. Boutris,* 265 F. Supp.2d at 1168. Courts have uniformly "treated the activities of an operating subsidiary as being equivalent to the activities of the national bank." 265 F. Supp. 2d at 1169 (collecting cases). [1] The court will thus move on to the preemption issue.

> 1    The court notes that it would have been helpful if Bank of America Mortgage had provided a citation to authority germane to federal banking institutions rather than citing to Rule 17(b), which provides that the capacity of most entities to sue or be sued is governed by the law of the state in which the district court sits.

[*7] This turns on whether the Budnicks are, despite the wording of their complaint, claiming that the

2003 U.S. Dist. LEXIS 22542, *

amount of interest charged by Bank of America Mortgage is usurious. The Budnicks appear to be contending that the so-called unearned interest that is at the heart of their complaint is some sort of amorphous sum of additional money rolled into their loan, as opposed to interest that Bank of America Mortgage was not entitled to receive. Under this logic, the extra money rolled into the payoff statement and called "interest" would only transmute into actual "interest" day to day as it is earned.

[HN6]Section 86 of the National Bank Act allows recovery for "the taking, receiving, reserving, or charging a rate of interest greater than what is allowed under Section 85 of this Title." 12 U.S.C. § 86. The Supreme Court has held that sections 85and 86 provide an exclusive cause of action for excessive interest claims and thus "there is no such thing as a state-law claim of usury against a national bank." *Beneficial National Bank v. Anderson,* 539 U.S. 1, 156 L. Ed. 2d 1, 123 S. Ct. 2058, 2063 (2003). As noted above, the activities of an operating subsidiary are treated [*8] like the activities of a national bank so this rule is equally applicable to Bank of America Mortgage. *Wells Fargo Bank, N.A. v. Boutris,* 265 F. Supp.2d at 1169.

Regardless of the Budnicks' characterization of the unearned interest, they are in fact attacking the overall amount of interest charged by Bank of America Mortgage. As the saying goes, if it walks like a duck and quacks like a duck, it must be a duck. The "unearned interest" only exists because the payoff statement prepared by Bank of America Mortgage included an *anticipated per diem interest charge* for a date which turned out to be past the actual closing date. The unearned interest is a bonus amount of interest that was unearned and thus was due back to the Budnicks. The Budnicks, therefore, are raising a state law usury claim based on an excessive interest charge. *See* 45 Laura Dietz & Anne M. Payne, American Jurisprudence, Interest and Usury § 2 (2d ed.2002) [HN7]("Usury is the receiving, securing, or taking of a greater sum or value for the loan or forbearance of money, goods, or things in action than is allowed by law, the exaction of a greater sum for the use of money than the highest rate of interest [*9] allowed by law"); *General Motors Acceptance Corp. v. Kettelson,* 219 Ill. App. 3d 871, 580 N.E.2d 187, 162 Ill. Dec. 561 (2d Dist. 1991) (defining usury as an illegal profit received by a lender in connection with a sum of money loaned to a borrower). Accordingly, their unearned interest claims are preempted by federal law.

### III. Conclusion

For the above reasons, the Budnicks' motion to remand [7-1] is denied.

DATE: DEC 15 2003

Blanche M. Manning

United States District Judge

# EXHIBIT B

LEXSEE

**CROSS-COUNTY BANK, a Delaware Corporation, and APPLIED CARD SYSTEMS, INC., a Delaware corporation, Petitioners, v. DANA KLUSSMAN, an individual, Respondent.**

**No. C-01-4190 SC**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

*2004 U.S. Dist. LEXIS 7835*

**April 30, 2004, Decided
April 30, 2004, Filed; April 30, 2004, Entered in Civil Docket**

**PRIOR HISTORY:** *Cross-Country Bank v. Klussman, 74 Fed. Appx. 796, 2003 U.S. App. LEXIS 18716 (2003)*

**DISPOSITION:** [*1] Plaintiff's motion to dismiss for lack of federal subject matter jurisdiction granted, and action REMANDED to the Superior Court of the State of California, Alameda County.

**COUNSEL:** For Cross-County Bank, a Delaware corporation, Applied Card Systems, Inc., a Delaware corporation, Plaintiffs: Alan S. Kaplinsky, Ballard Spahr Andrews & Ingersoll, Philadelphia, PA. Martin C. Bryce, Jr., Ballard Spahr Andrews & Ingersoll, Philadelphia, PA. William L. Stern, Severson & Werson, San Francisco, CA.

For Dana Klussman, an individual, Defendant: Robert J. Donovan, Esq., Robert J. Donovan, San Rafael, CA. Kenneth G. Gilman, Gilman & Pastor, LLP, Saugus, MA. Robert Mills, The Mills Law Firm, San Rafael, CA.

**JUDGES:** Samuel Conti, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Samuel Conti

**OPINION**

ORDER RE: RESPONDENT'S MOTION TO DISMISS FOR LACK OF FEDERAL JURISDICTION

**I. INTRODUCTION**

Presently before the Court are Respondent Dana Klussman's ("Respondent," "Plaintiff" or "Klussman") Motion to Dismiss for lack of federal jurisdiction and

Cross Country Bank's ("CCB") and Applied Card System, Inc.'s ("ACS") (collectively "Petitioners" or "Defendants") Petition to Compel Arbitration. For the reasons set [*2] forth below, this Court hereby: (1) declines to address the arbitration issue raised in the motion filed by CCB and ACS, (2) dismisses the action commenced by CCB and ACS against Dana Klussman, and (3) remands Dana Klussman's action against CCB, ACS, et al. to the Superior Court of the State of California, Alameda County, for lack of federal subject matter jurisdiction.

**II. BACKGROUND**

On October 9, 2001, Dana Klussman, on behalf of herself and all others similarly situated, filed a class action against CCB, ACS, and others in the Superior Court for the State of California, Alameda County. (*Klussman v. Cross Country Bank et. al.,* Case No. 2001-02668). In her original complaint, Plaintiff set forth seven causes of action which all sounded in state law. Plaintiff's claims all related to interactions that Klussman and other class members had with the Defendants in connection with credit cards issued to them by CCB.

On November 9, 2001, pursuant to the Federal Arbitration Act, *9 U.S.C. § 4*, CCB and ACS filed a Petition to Compel Arbitration in this Court in an action styled *Cross Country Bank et al. v. Dana Klussman.* In their Petition Defendants [*3] argue that an arbitration provision in the agreements between Plaintiff and Defendants obligate Plaintiff to submit to binding arbitration for resolution of Plaintiff's underlying claims.

On November 13, 2001, CCB and ACS filed a Notice of Removal, pursuant to which Klussman's state court action was removed to this Court. CCB and ACS asserted that this Court had subject matter jurisdiction because Section 521 of the Depository Institutions De-

regulation and Monetary Control Act of 1980 ("DIDA"), *12 U.S.C. § 1831d*, completely preempts Klussman's state law claims. The removed action was related to the Petition filed by CCB and ACS, and on May 15, 2002 this Court heard Petitioner's Motion to Compel Arbitration and Klussman's motions to dismiss the action against her and remand her complaint back to state court. In its May 15, 2002 Order this Court (1) declined to address the arbitration issue raised in the motion filed by CCB and ACS, (2) dismissed the action commenced by CCB and ACS against Dana Klussman, and (3) remanded Dana Klussman's action against CCB, ACS, et al. to the Superior Court of the State of California, Alameda County, for lack of subject matter [*4] jurisdiction.

On September 8, 2003, the Ninth Circuit vacated this Court's Order in light of the United States Supreme Court's decision in *Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 123 S. Ct. 2058, 156 L. Ed. 2d 1 (2003)*. See *Cross-Country Bank v. Klussman, 74 Fed.Appx. 796, 2003 WL 22088801 (9th Cir. Sept. 8, 2003)*. The Ninth Circuit remanded the case to this Court to decide whether the allegations in Klussman's complaint are completely preempted under the reasoning in *Anderson*:

> While it appears that the rationale of the Supreme Court's decision in *Anderson* would extend to usury claims against state chartered, federally insured banks such as CCB, we do not decide this question. Instead, we remand to the district court for it to consider and decide, in the first instance, whether and the extent to which any of these allegations are preempted under *Anderson* and applicable law, providing a basis for federal jurisdiction. The district court is also instructed to consider the impact, if any, of federal regulations, such as *12 C.F.R. § 7.4001(a)*, on the issue of whether the charges at issue in the complaint [*5] constitute "interest" or are otherwise of a nature as to require preemption of state law challenges.

*74 Fed.Appx. at 797-98, 2003 WL 22088801, at *1.*

Consequently, this Court is again asked to decide whether the allegations in Klussman's complaint are completely preempted so as to confer original subject matter jurisdiction on this Court and provide a basis for Defendant's removal of Klussman's state court action. [1] Defendants argue that Klussman's allegations amount essentially to a claim for usury and thus are completely preempted according to the rationale of the Supreme

Court's decision in Anderson. Plaintiff adamantly argues that she has not asserted any usury claims against Defendants, and thus the case was improperly removed because there is no federal subject matter jurisdiction over this action. Plaintiff completely disavows any interpretation of her complaint which would include a claim alleging that she had been charged a rate of interest which is usurious under state law. Having read Plaintiff's complaint and the papers submitted in connection with this motion and for the reasons articulated below, the Court Hereby Grants Plaintiff's motion to [*6] dismiss for lack of federal subject matter jurisdiction and Hereby Remands this action to the Superior Court of the State of California, Alameda County, for lack of subject matter jurisdiction.

1    A separate issue is which of Plaintiff's complaints the Court should evaluate in making this determination. The appeal to the Ninth Circuit considered the question of federal subject matter jurisdiction only with respect to Klussman's original complaint. However, Klussman's action against CCB and ACS has been ongoing in state court since this Court's May 15, 2002 Order. The complaint has been amended three times, the most recent of which occurred on January 30, 2004. Klussman argues that this Court should look at her Third Amended Complaint in deciding whether there is federal subject matter jurisdiction in this case, while CCB and ACS argue that it is still the original complaint that controls this determination. This issue will be addressed subsequently.

## III. LEGAL STANDARD

### A. Removal Jurisdiction

[*7] Federal courts have limited subject matter jurisdiction. A suit filed in state court may be removed to federal court only if the federal court would have had original subject matter jurisdiction over the suit. *28 U.S.C. § 1441(a); Caterpillar, Inc. v. Williams, 482 U.S. 386, 96 L. Ed. 2d 318, 107 S. Ct. 2425 (1987)*. Remand to state court may be ordered for lack of subject matter jurisdiction under *28 U.S.C. § 1447(c)*). Ordinarily, "jurisdiction must be analyzed on the basis of the pleadings filed at the time of the removal without reference to subsequent amendments". *Sparta Surgical Corp. v. Nat'l Ass'n of Secs. Dealers, Inc., 159 F.3d 1209, 1213 (9th Cir.1998)*. A plaintiff may not compel remand under *28 U.S.C. § 1441(b)* by amending a complaint to eliminate the federal question on which the notice of removal was based. Id.

Out of respect for the independence of state courts, and in order to control the federal docket, the removal

statute is narrowly construed and the court must reject jurisdiction if there is any doubt as to whether removal was proper. *Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996)*; [*8] *Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992)*. Moreover, the burden of establishing federal jurisdiction is on the party seeking removal. *Duncan, 76 F.3d at 1485*. When the removal of an action to federal court is contested, "the burden falls squarely upon the removing party to establish its right to a federal forum by 'competent proof.'" *R.G. Barry Corp. v. Mushroom Makers, Inc., 612 F.2d 651, 655 (2nd Cir. 1979)*. Here, Defendants bear the burden of establishing by competent proof that the Court has subject matter jurisdiction over Plaintiff's claims.

B. Federal Question Jurisdiction and Complete Preemption

In this case Defendants argue that the Court has federal question jurisdiction over Plaintiff's claims. Federal question jurisdiction depends on whether the "action arise[s] under the Constitution, laws, or treaties of the United States." *28 U.S.C. § 1331*. In making this determination, a court generally must apply the "well-pleaded complaint rule." *Toumajian v. Frailey, 135 F.3d 648, 652 (9th Cir.1998)* (citing *Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63, 95 L. Ed. 2d 55, 107 S. Ct. 1542 (1987))*. [*9] Under this rule, the existence of a federal jurisdiction must be determined from the face of the plaintiff's well-pleaded complaint, without consideration of any defenses that are raised or anticipated. *Caterpillar, Inc., 482 U.S. at 393*. Moreover, the plaintiff is generally the master of his lawsuit and can avoid federal jurisdiction by relying exclusively on state law in his complaint. Id.

Federal preemption is typically raised as a defense to a plaintiff's cause of action. As such, this defense "does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." *Metropolitan Life, 481 U.S. at 63*. However, the Supreme Court has recognized an exception to the well-pleaded complaint rule: "Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Id. at 63-64*. Where an area of law is "completely preempted," any state-law complaint falling under that area of the law arises under federal law for purposes of the well-pleaded complaint rule. *Caterpillar, Inc., 482 U.S. at 393*. [*10] The complete preemption doctrine rests on the notion that, "on occasion ... the pre-emptive force of a statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson, 201 F.3d 1212, 1215 (9th Cir. 1999)*, as amended by *208 F.3d 1170 (9th Cir. 2000)*. Such claims are recharacterized as federal claims for purposes of determining removal jurisdiction notwithstanding the absence of a federal cause of action on the face of the complaint.

C. Complete Preemption of State Law Usury Claims Against National Banks

Sections 85 of the National Bank Act ("NBA"), *12 U.S.C. § 85*, limits the amount of interest [2] that a national bank may charge, and *section 86* provides the exclusive remedy for violations of that part. [3] Recently the United States Supreme Court determined that *sections 85 and 86* of NBA completely preempt state law usury claims against national banks. *Beneficial Nat. Bank v. Anderson, 539 U.S. 1, 123 S. Ct. 2058, 156 L. Ed. 2d 1 (2003)*. In Anderson, 26 individual [*11] plaintiffs filed suit in state court against a national bank for allegedly charging excessive interest in violation of both "the common law usury doctrine" and an Alabama usury statute. *Anderson, 123 S. Ct. at 2060*. The plaintiffs' complaint made no mention of any federal law. The defendant-bank then removed the action to federal court contending that *sections 85 and 86* of NBA completely preempt the field of usury claims against national banks. The Supreme Court agreed, finding that:

> In actions against national banks for usury, *[sections 85 and 86* of NBA] supersede both the substantive and the remedial provisions of state usury laws and create a federal remedy for overcharges that is exclusive, even when a state complainant, as here, relies entirely on state law. Because *§§ 85 and 86* provide the exclusive cause of action for such claims, *there is, in short, no such thing as a state-law claim of usury against a national bank.*

*Anderson, 123 S. Ct. at 2064* (emphasis added).

2 *12 C.F.R. § 7.4001(a)* defines the term "interest" for purposes of *section 85*. It provides, in relevant part:

> The term "interest" as used in *12 U.S.C. § 85* includes any payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended. It includes, among other things, the following fees con-

nected with credit extension or availability: numerical periodic rates, late fees, creditor-imposed not sufficient funds (NSF) fees charged when a borrower tenders payment on a debt with a check drawn on insufficient funds, over-limit fees, annual fees, cash advance fees, and membership fees.

[*12]

3   *Section 85*, *12 U.S.C. § 85*, provides in relevant part:

Any association may take, receive, reserve, and charge on any loan ... or other evidence of debt, interest at the rate allowed by the laws of the State ... where the bank is located, or at a rate of 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, whichever may be the greater, and no more....

*Section 86*, *12 U.S.C. § 86*, provides in relevant part:

The taking, receiving, reserving, or charging a rate of interest greater than is allowed by *section 85* of this title, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same....

[*13] 1. Section 521(a) of DIDA

*Section 521(a) of DIDA* established the maximum interest rate for loans made by state-chartered, FDIC-insured banks. [4] This statute effectively allows state-chartered, nationally insured banks such as CCB to choose among three interest rate ceilings: (1) the highest rate lawfully permitted without reference to *section 521*; (2) a rate not more than one percent above the discount rate on 90-day commercial paper in effect at the Federal Reserve Bank in the federal reserve district where the lender is located; or (3) the highest rate allowed by the laws of the state where the lender is located. The statute expressly preempts any conflicting state law. *Section 521(b) of DIDA* creates a federal remedy in favor of borrowers who are charged rates in excess of the limits established in *§ 521(a)*. [5] Borrowers may recover twice the amount of interest paid on a usurious loan, and the entire interest due on the loan will be deemed forfeited.

4   Section 521(a), *12 U.S.C. § 1831d(a)*, reads in relevant part:

In order to prevent discrimination against State-chartered insured depository institutions ... with respect to interest rates, if the applicable rate prescribed in this subsection exceeds the rate such State bank .. would be permitted to charge in the absence of this sub-section, such State bank ... may, notwithstanding any State constitution or statute which is hereby preempted for the purposes of this section, take, receive, reserve, and charge on any loan or discount made ... interest at a rate of not more than 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal Reserve Bank in the Federal Reserve district where such State ... bank is located or at the rate allowed by the laws of the State ... where the bank is located, whichever may be greater.

[*14]

5   Section 521(b), *12 U.S.C. § 1831d(b)*, reads in relevant part:

If the rate prescribed in subsection (a) exceeds the rate such State bank ... would be permitted to charge in the absence of this sec-

2004 U.S. Dist. LEXIS 7835, *

tion, and such State fixed rate is thereby preempted by the rate described in subsection (a), the taking, receiving, reserving, or charging a greater rate of interest than is allowed in subsection (a), when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon. If such greater rate of interest has been paid, the person who paid it may recover in a civil action commenced in a court of appropriate jurisdiction not later than two years after the date of such payment, an amount equal to twice the amount of the interest paid from such State bank taking, receiving, reserving, or charging such interest.

