**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LAURA M. SWANSON, et al., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 08 C 00184 |
| ) | |
| BANK OF AMERICA, N.A. and FIA ) | |
| CARD SERVICES, N.A., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiff Laura Swanson filed a Second Amended Complaint, on behalf of herself and all other similarly situated residents of the State of Illinois, alleging that Defendants Bank of America, N.A.'s ("the Bank") and FIA Card Services, N.A.'s ("FIA") retroactive application of interest rate increases violated the Truth in Lending Act ("TILA"), the Illinois Consumer Fraud & Deceptive Business Practices Act ("ICFA"), and unjustly enriched Defendants. Before the Court is Defendants' motion to dismiss Plaintiff Swanson's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants Defendants' motion.

**BACKGROUND**

**I.    Relevant Facts**

Plaintiff opened a credit card account with the Bank.[1] In connection with this account, Plaintiff received term agreements which indicated that Plaintiff had a $5,000 credit limit

---

[1] The Bank and FIA are corporate affiliates. (R. 34-1, at ¶ 4.)

available on the account.  (R. 41-6, at p. 2.)  The agreements also noted that if Plaintiff twice exceeded the credit limit during a 12-month billing cycle, the Bank could increase the interest rate on the account.  *Id.*  Defendants' revised credit card term agreements state that each interest rate increase "will be effective as of the first date of the billing cycle in which the Default Rate is applied."  (R. 41-6, at p. 2.)  Plaintiff exceeded the credit limit in August 2007 and again in November 2007.  (R. 41-7, at p. 2, 9.)  As a result, Defendants increased the interest rate of Plaintiff's account from 18.24 percent to 32.24 percent, and applied the higher rate to the beginning of the November billing cycle that had just ended.  (R. 34-1, at ¶¶ 12-13.)  Due to the increase, Defendants added approximately sixty dollars in interest charges to Plaintiff's November bill.  (*Id.* at ¶ 15.)

In her SAC, Plaintiff Swanson makes three claims against Defendants.  She first alleges that Defendants violated TILA, specifically 15 U.S.C. § 1601(a), by failing to provide her with written notice of the specific rate increase before the increase became effective.  (R. 34-1, at ¶ 25.)  Second, Swanson alleges that Defendants were unjustly enriched by the retroactive rate increase, which Plaintiff Swanson argues was an illegal penalty.  (*Id.* at ¶ 29.)  Third, she alleges that Defendants violated the ICFA, specifically 815 ILCS 505/1, *et seq.*, by engaging in unfair and deceptive practices.  (*Id.* at ¶ 35.)  Defendants have moved to dismiss the SAC, arguing that Plaintiff has failed to state a claim upon which relief may be granted, and that the state law claims are preempted by federal law.

## ANALYSIS

I.   **Legal Standard on a Rule 12(b)(6) Motion**

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint."  *Christensen*

*v. County of Boone, Ill.*, 483 F.3d 454, 458 (7th Cir. 2007).  Under Fed. R. Civ. P. 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  This statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which is rests."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 506, 122 S. Ct. 992, 152 L.Ed. 2d 1 (2002) (quotation omitted).  Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1959, 167 L. Ed. 2d 929 (2007).  Put differently, a complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic*, 127 S.Ct. at 1974; *see also Limestone Dev. Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 803 (7th Cir. 2008) (amount of factual allegations required to state a plausible claim for relief depends on complexity of legal theory).  "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 127 S.Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007).

**II.    Exhibits**

Defendants have asked the Court to consider various exhibits in connection with their motion.  In a typical 12(b)(6) motion, the Court does not consider documents extrinsic to the complaint.  *See* Fed. R. Civ. P. 12(d); *ABM Amro, Inc. v. Capital Int'l Ltd.*, No. 04 C 3123, 2007 WL 845046, at *3 (N.D. Ill. 2007) (Filip, J.).  The Seventh Circuit teaches, however, that a district court may consider extrinsic exhibits if the documents are both referred to in the complaint and are also central to the plaintiff's claims.  *See Tierney v. Vahle*, 304 F.3d 734, 738-39 (7th Cir. 2002); *see also Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993); *ABM Amro*, 2007 WL 845046, at *4.  Of course, to be considered at the

12(b)(6) stage, the documents must also be indisputably authentic. *See Tierney*, 304 F.3d at 738; *see also ABN Amro*, 2007 WL 845046, at *5. Defendants have asked the Court to consider three types of documents in connection with their motion.

