**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LAURA M. SWANSON, *et al.* | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 1:08-cv-00184 |
| | ) | |
| BANK OF AMERICA, N.A. and FIA | ) | |
| CARD SERVICES, N.A., | ) | Judge Amy St. Eve |
| | ) | |
| Defendants. | ) | |

**Plaintiff's Motion and Memorandum for Reconsideration
of the Order Dismissing the Second Amended Complaint**

As permitted by Fed. R. Civ. P. 59(e), Plaintiff asks for reconsideration of the Court's

July 15, 2008, memorandum opinion and order dismissing Plaintiff's second amended

complaint.

## INTRODUCTION AND GOVERNING STANDARDS

Plaintiff's second amended complaint pleads a claim under the federal Truth-in-Lending

Act ("TILA"), a state law claim for unjust enrichment, and a claim under the Illinois Consumer

Fraud & Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* ("ICFA").  Defendants

moved to dismiss all three claims arguing that the TILA claim failed to state a cause of action,

and that the two state law claims were preempted by federal law.  In granting the motion, the

Court dismissed the TILA claim for failure to state a cause of action in part based on a "Request

for Public Comments" on a proposed change to TILA's governing regulations that Defendants

raised for the first time in their reply, and thus which Plaintiff never got a chance to address.

Federal Rule 59(e) allows Plaintiff to seek reconsideration of the Court's decision.  In

large part the dismissal order is based on a Request for Public Comment which Plaintiff never

got to address, a misunderstanding of the relevant facts before the Court, and a misinterpretation

of the meaning of "discretion." This has lead to a dismissal order which contains several manifest errors. Accordingly, Plaintiff asks that the Court reconsider the dismissal, and reverse it for the reasons stated below.

## THE TILA CLAIM

Plaintiff alleges that Defendants Bank of America, N.A. and FIA Card Services, N.A. ("Defendants" or "Bank") violated § 226.9(c)(1) of TILA's implementing regulation, *i.e.*, Regulation Z, because they failed to give Plaintiff notice of the interest rate increase on her account before the increase's effective date. Section 229(c)(1) provides that a creditor must give notice of a change in any terms the creditor is required to initially disclose at the outset of the credit relationship. *See* 12 C.F.R. § 226.9(c)(1). The "change in terms" to which this section applies includes an increase in the interest rate. *Id.* ("if a periodic rate or other finance charge is increased . . .") Finally, where (as here) the change is prompted by a default, this section further provides that the notice of the change must be given before change occurs. *Id.* ("the notice shall be given, however, before the effective date of the change.")

The Court concluded that Defendants were excused from giving Plaintiff notice of the rate increase based on three determinations. First, the Court determined that the first sentence of Comment 1 of the Official Commentary to § 226.9(c) excuses notice when the "specific change" in question is disclosed in advance in the cardholder agreement, and that notice was excused here because the cardholder agreement states the circumstances under which Defendants may increase Plaintiff's rate. Second, the Court determined that the second sentence of Comment 1, which provides that notice is required if the creditor retains discretion to increase the rate, is inapplicable because Defendants only retained discretion to "not increase" the rate. Third, the Court determined that Comment 3's unequivocal statement that notice is required for an "increase in the periodic rate" arising from a default was inapplicable because Plaintiff's rate

2

increase was not a "change of terms" under § 226.9(c)(1).  All three determinations are

necessary to the ultimate conclusion that Defendants were excused from giving notice of the rate

increase at issue.  Respectfully, however, these conclusions are contrary to fact, the plain terms

of Regulation Z and its Official Commentary, or both, and thus they are manifestly erroneous.