*Section 521 of DIDA* is the counterpart to *sections 85 and 86* of NBA. Prior to the enactment of DIDA in 1980, regulation of interest rates charged [*15] by state banks was solely a matter of state law. By contrast, NBA has regulated the interest rates chargeable by national banks since its enactment in 1864. In enacting DIDA, Congress was trying to create a measure of functional and competitive equality between national banks and state-chartered banks by permitting state-chartered banks to enjoy the same "most favored lender" status that national banks enjoy. *Greenwood Trust Co. v. Com. of Mass., 971 F.2d 818, 826-827 (1st Cir. 1992)* ("Congress tried to level the playing field between federally chartered and state-chartered banks when it enacted DIDA"). To assure that equalization, Congress made a conscious choice to incorporate much of the language and standards of *section 85* into DIDA. See *Hill v. Chemical Bank, 799 F. Supp. 948, 952 (D.Minn. 1992)* ("The key language of *§ 521* is substantially identical to the language of *§§ 85 and 86* of the National Bank Act . . ."). As a result, courts have held that *section 521 of DIDA* should be construed *in pari materia* with *sections 85 and 86* of the National Bank Act. See e.g., *Greenwood Trust Co., 971 F.2d at 826-828* ("The historical record [*16] clearly requires a court to read the parallel provisions of DIDA and the Bank Act *in pari materia*."); *Hill, 799 F. Supp. at 951-52.*

## IV. DISCUSSION

Before addressing Defendants' basis for removal of this action, we note that we are determining subject matter jurisdiction as evinced on the face of Plaintiff's Third Amended Complaint [6]. The Court is aware of the general rule that jurisdiction is determined from the face of the complaint at the time of removal, and that at the time this action was first removed Plaintiff had only submitted her original complaint. However, this rule is predicated on not allowing plaintiffs to amend their complaint after a notice of removal has been filed in an effort to defeat federal jurisdiction. Here, Plaintiff only amended her complaint after this Court determined there was no federal jurisdiction and remanded the case back to state court. This case proceeded in state court while the appeal to the Ninth Circuit was pending, and each amended complaint was filed by Plaintiff in state court in response to substantive motions brought by Defendants. [7] Under these circumstances, we think it makes little sense to resolve [*17] this motion on the basis of an outdated complaint that has been refined at the time and expense of the state court. We therefore exercise our discretion to evaluate jurisdiction here on the basis of Plaintiff's most recent complaint.

6    In her Third Amended Complaint, Plaintiff brings eight causes of action:

(1) Violation of the Consumers Legal Remedies Act, *California Civil Code § 1750 et seq.* (2) Violation of 6 Delaware Code *§ 2501 et seq.* for Unfair Business Practices;

(3) Breach of Contract for Defendants' alleged failure to post payments as of the date they were received;

(4) Breach of Contract for Defendants' alleged failure to grant customers promised credit line increases;

(5) Breach of contract for Defendants' alleged failure to honor the terms of the Credit Account Protection Plan;

(6) Breach of Contract for Defendants' alleged closing of customers' account without justification or notice;

(7) Fraud; and

(8) Violation of the Cartwright Act, *California Business*

*and Professions Code § 16700 et seq.*

[*18]    7  Defendants brought three separate demurrers and motions to strike part of Plaintiff's complaint, which gave rise to each of Plaintiff's amended complaints.

Defendants' argument is necessarily as follows. First, that Plaintiff's allegations fall under *§ 521(a) of DIDA* because they are actually usury claims which challenge the "rate of interest" charged by an FDIC-insured state bank; second, that *§ 521(a) of DIDA* is "substantially identical" to the language of *§§ 85and 86* of the National Bank Act ("NBA") and has been interpreted *in pari materia* with *sections 85and 86* of NBA; third, that NBA "completely preempts" state law usury claims against national banks; fourth, that *§ 521(a) of DIDA* must therefore completely preempt Plaintiff's claims; and fifth, consequently federal question jurisdiction exists making removal appropriate.

The Court finds that the first step in Defendants' chain of reasoning is flawed because it is based on an untenable characterization of Plaintiff's complaint. The Court finds that Plaintiff's claims are not in fact usury claims, that is claims challenging the [*19] "rate of interest" charged by an FDIC-insured state bank within the meaning of *section 521*. Because this error alone is enough to take the case outside of *28 U.S.C. 1331*, the Court will not analyze subsequent steps in Defendants' logic.

In this case, Plaintiff is challenging business practices they believe Defendants designed and implemented to defraud California consumers. Plaintiff alleges, *inter alia,* that Defendants misrepresented the nature and benefit of their services, placed unauthorized and undisclosed charges on customers' accounts, assessed late fees and other interest on these improper charges without informing customers, breached their express agreements with customers in various ways, and wrongfully closed consumers' accounts without reason and forced the consumer to pay fees to reopen the account. Third Amended Complaint. PP2, 11, 16-18, 25, 41, 66.

With regard to "interest," Plaintiff does not challenge the legality of the *rate* of interest charged by Defendants. Rather, Plaintiff claims that various interest fees were not disclosed, were unwarranted, were based on charges that were themselves improper, and in short, should never [*20] have been charged at all. The various references in the complaint to "late fees," "add-on fees," and other "interest" merely detail what Plaintiff saw as "insult added to injury", and do not themselves form the

basis for any usury claims. It is clear to the Court that it is not the *per se* amount of late fees or other "interest" that Plaintiff challenges here but rather the allegedly improper and deceptive manner in which it was charged. Hence, this is not a claim for usury. See e.g., *Carson v. H&R Block, Inc., 250 F. Supp.2d 669, 673 (S.D. Miss. 2003)* ("District court have overwhelmingly found that claims for failure to disclose interest charges are not within the scope of *§ 85 of the NBA*."); *Hunter v. Beneficial Nat. Bank USA, 947 F. Supp. 446, 451-52 (M.D.Ala. 1996)* (holding that a claim that the defendant fraudulently failed to disclose certain charges for interest was not a claim for usury.)

As stated above, *section 521(b) of DIDA* provides borrowers a cause of action when state-chartered, FDIC insured banks exceed the maximum interest rate chargeable on loans. The maximum rate is detailed in *section 521(a)*. In this case, Plaintiff makes no [*21] claim that Defendants exceeded the rate set forth under *section 521(a)*, or any other usury laws for that matter. In every claim where Plaintiff uses the word "unlawful" in connection with interest charged by Defendants, it is with reference to the statutory claims they asserted -- the California Consumer Legal Remedies Act, the *Delaware Unfair Practices Act*, and the Cartwright Act -- and not with respect to any usury laws. Nowhere does Plaintiff even identify a usury statute in her complaint, much less make it the basis for any of her claims. In these circumstances we cannot find that Plaintiff's claims are completely preempted by *section 521 of DIDA*. See *Hunter, 947 F. Supp. at 451* (to show that plaintiffs were actually asserting usury claims against a national bank, "Defendants have the burden of showing that plaintiffs are, in fact, claiming excessive interest rates in violation of some state law.").

The gravamen of Plaintiff's complaint is that Defendants misrepresented the nature and cost of their services, -- not that they charged a usurious rate of interest. As far as interest is concerned, Plaintiff merely contends that Defendants wrongfully assessed interest [*22] on charges that Plaintiff contends were improper. Plaintiff is not contesting the rate of interest Defendants assessed but the fact that it was assessed at all on charges she believes were assigned in bad faith. Just because Plaintiff refers to this interest as "excessive" or "exorbitant" *in this context* does not make this a claim for usury.

As a final point it should be noted that the Alameda County Superior Court has presided over this case for two and a half years. In addition, that court has heard arguments and entered orders on exactly the issue now before this Court, i.e., which of Plaintiff's claims may be presented in state court and which are preempted and has specifically held that any claim for usury will not be part of the state court action. Therefore, principles of comity

2004 U.S. Dist. LEXIS 7835, *

and judicial economy reinforce the Court's decision to-day.

## V. CONCLUSION

Remand is typically favored where federal jurisdiction is not clear. In this case federal jurisdiction is far from clear. Moreover, as stated, a plaintiff is "master" of his own complaint, and thus he is permitted to assert any particular theory of law notwithstanding the possibility that there are others which [*23] may provide him a cause of action. Therefore, the fact that Plaintiff has elected to pursue her claims under breach of contract, fraud, etc., does not justify removal even if Plaintiff also has unpursued claims that Defendants charged a usurious rate of interest. For all of these reasons, we find that

Plaintiff's complaint does not raise a federal question on its face and therefore this Court does not have jurisdiction over this action. The Court HEREBY GRANTS Plaintiff's motion to dismiss for lack of federal subject matter jurisdiction and HEREBY REMANDS this action to the Superior Court of the State of California, Alameda County.

**IT IS SO ORDERED.**

Dated: April 30, 2004

Samuel Conti

UNITED STATES DISTRICT JUDGE

# EXHIBIT C

FOCUS - 11 of 29 DOCUMENTS

**ROBYN EVANS and DENNIS J. BARELA, on behalf of themselves individually, and all others similarly situated, Plaintiffs, v. CHASE MANHATTAN BANK USA, N.A., Defendant.**

**No. C-05-3968 SC**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

*2006 U.S. Dist. LEXIS 5259*

**January 27, 2006, Decided**
**January 27, 2006, Filed**

**COUNSEL:** [*1] For Robyn Evans, Dennis J. Barela, on behalf of themselves individually, and all others similarly situated, Plaintiffs: Gretchen Arlene Carpenter, Brian Russell Strange, Strange & Carpenter, Los Angeles, CA; Barry Leonard Kramer, Law Offices of Barry L. Kramer, Los Angeles, CA.

For Chase Bank USA, N.A., Defendant: Angela L. Padilla, Morrison & Foerster LLP, San Francisco, CA; Nancy R Thomas, Morrison & Foerster LLP, Los Angeles, CA.

**JUDGES:** Samuel Conti, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** Samuel Conti

**OPINION**

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

**I. INTRODUCTION**

Robyn Evans and Dennis J. Barela ("Plaintiffs"), on behalf of themselves and all others similarly situated, allege that Chase Manhattan Bank USA, N.A. ("Chase" or "Defendant") improperly increased interest rates on credit card accounts in default, violating the Truth in Lending Act ("TILA"), the Cardmember Agreement, as well as state contract and fraud laws.

Presently before the Court is Chase's motion to dismiss Plaintiffs' eight claims pursuant to *Federal Rule of Civil Procedure ("FRCP") 12(b)(6)*. The Court, having reviewed the parties' submissions, hereby [*2] GRANTS Defendant's motion to dismiss.

**II. BACKGROUND**

Except as noted, the following allegations are taken from Plaintiffs' papers and will be assumed as true for purposes of the present motion.

Plaintiffs have two central grievances. First, Plaintiffs allege that Chase, without advance notice, increased cardmembers' interest rates because of a "single late payment to Chase, or . . . a reported late payment to some other creditor." Complaint P 2 ("Compl."). [1] Because Chase failed to give advance notice of a rate increase, customers in default often "do not become aware of rate increases for an extended period of time, and some customers never discover such increases or find out the reasons therefor." Id. P 17. The unfairness of this action is increased because Chase, Plaintiffs allege, fails to verify the accuracy of off-Chase delinquencies, thereby increasing rates based on false or inaccurate information. Id. PP 19, 20.

> 1   Plaintiff calls the first type an "on-Chase" delinquency and the second an "off-Chase" delinquency. Compl. at 4.

[*3]   Second, Plaintiffs bewail Chase's practice of backdating the rate increase to the beginning of the billing cycle. Id. P 9. Such unannounced and furtively applied rate increases are "unfair, unconscionable, and punitive." Id. P 20. Because these rate increases are imposed in addition to other late fees, "they constitute illegal penalties." Id. P 12.

Plaintiffs articulated these grievances in the Complaint. [2] The Complaint alleges that (1) Chase violated TILA, (2) Plaintiffs are owed declaratory relief and damages, (3) the Court should sever the unconscionable con-

tract terms, (4) the Court should declare that Chase is imposing and enforcing an illegal penalty, (5) Chase committed consumer fraud, (6) Chase breached its contract with Plaintiffs, (7) Chase breached the covenant of good faith and fair dealing, and (8) Chase's actions constitute unfair and deceptive practices under California law. Compl. at 25-26. [3]

> 2   It should be noted that Plaintiffs' counsel, Brian R. Strange, filed an action in March 2005 in the Superior Court for the County of Orange, California alleging similar claims against Chase, but with Faith Dugan and Jeanine Hill named as plaintiffs. See Defendant's Request for Judicial Notice in Support of Motion to Dismiss and Sanction, Ex. A at 1. Chase removed the case to Federal Court in the Central District of California. See Defendant's Memorandum in Support of Motion to Dismiss at 1. The Honorable Cormac J. Carney granted Chase's motion to dismiss with leave to amend. Id. Dugan and Hill filed an amended complaint and then voluntarily dismissed it in August 2005. Id., Ex. D at 1.

[*4]

> 3   The Complaint has two pages marked with "25." The second "25" is the 26th page.

### III. LEGAL STANDARD

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)*. "In reviewing a *12(b)(6)* motion, this Court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff." *Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996)*; see also *Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987)*. The complaint need not set out the facts in detail; what is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." *FRCP 8(a)*; see also *La Salvia v. United Dairymen, 804 F.2d 1113, 1116 (9th Cir. 1986)*. Thus, the Court's task "is merely to assess the legal feasibility of the complaint, [*5] not to assay the weight of the evidence which might be offered in support thereof." *Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998)*.

### IV. DISCUSSION

A. First Claim: Violations of TILA

Plaintiffs contend that Chase violated Regulation Z of TILA, *12 C.F.R. § 226.9(c)*, by "failing to notify its customers of increases in interest rates on or before the

effective date of the change." Compl. P 25. Plaintiffs bolster their contention by pointing to the fact that the APR increases are discretionary, are based on unknown factors, and are applied retroactively. Plaintiffs' Memorandum in Opposition to Motion to Dismiss at 7-8 ("Pls' Mem.").

Chase contends that Plaintiffs "misconstrue the scope of the notice provisions in Regulation Z," which, Chase asserts, does not apply to the facts at hand. Defendant's Memorandum in Support of Motion to Dismiss at 5 ("Def's Mem."). Specifically, Chase contends that "Plaintiffs point to no change in Chase's terms. Rather, the increases complained of are the implementation of terms explicitly disclosed to Plaintiffs." Id.

Regulation Z, *12 C.F.R. § 226.9(c) (1)* [*6], requires creditors to notify consumers whenever "any term required under *§ 226.6* is changed." The Official Staff Commentary to Regulation Z ("Commentary"), requires Chase to provide written notice "if there is an increased periodic rate or any other finance charge attributable to the consumer's delinquency or default." *12 C.F.R. pt. 226, Supp. I, § 226.9 (c)(1), cmt. 3.* [4] The Commentary goes on to state, however, that "[n]o notice of a change in terms need be given if the specific change is set forth initially, such as: [r]ate increases under a properly disclosed variable-rate plan." *12 C.F.R. pt. 226, Supp. I, § 226.9(c),* cmt. 1.

> 4   The Commentary, which is put forth by the Board of Governors of the Federal Reserve System is entitled to a great deal of deference. See *Anderson Bros. Ford v. Valencia, 452 U.S. 205, 219, 101 S. Ct. 2266, 68 L. Ed. 2d 783 (1981)*.

Under the Cardmember Agreement, Chase "may vary" a cardmember's Annual Percentage Rate ("APR") if certain circumstances exist, including if the cardmember is "in [*7] default under this agreement . . . [or if he] fail[s] to make *a* payment to another creditor when due." Declaration of Melissa Beck in Support of Defendant's Motion to Dismiss, Ex. B at 3 ("Beck Decl."). The Cardmember Agreement also states that the "default rate will take effect as of the first day of the billing cycle in which the default occurs, and will apply to purchase balances from the previous billing cycle for which periodic finance charges have not been already billed." Id.

The Court finds that Plaintiffs have failed to allege facts sufficient to sustain their claim under TILA. The Commentary, as stated above, states that creditors need not give notice if the specific change is set forth initially, such as in a variable rate plan. The Cardmember Agreement gives cardmembers notice of these changes.

On a final note, the Court is unimpressed by Plaintiffs' complaints that the rate increases are discretionary,

that they are based on unknown factors, and that the rate increases are retroactive. These complaints have nothing to do with Regulation Z's notice requirements. The Official Staff Commentary to Regulation Z states that "notice must be given if the contract [*8] allows the creditor to increase the rate at its discretion but does not include specific terms for an increase." *12 C.F.R. pt. 226, Supp. I, § 226.9(c)*, cmt. 1. According to the Commentary, because Chase's Cardmember Agreement discloses the specific terms for its increases, it is not bound by Regulation Z's notice requirements. [5] Similarly, because Chase gives the reasons for its rate changes, Plaintiffs' contention that they are based on unknown factors is simply not accurate. Finally, that Chase applies rate increases retroactively is disclosed by the Cardmember Agreement.

> 5 Chase discloses the maximum rate it will set an APR in the event of a cardmember's default. The Cardmember Agreement states that "[i]f any of these [default] events occurs, we may increase the APRs (including any promotional APR) on all balances up to a maximum of the default rate stated in the Rates and Fees Schedule." Beck Decl., Ex. B at 3.

The Court grants Defendant's motion and dismisses Plaintiffs' first claim.

B. Second, [*9] Third and Fourth Claims: Request for Declaratory Relief, Severance of Terms, and Damages

Plaintiffs' second, third and fourth claims are based on the alleged unconscionability of certain terms in the Cardmember Agreement. See Compl. PP 33-51.

Plaintiffs, in these claims, contend that the terms are unconscionable because cardmembers "have no choice with respect to the inclusion of the terms of the standard credit card agreement, nor the amount of the interest rate increases." Compl. P 34. Specifically, Plaintiffs' second claim asks the Court for a "determination and a declaration that these provisions [penalizing rate increases, backdating charges, basing penalties on off-Chase delinquencies] constitute an illegal penalty and as such are unconscionable and unenforceable," and for "damages to the extent Chase has enforced the [unconscionable and illegal] terms." Id. P 38-39. Plaintiffs' third claim asks the Court to sever the unconscionable contract terms and for appropriate damages. Id. PP 44-45. Plaintiffs' fourth claim asks the Court for an order "preliminarily and permanently enjoining Chase from further enforcement and collection of [improperly] increased finance [*10] charges." Id. P 51. Plaintiffs also ask the Court to order Chase to make restitution and disgorge its profits. Id.

Chase contends that the provisions cannot be unconscionable because they are "authorized by the law of Chase's home state, Delaware." Def's Mem. at 7.

The Cardmember Agreement states that the terms of the agreement "shall be governed and interpreted in accordance with . . . the law of Delaware." Beck Decl., Ex. B at 6. Under Delaware law, a "contract of adhesion may be declared unenforceable, in whole or in part, if its terms are unconscionable within the meaning of *6 Del.C. § 2-302*." Del. C. *§ 2-302* states that the court must determine whether a contract or clause is unconscionable as a matter of law.

*Section 944* of the Delaware Banking Act, *5 Del. C. § 944*, states that "[i]f the agreement governing the revolving credit plan so provides, the . . . rates of interest under such plan may vary in accordance with a schedule or formula." The Delaware Banking Act states that:

> a permissible schedule or formula may include provision in the agreement governing the plan for a change in . . . rates of interest [*11] applicable to all or any part of outstanding unpaid indebtedness contingent upon the happening of any event or circumstance specified in the plan, which event or circumstance may include the failure of the borrower to perform in accordance with the terms of the plan. [6]

Id. The Cardmember Agreement, by describing what events will cause default rates to go into effect, complies with these requirements.