First, Defendants have asked the Court to consider statements reflecting Plaintiff's account balances. (R. 41-4; R. 41-7.) These statements are referenced in the SAC, and the facts contained within these statements, particularly the change in interest rates and the number of defaults, are important to Plaintiff's claims. (R. 34-1, at ¶ 11.) Moreover, the authenticity of these documents is not questioned. (R. 34-1, at ¶ 11.) As such, the Court will consider the account statements.

Defendants next ask the Court to consider a credit card term agreement entered into by Plaintiff and the Bank. (R. 41-2; R. 41-3.) Although the SAC is silent as to Swanson's receipt of the agreement, the Court may consider extrinsic documents in a 12(b)(6) motion where the documents are implicitly referenced within the complaint. *Tierney*, 304 F.3d at 738-39; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (considering stock purchase agreement in a fraud case); *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 639 n.4 (N.D. Ill. 2002) (Castillo, J.) (considering truck rental agreement). Here, Plaintiff Swanson's receipt of the agreement is fundamental to – and as discussed below, fatally undermines – Plaintiff's allegation that Defendants failed to provide advance notice of the complained of interest rate increase. (R. 34-1, at ¶¶ 9, 25, 36.) Moreover, Plaintiff tacitly admits that she received the agreement, thus the Court accepts its authenticity. (R. 45-1; Pl.'s Resp. to Def.'s Mot. for Dismissal, at p. 4.) The Court will consider the agreement.

Defendants have also asked the Court to consider a supplemental agreement reiterating many of the same terms as the initial agreement. (R. 41-5; R. 41-6.) Although the supplemental agreement is not explicitly referenced in the SAC, receipt of the documents is implicitly acknowledged. (R. 45-1; Pl.'s Resp. to Def.'s Mot. for Dismissal 4-5.) These documents too are central to Plaintiff's claims regarding notice of the interest rate increase, and Plaintiff does not question the authenticity of the revised agreement. The Court will consider the supplemental credit card term agreement.

### III.    Plaintiff's Truth In Lending Act ("TILA") Claim

#### A.    Subject Matter Jurisdiction

Although Plaintiff's SAC seeks to invoke only the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(d), the Court has federal question jurisdiction over Plaintiff's federal TILA claim. 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); *see, e.g.*, *Cunningham v. Nationscredit Fin. Servs. Corp.*, 497 F.3d 714, 717 (7th Cir. 2007); *Boyd v. Phoenix Funding Corp.*, 366 F.3d 524, 529 (7th Cir. 2004) ("It is clear that the federal truth-in-lending claim falls within the federal-question jurisdiction of the court.").

#### B.    TILA Requirements

TILA was designed to, among other things, protect consumers in credit transactions by requiring strict disclosures from lenders. 15 U.S.C. § 1601(a), *et seq*; *Household Credit Servs. v. Pfennig*, 541 U.S. 232, 236 (2004); *see also Hamm v. Ameriquest Mortg. Co.*, 506 F.3d 525, 528 (7th Cir. 2007). In analyzing Plaintiff's TILA claim, the Court looks to the language of the statute, the implementing regulation, and the relevant Board Staff Commentary. *See Hamm*, 506

F.3d at 528.  Congress has expressly delegated to the Federal Reserve Board (the "Board") the authority to prescribe regulations – including "Regulation Z," 12 C.F.R. § 226.1, *et seq*. – to effectuate the purposes of TILA.  *Pfennig*, 541 U.S. at 238.  The Court must "pay particular heed" to the Board's Official Commentary when interpreting TILA, and "[u]nless demonstrably irrational, [the Board's] staff opinions construing the Act or Regulation should be dispositive." *Hamm*, 506 F.3d at 528 (citing *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980)).

TILA and Regulation Z govern open-end credit plans, like Plaintiff Swanson's credit card account.  *See Pfennig,* 541 U.S. at 235; *Benion v. Bank One*, 144 F.3d 1056, 1057-58 (7th Cir. 1998) (Posner, J.).  Under TILA, a creditor must provide the consumer with an "initial disclosure" which, among other things, discloses the circumstances under which the creditor may increase the consumer's interest rates.  12 C.F.R. § 226.6(a)(2) n.12.  Plaintiff does not argue that Defendants failed to comply with Section 226.6(a).