## DEFENDANTS' CARDHOLDER AGREEMENT DOES NOT SATISFY THE "SPECIFIC CHANGE" REQUIREMENT AS DESCRIBED BY THE COURT

The "Specific Change" requirement discussed by the Court pertains to the initial

disclosures in Plaintiff's credit card account, and stems from the language in 12 C.F.R. pt. 226,

Supp. 1, §226.9(c), cmt. 1 (hereinafter "cmt. 1").  The Court's "Specific Change" analysis is as

follows (R. 48, pg 7):

> To determine whether Defendants' initial disclosures set forth a "specific change"
> in terms, the Court first looks to the agreements themselves.  In addition to listing
> the specific act which triggers the interest rate increase, namely twice exceeding
> the credit limit, the agreements set forth the method Defendants used to calculate
> the default interest rate, as well as maximum default interest rate. (R. 41-3.)
> Moreover, the term agreements specify the time at which the interest rate change
> will become effective upon default – the first day of the billing cycle. (R. 41-6)
> Together, these terms disclose a "specific change" under the first sentence of 12
> C.F.R. pt. 226, Supp. I, §226.9(c), cmt. 1.

Bank has taken the position that it provided clear notice to cardholders that being twice

overlimit in a twelve month period would result in a rate increase; plaintiff was over twice; and

Plaintiff was given a rate increase exactly as provided for in the cardholder agreement.  The

Court's analysis, as set forth above, is based on the fact that twice exceeding the credit limit

triggers the interest rate increase, and that the agreements set forth the method to calculate the

default interest rate, as well as the maximum default interest rate.  Respectfully, the Court's

analysis is flawed and based on assumptions that are demonstrably wrong.  As shown below, two

overlimits do not trigger a rate increase, and clearly did not do so in Plaintiff's account.

## THE CORRECT FACTS REQUIRE RECONSIDERATION
## OF THE COURT'S CONCLUSIONS

According to the Court (R. 48, at pgs1-2), the relevant facts surrounding the governing account agreement and the occurrences in Plaintiff's account are as follows:

> Plaintiff opened a credit card account with the Bank. In connection with this account, Plaintiff received term agreements which indicated that Plaintiff had a $5,000 credit limit available on the account. (R. 41-6, at p. 2.) The agreements also noted that if Plaintiff twice exceeded the credit limit during a 12-month billing cycle, the Bank could increase the interest rate on the account. Defendants' revised credit card term agreements state that each interest rate increase "will be effective as of the first date of the billing cycle in which the Default Rate is applied."

Plaintiff does not dispute the above facts which are correct up to this point. However, the Court continues as follows:

> Plaintiff exceeded the credit limit in August 2007 and again in November 2007. (R. 41-7, at p. 2, 9.) As a result, Defendants increased the interest rate of Plaintiff's account from 18.24% to 32.24 percent, and applied the higher rate to the beginning of the November billing cycle that had just ended. (R. 34-1, at ¶¶ 12-13.) Due to the increase, Defendants added approximately sixty dollars in interest charges to Plaintiff's November bill. (Id. at ¶15.)[1]

Respectfully, the Court's understanding of these facts, based on Bank's presentation, is demonstrably wrong. The Court states that Plaintiff was overlimit in August 2007 (R. 41-7, pg 2), and again in November 2007 (R. 41-7, pg 9).[2] This is correct. At the end of the November billing cycle, Plaintiff's interest rate was at 18.24%, and Plaintiff had been over limit twice in the last 12 months. The Court then states that "As a result, Defendants increased the interest rate of

---

[1] From the Court's Order, it appears that the Court believed, based on the incomplete statements of Defendants, that there were only two overlimits at the time of the rate increase that first appears on the December billing statement, and that the rate increase had automatically occurred after the second overlimit in accordance with the Cardholder Agreement. Respectfully, this is incorrect.

[2] The August billing cycle (R. 41-7, pgs 2-4) runs from July 22nd to August 22nd, and the billing statement is issued at the end of the cycle on August 22, 2007. The November billing cycle (R. 41-7, pgs 9-11) runs from October 23rd thru November 20th, and the billing statement is issued at the end of the cycle on November 20, 2007. The December billing cycle (R. 41-7, pgs 12-14) runs from November 21st thru December 20, 2007, and the billing statement is issued at the end of the cycle of December 20, 2007.