> 6 Plaintiffs contend that there is "no such schedule or formula' specified in the Cardmember Agreements or otherwise provided to Chase customers . . . Chase's rate increase in the event of a default may or may not be imposed by Chase, and the amount of any increase is discretionary. A discretionary rate increase in an unstated amount is not a change in accordance with a schedule or formula.'" Pls' Mem. at 14.
>
> This analysis blinks the very words of *Section 944*. The statute declares that a permissible formula or schedule can be based on the occurrence or non-occurrence of an event or circumstance described in the agreement, such as we see in the Cardmember Agreement.

[*12] Therefore, the Court finds that the terms are not unconscionable because they are specifically authorized by statute. If Delaware law were silent as to this issue, Plaintiffs' unconscionability contention may have

2006 U.S. Dist. LEXIS 5259, *

had some weight. Where, as here, Delaware law not only speaks directly to the issue, but specifically authorizes the custom, the Court will not declare the terms unconscionable.

Plaintiffs' assertion that the terms are unconscionable becomes, then, to a challenge of the law itself. Unless a law is found to be constitutionally infirm, it is legitimate and enforceable, however unfair the law may seem to allegedly aggrieved persons. Plaintiffs have not contended that the statute is unconstitutional or otherwise infirm.

There are three points the Court wishes to address as a coda to its dismissal of Plaintiffs' second, third and fourth claims.

First, the Court finds no merit in Plaintiffs' contention that the rate increases are "unenforceable penalties." Pls' Mem. at 17. To support their contention, Plaintiffs cite a nineteenth-century Nebraska Supreme Court case and a 1999 New Jersey Supreme Court case. Id. at 18. For obvious reasons, the Court will not concern itself [*13] with those cases. The only possibly relevant case Plaintiffs mention, *S.H. Deliveries v. Tristate Courier & Carriage, 1997 Del. Super LEXIS 217 (Del. Super. Ct., July 16, 1997)*, an unpublished case, concerns the question whether a stipulated sum provision in a contract constitutes liquidated damages or a penalty. This case is inapposite to the facts of the instant action.

Second, Plaintiffs declare that under *6 Del. C. § 2-302(2)*, the "question of whether a contractual provision is unenforceable requires an evidentiary hearing." Pls' Mem. at 19. The Court finds no such requirement in the statute. Furthermore, the Court has already determined that an allegation of unconscionability is a challenge to the law itself, a challenge Plaintiffs have not formally brought.

Third, the Court is unmoved by Plaintiffs' statement that they "do not contend that the default' interest rates imposed by Chase are unlawful in and of themselves. Rather, it is the manner in which the increases are imposed to which plaintiffs object." Pls' Mem. at 17. "This manner directly violates federal laws, Delaware laws, and Chase's own contracts." Id.

The Court has [*14] already addressed these contentions. The Court determined previously that, based on the alleged facts, Chase's actions do not violate federal law. As stated previously, Plaintiffs have not alleged sufficient facts that the manner violates Delaware laws or the contract.

Because the Court finds that the terms are not unconscionable under the facts pled, the Court dismisses Plaintiffs' second, third, and fourth claims. [7]

7  In their opposition, Plaintiffs appear to allege that Chase's "practices for off-Chase delinquencies violate the Fair Credit Reporting Act." Pls' Mem. at 19-20.

*Federal Rule of Civil Procedure 7(a)* allows for the following forms of pleading: a complaint, an answer, a reply to a counterclaim, an answer to a cross-complaint, a third-party complaint, and a third-party answer. "No other pleading shall be allowed, except that the court may order a reply to answer or a third-party answer." Id.

In the instant case, if this is a new claim, this is the first the Court has heard of it. If this is a new claim, the Court will not address it because it has not been properly brought before the Court through an appropriate form of pleading required by *Federal Rule of Civil Procedure 7(a)*.

[*15]   C. Fifth Claim: Consumer Fraud under Delaware Law Plaintiffs claim that Chase's actions (i.e., failure to timely notify customers about increased APRs, apply rate increases retroactively, concealment of how new APRs are determined, use of off-Chase defaults) constitute consumer fraud under the Delaware Consumer Fraud Act, *6 Delaware Code §§ 2511-2527*. See Compl. PP 52-59 t 18-21.

Chase contends that because Plaintiffs have failed to allege any misrepresentation or omission -- all terms being plainly stated in the Cardmember Agreement -- they cannot state a claim under this statute. Def's Mem. at 12.

The specific statute, *6 Delaware Code § 2513(a)*, makes it unlawful for any person to use any "deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with the intent that others rely" on the deception "in connection with the sale, lease or advertisement of any merchandise."

The Court finds that Plaintiffs have not stated a claim for consumer fraud. Rather than practicing concealment or making false promises, Chase, from the beginning of the contractual [*16]  relationship, notifies cardmembers of the actions it may take in the event of a default. Specifically, the Cardmember Agreement notifies cardmembers that Chase may change a Cardmember's APR, that it would apply rate increases retroactively, and that it "may consider" various factors in determining a new APR, such as off-Chase delinquencies. Beck Decl., Ex. B at 3.

The Court grants Defendant's motion and dismisses this claim.

D. Sixth Claim: Breach of Implied Contract

Case 1:08-cv-00184    Document 46    Filed 06/13/2008    Page 38 of 72

Page 5
2006 U.S. Dist. LEXIS 5259, *

Plaintiffs assert that because the Cardmember Agreement incorporates federal law, Chase is bound by the notification requirements of Regulation Z. Compl. P 61. By failing to properly notify customers as Regulation Z requires, Plaintiffs contend Chase has breached an implied contract created by federal law. Id.

The Court finds that this is a reiteration of Plaintiffs' first claim and dismisses it for the same reasons. The Cardmember Agreement provides notice that Chase may vary a cardmember's APR. Regulation Z does not require any additional action from Chase. So, even if federal law applies, Chase has not, under the facts alleged, infracted it.

The Court grants Defendant's motion and dismisses Plaintiffs' [*17] sixth claim.

E. Seventh Claim: Breach of the Covenant of Good Faith and Fair Dealing

Plaintiffs contend that by taking the contested actions, Chase breached the covenant of good faith and fair dealing implicit in all contracts.

Judge Carney, as described in Footnote 2, dismissed a similar claim made by Counsel Strange's previous clients by declaring that "Plaintiffs' Second Cause of Action for tortious breach of the implied covenant of good faith and fair dealing is deficient because it seeks to imply terms into the parties' agreement that are inconsistent with the express terms of their agreement and impose new obligations on Defendant." Def's Req., Ex. B at 1.

The Court finds no reason to depart from the reasoning and conclusion of Judge Carney, and therefore the Court grants Defendant's motion and dimisses Plaintiffs' seventh claim.

F. Eighth Claim: Unfair and Deceptive Practices under *California Civil Code § 1770*

Plaintiffs contend that Chase's actions constitute unfair and deceptive practices under. *California Civil Code §§ 1770(a)(5)* and *(19)*. Compl. P 74. Plaintiffs seek an order "enjoining defendant from [*18] employing the practices described in this complaint against any California resident." Id.

Plaintiffs quote the following portion of *California Civil Code § 1770*:

The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: . . . Representing that goods or services have

sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . Inserting an unconscionable provision in the contract.

Plaintiffs contend that Defendant's failure to notify consumers before a rate effect was put in place "constituted an implied representation that the APRs being charged had not been increased." Compl. at 24. Plaintiffs contend that by imposing retroactive rate increases Chase has "rendered its previous representations as to the characteristics of its services (namely, the APR interest rates) false." Id. P 75. Finally, Plaintiffs contend that the use of off-Chase delinquencies is "unconscionable." Id.

The Court finds that Plaintiffs [*19] have not alleged facts sufficient to state a claim for unfair or deceptive acts. First, because Chase was acting under the fully-disclosed terms of the contract, its actions cannot plausibly be labeled a deception. Second, the Court has already determined that the terms are not unconscionable.

G. Sanctions for Judge Shopping

Chase asks the Court to assess sanctions against Plaintiffs and Plaintiffs' counsel for judge-shopping. See Defendant's Request for Judicial Notice in Support of Motion to Dismiss and Sanctions.

A Court has inherent authority to sanction bad faith conduct by parties, such as judge-shopping. See *Hernandez v. City of El Monte, 138 F.3d 393, 398 (9th Cir. 1997).*

At present, the Court declines to exercise its authority on this issue. The Court will not at present determine whether Plaintiffs or Plaintiffs' counsel engaged in judge-shopping. Accordingly, the Court will not at this time assess sanctions against Plaintiffs or Plaintiffs' counsel.

The Court, however,

# V. CONCLUSION

The Court finds that Plaintiffs have not alleged facts sufficient to sustain claims of violations of TILA, state law, and contractual agreements.

[*20] Accordingly, the Court DISMISSES Plaintiffs' eight claims and thereby the Complaint and the case with prejudice.

IT IS SO ORDERED.

Dated: January 27, 2006

Samuel Conti

UNITED STATES DISTRICT JUDGE

# EXHIBIT D

LEXSEE 2008 U.S. APP. LEXIS 4581

**ROBYN EVANS; et al., Plaintiffs - Appellants, v. CHASE BANK USA, N.A., Defendant - Appellee.**

**No. 06-15212**

**UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

*2008 U.S. App. LEXIS 4581*

**February 13, 2008, Argued and Submitted, San Francisco, California**
**February 22, 2008, Filed**

**NOTICE:** PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**PRIOR HISTORY:** [*1]

Appeal from the United States District Court for the Northern District of California. D.C. No. CV-05-03968-SC. Samuel Conti, District Judge, Presiding.
*McCoy v. Chase Manhattan Bank USA, 2006 U.S. Dist. LEXIS 97257 (C.D. Cal., Aug. 10, 2006)*
*Evans v. Chase Manhattan Bank USA, N.A., 2006 U.S. Dist. LEXIS 5259 (N.D. Cal., Jan. 27, 2006)*

**DISPOSITION:** AFFIRMED.

**COUNSEL:** For ROBYN EVANS, DENNIS J. BARELA, on behalf of themselves individually and all others similarly situated, Plaintiffs - Appellants: Gretchen Carpenter, Esq., STRANGE & CARPENTER, Los Angeles, CA; Barry L. Kramer, LAW OFFICES OF BARRY L. KRAMER, Los Angeles, CA.

For CHASE BANK USA, N.A., Defendant - Appellee: Angela Padilla, MORRISON & FOERSTER, LLP, San Francisco, CA; Robert S. Stern, Esq., Nancy R. Thomas, Esq., MORRISON & FOERSTER, LLP, Los Angeles, CA.

For CALIFORNIA BANKERS ASSOCIATION, Amicus: David W. Moon, Esq., STROOCK & STROOCK & LAVAN, Los Angeles, CA.

**JUDGES:** Before: SILVERMAN, McKEOWN, and TALLMAN, Circuit Judges.

**OPINION**

MEMORANDUM *

* This disposition is not appropriate for publication and is not precedent except as provided by *9th Cir. R. 36-3.*

Before: SILVERMAN, McKEOWN, and TALLMAN, Circuit Judges.

Plaintiffs appeal the district court's *Rule 12(b)(6)* dismissal of their complaint against Chase Bank. Plaintiffs assert that Chase Bank violates the Truth in Lending Act and Delaware and California law by imposing, without additional notice, [*2] interest rate increases retroactive to the start of billing cycles after card members default as defined in the agreements. We have jurisdiction pursuant to *28 U.S.C. § 1291* and review de novo. *Orkin v. Taylor, 487 F.3d 734, 738 (9th Cir.), cert. denied, 128 S.Ct. 491, 169 L. Ed. 2d 340 (2007)*. We affirm.

Plaintiffs assert that the Truth in Lending Act and Regulation Z, *12 C.F.R. § 226.9(c)*, require that Chase send change-in-terms notices prior to implementing discretionary interest rate increases after default. However, the current regulation, as interpreted by the Federal Reserve Board, does not require change-in-terms notices for discretionary interest increases due to default if the initial disclosures set forth the specific terms for increases of the finance charge. *12 C.F.R. § 226.9(c) (2007); 12 C.F.R. § 226 Supp. I, cmt. 9(c)(1) (2007); Truth in Lending, 72 Fed. Reg. 32948-01, 33009 (proposed June 14, 2007); Truth in Lending, 69 Fed. Reg. 70925-01, 70931-32 (proposed Dec. 8, 2004); Truth in Lending, Final Rule, 46 Fed. Reg. 20848-01, 20863 (Apr. 7, 1981)*. The card member agreements provide the necessary specific terms for increases in the event of default and Chase increases rates consistent with [*3] the agreements. Moreover, because no change-in-terms notice is required, Chase complies with Regulation Z, *12 C.F.R. § 226.7(d)*, when it applies the increased interest rate to the first day of the billing cycle in which the interest rate increases. *72 Fed. Reg. at 33009; 69 Fed. Reg. at 70931-32*. As a

2008 U.S. App. LEXIS 4581, *

result, Chase has not violated Regulation Z and the district court did not err in dismissing the Truth in Lending and related state law claims for failure to state a claim upon which relief can be granted.

To the extent that plaintiffs assert that California and Delaware law independently require disclosure or notice, the state claims are preempted by the National Bank Act, *12 U.S.C. § 24* (Seventh) and *12 C.F.R. § 7.4008(d)(2)(viii). See Rose v. Chase Bank USA, N.A., 513 F.3d 1032, 2008 WL 185491, at *3 (9th Cir. 2008).*

AFFIRMED.

# EXHIBIT E

LEXSEE



Caution
As of: Jun 08, 2008

**JOHN FORNESS, JARED KNOCKER, ESTHER RINKER, DWAYNE SHAW,
KENDRA HORGAN, TERI MOORE, and LARRY AGNE, Plaintiffs, v. CROSS
COUNTRY BANK, INC. and APPLIED CARD SYSTEMS, INC., Defendants.**

**No. 05-CV-417-DRH**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
ILLINOIS**

**2006 U.S. Dist. LEXIS 3423**

**January 13, 2006, Decided
January 13, 2006, Filed**

**SUBSEQUENT HISTORY:** Motion granted by Forness
v. Cross Country Bank, Inc., 2006 U.S. Dist. LEXIS
11906 (S.D. Ill., Mar. 20, 2006)

**DISPOSITION:**      [*1]  Plaintiff's motion to remand
denied.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff consumers sued
defendants, a bank and its affiliate, in an Illinois state
court under the Illinois Consumer Fraud and Deceptive
Business Practices Act, 815 Ill. Comp. Stat. 505/1 et
seq., and for unjust enrichment and breach of the cove-
nant of good faith and fair dealing. Defendants removed
the action to federal district court. The consumers moved
to remand to state court.

**OVERVIEW:** The consumers' claims arose from defen-
dants' credit card services; the consumers alleged, inter
alia, that defendants charged fees that bore no relation-
ship to costs and constituted unlawful penalties. Defen-
dants argued that the case was removable under 28
U.S.C.S. § 1441 because, to the extent that the consum-
ers challenged the relationship between fees and costs,
their claims were usury claims and were preempted by
federal law. The court agreed, finding that § 521(a) and
(b) of the Depository Institutions Deregulation and
Monetary Control Act of 1980 (DIDA), 12 U.S.C.S. §
1831d(a) and (b), which completely preempted any state

law limiting the amount of interest and fees that could be
charged by a federally insured state-chartered bank, ap-
plied to the consumers' claims. Although the consumers
argued that they "mainly" contested the validity of de-
fendants' practices, part of the substance of their com-
plaint challenged defendants' fees as excessive, which
amounted to a usury claim. As a common nucleus of fact
existed with respect to the consumers' other claims, sup-
plemental jurisdiction existed under 28 U.S.C.S. §
1367(a).

**OUTCOME:** The consumers' motion to remand was
denied.

**CORE TERMS:** consumer, removal, state-law, national
bank, preemption, charging, federal law, late fees, fed-
eral question, original jurisdiction, contest, good faith,
civil action, rate of interest, deceptive, preempted,
mainly, state law, pertinent part, evidence of debt, well-
pleaded, overlimit, excessive, covenant, preempt, state
claim, trade practices, unjust enrichment, fair dealing,
payments received

**LexisNexis(R) Headnotes**

*Civil Procedure > Removal > Elements > Removability
Evidence > Procedural Considerations > Burdens of
Proof > Allocation*

[HN1]A defendant may remove a case only if a federal district court would have original jurisdiction over the action. 28 U.S.C.S. § 1441. Statutes providing for removal are construed narrowly, and doubts about removal are resolved in favor of remand. The burden of establishing jurisdiction in the federal courts falls on the party seeking removal.

*Civil Procedure > Removal > General Overview*
[HN2]See 28 U.S.C.S. § 1441.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions > Well-Pleaded Complaint Rule*
*Civil Procedure > Removal > Basis > Federal Questions*
[HN3]Under the well-pleaded complaint rule, federal question jurisdiction exists only when a federal question is presented by a plaintiff's complaint. If no federal cause of action is affirmatively stated on the face of the complaint, removal on the basis of federal question jurisdiction is improper. The presence of a federal defense, including preemption, does not provide a basis for removal.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions > Well-Pleaded Complaint Rule*
*Civil Procedure > Removal > Basis > Federal Questions*
*Constitutional Law > Supremacy Clause > Federal Preemption*
[HN4]Complete preemption is an exception to the well-pleaded complaint rule, and functions as a basis for the removal to federal court of otherwise well-pleaded state-law claims. Complete preemption occurs where Congress intends a federal statute to completely preempt state-law causes of action, such that state-law claims effectively arise under federal law and therefore may be removed to federal court. That is, where a federal statute completely preempts the state-law cause of action, the claim, although pleaded in terms of state law, is in reality based on federal law, and therefore the claim is removable under 28 U.S.C.S. § 1441(b).

*Banking Law > Federal Acts > National Bank Act*
*Banking Law > National Banks > Interest & Usury > Usury Litigation*
*Constitutional Law > Supremacy Clause > Federal Preemption*

[HN5]The National Bank Act provides the exclusive remedy for usury claims against national banks, even when the complaint itself does not mention federal law. Uniform rules limiting the liability of national banks and prescribing exclusive remedies for their overcharges are an integral part of a banking system that needs protection from possible unfriendly state legislation, and therefore the relevant provisions of the National Bank Act supersede both the substantive and the remedial provisions of state usury laws and create a federal remedy for overages that is exclusive, even when a state complainant relies entirely on state law.

*Banking Law > National Banks > Interest & Usury > Interest*
[HN6]See 12 U.S.C.S. § 85.

*Banking Law > National Banks > Interest & Usury > Interest*
[HN7]Interest, for the purposes of 12 U.S.C.S. § 85, includes any payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended. It includes, among other things, the following fees connected with credit extension or availability: numerical periodic rates, late fees, creditor-imposed not sufficient funds fees charged when a borrower tenders payment on a debt with a check drawn on insufficient funds, overlimit fees, annual fees, cash advance fees, and membership fees. 12 C.F.R. § 7.4001(a).