In addition to initial disclosure requirements, TILA also requires creditors to notify consumers of subsequent changes to the initially disclosed terms.  *See* 12 C.F.R. § 226.9(c)(1) ("Whenever any term required to be disclosed under § 226.6 is changed or the required minimum periodic payment is increased, the creditor shall mail or deliver written notice of the change to each consumer who may be affected.").  The Official Commentary, however, explains that a creditor is not required to make a subsequent disclosure if the "specific change" is set forth in the initial disclosure.  12 C.F.R pt. 226, Supp. 1, § 226.9(c), cmt. 1.  Specifically, Comment 1 states that:

> No notice of a change in terms need be given if the specific change is set forth initially, such as Rate increases under a properly disclosed variable-rate plan, a rate increase that occurs when an employee has been under a preferential rate agreement and terminates employment, or an increase that occurs when the consumer has been under an agreement

> to maintain a certain balance in a savings account in order to keep a particular rate and the account balance falls below the specified minimum. In contrast, notice must be given if the contract allows the creditor to increase the rate at its discretion but does not include specific terms for an increase (for example, when an increase may occur under the creditor's contract reservation right to increase the periodic rate)…

*Id.*

The resolution of Plaintiff's TILA claim hinges on whether the first or second sentence of Comment 1 applies to Defendants' actions. Defendants argue that their initial disclosures (in the credit card agreements) set forth the "specific change" of which Plaintiff complains, and therefore they did not need to provide subsequent notice pursuant to the first sentence of Comment 1. Plaintiff, on the other hand, argues that Defendants' practice of increasing interest rates upon a consumer's delinquency falls under the second sentence of Comment 1 both because it fails to satisfy the "specific change" requirement and because Defendants maintained discretion to increase the rate.

### C.    Specific Change

To determine whether Defendants' initial disclosures set forth a "specific change" in terms, the Court first looks to the agreements themselves. In addition to listing the specific act which triggers the interest rate increase, namely twice exceeding the credit limit, the agreements set forth the method Defendants used to calculate the default interest rate, as well as maximum default interest rate. (R. 41-3.) Moreover, the term agreements specify the time at which the interest rate change will become effective upon default – the first day of the billing cycle. (R. 41-6.) Together, these terms disclose a "specific change" under the first sentence of 12 C.F.R. pt. 226, Supp. I, § 226.9(c), cmt. 1. Given the specificity of the terms of the rate increase in the agreements, Defendants' practice does not constitute a "change of terms" under 12 C.F.R.

226.9(c)(1).  *See Williams v. Washington Mutual Bank*, 2008 WL 115097, at *3 (E.D. Cal. 2008); *Augustine v. FIA Card Services*, 485 F. Supp. 2d 1172, 1174-75 (E.D. Cal. 2007); *Evans v. Chase Manhattan Bank USA*, 2006 WL 213740, at *2-3 (N.D. Cal. 2006); *Penner v. Chase Bank USA*, 2006 WL 2192435, at *2-3 (W.D. Wash. 2006).

The Board's comments support that a rate increase such as the one at issue here could constitute a "specific change."  In proposing language to amend the current law in June 2007, the Board explained the current state of the law:

> Advance notice is not required in all cases.  For example, if an interest rate or other finance charge increases due to a consumer's default or delinquency, notice is required, but need not be given in advance.  See current § 226.9(c)(1); comment 9(c)(1)-3.  ***Furthermore, no change-in-terms notice is required if the specific change is set forth initially by the creditor in the account-opening disclosures.  See current comment 9(c)-1.  For example, some account agreements permit the card issuer to increase the periodic rate if the consumer makes a late payment***.  ***Because the circumstances of the increase are specified in advance in the account agreement, the creditor currently need not provide a change-in-terms notice***; under current § 226.7(d) the new rate will appear on the periodic statement for the cycle in which the increase occurs.

72 Fed. Reg. 33009 (June 14, 2007) (emphasis added).  The Board's late payment example is directly analogous to the Plaintiff's default.  As a Board staff opinion of TILA, this interpretation is dispositive unless "demonstrably irrational."  *Milhollin*, 444 U.S. at 565; *Hamm*, 506 F.3d at 528.