Plaintiff's account from 18.24 percent to 32.24 percent, and applied the higher rate to the beginning of the November billing cycle that had just ended. (R. 34-1, at ¶¶ 12-13.) Here is where, respectfully, the Court is in error. The correct facts are that at the end of the November billing cycle, which ended November 20th (and at a time when Plaintiff had been overlimit twice), Bank had the discretion to increase rates under its contract, *but Bank chose not to do so*. (See November billing statement, R. 41-7, pgs 9-11) Furthermore, Bank did not apply a higher rate to the beginning of the November billing cycle, which started on October 23rd, and Defendants did not add approximately sixty dollars in interest charges to Plaintiff's November bill. (See November billing statement, R. 41-7, pgs 9-11) These facts are of critical importance in the Court's analysis.

Thereafter, during the December 2007 billing cycle (from November 21st thru December 20th), Plaintiff again defaulted, which was the third time in a 12 month period. (See 41-7, pgs 12-14) Again, Bank conducted its month-end review as of December 20, 2007, but unlike in November, this time exercised its discretion to increase the interest rates, and increased the rate from 18.24% to 32.24%. As shown on page 3 of the December billing statement, Bank provided notice of the rate increase as required by §226.9(c)(1). (R.41-7, pg 14.) This notice was issued on December 20, 2007, and had Bank applied the rate increase on a forward going basis, there would be no complaint. However, Bank backdated the rate increase which it imposed on December 20, 2007 to an effective date of November 21, 2007. This directly violates §226.9(c)(1)'s requirement that the notice, provided on December 20, 2007, be provided prior to the effective date of the rate increase.

Based on the correct version and explanation of the facts, as stated above, Plaintiff requests that this Court reconsider its ruling. The account statements conclusively show that Bank did not increase rates in accordance with the terms of its Cardholder Agreements, but instead exercised its discretion as to when it would increase rates in the event there were two or more defaults during the preceding twelve month period.

## A 15-DAY ADVANCE NOTICE AMENDING THE TERMS OF AN ACCOUNT IS DIFFERENT FROM A CONTEMPORANEOUS NOTICE OF A RATE INCREASE

Regulation 12 C.F.R. §226.9(c)(1) delineates two different types of written notice. With respect to a rate change based on anything but a default, there is general, 15-days advance notice requirement. For a rate increase based on a default, notice of the change is still required, but it doesn't have to be 15-days in advance. It only needs to be given prior to the effective date of the rate increase. The Commentary to §226.9(c), cmt. 1, gives three examples of non-default based rate increases, including a variable rate plan, an employee discount plan where the rate increases when employment ceases, and a minimum savings plan where the rate increases when the savings fall below a specified minimum. None of these examples are default situations, and whether or not a 15-days advance notice requirement applies depends on the specificity of the contract and the issues of discretion. In contrast, notice of a rate increase as a result of a default is directly covered by the Commentary to §226.9(c)(1) in cmt. 3 ("cmt. 3"), which provides that notice of a default-based rate increase must be given prior to the effective date of the increase.

The contemporaneous notice required for a rate increase as a result of a default is different from the 15-day advance notice which may be required in any of the examples in cmt. 1. This notice requires treatment under cmt. 3 for several different reasons. First, there is no 15-days advance notice requirement for a rate increase as a result of a default under §226.9(c)(1). Second, there is no need for a new contract to be issued when the rate increase is in accordance with the terms of the existing contract. Third, the notice for a default-based rate increase is specifically covered by cmt. 3, rather than the more general cmt. 1. Fourth, to the extent there is any tension between these two comments, comment 3 would control, since the specific controls the general. And Fifth, cmt. 1 is not applicable by its own terms to a discretionary rate increase.