*Banking Law > Federal Acts > Depository Institutions Deregulation & Monetary Control Act*
*Banking Law > National Banks > Interest & Usury > Interest*
*Banking Law > National Banks > Interest & Usury > Usury Litigation*
*Constitutional Law > Supremacy Clause > Federal Preemption*
[HN8]Section 521(a) and (b) of the Depository Institutions Deregulation and Monetary Control Act of 1980 (DIDA), 12 U.S.C.S. § 1831d(a)-(b), allows actions against state-chartered, FDIC-insured banks when such banks charge interest rates higher than the maximum allowable rate of interest. Because of virtually identical language in DIDA and the National Bank Act, and because of Congress's intent to incorporate the language of that Act into DIDA, courts have held that § 521(a) and (b) should be read together with 12 U.S.C.S. §§ 85 and 86. Section 521 of DIDA completely preempts any state

law attempting to limit the amount of interest and fees a federally insured state-chartered bank can charge.

***Banking Law > Federal Acts > Depository Institutions Deregulation & Monetary Control Act***
***Banking Law > National Banks > Interest & Usury > Interest***
[HN9]See 12 U.S.C.S. § 1831d(a).

***Banking Law > Federal Acts > Depository Institutions Deregulation & Monetary Control Act***
***Banking Law > National Banks > Interest & Usury > Interest***
***Banking Law > National Banks > Interest & Usury > Usury Litigation***
[HN10]See 12 U.S.C.S. § 1831d(b).

***Banking Law > National Banks > Interest & Usury > Usury Litigation***
***Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions > General Overview***
[HN11]Any substantive challenge to the amount of fees charged by federally insured state-chartered banks--no matter the size--raises a question of federal law.

***Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Same Case & Controversy***
[HN12]Federal courts may exercise jurisdiction over state-law claims when the claim is part of the same case or controversy as a claim for which independent federal jurisdiction exists, 28 U.S.C.S. § 1367(a). A state claim is part of the same case or controversy as a federal claim when the claims have a "common nucleus of operative fact," which exists when the relationship between the federal claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case."

***Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Supplemental Jurisdiction > Same Case & Controversy***
[HN13]See 28 U.S.C.S. § 1367(a).

**COUNSEL:** For John Forness, Jared Knocker, Esther Rinker, Dwayne Shaw, Kendra Horgan, Teri Moore, Larry Agne, Plaintiffs: David A. Nester, Nester & Constance, Generally Admitted, Belleville, IL; Jeffrey J. Lowe, Jeffrey J. Lowe, P.C., Generally Admitted, St.

Louis, MO; John S. Steward, Meyerkord & Steward LLC, St. Louis, MO.

For Cross Country Bank, Inc., Applied Card Systems, Inc., Defendants: Burt M. Rublin, Ballard, Spahr et al., Philadelphia, PA; Robert J. Bassett, Donovan, Rose et al., Generally Admitted, Belleville, IL.

**JUDGES:** David R. Herndon, United States District Judge.

**OPINION BY:** David R. Herndon

**OPINION**

**MEMORANDUM AND ORDER**

**HERNDON, District Judge:**

**I. Introduction**

Before the Court is a motion submitted by Plaintiffs John Forness, Jared Knocker, Esther Rinker, Dwayne Shaw, Kendra Horgan, Teri Moore, and Larry Agne (together, "Plaintiffs") to remand this case to state court. (Doc. 16.) Defendants Cross Country Bank and Applied Card Systems (together, "Defendants") respond in opposition. (Doc. 20.) A hearing was held in this matter on January 4, 2006. For the following reasons, the Court denies Plaintiffs' motion.

[*2] **II. Background**

Plaintiffs are a group of consumers who allege that Defendants "committed a variety of unfair and deceptive trade practices." (Doc. 2, Pls. Compl., P8.) Defendants are affiliated Delaware corporations engaged in the business of providing credit-card services to individuals. Plaintiffs allege three Counts of wrongdoing against Defendants: the first arises out of the **Illinois Fraud and Deceptive Practices Act, 815 ILL. COMP. STAT. 505/01 et seq.** ;("IFDPA") the second is for unjust enrichment and restitution; and the third is for breach of the covenant of good faith and fair dealing. (Doc. 2, Pls. Compl., pp. 8-9.)

Plaintiffs' complaint alleges that Defendants engaged in the following improper activities:

> a. Refusing to close accounts upon request by the consumer and/or falsely telling consumers that they may not close their accounts so that Cross Country can continue to charge the consumer's account for membership and other fees;

2006 U.S. Dist. LEXIS 3423, *

b. Falsely representing to consumers and to banks that Defendants have authorization to withdraw funds directly from the consumer's bank account, when in fact they have no such authorization;

c. Misleading [*3] consumers into believing that if they make a payment, they will not be charged late or other fees and then charging the fees anyway after the consumer agrees to the payment;

d. Failing to disclose to consumers that they will be charged a fee for paying by phone so that in cases where consumers believe they have paid off a balance by doing so, they actually are incurring a new charge; and

e. Charging a variety of fees, including late fees and overlimit fees which bear no relationship to costs and are unlawful penalties.

(Doc. 2, Pls. Compl., P8.) Plaintiffs focus in particular on the conduct discussed in (e) -- Defendants' alleged practices of charging fees that "bear no relation" to costs. (Doc. 2, Pls. Compl., pp. 8-9.) [1]

1 Count I (for violations of the IFDPA) alleges, in pertinent part, as follows:

Defendants represented in [their] credit card holder agreement various fees such as late fees, overlimit fees, and other fees that are unlawful penalties. . . . *Because there are no costs associated with the transactions* and in light of defendants charging interest in excess of 20%, these are unlawful penalties.... The deceptive, unfair practices as well as the suppressed or concealed facts were material.

Count II (for unjust enrichment and restitution) alleges:

Plaintiffs and members of the Class, in paying late fees, over limit fees, *and other fees that bear no relation to costs,* conferred a benefit upon the defendants in an amount to be determined. . . . Defendant, in continuing to *accept the fees that were significantly in*

*excess of the amount required to cover* its actual costs, appreciated and retained the benefit conferred by plaintiffs.

Count III (for breach of the covenant of good faith and fair dealing) alleges that

The duty of good faith in the enforcement of the contract required defendant to bill Plaintiffs and the Class members *only that amount that reflected the actual costs of processing payments received after the date due or over limit, etc. . . .* Defendants breached [their] covenant of good faith and fair dealing in the performance of the contract.

(Doc. 2, Pls. Compl., pp. 8-9 (emphasis added).)

[*4] Defendants, arguing for removal, rely on statutes and cases holding that if a suit challenges the amount of certain types of bank fees, then the claims in that suit are completely preempted by federal law and removal is therefore appropriate under **28 U.S.C. § 1441**. (Doc. 20, pp. 3-13.) Their argument is that because the claims in Plaintiffs' suit are, at least in part, premised on the relationship between Defendants' fees and costs, those claims are usury claims attacking fee amounts. *(Id.)* Plaintiffs, arguing for remand, disagree and claim that Defendants mischaracterize their complaint. In Plaintiffs' view, the claims they bring are "mainly based on allegations of deceptive trade practices of defendants which include not disclosing the existence of fees and finance charges, misleading plaintiffs in numerous respects regarding the basis for late fees as well as matters relating to their accounts." (Doc. 17, p. 11 (emphasis added).) In other words, Plaintiffs argue that they primarily challenge Defendants' practices, not the amount of their fees, and as such removal is inappropriate.

**III. Analysis**

**A. Removal**

[HN1]A defendant may remove [*5] a case only if a federal district court would have original jurisdiction over the action. See **28 U.S.C. § 1441; *Caterpillar Inc. v. Williams*, 482 U. S. 386, 392, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987).** [2] Statutes providing for removal are construed narrowly, and doubts about removal are resolved in favor of remand. ***Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993).** The burden of estab-

lishing jurisdiction in the federal courts falls on the party seeking removal. *Doe v. Allied Signal, Inc.,* 985 F.2d 908, 911 (7th Cir. 1993).

    2    In pertinent part, **28 U.S.C. § 1441** states:

> [HN2](a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending ....

> (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties ....

[*6] **B. Federal Question Jurisdiction**

[HN3]Under the well-pleaded complaint rule, federal question jurisdiction exists only when a federal question is presented by a plaintiff's complaint. *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987). If no federal cause of action is affirmatively stated on the face of the complaint, removal on the basis of federal question jurisdiction is improper. *Id.* The presence of a federal defense, including preemption, does not provide a basis for removal. *Id. at 393.*

[HN4]Complete preemption, however, is an exception to the well-pleaded complaint rule, and functions as a basis for the removal to federal court of otherwise well-pleaded state-law claims. Complete preemption occurs where Congress intends a federal statute to completely preempt state-law causes of action, such that state-law claims effectively arise under federal law and therefore may be removed to federal court. *Beneficial Nat'l Bank v. Anderson,* 539 U.S. 1, 7-8, 123 S. Ct. 2058, 156 L. Ed. 2d 1 (2003); *Caterpillar,* 482 U.S. at 393; *Nelson v. Stewart,* 422 F.3d 463, 466-67 (7th Cir. 2005). [*7] That is, "where a federal statute completely preempts the state-law cause of action, the claim, although pleaded in terms of state law, is in reality based on federal law, and therefore the claim is removable under **28 U.S.C. §**

**1441(b).**" *Fedor v. Cingular Wireless Corp.,* 355 F.3d 1069, 1071 (7th Cir. 2004).

**C. Preemption of State-Law Usury Claims**

One type of action the Supreme Court has found completely preempted is the state-law usury claim. In *Beneficial v. Anderson,* plaintiffs brought state-law claims for usury violations against a national bank. *Beneficial,* 539 U.S. at 3-5. The defendants sought to remove the case, arguing that the plaintiffs' claims were completely preempted by the **National Bank Act, 12 U.S.C. § 85** ("National Bank Act" or the "Act"). [3] The Court agreed, finding that [HN5]the National Bank Act provides the exclusive remedy for usury claims against national banks, even when the complaint itself does not mention federal law. *Beneficial,* 539 U.S. at 10. As it held, "uniform rules limiting the liability of [*8] national banks and prescribing exclusive remedies for their overcharges are an integral part of a banking system that need[s] protection from possible unfriendly State legislation,'" and therefore the relevant provisions of the National Bank Act "supercede both the substantive and the remedial provisions of state usury laws and create a federal remedy for overages that is exclusive, even when a state complainant, as here, relies entirely on state law." *Id.*

    3    **12 U.S.C. § 85** reads:

> [HN6]Any association may take, receive, reserve, and charge on any loan . . . or other evidence of debt, interest at the rate allowed by the laws of the State ... where the bank is located, or at a. rate of 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, whichever may be the greater, and no more.

> [HN7]Interest, for the purposes of **12 U.S.C. § 85,** includes:

> any payment compensating a creditor or prospective creditor for an extension of credit, making available of a line of credit, or any default or breach by a borrower of a condition upon which credit was extended. It includes, among other things, the following fees connected with credit extension or

2006 U.S. Dist. LEXIS 3423, *

availability: numerical periodic rates, late fees, creditor- imposed not sufficient funds (NSF) fees charged when a borrower tenders payment on a debt with a check drawn on insufficient funds, over-limit fees, annual fees, cash advance fees, and membership fees.

12 C.F.R. § 7.4001(a).

[*9]  This holding is applicable to the facts of this case through [HN8]**sections 521(a) and (b) of the Depository Institutions Deregulation and Monetary Control Act of 1980,** **12 U.S.C. § 1831d(a)-(b)** ("DIDA"). Those sections allow actions against state-chartered, FDIC-insured banks when such banks charge interest rates higher than the maximum allowable rate of interest. [4] Because of virtually identical language in **DIDA** and the **National Bank Act,** and because of Congress's intent to incorporate the language of that Act into **DIDA,** see *Greenwood Trust Co. v. Commonwealth of Massachusetts,* 971 F.2d 818, 826-27 (1st Cir. 1992) ("The historical record clearly requires a court to read the parallel provisions of **DIDA** and the **Bank Act** in *pari materia.")* , courts have held that **sections 521(a)** and **(b)** should be read together with **12 U.S.C. 85** and **86.** *See In re Community Bank,* 418 F.3d 277, 295 (3rd Cir. 2005) ("[Section] 521 of DIDA completely preempts any state law attempting to limit the amount of interest and fees a federally insured-state [*10] chartered bank can charge."); *Greenwood Trust,* **971 F.2d 818;** *Hill v. Chemical Bank,* 799 F. Supp. 948 (D. Minn 1992) **(Alsop, J.).**

    4   In pertinent part, **12 U.S.C. § 1831d(a)** states:

        [HN9]In order to prevent discrimination against state-chartered insured depository institutions ... with respect to interest rates ... such state bank[s] ... may, notwithstanding any state constitution or statute which is hereby preempted for the purposes of this section, take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidence of debt, interest . . . at the rate allowed by the laws of the state ... where the bank is located.

    **12 U.S.C. § 1831d(b)** states:

        [HN10]the taking, receiving, reserving, or charging a greater rate of interest than is allowed by subsection (a) of this section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note ... or other evidence of debt carries with it, or which has been agreed to be paid thereon. If such greater rate of interest has been paid, the person who paid it may recover in a civil action commenced in a court of appropriate jurisdiction not later than two years after the date of such payment, an amount equal to twice the amount paid from such State bank ... taking, receiving, reserving, or charging such interest.

[*11] **D. Complete Preemption of Plaintiffs' Claims**

    The complete-preemption question, therefore, hinges on whether Plaintiffs assert usury claims for excessive fees. Plaintiffs argue that their suit is "mainly" concerned with Defendants' deceptive practices, not the amount of their fees. Defendants, citing to language in the complaint, argue that Plaintiffs do contest fee amounts, and that any argument to the contrary amounts to an effective rewriting of the complaint. (Doc. 20, p. 2.)

    The Court agrees that Plaintiffs' complaint challenges the amounts of Defendants' fees. Each of Plaintiffs' three Counts focuses, to some extent, on the relationship between Defendants' fee amounts and the corresponding costs incurred. In Count I, for example, Plaintiffs indicate that "there are no costs associated with [Defendants' fees]," while in Count II Plaintiffs state that Defendants' fees are improper because they "bear no relation to [underlying] costs" and are "significantly in excess of the amount required to cover its actual costs." (Doc. 2, Pls. Compl., PP34, 38-39.) Similarly, in Count III Plaintiffs state that Defendants should only have billed Plaintiffs "the amount that reflected [*12] the actual costs of processing payments received after the date due or over limit, etc. . . ." These statements indicate that Plaintiffs do not merely contest the general manner in which Defendants assessed fees, but also the amounts of those fees and, more specifically, the lack of a connection between those amounts and the underlying costs actually incurred by Defendants. Under the logic of *Beneficial v. Anderson,* this invokes the complete-preemption doctrine.

While an argument could be made that Plaintiffs' statements should not be construed as challenging Defendants' fee amounts, but rather as supporting the larger claim that Defendants' web of interrelated charges was improper, Plaintiffs have not effectively made that argument. Instead, they have indicated that they "mainly" challenge Defendants' underlying improper practices. The implication behind this statement, of course, is that they do, in part, challenge the amount of Defendants' fees. Since [HN11]any substantive fee-amount challenge -- no matter the size -- raises a question of federal law, Plaintiffs' excessive-fee claims must be resolved by this Court.

Plaintiffs also rely on *Cross-County Bank v. Klussman*, 2004 U.S. Dist LEXIS 7835, 2004 WL 966289 (N.D. Cal. 2004) [*13] (Conti, J.) as persuasive authority for their argument that this case should be remanded. In that case, a court remanded a similar action because the "gravamen of [that plaintiffs'] complaint [was] that [the defendants there] misrepresented the nature and cost of their services, -- not that they charged a usurious rate of interest." *Klussman, 2004 U.S. Dist. LEXIS at *21-22.* The facts here are different. In this case, Plaintiffs have made clear -- both via repeated references to the relationship between Defendants' fees and costs and through statements that they "mainly" contest the validity of Defendants' practices -- that part of the substance of their complaint challenges Defendants' excessive fees. This amounts to a usury claim, and thus invokes complete preemption. Moreover, to the extent *Klussman's* plaintiffs challenged fee amounts, they did so only as to fees assessed on an already-improper set of charges. *Id.* That is not the case here. Here, Plaintiffs do not contest only the amounts of those fees assessed on top of improper charges; rather, they contest all of Defendants' fees as excessive. Because some of these fees were not assessed [*14] on other charges -- Defendants' origination fees, for example -- Plaintiffs' attack on the amounts of Defendants' fees raises a federal question.

### E. Supplemental Jurisdiction

[HN12]Federal courts may exercise jurisdiction over state-law claims when the claim is part of "the same case or controversy" as a claim for which independent federal jurisdiction exists, 28 U.S.C. § 1367(a). [5] A state claim is part of the same case or controversy as a federal claim when the claims have a "common nucleus of operative fact," *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966); *see also City of Chicago v. International Coll. of Surgeons,* 522 U.S. 156, 164-65, 118 S. Ct. 523, 139 L. Ed. 2d 525 (1997); *Groce v. Eli Lilly & Co.,* 193 F.3d 496, 500 (7th Cir. 1999), which exists when "the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'" *International Coll. of Surgeons,* 522 U.S. at 165 (quoting *Gibbs,* 383 U.S. at 725). [*15]

> 5  [HN13]"In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

Here, weighing the required factors of judicial economy, convenience, fairness, and comity, *see Wright v. Associated Insurance Cos.,* 29 F.3d 1244, 1251 (7th Cir. 1994) (citing *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988)); *see also International Coll. of Surgeons,* 522 U.S. at 172-73, the Court retains the balance of Plaintiffs' case. A common nucleus of fact clearly exists, and the four factors above militate against splitting this case into separate state and federal components.

### IV. Conclusion

[*16]  Therefore, for the above reasons the Court DENIES Plaintiffs' motion to remand. (Doc. 16.) Further, the Court grants Plaintiffs until Monday, February 13, 2006 to file a response to Defendants' motion to compel arbitration. (Doc. 21.).

**IT IS SO ORDERED.**

Signed this 13th day of January, 2006.

/s/ David R Herndon

**United States District Judge**

# EXHIBIT F

FOCUS - 9 of 29 DOCUMENTS

**James A. McCoy v. Chase Manhattan Bank USA**

**Case No. SACV 06-107 JVS (RNBx)**

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF
CALIFORNIA**

*2006 U.S. Dist. LEXIS 97257*

**August 10, 2006, Decided
August 10, 2006, Filed**

**COUNSEL:**  [*1] For James A McCoy, on behalf of himself and all others similarly situated, Plaintiff: Barry Leonard Kramer, LEAD ATTORNEY, Barry Leonard Kramer Law Offices, Los Angeles, CA; Brian R Strange, LEAD ATTORNEY, Gretchen Carpenter, LEAD ATTORNEY, Strange & Carpenter, Los Angeles, CA.