### D.    Defendants' Discretion

In the face of this authority, Plaintiff argues that the notice given by Defendants does not satisfy TILA requirements because Defendants retained discretion to decide whether to increase the interest rate in the event Plaintiff defaulted.  (R. 45-1; Pl.'s Resp. to Def.'s Mot. for Dismissal 4.)  This argument fails.  Relying on language in the credit card agreement stating that Defendants "may increase" Plaintiff's rate in the event Plaintiff fails to follow the terms of the

agreement, Plaintiff argues that Defendants' conduct is of the discretionary type governed by the second sentence of Comment 1.  The Official Commentary, however, explains that subsequent notice is required only where a creditor has discretion to *increase* a consumer's interest rate.  12 C.F.R pt. 226, Supp. 1, § 226.9(c), cmt. 1. ("notice must be given if the contract allows the creditor to increase the rate at its discretion").  Thus, while it is true that Defendants maintain discretion to ***not increase*** a consumer's interest rate once the specific change occurs, Defendants' ability to increase the rate is tied to triggering events solely within the consumer's control.  *See, e.g.*, *Williams*, 2008 WL 115097, at *3; *Penner*, 2006 WL 2192435, at *2; *see also McCoy v. Chase Manhattan Bank USA*, 06-107 JVS, 2006 U.S. Dist. LEXIS 97257, at *10 n.4 (C.D. Cal. Aug. 10, 2006).

### E.     Comment 3

Plaintiff also argues that Comment 3 to Section 226.9(c)(1) supports her position that Defendants' practice violates TILA's disclosure requirements.  Comment 3 dispenses with a creditor's general obligation to provide fifteen days advance notice of a change in terms in the event that "there is an increased periodic rate or any other finance charge attributable to the consumer's delinquency or default."  *See* 12 C.F.R pt. 226, Supp. 1, § 226.9(c)(1), cmt. 3.  In place of the fifteen day advance notice requirement, Comment 3 clarifies that a creditor may deliver notice "as late as the effective date of the change."  *Id.*  Plaintiff argues that Comment 3 requires a consumer to provide notice of *all* interest rate increases attributable to a consumer's delinquency of default, prior to the effective date of this change.  The Comment, however, does not go so far.  Comment 3 applies only to the timing of a notice of "change of terms."  As

9

discussed above, Defendants' practice at issue here does not involve a "change of terms" as contemplated by Section 226.9(c)(1).

Based on the language of the regulations, the Official Commentary, and the Federal Reserve Board's comments about the current state of the law, as well as the reasoning of the other district court cases deciding this exact issue, Defendants did not violate TILA by notifying Plaintiff of default rate increases only in their initial disclosures. *See Williams*, 2008 WL 115097, at *3; *Augustine*, 485 F. Supp. 2d 1172, 1174-75; *Evans*, 2006 WL 213740, at *2-3; *Penner*, 2006 WL 2192435, at *2-3. As such, the Court grants Defendants' motion to dismiss the TILA claim with prejudice.

## III. State Law Claims

In Counts II and III of the SAC, Plaintiff alleges that Defendants' practice of retroactively increasing the interest rates violates state law.

### A. Subject Matter Jurisdiction

Before turning to the substance of Defendants' motion, the Court must first determine whether it has subject matter jurisdiction over Plaintiff's remaining state law claims. While Plaintiff and Defendants (in their removal papers) have asserted diversity jurisdiction under 28 U.S.C. § 1332(d), they have not properly alleged facts to support diversity jurisdiction. "It is axiomatic that a federal court must assure itself that it possesses jurisdiction over the subject matter of an action before it can proceed to take any action respecting the merits of the action." *Cook v. Winfrey*, 141 F.3d 322, 325 (7th Cir. 1998) (quoting *Steel C. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998)). This requirement is 'inflexible and without exception." *Id.* Here, Defendants' notice of removal (and the SAC) alleges that Plaintiff (and the putative

class members) "reside" in Illinois. (R. 1-1, at ¶16-17; R. 34-1, at ¶ 4.) Allegations of residence are insufficient to establish diversity jurisdiction, and it is well settled that the Court must dismiss suits in which the complaint alleges residence, but not citizenship. *See Held v. Held*, 137 F.3d 998, 1000 (7th Cir. 1998); *see also Adams v. Catrambone,* 359 F.3d 858, 861 n.3 (7th Cir. 2004). Because the parties allege only Plaintiff's residence and not her citizenship, the Court is not convinced that diversity jurisdiction exists.

As an additional ground for jurisdiction, Defendants have raised in the removal papers – but not adequately briefed – the argument that federal question jurisdiction exists because Defendants contend that the state law claims are preempted by federal law. (R. 1-1, at ¶¶ 32-34.) Without a more developed argument, the Court cannot rely on this purported basis for jurisdiction. Nonetheless, the Court has discretion to retain jurisdiction over the supplemental state law claims because they are closely related to Plaintiff's TILA claim, over which the Court has original jurisdiction under 28 U.S.C. § 1331. *See* 28 U.S.C. 1367(a). This is true even though the Court dismissed the TILA claim. *See* 28 U.S.C. § 1367(c)(3); *Dargis v. Sheahan*, 526 F.3d 981, 990 (7th Cir. 2008). In the interest of judicial economy, the Court exercises its discretion to retain jurisdiction over the state law claims for the disposition of Defendants' motion. *See Sheahan*, 526 F.3d 981 at 990 (citing *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007)).