## EXAMPLES OF A 15-DAY ADVANCE CHANGE IN TERMS NOTICE AND A NOTICE OF A RATE INCREASE APPEAR IN PLAINTIFF'S BILLING STATEMENTS

The fact that there are two types of notice is not open to question. Defendants' Opening brief (R. 40, pg 10-11) includes a description of the "change-in-terms" notice in the August 2006

billing statement. On the first page of the August 2006 billing statement, the following notice was prominently displayed:

> "IMPORTANT NOTICE. We are changing the terms of the Cardholder Agreement that governs your credit card Account with us. These changes are described in the Important Notice of Change in Terms enclosed with this statement." (R. 41-4, pg 9)

This "IMPORTANT NOTICE" is a "Change-in-Terms" notice which changes the terms of the governing Cardholder Agreement and which must be given at least 15 days in advance of the change. The Amendment provisions, enclosed with the statement, amend section 4, 5, 8, 9, 10, 11, 12, 13, 22, and 23 of the governing Cardholder Agreement. (R. 41-6, pg 2) This 15-day advance notice fulfills the requirements of §226.6(a)(2), and advises of a change to the Cardholder Agreement, but doesn't advise as to any rate change.

Over a year later, during the December 2007 billing cycle, Plaintiff went overlimit for a third time in twelve months, and on December 20, 2007, at the end of the December cycle, Defendants decided to impose a rate increase from 18.24% to 32.24%. As a result, Defendants gave notice of the rate increase on the December statement. This notice, which is completely different than the "change-in-terms" notice of August 2006, appears on page 3 of Plaintiff's December 20, 2007 billing statement (R. 41-7, pg. 14) as follows:

> "IN ACCORDANCE WITH YOUR CARDHOLDER AGREEMENT, DEFAULT RATE PRICING HAS BEEN PLACED ON YOUR ACCOUNT. YOUR ACCOUNT WILL NO LONGER BE SUBJECT TO THIS DEFAULT RATE AFTER YOU MAKE THE MINIMUM PAYMENT DUE ON-TIME FOR SIX CONSECUTIVE MONTHS WITHOUT GOING OVERLIMIT."

This is a notice of a rate increase attributable to a default, as required under §226.9(c)(1). Although it appeared on page 3 of the billing statement, Plaintiff does not complain that the notice was not clear and conspicuous. What Plaintiff complains of is that the notice was given on December 20, 2007, but Bank backdated the interest increase a full month to November 21, 2007, instantaneously creating a lump sum of additional finance charges. The backdating of the effective date of the rate increase directly violates §226.9(c)(1), which requires that this notice be given "before the effective date" of the rate increase.

7

## THE "REQUEST FOR PUBLIC COMMENT"

Another, separate reason for the Court to reconsider its ruling, is that Defendants produced, in their reply, a paragraph taken from the 2007 version of the Request for Public Comment which it claims offers support to its position. This paragraph reads, in pertinent part, as follows:

> "[I]f an interest rate or other finance charge increases due to a consumer's default or delinquency, notice is required, but need not be given in advance. . .
> "Furthermore, no change-in-terms notice is required if the specific change is set forth initially by the creditor in the account-opening disclosures. . ."

Respectfully, the Court, in noting this paragraph, failed to distinguish between a notice of a rate increase in the first sentence and a 15-day advance change-in-terms notice in the second sentence.[3] The two types of notice are different, and perform different roles. As shown by Bank's billing statements in August 2006 and December 2007, a notice of a change in the terms of the Cardholder Agreement that governs the credit card account is very different from a notice of a rate increase. The Request for Public Comment merely explains that under current regulations, Bank must give notice of a rate increase due to a consumer's default or delinquency, but does not need to give a 15-day advance change-in-terms notice amending the existing contract as long as the governing contract permits the change.

There are several reasons why the 2007 Request for Public Comment does not support dismissal of this action. First, as shown above, the cited language from the 2007 version of the Request for Public Comment does not mean what Defendants claim it to mean, since it references two different kinds of notices at issue: (a) notice of a rate increase (see Plaintiff's December 2007 billing statement, R. 41-7, pg 14), and (b) notice of an Amendment to a Cardholder Agreement (see Plaintiff's August 2006 billing statement, R. 41-4, pg 9).