For Chase Manhattan Bank USA, National Association, Defendant: Angela L Padilla, LEAD ATTORNEY, Geoffrey A Graber, LEAD ATTORNEY, Robert S Stern, LEAD ATTORNEY, Morrison and Foerster, Los Angeles, CA.

**JUDGES:** The Honorable James V. Selna.

**OPINION BY:** James V. Selna

**OPINION**

**CIVIL MINUTES - GENERAL**

   **Proceedings:** (In Chambers) **Order Granting Defendant's Motion to Dismiss Plaintiff's Complaint.** (Fld 7-24-06)

   I BACKGROUND

   Defendant Chase Manhattan Bank USA.("Chase") moves the Court to dismiss Plaintiff James A. McCoy's ("McCoy") Second Amended Compliant ("SAC") pursuant to *Fed. R. Civ. P. 12(b)(6)*. For the following reasons, the Court grants Chase's motion.

   II LEGAL STANDARD

   Under *Federal Rule of Civil Procedure 12(b)(6)*, a motion to dismiss will not be granted unless it appears that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)*. In resolving a *Rule 12(b)(6)*  [*2] motion, the

Court must construe the Complaint in the light most favorable to the plaintiff and must accept all well-pleaded factual allegations as true. *Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996)*. The Court must also accept as true all reasonable inferences to be drawn from the material allegations in the Complaint. *Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998)*.

   III DISCUSSION

A. Allegations Contained the SAC

   Chase is a national banking association organized under the National Bank Act, with its home in the State of Delaware. (SAC, P 3). McCoy purports to represent all Chase credit card holders "whose interest rates were increased, without advance notice of such increase, after their accounts were closed to new transactions, where such increases were triggered on the basis of a 'default' that consisted of either a late payment to Chase, or a reported late payment to some other creditor." (Id., P 23.) McCoy's SAC alleges claims for: (1) violation of the Truth in Lending Act ("TILA"); (2) declaratory relief; (3) severance of unconscionable contract terms; (4) imposing and enforcing an illegal penalty; (5) consumer fraud; (6) breach of contract; (7) tortious  [*3] breach of the implied covenant of good faith and fair dealing and consumer fraud. (SAC, p. 1.)

   McCoy's SAC therefore challenges Chase's practice of raising a cardholder's interest rate after a delinquency with Chase or another creditor. As Chase contends, McCoy concedes that the Cardmember Agreement ("Agreement") specifically authorizes Chase to raise a cardholder's interest rate if the cardholder is delinquent with Chase or another creditor. (SAC, P 16.) Further, Chase avers that this practice is expressly authorized by state and federal law. (Mot., p. 4.) The Court agrees with both of Chase's contentions.

2006 U.S. Dist. LEXIS 97257, *

McCoy further alleges that Chase does not provide notice of an increase in interest rates triggered by the cardholder's default with another creditor and that Chase applies the increase to the start of the billing cycle. (SAC, PP 5, 6, 19.) However, as Chase avers, the Agreement specifically provides notice of this practice, providing:

> Your account will be reviewed every month on your Statement Closing Date to determine its continued eligibility for the Preferred or Non-Preferred rates. . . . Any changes in your interest rates as a result of the monthly reviews for Preferred or Non-Preferred [*4] rates will be effective with the billing cycle ending on the review date.

(RJN, Ex. 4.) [1]

> 1    McCoy alleges that "Chase's assertion that it provides advance notice of the 'specific terms' for a rate increase is demonstrable false . . . [because] Chase's month-end determination whether or not to increase rates is based on a well hidden, entirely secret, and strictly confidential methodology that is never given to its customers." (Opp'n, pp. 5-6; Decl. Haider Zaidi.) In light of the terms of the Agreement, the Court disagrees. (RJN, Ex. 4.)

McCoy additionally alleges that the interest rate charged by Chase upon default is unlawful, referring to higher rates as "dramatic and overreaching," "illegal penalties," and "punitive." (SAC, PP 15, 22.) However, as Chase points out, McCoy does not allege that the higher rates is higher than the default rate authorized by his Agreement or applicable usury laws. (Mot., p. 5.)

### B. Prior Similar Cases

As Chase asserts, McCoy seeks to assert claims previously asserted by other plaintiffs which have previously been dismissed by Judge Cormac Carney and Judge Samuel Conti, with prejudice. (Mot., p. 1.) On March 23, 2005, McCoy's counsel filed a similar case against [*5] Chase in Orange County Superior Court, Faith Dugan et al. v. Chase Manhattan Bank, No. SACV 05-484 CJC (ANx) (C.D. Cal., July 20, 2005), alleging claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and consumer fraud. That case was subsequently removed. On July 26, 2005, Judge Carney granted Chase's motion to dismiss. (Request for Judicial Notice ("RJN"), Ex. 1.)) McCoy's counsel filed an amended complaint, but voluntarily

dismissed the action before any rulings were made based on the amended complaint.

McCoy's counsel then filed a case against Chase in the Northern District of California, *Evans v Chase Manhattan Bank USA., N.A., No. C-05-3968 SC, 2006 U.S. Dist. LEXIS 5259, 2006 WL 213740 (N.D. Cal., Jan. 2006).* As Chase avers, other than two additional causes of action, the substitution of new plaintiffs, and other minor changes, the Evans action was exactly the same as the amended complaint in Dugan which McCoy's counsel voluntarily dismissed from Judge Carney's court. On January 30, 2006, Judge Conti, of the Northern District of California, dismissed with prejudice all of the causes of action brought in Evans. *Evans v. Chase, 2006 U.S. Dist. LEXIS 5259, 2006 WL 213740 (N.D. Cal., Jan. 30, 2006).* [*6] [2] In doing so, Judge Conti rejected the same causes of action which are asserted in this case.

> 2    Chase informs the Court that Evans appealed Judge Conti's ruling and the case is currently being briefed before the Ninth Circuit.

McCoy argues in his Opposition that while "there is overlap between some of the issues in this case and those ruled on by Judge Conti, [McCoy] respectfully disagrees with the ruling of Judge Conti, and such ruling is currently under appeal." (Opp'n, p. 24.)

The Court agrees with Chase's characterization of the Evans action. The instant case and the Evans action contain the same seven causes of action, and the same allegations underlying those causes of action. Judge Conti has written an in-depth and well-reasoned opinion. At the very least, Judge Conti's opinion provides the Court with significant guidance in its analysis.

### C. First Claim: Violations of the Truth in Lending Act

McCoy avers that Chase violates Regulation Z of the TILA by "failing to notify its customers of increases in interest rates on or before the effective date of the change." (SAC, P 26, citing *12 C.F.R. § 226.9(c)(1)*.) TILA requires written notice "[w]henever any term required to be disclosed [*7] under *Sec. 226.6* is changed." *12 C.F.R. § 226.9(c)(1).*

As Chase points out, McCoy does not point to any change in Chase's terms, but rather the increases complained of are the implementation of terms explicitly disclosed to McCoy. Chase points to a section of the Official Staff Commentary to Regulation Z ("Commentary"):

> No notice of a change in terms need be given if the specific change is set forth initially, such as: [r]ate increased under a properly disclosed variable-rate plan, a

rate increase that occurs when an employee has been under a preferential rate agreement and terminate employment, or an increase that occurs when the consumer has been under an agreement to maintain a certain balance in a savings account in order to keep a particular rate and the account balance falls below the specified minimum. In contrast, notice must be given if the contract allows the creditor to increase the rate at its discretion but does not include specific terms for an increase.

*12 C.F.R. pt. 226, Supp. I, § 226.9(c)(1) cmt. 1.* [3] As Chase avers, the last sentence does not provide any support for McCoy because Chase does "include specific terms for an increase" by identifying the maximum possible [*8] rate and the specific acts that might resulted in such higher interest rate, such as a late payment to Chase or another creditor. (Mot., p. 6, n. 4, see RJN, Ex. 4.)

> 3   As Judge Conti noted, the Commentary, which is put forth by the Board of Governors of the Federal Reserve System is entitled to a great deal of deference. *Anderson Bros. Ford. v. Valencia, 452 U.S. 205, 219, 101 S. Ct. 2266, 68 L. Ed. 2d 783 (1981).*

Chase concludes that an increase in interest rates based on delinquency with another creditor and credit history is not a "change in terms" under TILA because Chase discloses in the Agreement that it may increase interest rates based on such a delinquency. (Mot., p. 6; see RJN, Ex. 4.) Judge Conti dismissed this identical cause of action for this same reason: "The Commentary . . . states that creditors need not give notice if the specific change is set forth initially, such as in a variable rate plan. [Chase] gives cardmembers notice of these changes." *Evans v. Chase, 2006 U.S. Dist. LEXIS 5259, 2006 WL 213740 at * 2.*

As Chase notes, a change in terms occurs if the lender increases interest rates without any prior disclosure of the basis for the increase. For instance if the lender exercises its discretion to raise a cardmember's rate because [*9] of rising market rate, but does not initially disclose the specific circumstance under which an increase will occur. *12 C.F.R. pt. 226, Supp. I, § 226.9(c), cmt. 1.* As Chase avers, because it discloses the basis on which it will increase interest rates due to default, and discloses the highest rate that could apply, [4] an increase in the interest rate based on these specified circumstances is not a change in terms within the meaning of Regulation Z, and no additional notice to the cardmember is required. (Mot., p. 7.) Chase concludes that

the TILA provisions and commentary quoted by McCoy in paragraphs 27 through 29 of the SAC are inapposite, because they concern the kind of written notice required after a change in terms. The Court agrees and dismisses McCoy's first claim.

> 4   Chase notes that, as stated in the Agreements, there may be circumstances in which Chase chooses not to increase the rate to the highest possible disclosed rate after a default. Chase avers that the fact that it does so does not require any additional disclosure. *Section 226.9(c)(2)* provides that "[n]o [*10] notice . . . is required when the change involves . . . a reduction of any component of a finance or other charge." *12 C.F.R. § 226.9(c)(2).* A decision not to increase the interest rate has the same effect as a reduction in the maximum interest rate from the higher, default rate to the lower, promotional rate. Chase avers that consistent with *section 226.9(c)(2)* this circumstance does not require a change in terms notice, so this discretion given to Chase in the agreements does not change the analysis. (Mot., p. 7, n. 5.) The Court agrees. A decision not to increase a rate is analytically indistinct from a decision to lower a rate: in both cases the consumer benefits.

**D. Second, Third, and Fourth Claims: Declaratory Relief, Severance of Terms, Illegal Penalty**

McCoy contends that Chase's practice of increasing interest rates based on a delinquency is unconscionable, and therefore that he is entitled to declaratory relief, reformation and damages for imposing and enforcing an illegal penalty. (SAC, PP 35-46.)

Judge Conti dismissed identical causes of action brought by McCoy's counsel against Chase. *Evans, 2006 U.S. Dist. LEXIS 5259, 2006 WL 213740 at * 3.* Further, the Agreement identifies the actions [*11] by a borrower that authorize Chase to increase McCoy's interest rate to the Non-Preferred rate:

> Any promotional rate or regular Preferred Pricing rate may change to your Non-Preferred/Default APR rate if any loan or account of yours with us *or your other creditors was past due,* your Account was overlimit, any payment on your Account was returned unpaid or if your Account was closed for any reason.

(SAC, P 16; emphasis added by McCoy.) Chase argues here, as it did successfully before Judge Conti, that this

provision, which permits Chase to raise a cardholder's interest rate after certain occurrences, is specifically authorized by the law of Chase's home state, Delaware. Pursuant to section 85 of the National Bank Act, *12 U.S.C. § 85*, Delaware law governs the interest rate charged by Chase and the methodolgy used to determine that rate. Section 994 of the Delaware Banking Act provides:

> If the agreement governing the revolving credit plan so provides, the periodic percentage rate or rates of interest under such plan may vary in accordance with a schedule or formula. . . . Without limitation, a permissible schedule or formula hereunder may include provision in the agreement governing the [*12] plan for a change in the periodic percentage rate or rates of interest applicable to all or any part of outstanding unpaid indebtedness . . . . contingent upon the happening of any event or circumstances specified in the plan, which event or circumstance may include the failure of the borrower to perform in accordance with the terms of the plan.

*5 Del. C. § 944*. As Judge Conti noted, the "statute declares that a permissible formula or schedule can be based on the occurrence or non-occurrence of an event or circumstance described in the agreement, such as we see in the Cardmember Agreement." *Evans, 2006 U.S. Dist. LEXIS 5259, 2006 WL 213740 at * 3*. Judge Conti further noted, "[t]he Cardmember Agreement, by describing what events will cause default rates to go into effect, complies with these requirements." Id. Judge Conti therefore concluded, and this Court agrees, that the terms of the Agreement are not unconscionable, but rather the are specifically authorized by statute. Id. The Court therefore dismisses McCoy's second, third, and fourth claims for relief.

E. Fifth Claim: Consumer Fraud

McCoy also alleges that Chase committed consumer fraud by failing to provide notice of an increase in interest triggered by the [*13] cardholder's default with another creditor, and that Chase applies the increase to the start of the billing cycle. (SAC, P 54-55.)

The specific statute, *6 Del. C. § 2513(a)*(2005), prohibits:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice.

McCoy has failed to state a claim for consumer fraud. Chase expressly notifies cardmembers of the actions that it may take in the event of a default, rather than practicing concealment or making false promises. See *Evans, 2006 U.S. Dist. LEXIS 5259, 2006 WL 213740 at * 5*. McCoy's fifth claim for relief is dismissed.

F. Sixth Claim: Breach of Contract

McCoy claims that because the Agreement is governed by federal law it "incorporate[s] federal law" and hence "Chase is contractually bound to comply with federal law," making any violation thereof a breach of contract. (SAC, P 66.)

As Judge Conti noted, [*14] based on identical claims, this claim is a reiteration of McCoy's first claim. *Evans, 2006 U.S. Dist. LEXIS 5259, 2006 WL 213740 at * 4*. The Agreement provides notice that Chase may vary a cardmember's rates. Regulation Z does not require any more notice from Chase. Id. As Judge Conti noted, "even if federal law applies, Chase has not, under the fact alleged, infracted it." Id. Therefore McCoy's fifth claim for relief is dismissed.

G. Seventh Claim: Breach of the Covenant of Good Faith and Fair Dealing

McCoy alleges that by taking the alleged actions, Chase breached the implied covenant of good faith and fair dealing. However, as noted, Chase's actions are explicitly authorized by the Agreement. Hence McCoy's seventh claim for relief is dismissed.

IV. CONCLUSION

For the foregoing reasons, the Court dismisses McCoy's SAC with prejudice.

Pursuant to *Federal Rule of Civil Procedure 78* and *Local Rule 7-15*, the Court deems the matter submitted without oral argument, and removes the August 14, 2006 hearing from its calendar.

**EXHIBIT G**

1 of 1 DOCUMENT

**GALEN PATTERSON and RED LEAF LAND TRUST, Plaintiff, v. REGIONS BANK successor in interest to UNION PLANTERS BANK, Defendant.**

**Case No. 06-cv-469-DRH**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ILLINOIS**

*2006 U.S. Dist. LEXIS 86029*

**November 27, 2006, Decided**

**COUNSEL:** [*1] For Galen Patterson, Red Leaf Land Trust, Plaintiffs: Bernard J. Ysursa, Sr., LEAD ATTORNEY, Cook, Ysursa et al., Belleville, IL; Patout Ducey, LEAD ATTORNEY, Reinert & Rourke, St. Louis, MO; Thomas R. Ysursa, LEAD ATTORNEY, Becker, Paulson et al., Belleville, IL.

For Regions Bank, Union Planters Bank, Defendants: Howard N. Cayne, Nancy L. Perkins, Son B. Nguyen, LEAD ATTORNEYS, Arnold & Porter - Washington, Washington, DC; W. Jeffrey Muskopf, LEAD ATTORNEY, Freeark, Harvey et al., Belleville, IL.

**JUDGES:** David R Herndon, United States District Judge.

**OPINION BY:** David R Herndon

**OPINION**

**MEMORANDUM & ORDER**

**HERNDON, District Judge:**

**I. INTRODUCTION**

In this case, plaintiff Galen Patterson brings this suit as the sole beneficiary of plaintiff Red Leaf Land Trust ("Trust") against defendant Regions Bank ("Defendant" or the "Bank"), successor in interest to Union Planters Bank (Doc. 3 - Complaint), alleging claims for a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), *815 ILL. COMP. STAT. 505/1 - 505/12.* Plaintiffs' suit was originally filed in the Circuit Court of St. Clair County, Illinois. [*2] Defendant removed the case to this Court (Doc. 2), asserting that two grounds existed to establish jurisdiction: (1) diversity and (2) federal question. Disagreeing with the existence of federal subject matter ju-

risdiction in this case, Plaintiffs filed a Motion to Remand (Doc. 13), to which Defendant timely opposed (Doc. 19). After reviewing the issues presented and fully briefed by the parties, the Court finds that it presently lacks jurisdiction over this matter and must therefore remand Plaintiffs' case.

**II. BACKGROUND**

Plaintiffs' claims arise from a loan agreement ("Loan") negotiated with Defendant, which provides for a repayment of the principal plus interest at a rate of 6.5% per annum. The Promissory Note [1] ("Note") states that the annual interest on the Loan was actually "computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding" (Doc. 19, p. 2, Ex. 1, p. 1). Plaintiffs' Complaint pleads two Counts, both of which allege violations of the Consumer Fraud Act. Plaintiffs seek a finding [*3] by the Court that Defendant violated the Consumer Fraud Act and a subsequent injunction requiring Defendant to cease using a time period of less than 12 calendar months to compute annual interest on Plaintiffs' loan, plus attorneys' fees (Doc. 3, p. 6).

1   Although the existence of this Note was pled by Plaintiffs in their Complaint, a copy of it was not attached as an exhibit. Instead, they cited to the relevant portions of the Note. However, Defendant later attached the Note as an exhibit to its opposing Response, explaining , "[a]s the Complaint repeatedly refers to the loan agreement and the agreement is central to Plaintiff's claims, the Promissory Note is properly attached here" (Doc. 19, p. 1, n.1, citing *Venture Assoc. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431-32 (7th Cir. 1993)).*

2006 U.S. Dist. LEXIS 86029, *

Count I alleges that Defendant violated the Consumer Fraud Act by engaging in the deceptive and unfair business practice of fraudulent misrepresentation. Essentially, Plaintiffs believe Defendant [*4] "conceal[ed] and obfuscat[ed] the true interest rate and cost of [the] Loan by deceptive half-truth representations of the interest rate and adding a vague, confusing, and contradictory boiler-plate sentence in [the] Note misrepresenting how the annual interest rate on the Note is computed" (Doc. 3, P 9(d)). Further, Plaintiffs allege Defendant failed to clearly inform regarding its particular method of annual interest computation, instead representing to Plaintiffs a rate of annual interest based upon a 12-month calendar year, knowing its method of computing interest would be a material fact relied upon by Plaintiffs in deciding whether to obtain the Loan (*Id.* at PP 9(f), (g) & 12). Plaintiffs state that subsections (a) and (c) of Section 10a of the Consumer Fraud Act (*815 ILL. COMP. STAT. 505/10a(a) & (c)*) warrant their request for injunctive relief.