      **B.    Count III – The Illinois Consumer Fraud Act**

Plaintiff argues in Count III of the SAC that Defendants violated the ICFA by imposing retroactive rate increases without advance notice. (R. 34-1, at ¶¶ 33-38.) For the first time in their Reply Brief, Defendants squarely argue that compliance with TILA establishes compliance

with the ICFA.  (R. 46-1, at p. 12-13.)  Although arguments raised for the first time in a reply brief generally are waived, *Nelson v. La Crosse County Dist. Atty.*, 301 F.3d 820, 836 (7th Cir. 2002), the Court will nonetheless address this issue *sua sponte* in the interests of efficiency because it is clear from the pleadings that Plaintiff's ICFA claim fails.  *See Dawson v. Newman*, 419 F.3d 656, 660 (7th Cir. 2005) (noting that a district court may dismiss a frivolous claim *sua sponte*); *see also McCready v. eBay, Inc*., 453 F.3d 882, 890 (7th Cir. 2006) (affirming district court's *sua sponte* dismissal for failure to state a claim).

The ICFA does not apply "to Actions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States," or to "conduct in compliance with the orders or rules of or a statute administered by a Federal, state or local governmental agency."  815 ILCS 510/4(1); 815 ILCS 505/10b(1); *see Allen v. Aronson Furniture Co.*, 971 F. Supp. 1259, 1261-62 (N.D. Ill. 1997) (citing *Lanier v. Assoc. Fin., Inc.*, 499 N.E.2d 440, 447 (1986)).  As such, compliance with TILA is a defense under the ICFA.  *Hoffman v. Grossinger Motor Corp*., 218 F.3d 680, 684 (7th Cir. 2000) ("[C]ompliance with the disclosure requirements in the federal Truth in Lending Act is a defense under the Illinois act."); *Lanier*, 499 N.E.2d at 447 (same); *see also Najieb v. William Chrysler-Plymouth*, No. 01 C 8295, 2002 WL 31906466, at *8 (N.D. Ill. Dec. 31, 2002) (Aspen, J.) (same).  As discussed above, Defendants' practices comply with TILA, therefore Plaintiff cannot state a claim under the ICFA.  *See, e.g.*, *Janikowski v. Lynch Ford, Inc.*, 210 F.3d 765, 769 (7th Cir. 2000) (affirming dismissal of ICFA claim were defendant complied with TILA).  The Court dismisses Plaintiff's ICFA claim without prejudice, thereby putting Plaintiff on notice that the Court deems this claim legally flawed.  *Pourghoraishi v. Flying J, Inc*., 449 F.3d 751,

765 (7th Cir. 2006) (a district court cannot *sua sponte* dismiss a complaint "without notifying the parties of its intentions and allowing them an opportunity to cure the defect in the complaint or to respond").

### C. Illegal Penalties and Unjust Enrichment Claim(s)

In Count II, Plaintiff purports to bring a cause of action for "collection of illegal penalties" and for "unjust enrichment." (R. 34-1, at ¶¶ 27-32.) Despite the heading "unjust enrichment" (R. 34-1, at ¶ 26), Count II of the SAC appears to allege that Defendants' practice of retroactively increasing rates violates a Delaware banking law requirement that interest rates on credit cards must be changed "in accordance with a schedule or formula." 5 Del. Code § 944. It is unclear from the SAC whether Plaintiff attempts to bring a claim for unjust enrichment under Illinois (or perhaps Delaware) law,[2] an illegal penalties claim under 5 Del. Code § 944, or perhaps some combination of the three.