Second, while Plaintiff was unable to comment on the 2007 "Request for Public Comment" because it first appeared in Defendants' reply papers, the Request is different than,

---

[3]    All major credit card issuers permit a rate increase in the event of a late payment or overlimit. Respectfully, the Court's interpretation would eliminate the requirement for notice of a default based rate increase in all cases, making the requirement for notice meaningless.

and conflicts with, the description of §226.9(c)(1) given in the 2004 version of the Request for Public Comment. The 2004 version of the Request for Public Comment reads as follows:

> "[I]f the interest rate or other finance charge increases due to a consumer's default or delinquency, notice is required, but need not be given in advance. 12 C.F.R. 226.9(c)(1); comment 9(c)(1)-3. *And* no change-in-terms notice is required if the creditor specifies in advance the circumstances under which an increase to the finance charge or an annual fee *will occur*. Comment 9(c)-1. For example, some credit card account agreements permit the card issuer to increase the interest rate if the consumer pays late, or if card issuer learns the consumer paid late on another credit account, even if the consumer has always paid the card issuer on time. Under Regulation Z, because the circumstances are specified in advance in the account agreement, the creditor need not provide a **change-in-terms notice 15 days in advance** of the increase." 69 Fed. Reg. 70925, 70931 (Dec. 8, 2004) (emphasis added).

The changes within these versions are very significant. First, the 2004 version talks about rate increases that "will occur," whereas the 2007 version refers to changes that "may" occur. Second, the 2004 version mentions rate increase notices "*and*" change-in-terms notices, suggesting there are two different types of notices. Third, the 2004 version spells out that the change-in-terms notice refers to a 15-day advance notice, which is not, by definition, the same as a default-based rate increase notice which has no 15-day requirement. While the 2004 version fully supports Plaintiff, the 2007 version makes subtle changes that create needless ambiguity.

Despite the fact that the Request for Public Comment supports Plaintiff, rather than Defendants, neither the 2004 version or the 2007 version has any official status, and neither is entitled to deference by this Court. Formal Board staff Opinion Letters interpreting the regulations used to be dispositive before the 1981 Regulations went into effect and took their place. After 1981, the Opinion letters were supplanted with "Official Staff Commentary." The Requests for Public Comment are not Regulations or Commentary. They are pure dicta at best, never subjected to full notice-and-comment procedures such as Commentary, and their stated purpose is to solicit public feedback on a proposed regulatory change, not to interpret the current Regulation Z. Since 1981, the Federal Reserve Board interprets Regulation Z only through its official Staff Commentary, 12 C.F.R. Pt. 226, Supp. I, and only official Regulations and Commentary are dispositive unless "demonstrably irrational." See *U.S. Freightways Corp. v.*

*C.I.R.*, 270 F.3d 1137, 1141 (7th Cir. 2001) ("we give full deference . . . only to regulations that were promulgated with full notice-and-comment or comparable formalities.")  In the case cited by the court, *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980), which predates the applicable regulations and Commentary, the Supreme Court clearly distinguished unofficial interpretations, stating that: "12 C.F.R. § 226.1(d) (1979) authorizes the issuance of official staff interpretations that trigger the application of [15 U.S.C.] § 1640(f)....  Official interpretations are published in the Federal Register, and opportunity for public comment may be requested. 12 C.F.R. § 226.1(d).  Unofficial interpretations have no special status under § 1640(f)."

## DEFENDANTS RETAIN DISCRETION AS TO THE IMPOSITION OF A RATE INCREASE AS A RESULT OF A DEFAULT

The Court determined that Bank did not have discretion as to a rate increase (Sentence 2 did not apply) because Defendants only retained to discretion to "*not increase*" Plaintiff's interest rate in the event she met the conditions for a rate increase under the cardholder agreement.  However, this claim is manifestly erroneous because it conflicts with the cardholder agreement's express terms, and with Defendants' actual billing practices as shown from the billing statements Defendants sent Plaintiff.

Specifically, the agreement states that Defendants "may increase" Plaintiff's rate if she met the conditions for a rate increase.  *See* Opinion at p. 8 (noting the "language in the credit card agreement stating that Defendants 'may increase' Plaintiff's rate . . .")