In Count II, Plaintiffs allege that Defendant violated the Consumer Fraud Act by engaging in unfair and deceptive business practices -- namely, for Defendant's use of a computation of per annum interest in violation of the Illinois Interest Act, *815 ILL. COMP. STAT. 205/1 - 205/11.* [*5] In other words, Plaintiffs allege that this violation stems from Defendant's act of charging an interest rate which actually exceeds the rate allegedly agreed upon by the parties of 6.5% per annum. Therefore, this "willful and material violation of *Section 5* of the Illinois Interest Act [2] that prohibits a creditor from 'directly or indirectly accepting or receiving in money . . . any sum . . . greater than' the rate of interest of 6.500% per annum agreed upon by the Bank and the Plaintiff" (Doc. 3, P 11). As such, Plaintiffs claim Defendant's alleged violation of the Interest Act also constitutes a violation of Section 2F of the Consumer Fraud Act (*815 ILL. COMP. STAT. 505/2F*).

2    Section 5 of the Illinois Interest Act (*815 ILL. COMP. STAT. 205/5*) reads:

No person or corporation shall directly or indirectly accept or receive, in money, goods, discounts or thing in action, or in any other way, any greater sum or greater value for the loan, forbearance or discount of any money, goods or thing in action, than is expressly authorized by this Act or other laws of this State.

[*6] As previously stated, Defendant removed this case based upon two jurisdictional grounds: diversity and federal question jurisdiction (Doc. 2). Plaintiffs' Motion to Remand challenges the existence of either of these jurisdictional bases in this matter. The Court's analysis will address both.

## III. ANALYSIS

### A. Removal

The removal statute, *28 U.S.C. § 1441,* is construed narrowly, and doubts concerning removal are resolved in favor of remand. *Doe v. Allied-Signal, Inc., 985 F.2d 908, 911 (7th Cir. 1993).* A defendant bears the burden to present evidence of federal jurisdiction once the existence of that jurisdiction is fairly cast into doubt. *See In re Brand Name Prescription Drugs Antitrust Litig., 123 F.3d 599, 607 (7th Cir. 1997).* "A defendant meets this burden by supporting [its] allegations of jurisdiction with 'competent proof,' which in [the Seventh Circuit] requires the defendant to offer evidence which proves 'to a reasonable probability that jurisdiction exists.'" *Chase v. Shop 'N Save Warehouse Foods, Inc., 110 F.3d 424, 427 (7th Cir. 1997)*(citations omitted). [*7] However, if the district court lacks subject matter jurisdiction, the action must be remanded to state court pursuant to *28 U.S.C. § 1447(c).*

### B. Subject Matter Jurisdiction

#### 1. Diversity Jurisdiction

The statute regarding diversity jurisdiction, *28 U.S.C. § 1332,* requires complete diversity between the parties plus an amount in controversy which exceeds $ 75,000.00, exclusive of interest and costs. In this case, the parties do not contest the fact that diversity of citizenship exists. Instead, they differ on the issue of whether the amount in controversy is met. First, Defendant argues Plaintiffs are really seeking a declaration from the Court that Defendant's method of computing interest, as stated in the Note, is unlawful. Coupled with this declaration would be an injunction to prohibit Defendant from engaging in this practice. Therefore, Defendant proffers that such a declaration/injunction would be valued at not only Plaintiffs' own damages (plus attorneys fees), but also the pecuniary loss to Defendant if it was unable to compute its loans based on a 360-day year (Doc. 2, P 11), as opposed to the [*8] 365-day year calculation that Plaintiffs favor. Defendant asserts that considering it has amassed 5,049 existing loans in Illinois with per annum interest calculation terms similar to Plaintiffs', this amount would far exceed the minimum amount in controversy (*see* Doc. 5 - Declaration of

Karen H. Henderson and Doc. 19-3 - Supplemental Henderson Decl.).

Plaintiffs argue that contrary to what Defendant suggests, they are *not* seeking declaratory relief. Rather, Plaintiffs assert that they merely request the Court make a *finding of fact* that Defendant violated the Consumer Fraud Act with respect to the Note (Doc. 13). Plaintiffs explain that this finding of fact would be necessary to support an injunction, as there is no right to a jury trial under the Consumer Fraud Act. Correcting Defendant's averments, Plaintiffs clarify that the only requested relief sought in their Complaint is an injunction and attorneys fees. Additionally, Plaintiffs argue that it would be improper to permit Defendant to aggregate the damages it may incur if Plaintiffs' request for injunctive relief is granted. Plaintiffs believe the amount in controversy should be comprised of the costs incurred by [*9] Defendant to comply with an injunction regarding *only* Plaintiffs' Loan. Lastly, Plaintiffs state that only attorney fees incurred *prior to* filing the Complaint in state court are relevant in determining the amount in controversy.

Plaintiffs believe that because only injunctive relief and attorneys fees are sought in this case, the Court must apply the Seventh Circuit's "either viewpoint" rule, which assesses the jurisdictional amount by "looking at either the benefit to the plaintiff or the cost to the defendant" in complying with the injunction. *Uhl v. Thoroughbred Technology and Telecommunications, Inc., 309 F.3d 978, 983 (7th Cir. 2002)*. Moreover, Plaintiffs urge the Court to accept the law as stated in *Smith v. Pfizer, Inc., 2005 U.S. Dist. LEXIS 16290, 2005 WL 3618319 (S.D. Ill. March 24, 2005)*(Reagan, J.) (citing *In re Brand Name Prescription Drugs Antitrust Litigation, 123 F.3d 599, 607 (7th Cir. 1997)*), holding that Defendant cannot aggregate its costs of compliance, but must simply estimate the cost of complying with an injunction regarding Plaintiffs' Loan only.

Defendant believes it should be able to aggregate its costs of compliance [*10] as the amount in controversy is "measured by the value of the object of the litigation." *Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 347, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977)*(internal citations omitted). Defendant also cites other Seventh Circuit law in this regard, among them *McCarty v. Amoco Pipeline Co., 595 F.2d 389, 392 (7th Cir. 1979)*("[T]he test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce."). Defendant explains that even if the Court merely makes a finding of fact that Defendant violated the Consumer Fraud Act in computing interest on the Note based upon a 360-day year instead of a 365-day year, this would directly affect all of its similar loans in Illinois which use the same method to calculate per annum interest.

In this particular case, the Court only has jurisdiction over Plaintiffs' Loan. Therefore, as it is uncertain whether the remaining of Defendant's "similar Illinois loans" would actually be contested, it would be inappropriate, at this juncture, to aggregate the value of pecuniary damages Defendant may incur regarding these loans. Comporting with [*11] Seventh Circuit precedent, to compute the amount in controversy at the time of removal, this Court will consider only damages sought (or incurred by Defendant) in relation to Plaintiffs' Loan. Applying the Seventh Circuit's "either viewpoint" rule, the Court finds no clear indication made by either party through allegations or other evidence, that the minimum amount in controversy has been met. Accordingly, the Court finds that Defendant has not met its burden to show diversity jurisdiction exists.

## 2. Federal Question Jurisdiction

Defendant asserts that even if the Court does not find that diversity jurisdiction exists, removal is still proper because there is federal question jurisdiction over Plaintiffs' claims. First, Defendant argues that Plaintiffs' state law claims are really claims of usury, [3] which are thereby completely preempted by the National Banking Act ("NBA," *12 U.S.C. §§ 85 & 86*) and also the Depository Institutions Deregulation and Monetary Control Act ("DIDA," *12 U.S.C. § 1831d*). [4] This complete preemption by federal statutory law, Defendant states, creates federal question jurisdiction pursuant to [*12] *28 U.S.C. § 1331*. Lastly, Defendant asserts that Plaintiffs' state law claims are also preempted by the regulations of the Office of the Comptroller of the Currency ("OCC") (*see* Doc. 2, pp. 6-7).

3   Usury is defined as when a lender charges a rate of interest that is higher than legally allowed by law. *See, e.g.,* **BLACK'S LAW DICTIONARY 1580 (8th ed. 2004).**

4   Defendant Regions Bank is a state-chartered bank and the successor in interest to Union Planters Bank, which is a national bank. However, the Note was executed between Plaintiffs and Union Planters Bank, prior to merging into Regions Bank. That appears to be why Defendant offers both the NBA and DIDA as legal bases for the complete preemption of Plaintiffs' claims.

Under the well-pleaded complaint rule, federal question jurisdiction exists only when a federal question is presented by a plaintiffs complaint. *Caterpillar, Inc. v. Williams, 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987)*. If no federal cause [*13] of action is affirmatively stated on the face of the complaint, removal on the basis of federal question jurisdiction is improper. *Id.* The presence of a federal defense, including preemp-

tion, does not provide a basis for removal. *Id. at 393*. Complete preemption, however, is an exception to the well-pleaded complaint rule and functions as a basis for the removal to federal court of otherwise well-pleaded state-law claims. Complete preemption occurs where Congress intends a federal statute to completely preempt state-law causes of action, such that state-law claims effectively arise under federal law and therefore may be removed to federal court. *Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 7-8, 123 S. Ct. 2058, 156 L. Ed. 2d 1 (2003)*; *Caterpillar, 482 U.S. at 393*; *Nelson v. Stewart, 422 F.3d 463, 466-67 (7th Cir. 2005)*. That is, "[w]here a federal statute completely preempts the state-law cause of action, the claim, although pleaded in terms of state law, is in reality based on federal law, and therefore the claim is removable under *28 U.S.C. § 1441(b)*." *Fedor v. Cingular Wireless Corp., 355 F.3d 1069, 1071 (7th Cir. 2004)*. [*14]

Defendant believes its argument to be supported by the holding in *Beneficial,* in which the United States Supreme Court held that state law usury claims were preempted by the NBA. *Beneficial, 539 U.S. at 11 ("Because §§ 85 and 86 [of the NBA] provide the exclusive cause of action for [usury] claims, there is, in short, no such thing as a state-law claim of usury against a national bank.").* Further, this Court has previously found that the holding in *Beneficial* is also applicable to preempt state-law usury claims against state-chartered banks, through *§ 521(a) and (b)* of DIDA. *See Forness v. Cross Country Bank, Inc., No. 05-cv-417-DRH, 2006 U.S. Dist. LEXIS 3423, 2006 WL 240535 at *3 (S.D. Ill. Jan. 13, 2006)(Herndon, J.) (citing Greenwood Trust Co. v. Commonwealth of Massachusetts, 971 F.2d 818, 826-27 (1st Cir. 1992)*; *In re Community Bank, 418 F.3d 277, 295 (3d Cir. 2005)*; *Hill v. Chemical Bank,, 799 F. Supp. 948 (D. Minn. 1992)).* Defendant it asserts this case is akin to an unpublished opinion recently issued by this Court in *Forness v. Cross Country Bank, Inc., No. 05-cv-417-DRH, 2006 U.S. Dist. LEXIS 3423, 2006 WL 240535 (S.D. Ill. Jan. 13, 2006)(Herndon, J.).* [*15]

In support of remanding this case, Plaintiffs argue their claims do not, in fact, sound in usury. In other words, Plaintiffs distinguish this case, asserting that their claims do not allege Defendant charged interest in excess of that allowed by law, but, rather, Plaintiffs complain that Defendant charged a per annum interest rate that was not actually the rate negotiated by the parties. Therefore, Plaintiffs assert that the Complaint only pleads state law claims of deceptive and unfair business practices.

Defendant believes this case is directly on point with the Court's holding in *Forness.* In *Forness,* the plaintiffs pled counts against the defendants for unjust enrichment and restitution, breach of the covenant of good faith and fair dealing and for violations of the Consumer Fraud Act, alleging that the defendants charged fees in excess of the costs for their credit card services provided to the plaintiffs. *Forness, 2006 U.S. Dist. LEXIS 3423, 2006 WL 204535 at *1.* The defendants removed the case based upon the doctrine of complete preemption, as they believed the allegations plead usury [*16] claims and, under *Beneficial,* were preempted. *Id.* Arguing for remand, the plaintiffs stated that their suit was instead "'mainly'" concerned with the defendants' deceptive practices in charging those fees and not the actual amount of the fees charged. *2006 U.S. Dist. LEXIS 3423, [WL] at *3.* The Court, on examining the pleadings and the parties' briefings, found that because the allegations indicated that the plaintiffs did "not merely contest the general manner in which [the d]efendants assessed fees, but also the amount of those fees, and more specifically, the lack of a connection between those amounts and the underlying costs actually incurred by [the d]efendants," their claims sounded in usury and were therefore preempted. *Id.*

Plaintiffs attempt to distinguish this case from *Forness,* explaining that the actual amount of interest charged by Defendant is challenged by Plaintiff only to the extent that such rate thereby breached the contract rate of interest in the Note/Loan Agreement. Instead, Plaintiffs advocate that the legal issues in this matter are of contract law, not usury. As the NBA and DIDA do not provide remedies for breaches of contract, Plaintiffs [*17] argue that their claims are not preempted by these Acts. Further, Plaintiffs proffer that the NBA and DIDA do not preempt Consumer Fraud Act claims, as it is a statute intended to protect consumers and does not affect the ability of a bank to exercise its powers.

As the Court sees it, this case is distinguishable from *Forness.* In this matter, the crux of Plaintiffs' injury centers around a per annum interest rate on the Note which is at a rate other than what Defendant allegedly represented it would apply. Plaintiffs do not appear to be alleging that the challenged interest rate is illegal -- but merely appear to allege that Defendant is not charging the rate it said it would charge on the Note. [5] There is no indication that the challenged interest rate exceeds what is allowed by law or that the interest rate itself amounts to an excessive charge. Therefore, Plaintiffs have not ostensibly alleged usury claims. Rather, they alleged that Defendant breached the terms of the Note/Loan and its actions in doing so amounted to Consumer Fraud Act violations. Allegations such as these -- although it is understandable how they could be artfully pleaded as usurious -- amount to nothing [*18] more than state law causes of action, which do not fall within the complete preemption ambit of either the NBA or DIDA. Although several cases cited by Defendant in support of its argu-

ment seem to find otherwise, the Court distinguishes this case in that Plaintiffs are not alleging Defendant did not have a legal right to charge the per annum interest rate, but for the fact that Plaintiffs believe Defendant represented a different interest rate would be applicable to the Note.

  5   Several cases, some not reported, were cited by Plaintiffs in support of the argument that their claims did not sound in usury. Defendant, in its Response, makes a nugatory attempt to distinguish these cases to show that their holdings do not bear any similarity with the instant case. While not binding precedent, several of these cases warrant brief mention. *See, e.g., Great Western Resources, LLC v. Bank of Arkansas, N.A., No. 05-5152, 2006 U.S. Dist. LEXIS 92237, 2006 WL 626375 (W.D. Ark. March 13. 2006)(Hendren, J.)*(The plaintiffs challenged fees charged by the defendant, and although the plaintiffs conceded their usury claim was pre-empted, the district court found the remaining state law claims for breach of contract, violations of the Arkansas Deceptive Trade Practices Act, conversion and breach of implied covenant of good faith were not preempted.); *Saxton v. Capital One Bank, 392 F. Supp. 2d 772 (S.D. Miss. 2005)*(The district court determined that the plaintiff's claims brought under the Mississippi Consumer Protection Act were not usurious but rather, challenged the defendant's business practices - namely, the plaintiff alleged the defendant placed unauthorized and undisclosed charges on customer accounts, assessed late fees and interest on these improper charges without informing customers and breached express agreements in other various ways. However, the court did not find the plaintiff actually challenged the legality of the interest rate, but rather, that the rates were undisclosed, unwarranted and based on improper charges. Even though the plaintiff referred to the interest as "excessive," the amount itself was not challenged - what was challenged was the fact that the interest and fees were charged at all. Therefore, the court determined this reference was not enough by itself to turn the claim into a usury cause of action.); *Cortazar v. Wells Fargo & Co., No. C-04-894-JSW, 2004 U.S. Dist. LEXIS 30215, 2004 WL 1774219 (N.D. Cal. Aug 9, 2004) (White, J.)*(Several state law claims challenging the defendant's business practices with regards to loans were brought by the plaintiff, whereby the district court noted the allegations did not challenge the legality of interest rates, points or fees charged by the defendant, but

instead challenged the unfair and deceptive manner in which the defendant induced borrowers to enter into such unfavorable loans. Thus, the court did not view these claims as usurious, even though the allegations stated that the loans at closing contained "above-market" and "exorbitant" interest rates than the loans previously disclosed to buyers, as the plaintiff never used the term "illegal" to describe the interest rate, the description merely demonstrated that the actual interest rate charged to the plaintiff at closing was less favorable than what was promised by the defendant.); *Cross-Country Bank v. Klussman, No. C-01-4190-SC, 2004 U.S. Dist. LEXIS 7835, 2004 WL 966289 (N.D. Cal. Apr. 30. 2004)(Conti, J.)*(The plaintiff stated claims for violation of the California Consumer Legal Remedies Act and a violation of the Delaware Code for Unfair Business Practices, among other causes of action. The district court did not find these claims were usury claims, as the plaintiff did not challenge the legality of the interest rate, but merely complained that various interest fees were not disclosed, were unwarranted, based on improper charges and thus, should not have been charged at all. The district court viewed the claims as challenging not the *per se* amount of late fees or other interest, but instead, the defendant's improper and deceptive manner in charging such fees.); *Carson v. H&R Block, Inc., 250 F. Supp. 2d 669 (S.D. Miss. 2003)*(The plaintiffs alleged they were solicited by the defendants to participate in a program for tax refund anticipation loans and that the defendants collected and charged fees while misrepresenting the true costs of the loan, thereby withholding, concealing and suppressing from the plaintiffs the fact that their fees and interest rate would be substantially higher than the rate that was disclosed. The district court did not find that the plaintiffs were attacking the interest rates in anything but a peripheral manner, as they did not complain of the *legality* of the interest rate, but rather, that the plaintiffs were told one rate and the actual rate charged was different -- regardless of the legality. Therefore, the court determined it was a claim of fraudulent misrepresentation and not usury.); *West Virginia v. Parrish Automobile Training Co., 147 F. Supp. 2d 470 (N.D. W.Va. 2001)*(The district court found that the plaintiff's claims under the West Virginia Consumer Credit and Protection Act did not challenge the legality of the interest, but instead challenged the defendant's failure to disclose to consumers the fact that interest points were being added to the rate origi-

nally quoted by the bank, with the car dealership receiving the difference. The court saw it as a failure to disclose case, not usury.).