To the extent Plaintiff seeks to bring an "illegal penalties" claim under Delaware law, that claim fails. As a starting point, the supplemental credit card agreement contains a choice of law provision maintaining that it "is governed by the laws of the State of Delaware." (R. 41-5.) Plaintiff alleges that Defendants' "retroactive rate increase violates Delaware banking law, 5 Del. Code § 944, because it is not made pursuant to a schedule or formula stated in the credit card agreement." Defendants point out, however, that Section 944 of the Delaware code

---

[2] Plaintiff failed to address the choice of law issue with regard to the unjust enrichment claim. Defendants, for their part, have asserted that Plaintiff brought an unjust enrichment claim under Illinois common law. (R. 1-1, at ¶ 2; R. 40-1, at p. 9) Although the Court does not definitively resolve the issue, it is clear that in applying Illinois choice of law rules, *see Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Zapata Hermanos Sucesores v. Hearthside Baking Co.*, 313 F.3d 385, 390 (7th Cir. 2002), either Illinois or Delaware substantive law governs. For the purposes of this motion, the Court will analyze both Illinois and Delaware law concerning unjust enrichment.

specifically authorizes Defendants' conduct, and thus forecloses this avenue to Plaintiff. (R. 40-1, at p. 16 n.7.) Section 944 states:

> If the agreement governing the revolving credit plan so provides, the periodic percentage rate or rates of interest under such plan may vary in accordance with a schedule or formula. . . Without limitation, *a permissible schedule* or formula hereunder *may include* provision in the agreement governing the plan for a change in the periodic percentage rate . . . *contingent upon the happening of any event or circumstances specified in the plan, which event or circumstance may include the failure of the borrower to perform in accordance with the terms of the plan*.

Del. Code § 944 (emphasis added). Here, Defendants applied the interest rate increase in accordance with the agreements, which permitted an interest rate increase in the event Plaintiff failed to comply with the terms of the plan (by twice exceeding her credit limit). By describing the events which cause the rate increase to occur, Defendant has complied with Section 944. *See, e.g.*, *Evans*, 2006 WL 213740, at *3. Plaintiff has failed to state a claim under Delaware banking law.

A state law claim for unjust enrichment also fails. *See Dawson*, 419 F.3d at 660; *see also McCready*, 453 F.3d at 890. Under both Delaware and Illinois law, a cause of action for unjust enrichment is unavailable where, as here, the parties have entered into a contract which governs the dispute. *See Prima Tek II, L.L.C. v. Klerk's Plastic Indus.*, 525 F.3d 533, 541 (7th Cir. 2008) (applying Illinois law); *La Throp v. Bell Fed. Sav. & Loan Assoc.*, 68 Ill. 2d 375, 391, 370 N.E.2d 188, 12 Ill. Dec. 565 (1977); *Nepa v. Marta*, 415 A.2d 470, 472 (Del. 1980) ("A quantum meruit recovery is an award where recovery under contract is not available."); *see also Reserves Dev. LLC v. Severn Sav. Bank,* No. 2502-VCP, 2007 WL 4054231, at *9-12 (Del. Ch. Nov. 9, 2007) ("If there is a contract between the complaining party and the party alleged to have been enriched unjustly that governs the matter in dispute, then the contract remains the measure of

14

[the] plaintiff's right.") (internal quotations and footnote omitted).  Moreover, as the moniker implies, a plaintiff may maintain an unjust enrichment claim only where a defendant's retention of a benefit would in some way be "unjust."  *See Fleer Corp. v. Topps Chewing Gum*, 539 A.2d 1060, 1062 (Del. 1988) ("Unjust enrichment is defined as the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience") (internal quotations omitted); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 515 (7th Cir. 2006) (Illinois law of unjust enrichment requires a plaintiff to show that defendant's "retention of the profits would violate the fundamental principles of justice, equity, and good conscience.") (citing *HPI Healthcare Servs., Inc. v. Mt. Vernon Hosp., Inc*., 131 Ill. 2d 145, 545 N.E.2d 672, 679, 137 Ill. Dec. 19 (1989)).  Here, both TILA and Delaware law expressly permit Defendants' actions, and there is simply nothing "unjust" about Defendant retaining benefits expressly permitted by federal and state law.  Accordingly, to the extent Plaintiff intended to bring one, the Court dismisses the "unjust enrichment" claim without prejudice, thus putting Plaintiff on notice that the Court deems this Count legally insufficient.  *Pourghoraishi*, 449 F.3d at 765.

## V.     Preemption

Because Plaintiff's state law claims fail to state a cause of action, the Court does not reach the issue of whether those claims are preempted by federal law.

**CONCLUSION**

For the foregoing reasons, the Court dismisses Counts I with prejudice and dismisses Counts II and III without prejudice.

**Dated: July 15, 2008**                                    ENTERED

                                                                               _____
                                                                               AMY J. ST. EVE
                                                                               United States District Court Judge