The Official Commentary explains that subsequent notice is required where a creditor has discretion to *increase* a consumer's interest rate.  12 C.F.R. pt. 226, Supp. 1, §226.9(c), cmt. 1. ("notice must be given if the contract allows the creditor to increase the rate at its discretion"). The Court, however, states as follows:

> "Thus, while it is true that Defendants maintain discretion to ***not increase*** a consumer's interest rate once the specific change occurs, Defendants' ability to increase the rate is tied to triggering events solely within the consumer's control." R. 48, pg. 9)

Respectfully, the discretion to "increase" rates is exactly the same as the discretion to "not increase" rates.  It makes absolutely no difference whether (1) Bank had the discretion to leave Plaintiff's rate at 18.24% or increase it to 32.24%, or (2) Bank had the discretion to increase the rate to 32.24% or leave it at 18.24%.  The discretion is exactly the same in both cases.

The Court also ties in the discretion issue to "triggering events solely within the consumer's control."  Respectfully, this is a non-sequitur.  Whether or not a consumer has the ability to control, or even influence, the occurrence of a default has nothing to do with the question as to whether or not Bank has discretion to "increase" or "not increase" a consumer's interest rate once a default has occurred.

## A CHANGE IN INTEREST RATES IS A CHANGE OF TERMS

The Court states that "Given the specificity of the terms of the rate increase in the agreements, Defendants' practice at issue here does not involve a 'change of terms' as contemplated by Section 226.9(c)(1)."  (R. 48, top of pg. 10.)  This statement is directly refuted by the regulation itself, and it contradicts the Court's earlier pronouncement at pg. 6 of its opinion:

> "In addition to initial disclosure requirements, TILA also requires creditors to notify consumers of subsequent changes to the initially disclosed terms.  *See* 12 C.F.R. §226.9( c)(1) (Whenever any term required to be disclosed under §226.6 is changed or the required minimum payment is increased, the creditor shall mail or deliver written notice of the change to each consumer who may be affected.").

This is a manifest error of law because again the "practice" at issue, *i.e.*, the rate increase, is a "change of terms" as defined by 12 C.F.R. § 226.9(c)(1).  ("if a periodic rate or other finance charge is increased . . .").  The regulation, the Commentary, and even the Request for Public Comment all define and/or treat a rate increase as a change in terms, and none suggest that the question as to whether a rate increase is a change in terms is based on the "specificity" of a credit card issuer's generic contract.  The question at issue in this action is not whether a rate increase constitutes a "change in terms," which it clearly does, but whether "notice" of this change in

11

terms is required under the circumstances of this case.

## THE PHRASE "CHANGE IN TERMS" CAN LEAD TO MISCHIEF

A "change in terms" is used in the Commentary to refer to a change in the provisions of a written contract, as well as a change in the interest rates under the contract. This type of dual usage is very common with mortgages as well as credit cards. For example, under a variable rate mortgage agreement where the interest rate is tied to the prime rate, a change in the prime rate automatically results in a change to the interest rate. When this occurs, the TILA may well require notice of the rate increase, but not the rewriting of the mortgage agreement. In similar fashion, since Bank's Agreement permits a rate change in the event of a default, *a rate increase based on a default does not require a change in the agreement*. This does not mean, however, the rate hasn't increased, or that notice of a rate increase is not required under §226.9(c)(1).

## COMMENT 3 REQUIRES NOTICE AND APPLIES TO THE RATE INCREASE SHOWN ON PLAINTIFF'S DECEMBER 2007 BILLING STATEMENT

The Court states that Comment 3 is not applicable because "Defendants' practice at issue here does not involve a "change of terms."  Respectfully, §226.9(c)(1) directly pertains to the need for notice when there is a change in interest rates. Indeed, the complaint does not use the phrase "change of terms" at all. What the complaint alleges, in ¶25, is that Bank imposed a retroactive interest rate. A rate increase attributable to a default requires notice.

The Court correctly notes that comment 3 dispenses with a creditor's general obligation to provide fifteen days advance notice of a change in rates due to a consumer's delinquency or default, and clarifies "that a creditor may deliver notice 'as late as the effective date of the change.'" This is, by definition, a different notice than a 15-days advance notice that amends a contract. Comment 3 is, in fact, the interpretation of the Federal Reserve Board to the exact question presented to this Court, and it couldn't be more clear in requiring that a notice of a rate increase attributable to a default must be given no later than the effective date of any increase which results from a consumer's default.