[*19]  Defendant, in the Notice of Removal, also raises the separate argument that Plaintiffs' Consumer Fraud Act claims are preempted by Regulations promulgated by the OCC. Yet, Defendant does not cite legal authority affirmatively stating that state law consumer fraud act claims are completely preempted by OCC Regulations. Instead, Defendant relies on two specific OCC Regulations, *12 C.F.R. §§ 7.4008* and *34.4.* As Defendant points out, both Regulations allow national banks to make loans "without regard to state law limitations," with respect to rates of interests, terms of credit, and so forth, as the Court has previously determined Plaintiffs do not challenge the particular items as listed in *§§ 7.4008(d)(2)* and *34.4(a)*, the OCC Regulations do not preempt Plaintiffs' Consumer Fraud Act claims. [6]

> 6   Defendant also cites   *§§ 7.4008(d)(2)(viii),* which preempts any state law concerning "disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms . . . or other credit-related documents." Again, the Court believes this to be somewhat off the mark with the essence of Plaintiffs' injury as there were no allegations regarding advertising in relation to the Note.

[*20]  Yet, expressly excluded from preemption are state laws only incidentally affecting the bank's lending power: contracts, torts and criminal law. *See 12 C.F.R.*

*§§ 7.4008(e)* and *34.4(b).* Moreover, *12 C.F.R. §§ 7.4008(c)* states that a bank "shall not engage in unfair or deceptive practices within the meaning of *section 5* of the Federal Trade Commission Act, *15 U.S.C. [§ ] 45(a)(1)* . . . ." This Regulation does nothing to express that this provision therefore "displaces the state-law cause of action through complete preemption." *Beneficial, 539 U.S. at 7.* Nor does it appear to be in conflict with any state law. Rather, its seeming congruence with state laws regulating unfair and deceptive practices leads the Court to reject Defendant's argument. Therefore, the Court is convinced that the OCC Regulations do not completely preempt Plaintiffs' claims.

## IV. CONCLUSION

Defendant has failed to meet its burden to show that either the amount in controversy was met or that Plaintiffs' claims are completely preempted. Finding neither diversity nor federal question jurisdiction exists to [*21] warrant removal of this case, the Court must thereby **GRANT** Plaintiffs' Motion to Remand (Doc. 13). Accordingly, this case is **REMANDED** back to the Circuit Court of St. Clair County, Illinois, each party to bear their own costs.

**IT IS SO ORDERED.**

Signed this 27th day of November, 2006.

/s/ David R Herndon

**United States District Judge**

# EXHIBIT H

1 of 1 DOCUMENT

**LISA PENNER, PAUL HAUGH and DARCI HAUGH, on behalf of themselves and all others similarly situated, Plaintiffs, v. CHASE BANK USA, N.A., and BANK ONE, DELAWARE, N.A., Defendants.**

**Case No. C06-5092 FDB**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON**

*2006 U.S. Dist. LEXIS 53179*

**August 1, 2006, Decided**
**August 1, 2006, Filed**

**COUNSEL:** [*1] For Lisa Penner, on behalf of herself and all others similarly situated, Plaintiff: Barry Leonard Kramer, KREINDLER & KREINDLER (NY), NEW YORK, NY; Brian R Strange, STRASBURGER & PRICE, DALLAS, TX; Frederick W Schoepflin, John H Bright, Mark Adam Griffin, KELLER ROHRBACK, SEATTLE, WA; John Rothschild, SEATTLE, WA.

For Darci Haugh, Paul Haugh, Plaintiffs: Brian R Strange, STRASBURGER & PRICE, DALLAS, TX.

For Chase Bank USA NA, Bank One Delaware NA, Defendants: Angela L Padilla, MORRISON & FOERSTER (SF), SAN FRANCISCO, CA; James P Savitt, SAVITT & BRUCE LLP, SEATTLE, WA.

**JUDGES:** FRANKLIN D. BURGESS, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** FRANKLIN D. BURGESS

**OPINION**

ORDER GRANTING DEFENDANTS MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

This matter comes before the Court on a *Fed. R. Civ. P. 12(b)(6)* motion of Defendants Chase Bank USA, N.A. and Bank One Delaware, N.A. (hereafter, Chase) to dismiss Plaintiffs' First Amended Complaint for failure to plead any facts that state a cause of action. After reviewing all materials submitted by the parties and relied upon for authority, the Court is fully informed and hereby grants the motion and [*2] dismisses the First Amended Complaint for the reasons stated below.

**INTRODUCTION AND BACKGROUND**

Plaintiffs Lisa Penner, Paul Haugh, and Darci Haugh, on behalf of themselves and all others similarly situated, allege that Chase engages in a practice of increasing interest rates retroactively, without giving advance notice, violating the Truth in Lending Act (TILA), the Cardmember Agreement, and state contract and consumer protection laws. [1]

> 1  This Court takes particular notice of the decision of Judge Conti in *Evans v. Chase Manhattan Bank USA, N.A., 2006 U.S. Dist. LEXIS 5259, 2006 WL 213740 (N.D. Cal.,2006)(Slip Copy, January 27, 2006)*, wherein the Court dismissed a complaint against Chase asserting nearly identical claims. This Court finds Judge Conti's well-reasoned decision highly persuasive and regrets the necessity of revisiting the issues.

Chase is a national banking association organized under the National Bank Act with its home office in the State of Delaware. Plaintiffs purport to represent all Chase [*3] credit card members in Washington "whose interest rates charges on outstanding balances were retroactively increased by Chase without warning or advance notice." Plaintiffs contend that Chase violated Regulation Z of the TILA, *12 C.F.R. § 226.9(c)*, by failing to notify its customers of increases in the interest rates before the effective date of the change. Plaintiffs assert that Chase is not in compliance with Regulation Z because rate increases are discretionary, are based on unknown factors, and are applied retroactively. Plaintiffs asset that such unannounced and retroactive interest rate increases are unfair, unconscionable and constitute illegal penalties.

The First Amended Complaint alleges six causes of action arising out of Chase Cardmember interest rate

practices: (1) Chase's practices violate the TILA, (2) Plaintiffs are entitled to declaratory relief, (3) the Court should sever the unconscionable contract terms, (4) the Court should declare that Chase's practice is the imposition of an illegal penalty, (5) Chase is committing consumer fraud under Washington's Consumer Protection Act, *RCW 19.86.170*, and (6) Chase breached its contract with cardholders.

[*4] Chase contends that its practices are in compliance with the TILA, Regulation Z, as the retroactive increases complained of are the implementation of lawful terms explicitly disclosed in the Cardmember Agreement. Thus, Chase claims there is no violation of the TILA or breach of contract. Chase further asserts that Plaintiffs' common law claims fail because the challenged practices are explicitly authorized by federal and State of Delaware law and that the State of Washington consumer protection law claim is preempted.

The Cardmember Agreement [2] between Chase and Plaintiffs specifically provides that the annual percentage rate "may vary" if the cardmember is in default under the Agreement for the following specified reasons: failure to make minimum payments, exceeding credit limits, failure to make payment to other creditors, payments with dishonored checks, and upon demand after closing the account. The Cardmember Agreement states that if any of these default events occurs, Chase "may increase the APRs (including any introductory or promotional APR) on all balances (including existing balances, but not Overdraft Advances) "up to a maximum default rate of the prime rate plus 23.99%. [*5] " The Agreement further lists factors considered to determining the default rate, such as length of time account is open; existence, serious and timing of defaults on the account; other indications of account usage and performance; and information related to credit history. The Agreement provides that Chase reserves the discretion to charge reduced default rates below the maximum default rate stated in the rates and fees table. Finally, the Agreement provides that the "default rate will take effect as of the first day of the billing cycle in which the default occurs, and will apply to purchase balances from the previous billing cycle for which periodic finance charges have not been already billed."

2    Plaintiffs did not attach to their Complaint a copy of the Cardmember Agreement to which the Complaint makes reference. The Cardmember Agreement of Plaintiff Paul Haugh has been cited by Defendants and is referenced in this Order.

## STANDARDS FOR *RULE 12(b)(6)* DISMISSAL

On a motion to dismiss for failure to [*6] state a claim, the Court must construe the complaint in the light most favorable to the plaintiff, taking all his allegations as true and drawing all reasonable inferences from the complaint in his favor. A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005)*. The complaint need not set out the facts in detail; what is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)*; *La Salvia v. United Dairymen, 804 F.2d 1113, 1116 (9th Cir. 1986)*. Thus, the Court's task "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Cooper v. Parsky, 140 F.3d 433, 440 (2nd Cir. 1998)*.

## REGULATION Z AND THE TRUTH IN LENDING ACT

The Federal Reserve Board has adopted regulations (Regulation Z, 12 C.F.R., part 226) implementing provisions of the TILA. *Section 226.6(a)(2)* [*7] requires "a disclosure of each periodic rate that may be used to compute the finance charge . . . and the corresponding annual percentage rate." *Section 226.9(c)(1)*, requires creditors to notify consumers whenever "any term required under *§ 226.6* is changed." The Official Staff Commentary [3] to Regulation Z ("Commentary"), requires Chase to provide written notice "if there is an increased periodic rate or any other finance charge attributable to the consumer's delinquency or default." *12 C.F.R. pt. 226, Supp. I, § 226.9(c)(1), cmt. 3.* The Commentary goes on to state, however, that "[n]o notice of a change in terms need be given if the specific change is set forth initially, such as: [r]ate increases under a properly disclosed variable-rate plan." *12 C.F.R. pt. 226, Supp. I, § 226.9(c), cmt. 1.*

3    The Commentary, which is put forth by the Board of Governors of the Federal Reserve System is entitled to a great deal of deference. *Anderson Bros. Ford v. Valencia, 452 U.S. 205, 219, 101 S. Ct. 2266, 68 L. Ed. 2d 783, (1981)*

[*8] In *Evans v. Chase Manhattan Bank USA, N.A., 2006 U.S. Dist. LEXIS 5259, [WL] 213740 (N.D. Cal.,2006)(Slip Copy, January 27, 2006),* Judge Conti reviewed the exact circumstances alleged here and found that Chase's Cardmember Agreement gives cardmembers the appropriate notice required under Regulation Z. Addressing plaintiffs' allegations that the rate increases are discretionary and based on unknown factors, Judge Conti noted that Regulation Z states that "notice must be given if the contract allows the creditor to increase the rate at its discretion but does not include specific terms for an increase." *12 C.F.R. pt. 226, Supp. I, § 226.9(c), cmt. 1.*

According to the Commentary, because Chase's Card-member Agreement discloses the specific terms for its increases, it is not bound by Regulation Z's notice requirements. *Evans, 2006 U.S. Dist. LEXIS 5259, [WL] 213740 at 2*. Chase discloses the maximum rate it will set an APR in the event of a cardmembers default. Thus, the increase in rates based upon a cardmembers default is not a "change in terms" under the TILA because the rate increase has been previously disclosed. Similarly, because Chase gives the reasons for its rate changes, Plaintiffs' contention [*9] that they are based on unknown factors is simply not accurate. That Chase may elect not to increase the rate to the maximum allowable by the Cardmember Agreement does not require any additional notice. *Section 226.9(c)(2)* provides that "[n]o notice . . . is required when the change involves . . . reduction of any component of a finance or other charge." A decision not to increase the interest rate to the maximum allowed has the same effect as a reduction in the maximum default to a lower rate. See, *Evans 2006 U.S. Dist. LEXIS 5259, [WL] 213740 at 2-3*.

Plaintiffs assert that the retroactive nature of Chase's rate increase is a "change in terms" requiring prior notice. Judge Conti rejected this allegation as well:

> [T]he Court is unimpressed by Plaintiffs' complaints that the rate increases **are** discretionary, that they are based on unknown factors, and that the rate increases are **retroactive**. These complaints have nothing to do with Regulation Z's notice requirements. **The Official Staff Commentary to Regulation Z states that "notice must be given if the contract allows the creditor to increase the rate at its discretion but does not include specific terms for an increase.** [*10] " *12 C.F.R. pt. 226, Supp. I, § 226.9(c), cmt. 1.* According to the Commentary, because Chase's Cardmember Agreement discloses the specific terms for its increases, it is not bound by Regulation Z's notice requirements.FN5 Similarly, because Chase gives the reasons for its rate changes, Plaintiffs' contention that they are based on unknown factors is simply not accurate. Finally, **that Chase applies rate increases retroactively is disclosed by the Cardmember Agreement.**

*Evans, 2006 U.S. Dist. LEXIS 5259, [WL] 213740 at 2-3*. (emphasis added, citations omitted).

The Cardmember Agreement sets forth the circumstances constituting default and the maximum default interest rate. It further identifies the specific terms that might result in higher interest rate up to the maximum default rate and the factors considered in determining whether to charge the maximum default rate or a lower rate. The Cardmember Agreement also explicitly states that the increase in rates will take effect as of the first day of the billing cycle in which the default occurs, and will apply to purchase balances from the previous billing cycle for which periodic finance charges have not been already billed. As [*11] Judge Conti held in *Evans*, an increase in interest rate based explicitly on the terms set forth in the Cardmember Agreement is simply not a "change in terms" that requires notice. The Complaint does not state a claim for relief under the TILA and thus, the First Cause of Action for violation of the TILA is subject to dismissal.

## DECLARATORY RELIEF AND COMMON LAW CLAIMS

Plaintiffs' second, third and forth causes of action allege that these same provisions are unfair and unconscionable and constitute an illegal penalty. Specifically, Plaintiffs' second claim asks the Court for a determination and a declaration that these provisions are unfair, unconscionable and constitute an illegal penalty, and as such are unenforceable. Plaintiffs request an award of damages to the extent Chase has enforced the unconscionable and illegal penalty. Plaintiffs' third cause of action asks the Court to sever the unconscionable contract terms and for appropriate damages. Plaintiffs' fourth cause of action asks the Court for an order enjoining Chase from further enforcement and collection of increased finance charges based on interest rates imposed retroactively and without advance notice. Plaintiffs [*12] also ask the Court to order Chase to make restitution and disgorge its profits.

Chase contends that the provisions are authorized by the law of Chase's home state, Delaware and cannot be deemed unconscionable.

Judge Conti dismissed virtually identical causes of action brought against Chase in *Evans v. Chase Manhattan Bank USA, N.A., 2006 U.S. Dist. LEXIS 5959, [WL] 213740 (N.D. Cal.,2006)*(Slip Copy, January 27, 2006). Again, this Court finds Judge Conti's analysis persuasive. The Cardmember Agreement states that the terms of the Agreement shall be governed and interpreted in accordance with the laws of Delaware. *Section 944* of the Delaware Banking Act, *5 Del. C. § 944*, states that "[i]f the agreement governing the revolving credit plan so provides, the periodic percentage rate or rates of interest under such plan may vary in accordance with a schedule or formula." A permissible schedule or formula may in-

clude provision in the agreement governing the plan for a change in rates of interest applicable to all or any part of outstanding unpaid indebtedness contingent upon the happening of any event or circumstance specified in the plan, which event or circumstance may [*13] include the failure of the borrower to perform in accordance with the terms of the plan. *5 Del. C. § 944*. The Cardmember Agreement complies with these requirements. See, *Evans, 2006 U.S. Dist. LEXIS 5952, [WL] 213740 at 3*. Based on this statutory authority, Judge Conti held that "[w]here, as here, Delaware law not only speaks directly to the issue, but specifically authorizes the custom, the Court will not declare the terms unconscionable." *Evans, 2006 U.S. Dist. LEXIS 5259, [WL] 213740 at 3*.

This Court (and Judge Conti, in *Evans*) has determined that the Complaint does not allege facts that support the allegation that the practices of Chase violate either federal or State of Delaware law. It is also evident that the retroactive increase in interest charges do not constitute an unlawful penalty. See, *United States v. Childs, 266 U.S. 304, 307, 45 S. Ct. 110, 69 L. Ed. 299, 1924-1 C.B. 241, T.D. 3671 (1924)*("A penalty is a means of punishment; interest a means of compensation"); *Citibank, N.A. v. Nyland, Ltd., 878 F.2d 620, 624-25 (2nd Cir. 1989)*(Increased in interest rate on principal in the event of a default to a "default rate" of 17.5% is not an unlawful penalty, but simply reflects the [*14] heightened risk of repayment that the creditor bears upon entry of default).

The terms of the Cardmember Agreement are not unconscionable and do not constitute an unlawful penalty. Plaintiffs' second, third and fourth causes of action are subject to dismissal.

## WASHINGTON'S CONSUMER PROTECTION ACT

Plaintiffs' fifth cause of action alleges a violation of Washington's Consumer Protection Act, (CPA), *RCW 19.86.170*. This action fails because the CPA expressly exempts actions or transactions which are "otherwise permitted, prohibited or regulated under laws administered by . . . any other regulatory body or officer acting under statutory authority of . . . the United States." *RCW 19.86.170*.

In *Miller v. United States Bank, N.A., 72 Wn. App. 416, 865 P.2d 536 (1994)*, the court held customers's claim against bank alleging that loan collection practices were unfair or deceptive in violation of Washington's Consumer Protection Act was preempted by the National Bank Act. The relationship between bank and customer concerning a bank's loan collection practices was specifically regulated by U.S. Comptroller of the Currency. Comptroller was uniquely [*15] qualified to regulate

and resolve disputes arising in bank-customer relationship, and danger existed that state court decisions could conflict with Comptroller's decisions and regulations. Given the pervasive federal regulation of banking system and its intent to regulate unfair and deceptive practices, the customer could not maintain a CPA claim. *Id., at 421-22*.

Plaintiffs' CPA claim is subject to dismissal for the reasons set forth in *Miller*. Additionally, this Court has already determined that Chase's rate increase practices are not unconscionable. The Cardmember Agreement provides cardmembers notification of the maximum default interest rate, that Chase may change a cardmember's APR upon a default, that it would apply rate increases retroactively, and that it "may consider" various factors in determining a new APR. These practices do not constitute a violation of the CPA. See, *Evans, 2006 U.S. Dist. LEXIS 5259, [WL] 213740 at 5-6* (Chase's interest rate practices do not violate Delaware or California consumer protection laws).

Plaintiffs' fifth cause of action is subject to dismissal.