12

## THE UNJUST ENRICHMENT CLAIM SHOULD NOT HAVE BEEN DISMISSED BASED ON THE GROUNDS RAISED *SUA SPONTE* BY THE COURT

Defendants never challenged whether Plaintiff stated a cause of action for unjust enrichment. They only argued that the unjust enrichment claim was preempted. Nevertheless, the Court dismissed the claim on two grounds that the Court raised *sua sponte*, and that Plaintiff thus never got the chance to address.

This was manifest error because "it is rudimentary that a court cannot sua sponte enter summary judgment or dismiss a complaint without notifying the parties of its intentions and allowing them an opportunity to cure the defect in the complaint or respond." *Dawson v. Newman*, 419 F.3d 656, 660 (7th Cir. 2005), *quoting English v. Cowell*, 10 F.3d 434, 437 (7th Cir. 1993).

Respectfully, the two reasons given for dismissing this claim are also manifestly erroneous. First, the Court opined that Plaintiff may not plead a claim for unjust enrichment "where, as here, the parties have entered into a contract which governs the dispute." Opinion at 14. However, this general proposition does not apply where, as here, the plaintiff seeks to recover an illegal penalty imposed by the contract.

As the Court noted, Plaintiff's unjust enrichment claim is based on her allegation that the additional "interest" charge imposed on Plaintiff as a result of Defendants' retroactive increase of the interest rate on her account constitutes an illegal penalty. *See* Opinion at 13. When a charge imposed by a contract is an illegal penalty, the terms of the contract that permit the charge are unenforceable. *See*, *e.g.*, *Hall v. Sprint Spectrum L.P.*, 876 N.E.2d 1036, 1038 (contract provided for an "early termination fee") and at 1046 (Ill. App. 2007) ("If the early termination fee is an illegal penalty, then Sprint has no right to charge or collect it . . .") Because the contract term is unenforceable, it is no longer a "part of the contract" governing the dispute, and a charge imposed under that term is recoverable. *See*, *e.g.*, *Hall*, 876 N.E.2d 1036, 1046 (Ill. App. 2007) ("If the early termination fee is an illegal penalty, then Sprint . . . should pay it back."); *see also*, *e.g.*, *Bakerman v. Sidney Frank Importing, Inc.*, 2006 WL 3927242 at *18 (Del. Ch. 2006) ("claims of unjust enrichment may survive a motion to dismiss when the validity

13

of the contract is in doubt or uncertain.")  Accordingly, as a matter of pleading, there is no incompatibility between the presence of a contract term that purports to allow the retroactive "interest" charges at issue, and Plaintiff's unjust enrichment claim.

Second, the Court also concluded that it was impossible for Plaintiff's unjust enrichment claim to succeed on the merits because "TILA and Delaware law expressly permit Defendants' actions . . ."  Opinion at 15.  But this conclusion misapprehends the nature of the unjust enrichment claim because the claim is not based on the same facts as the TILA claim, and it does not turn on compliance with the Delaware banking statute.

Again, the TILA claim rests on Defendants' failure to give notice of the retroactive rate increase in accordance with TILA.  By contrast, the thrust of the unjust enrichment claim is that the extra "interest" charge Plaintiff had to pay as a result of the rate increase constitutes an illegal penalty that Plaintiff is entitled to recover (regardless of whether Defendants gave notice of the rate increase that led to that charge).  Furthermore, the Delaware statute (5 Del. Code § 944) only governs rate increases pursuant to a "schedule or formula," which is not the case here, since the increases were discretionary, as shown above.

## THE CONSUMER FRAUD CLAIM SHOULD NOT HAVE BEEN DISMISSED *SUA SPONTE* BASED ON THE ARGUMENT DEFENDANTS RAISED FOR THE FIRST TIME IN THEIR REPLY BRIEF

As with the unjust enrichment claim, in their opening brief Defendants did not challenge whether Plaintiff stated a cause of action under the Illinois Consumer Fraud & Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* ("ICFA").  Defendants only argued that it was preempted by federal law.