## BREACH OF CONTRACT

Plaintiffs' sixth cause of action alleges a breach of [*16] contract on the basis that the Cardmember Agreement incorporates federal law and this incorporated federal law, specifically Regulation Z, was violated. As noted by Judge Conti, this is simply a reiteration of Plaintiffs' first cause of action: violation of the TILA, and is subject to dismissal for the same reasons. See, *Evans, 2006 U.S. Dist. LEXIS 5259, [WL] 213740 at 5*. This Court is in agreement. Chase's practices do not violate Regulation Z and thus there is no breach of contract premised upon incorporation of Regulation Z into the contract. Plaintiffs have failed to allege a cause of action for breach of the Cardmember Agreement. The sixth cause of action is subject to dismissal.

## CONCLUSION

For the reasons set forth above, the Court finds that Plaintiffs have not alleged facts sufficient to sustain a cause of action for violations of the TILA, state law, common law and the contractual agreements.

ACCORDINGLY,

IT IS ORDERED:

Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint [Dkt. # 20] is **GRANTED**, and this case dismissed in its entirety, with prejudice

DATED this 1st day of August, 2006.

FRANKLIN D. BURGESS

# EXHIBIT I

FOCUS - 6 of 29 DOCUMENTS

**ELVIS WILLIAMS, an individual, on behalf of himself and others similarly situated, Plaintiff, v. WASHINGTON MUTUAL BANK and DOES 1 through 10, inclusive, Defendant.**

**NO. CIV. 07-2418 WBS GGH**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA**

*2008 U.S. Dist. LEXIS 5325*

**January 10, 2008, Decided
January 11, 2008, Filed**

**COUNSEL:** [*1] For Elvis Williams, Plaintiff: Barry Leonard Kramer, LEAD ATTORNEY, Law Offices of Barry L. Kramer, Los Angeles, CA; Brian R Strange, Gretchen A. Carpenter, LEAD ATTORNEYS, Strange & Carpenter, Los Angeles, CA.

For Washington Mutual Bank, Defendant: Gail Elise Abbey, LEAD ATTORNEY, Edwards Angell Palmer and Dodge LLP, Boston, MA; Hillary B. Dudley, PHV, John A. Houlihan, PHV, LEAD ATTORNEYS, Edwards Angell Palmer & Dodge LLP, Boston, MA; Robert Reins Pohls, LEAD ATTORNEY, Pohls & Associates, San Ramon, CA.

**JUDGES:** WILLIAM B. SHUBB, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** WILLIAM B. SHUBB

**OPINION**

*MEMORANDUM AND ORDER RE: MOTION TO DISMISS*

Plaintiff Elvis Williams filed this class action against defendant Washington Mutual Bank after defendant increased his annual percentage rate (APR) and provided notice of such an increase only in its initial disclosures. Defendant now moves to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted.

*I. Factual and Procedural Background*

Defendant issued a credit card to plaintiff on May 17, 2006. (Gorman Decl. Ex. A.) Before sending plaintiff his new credit card, defendant sent him its Terms Sheet and Account Agreement. *(Id.)* Among other disclosures, [*2] the Terms Sheet and Account Agreement informed plaintiff that defendant could increase his interest rate if he defaulted on his account ("default APR"). *(Id.)* Per the Terms Sheet, Account Agreement, and the September 2006 Important Notice of Changes to the Account Agreement ("Notice of Changes"), plaintiff's October 5, 2006 billing statement informed plaintiff that defendant increased his APR because of a default. (Compl. P 11.) Defendant applied the default APR to all purchases plaintiff made during the billing cycle for the October billing statement. *(Id.)* Doing so resulted in the default APR applying to purchases plaintiff made before defendant informed him that it had increased his APR. *(Id.)* Between November 6, 2006 and February 6, 2006, defendant further increased plaintiff's default APR. *(Id.)*

On September 27, 2007, plaintiff filed this action in state court, alleging that defendant's practice (1) violates the Fair Truth in Lending Act (TILA); (2) constitutes an illegal penalty; (3) violates California's Unfair Competition Law (UCL); (4) breaches its contract with plaintiff; and (5) constitutes a tortious breach of the implied covenant of good faith and fair dealing. Defendant [*3] removed the case to federal court and now moves to dismiss plaintiff's complaint for failure to state a claim.

*II. Discussion*

On a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183, 104 S. Ct. 3012, 82 L. Ed. 2d 139 (1984); Cruz v. Beto, 405 U.S. 319, 322, 92 S. Ct. 1079, 31 L. Ed. 2d 263 (1972).* To survive a motion to dismiss, a

2008 U.S. Dist. LEXIS 5325, *

plaintiff needs to plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). Dismissal is appropriate, however, where the plaintiff fails to state a claim supportable by a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *see also Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), *abrogated on other grounds by Twombly*, 127 S. Ct. at 1968 (complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests").

In general, the court may not consider materials other than the facts alleged in the complaint when ruling on a motion to dismiss. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996). [*4] The court may, however, consider materials if plaintiff has alleged the existence of the materials in his complaint and the authenticity of the materials is not disputed. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (on a motion to dismiss, courts may properly review "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading").

Defendant has provided the court with its Terms Sheet, Account Agreement, and Notice of Changes and plaintiff's September 6, 2006 billing statement. (Gorman Decl. Exs. A, B, C.) Plaintiff has alleged the existence of these documents in his complaint (Compl. PP 11, 25, 37) and neither party questions their authenticity. Accordingly, the court will consider these materials in deciding this motion.

A. *First Cause of Action: TILA Violations*

Unless an exception applies, Regulation Z of TILA requires a creditor to provide written notice whenever a finance charge is changed, including an increase in the consumer's APR because of the consumer's default or delinquency. [*5] 12 C.F.R. § 226.9(c)(1) (requiring written notice whenever "any term required to be disclosed under *section 226.6* is changed"); *id.* § 226.6(a) (requiring disclosure of a change in finance charge); *id.* § 226.9(c)(2) (listing exceptions). The Official Staff Commentary [1] to Regulation Z explains that notice of a change in terms is not required if "the specific change is set forth initially, such as: Rate increases under a properly disclosed variable-rate plan . . . ." *Id.* pt. 226, Supp. I, § 226.9(c), cmt. 1.

    1  "Unless demonstrably irrational, Federal Reserve Board staff opinion construing the Act or Regulating should be dispositive . . . ." *Ford Mo-*

*tor Credit Co. v. Milhollin*, 444 U.S. 555, 565, 100 S. Ct. 790, 63 L. Ed. 2d 22 (1980).

Defendant's Terms Sheet and Notice of Changes inform the consumer that "[y]our **APR(s)** may vary based on changes in the Prime Rate" and "[e]ach time you default . . . the **APRs** (including any introductory rate) for new and existing balances in any Balance Category may increase up to the Prime Rate plus 23.74% (the "Default **APR**"). (Gorman Decl. Exs. A, C (emphasis in originals).) In similar cases brought by plaintiff's counsel, three federal courts have held that substantially the same language [*6] [2] in account agreements provided adequate initial notice of a rate increase due to default and thus negated the requirement for notice at the time of default. *Evans v. Chase Manhattan Bank USA, N.A.*, No. 05-3968, 2006 U.S. Dist. LEXIS 5259, 2006 WL 213740, at *2-*3 (N.D. Cal. Jan. 27, 2006); *Penner v. Chase Bank USA, N.A.*, No. 06-3968, 2006 U.S. Dist. LEXIS 53179, 2006 WL 2192435, at *2-*3 (W.D. Wash. Aug. 1, 2006); *McCoy v. Chase Manhattan Bank USA*, No. 06-107, Civil Minutes, at *5-*6 (C.D. Cal. Aug. 10, 2006).

    2  Without identifying a single difference, plaintiff inaccurately argues that the agreements were substantially different in those cases. (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss 1:15-16, 13:13-15.)

Proposed rule amendments to TILA also underscore that defendant's practice does not violate the current version of TILA. Specifically, in explaining proposed rule amendments, the Federal Reserve Board states:

    Advance notice currently is not required in all cases . . . . [N]o change-in-terms notice is required if the specific change is set forth initially by the creditor in the account-opening disclosures. For example, some credit card account agreements permit the card issuer to increase the periodic rate if the consumer makes a late [*7] payment. Because the circumstances of the increase are specified in advance in the account agreement, the creditor currently need not provide a change-in-terms notice; under current § 226.7(d) the new rate will appear on the periodic statement for the cycle in which the increase occurs.

*72 Fed. Reg. 33009 (June 14, 2007)*. Therefore, the federal cases addressing the same issue and the Board's recent comments about potential amendments lead this court to conclude that defendant's practice of notifying

2008 U.S. Dist. LEXIS 5325, *

consumers about default rate increases only in its initial disclosures does not violate TILA.

Plaintiff also argues that, even if initial notice of a default rate increase is sufficient under TILA, defendant's notice does not comply with TILA because (1) the notice does not provide the "specific terms" for an increase and (2) the notice gives defendant discretion to decide whether to increase the APR if a consumer defaults. (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss 5:3-9.) Plaintiff correctly notes that the Official Commentary requires that notice "be given if the contract allows the creditor to increase the rate at its discretion but does not include specific terms for an increase (for [*8] example, when an increase may occur under the creditor's contract reservation right to increase the periodic rate)." 12 C.F.R. pt. 226, Supp. I, § 226.9(c), cmt. 1. Plaintiff's reliance on this language, however, goes too far.

Defendant's Terms Sheet and Notice of Changes do include the required "specific terms" for an increase in the rate due to default. First, they establish the method used to calculate the default APR and set the maximum default APR at "the Prime Rate plus 23.74%." *(See* Gorman Decl. Exs. A, C) (also providing an example of the calculation).) Second, the disclosures list the specific acts that can constitute a default, thus triggering a potential increase:

> Each time you default under any Washington Mutual Account Agreement because you fail to make at least the Minimum Payment by the Payment Due Date, exceed your Credit Line, or make a payment to us that is not honored by your bank, the **APRs** (including any introductory rate) for new and existing balances in any Balance Category may increase . . . .

*(See id.* Ex. C (emphasis in original).) [3] This language provides the consumer with notice of the precise acts within the consumer's control that can constitute a default. [*9] Therefore, because the disclosures provide notice of the maximum default APR and the consumer's acts that can trigger an increase, defendant's notice sufficiently provides the "specific terms for an increase." 12 C.F.R. pt. 226, Supp. I, § 226.9(c), cmt. 1.

3    Prior to the Notice of Changes, defendant's Terms Sheet included a "universal default clause," which provided that the consumer would be in default if the consumer was "reported as delinquent on an account with any other creditor." *(Id.* Ex. A.) This questionable provision, which

Nevada rendered illegal in 2007, *Nev. Rev. Stat. § 666.410(3)(b)*, is not at issue in this case.

Plaintiff argues that the factors defendant lists as considerations when it determines a default APR give defendant too much discretion. *(See id.* (listing the factors defendant considers in setting a default APR).) However, the latitude of defendant's discretion is not fatal because the consumer is on notice of the maximum default APR and the circumstances, all of which are in the consumer's control, that can trigger an increased APR.

Defendant's discretion not to increase a default APR is also distinguishable from the discretion a creditor has under an unlimited [*10] reservation of right to increase an interest rate. Defendant's Terms Sheet establishes the maximum default APR and gives defendant only the discretion to set a default APR below the maximum or decline to impose a default APR. *(Id.)* Contrary to plaintiff's argument, *section 226.9(c)(2)* provides that "[n]o notice . . . is required when the change involves . . . a reduction of any component of a finance or other charge." *12 C.F.R. § 226.9(c)(2)*. Thus, because the Terms Sheet allows defendant to increase the default APR to the maximum stated in the Terms Sheet, defendant's decision not to do so is akin to a reduction of the consumer's finance charge, which does not require notice. *See McCoy v. Chase Manhattan Bank USA,* No. 06-107, Civil Minutes, at *5, n.4 (C.D. Cal. Aug. 10, 2006) ("A decision not to increase a rate is analytically indistinct from a decision to lower a rate: in both cases the consumer benefits."); *see also Penner v. Chase Bank USA, N.A., No. 06-3968, 2006 U.S. Dist. LEXIS 53179, 2006 WL 2192435, at *2 (W.D. Wash. Aug. 1, 2006)* (citing *Evans v. Chase Manhattan Bank USA, N.A., No. 05-3968, 2006 U.S. Dist. LEXIS 5259, 2006 WL 213740, at *3-*4 (N.D. Cal. Jan. 27, 2006)).*

Accordingly, just as three other federal courts recently [*11] addressing this very issue have done, this court must grant defendant's motion to dismiss plaintiff's first cause of action for failure to allege facts sufficient to assert a claim under TILA.

B. *Second Cause of Action: Illegal Penalty*

Plaintiff alleges that defendant's "contractual provision which purportedly permits it to impose a rate increase *retroactively* constitutes an illegal penalty provision" and is "unlawful, void, against public policy, and unenforceable." (Compl. 11:14-16, 12:2 (emphasis in original).) [4] The Account Agreement states that the terms of the agreement are governed by federal law and, "to the extent not preempted by federal law, the State of Nevada." (Gorman Decl. Ex A.)

4    Plaintiff argues that *Evans, Penner,* and *McCoy* did not address retroactive rate increases (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss 20:12-13); however, *Evans* and *Penner* both discuss that the plaintiffs in those cases, who were represented by the same counsel as in this case, attacked the retroactive nature of the rate increases. *See Evans,* 2006 U.S. Dist. LEXIS 5259, 2006 WL 213740, at *2 ("On a final note, the Court is unimpressed by Plaintiff's complaint[] . . . that the rate increases are retroactive."); *Penner,* 2006 U.S. Dist. LEXIS 53179, 2006 WL 2192435, at *3.

As  [*12] discussed above, increasing an APR in the event of a default if notice was initially provided is not illegal under federal law. The retroactive nature of the default APR does not change this conclusion because the initial disclosures provide notice that the default APR will apply to "new and existing balances in any Balance Category." *(See* Gorman Decl. Ex. C.); *see also Evans,* 2006 U.S. Dist. LEXIS 5259, 2006 WL 213740, at *2-*3; *Penner,* 2006 U.S. Dist. LEXIS 53179, 2006 WL 2192435, at *3; 72 Fed. Reg. 33009 (June 14, 2007) (stating that "under current § 226.7(d) the new rate will appear on the periodic statement for the cycle in which the increase occurs").

While plaintiff claims that defendant's practice of calculating the default APR at the end of the month and applying it to that month's billing cycle is an illegal penalty under Nevada law, plaintiff does not cite a single Nevada statute or case to support his position. Contrary to plaintiff's position, *Nevada Revised Statute section 97A.140(3)* requires only that "[t]he rate of interest charged, and any other fees or charges imposed for the use of the credit card, [] be in an amount agreed upon by the issuer and the cardholder." *Nev. Rev. Stat. § 97A.140(3); see also id. § 97A.140(3)*  [*13] (defining "interest"). *Section 99.050* also provides that "[p]arties may agree for the payment of . . . any other charges or fees." *Id. § 99.050.* Similar to federal law, *section 97A.140* neither prohibits initial disclosures from satisfying the disclosure requirements nor prohibits retroactive interest. *Id. § 97A.140.* Therefore, plaintiff has failed to cite, and this court is unaware of, a Nevada statute or case that renders an agreed-upon retroactive default interest an illegal penalty. Accordingly, the court must grant defendant's motion to dismiss plaintiff's second cause of action.

C. *Third Cause of Action: Unfair and/or Deceptive Business Practices*

California's UCL restricts "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue, or misleading advertising." *Cal. Bus. & Prof.* *Code § 17200.* The UCL "'borrows' violations from other laws by making them independently actionable as unfair competitive practices." *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1143, 131 Cal. Rptr. 2d 29, 63 P.3d 937 (2003). However, "[w]hen specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." *Cal-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,* 20 Cal. 4th 163, 182-83, 83 Cal. Rptr. 2d 548, 973 P.2d 527 (1999);  [*14] *Schnall v. Hertz Corp.,* 78 Cal. App. 4th 1144, 1154, 93 Cal. Rptr. 2d 439 (2000). Therefore, plaintiff cannot assert a UCL claim if a federal or state law legalizes defendant's practice. *See Augustine v. FIA Card Servs., N.A.,* 485 F. Supp. 2d 1172, 1176 (E.D. Cal. 2007) (stating that federal or state law can provide a safe harbor).

As discussed above, FILA authorizes defendant's practice because defendant provides sufficient notice in its initial disclosures. Defendant's practice comes within the UCL's "safe harbor," thus negating plaintiff's ability to challenge the practice under the UCL. *Cal-Tech Commc'ns, Inc.,* 20 Cal. 4th at 182-83. Accordingly, the court must dismiss plaintiff's third cause of action.

D. *Fourth Cause of Action: Breach of Contract*

In his complaint, plaintiff rests his breach of contract claim solely on defendant's alleged violation of Regulation Z. (Compl. PP 37-42.) Because this court concludes that plaintiff has not stated a claim for violation of Regulation Z, plaintiff's breach of contract claim necessarily fails. *See, e.g., Evans v. Chase Manhattan Bank USA, N.A.,* No. 05-3968, 2006 U.S. Dist. LEXIS 5259, 2006 WL 213740, at *5 (N.D. Cal. Jan. 27, 2006). Accordingly, the court must grant defendant's motion to  [*15] dismiss plaintiff's fourth cause of action.

E. *Fifth Cause of Action: Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing*

Under Nevada law, a "tort action for breach of the implied covenant of good faith and fair dealing requires a special element of reliance or fiduciary duty, and is limited to 'rare and exceptional cases.'" *Great Am. Ins. Co. v. Gen. Builders, Inc.,* 113 Nev. 346, 354-55, 934 P.2d 257 (1997) (internal citations omitted). To constitute a "special relationship," the relationship between the parties must be "characterized by elements of public interest, adhesion, and fiduciary responsibility," such as employment, bailment, insurance, partnership, and franchise relationships. *Id. at 355.* In his complaint, plaintiff does not allege a special relationship between himself and defendant, nor is this court aware of a Nevada case that recognizes a creditor-consumer relationship as a special relationship.

2008 U.S. Dist. LEXIS 5325, *

Still, even if Nevada law recognizes a creditor-consumer relationship as a special relationship, plaintiff's claim for tortious breach of the implied covenant of good faith and fair dealing would still be insufficient. Such a claim can prevail only if "'the party in the superior [*16] or entrusted position' has engaged in 'grievous or perfidious misconduct.'" *Id.* Here, the conduct plaintiff alleges amounted to a tortious breach of the implied covenant of good faith and fair dealing is the same conduct supporting his other claims. (Compl. PP 44-45.) Because FILA authorizes this conduct, it does not amount to "grievous or perfidious misconduct." Accordingly, the court must also grant defendant's motion to dismiss plaintiff's fifth cause of action.

IT IS THEREFORE ORDERED that defendant's motion to dismiss plaintiff's complaint be, and the same hereby is, GRANTED.

DATED: January 10, 2008

/s/ William B. Shubb

WILLIAM B. SHUBB

UNITED STATES DISTRICT JUDGE