However, in their reply brief, Defendants argued for the first time that Plaintiff's ICFA claim was barred by § 10b(1) of the ICFA because Defendants allegedly complied with TILA's notice requirements regarding the imposition of the rate increase.  *See* Opinion at p. 11-12 ("For the first time in their reply brief . . .")  The Court noted that arguments raised for the first time in a reply brief are deemed waived.  *See* Opinion at p. 12, *citing Nelson v. LaCrosse County Dist.*

14

*Atty.*, 301 F.3d 820, 826 (7th Cir. 2002).  Nevertheless, the Court considered Defendants' argument *sua sponte* and dismissed the claim, even though Plaintiff never got a chance to respond.  *See* Opinion at p. 12 ("the Court will nonetheless address this issue *sua sponte* . . .")

 Respectfully, the *sua sponte* dismissal of Plaintiff's consumer fraud claim based on Defendants' belated "TILA compliance" argument was manifestly erroneous for three reasons. First, as discussed above, it is improper to *sua sponte* dismiss a claim without notice and an opportunity to be heard, and Plaintiff was not given notice or an opportunity to be heard on the matter.  *See Dawson v. Newman*, 419 F.3d at 660.

 Second, it was error to dismiss Plaintiff's ICFA claim based on Defendants' alleged compliance with TILA because, as shown above, Defendants did not comply with TILA. Therefore, "TILA compliance" is no defense to Plaintiff's ICFA claim.

 Third, even if Defendants complied with TILA with regard to their disclosure of the rate increase, that does not shield them from liability for Plaintiff's ICFA claim under § 10b(1). "[M]ere compliance with applicable federal regulations is not necessarily a shield against liability under the Consumer Fraud Act."  *Price v. Phillip Morris, Inc.*, 848 N.E.2d 1, 40 (2005). Instead, as this Court noted, § 10b(1) only exempts conduct that is "specifically authorized" by state or federal law.  *See* Opinion at p. 12.  This renders § 10b(1) inapplicable because TILA does not "specifically authorize" Defendants to collect "interest" charges stemming from a retroactive rate increase, or otherwise address the legality of the charge – TILA only governs whether, when and how a finance charge must be disclosed.  *See Szumny v. American General Finance*, 246 F.3d 1065, 1070 (7th Cir. 2001).

## CONCLUSION

 For the reasons stated, above, the Court should reconsider its ruling.  Plaintiff respectfully requests that oral argument be permitted on her request for reconsideration.


 Respectfully submitted,
  s/Barry L. Kramer .
 One of Plaintiff's Attorneys

Barry L. Kramer
Law Offices of Barry L. Kramer
11111 Santa Monica Blvd., Suite 1860
Los Angeles, California 90025-3352
Tel:    (310) 235-9980
Fax:    (310) 235-9982
Email: kramerlaw@aol.com

Lawrence Walner
Michael S. Hilicki
Lawrence Walner & Associates, Ltd.
150 North Wacker Drive, Suite 2150
Chicago, Illinois 60606
Tel:    (312) 201-1616
Fax:    (312) 201-1538

## CERTIFICATE OF SERVICE

I, Barry L. Kramer, certify that on July 29, 2008, I caused a copy of the attached **Plaintiff's Motion and Memorandum for Reconsideration of the Order Dismissing the Second Amended Complaint** to be served on the persons on the service list and at the email addresses below via the Court's ECF filing system.


    s/ Barry L. Kramer    
    Barry L. Kramer


## Service List


Robert M. Dawson (c/o Brandon Fernald)
Brandon C. Fernald
Fulbright & Jaworski L.L.P.
555 South Flower Street
Forty-First Floor
Los Angeles, CA 90071
Tel:    (213) 892-9215
Fax:    (213) 892-9494
bfernald@fulbright.com

William J. McKenna
Katherine E. Licup
Foley & Lardner LLP
321 North Clark
Suite 2800
Chicago, IL 60610
Tel:    (312) 832-4500
Fax:    (312) 832-4700
wmckenna@foley.com
klicup@foley.com