IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| LAURA M. SWANSON, an individual, on behalf of herself and all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:08-cv-00184 |
| v. | ) ) | Judge Amy St. Eve |
| BANK OF AMERICA, N.A. and FIA CARD SERVICES, N.A. | ) ) ) | |
| Defendants. | ) ) ) ) | |

**BANK OF AMERICA, N.A.'S AND FIA CARD SERVICES, N.A.'S OPPOSITION
TO PLAINTIFF'S MOTION FOR RECONSIDERATION**

## INTRODUCTION

This is not the first time Plaintiff's counsel has attempted a second bite at the proverbial apple. In *Augustine v. FIA Card Services*, 485 F. Supp. 2d 1172 (E.D. Cal. 2007), Plaintiff's counsel filed a Motion for Reconsideration following final dismissal of their complaint, which was largely identical to the complaint filed in this case. The court in *Augustine* rejected the motion on the grounds that it simply rehashed the arguments made in opposition to the motion to dismiss.

The same result is appropriate here. A motion for reconsideration may only be brought "to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agri-cole v. CBI Indus.*, 90 F.3d 1264, 1269-70 (7th Cir. 1996). Such motions cannot be used as a "vehicle to produce new evidence that could have been" produced earlier or as a vehicle to "rehash[] previously rejected arguments." *Id.* (alterations in original)

Plaintiff's Motion is specifically barred by *Caisse* and its progeny. It contains all of the same arguments made in her Opposition to the Motion to Dismiss the Second Amended Complaint, and as such is nothing more than a request to the Court to revisit Plaintiff's same arguments one last time. The Court should decline this request as an abuse of the reconsideration procedure and uphold its original dismissal order.

## ARGUMENT

### I.    PLAINTIFF'S TILA ARGUMENT SIMPLY REHASHES THE ARGUMENTS MADE IN HER OPPOSITION AND THEREFORE SHOULD BE REJECTED OUTRIGHT.

In her Opposition to Defendants' Motion to Dismiss the SAC, Plaintiff made one primary argument to support her TILA cause of action: that the application of default pricing constituted a "change in terms" requiring additional, advance notice under 12 C.F.R. § 226.9(c)(1), which Defendants failed to provide. (Plaintiff's Opposition ["Opp."], 3-4.) In support of this argument, Plaintiff cited her interpretation of Regulation Z and the Staff Commentary, as well as the fact that Defendants' implementation of default pricing was "discretionary." (Opp., 3-7.)

This Court correctly rejected these arguments, and like at least five district courts before

it, ruled that application of default pricing did not constitute a "specific change" under 12 C.F.R. § 226.9(c)(1) because the circumstances under which default pricing could apply were fully disclosed to the cardholder in the initial cardholder agreement.  (Order, 6-10.)  The Court further noted that the Staff Commentary did not support Plaintiff's strained interpretation of Regulation Z, and that discretion to *not* apply default pricing did not suddenly transform a previously disclosed default pricing event into a "change in terms" requiring additional notice. (Order, 8-9.)

For its motion for reconsideration, Plaintiff apparently had two strategies: (i) first, Plaintiff attempts to disguise her rehashed arguments concerning the appropriate interpretation of Regulation Z by claiming they are *new* arguments made possible by a factual discrepancy in the Court's order (Motion for Reconsideration ["Recons.], 4-7); and (ii) second, Plaintiff then blatantly repeats the same arguments made in her Opposition.  (Recons., 8-12.)

Defendants address each in turn.  However, so as not to simply repeat the arguments made in Defendants' opening brief and reply, Defendants incorporate these arguments by reference as if fully set forth herein.

### A.    The Factual Discrepancy In The Court's Order Is Immaterial And Is Being Exploited By Plaintiff As A Means Of Rehashing The Same Arguments Made In Her Opposition.

As Plaintiff notes at page 4 of her Motion for Reconsideration, the Court's order incorrectly states that Defendants increased the interest rate on Plaintiff's account (the "Account") and applied the higher rate at the beginning of the *November* billing cycle.  (Order, 2.)  In fact the higher rate was applied at the beginning of the *December* billing cycle. (Declaration of David O'Connell ["O'Connell Decl."], Ex. F at FIA0000202.)  This discrepancy is immaterial to the Court's ultimate decision.[1]

First, Plaintiff has now *admitted* all of the Court's pertinent findings of fact.  (Recons., 4.)

---

[1] Indeed, this fact only makes Defendants' case that much stronger.  Knowing that as of the end of the November billing cycle, default pricing could be applied, Plaintiff had the opportunity to transfer the balance to another account and avoid the higher rate altogether.

According to Plaintiff, she does not dispute the findings that:

- The initial disclosures for the Account informed Plaintiff that her credit limit was $5,000;

- The initial disclosures also advised Plaintiff that if she exceeded the credit limit twice during a 12-month period, the Bank *could* increase the interest rate applicable to the account; and

- The initial disclosures advised Plaintiff that the increase would be effective at the beginning of the billing cycle "in which the Default Rate is applied."

(Recons., 4.)

Plaintiff further *admits* that she in fact exceeded the credit limit during the August and November 2007 billing cycles, respectively.  (Recons., 4.)  Plaintiff then points out that the higher interest rate was applied at the beginning of the next billing cycle, not at the beginning of the November 2007 billing cycle as noted in the Court's order (Order, 2), and claims that this discrepancy somehow changes the Court's entire analysis.  It does not.

As the Court correctly noted the last time around, Regulation Z provides that written notice is required "[w]henever any term required to be [initially] disclosed under § 226.6 is changed or the required minimum periodic payment is increased. . . ."  12 C.F.R. § 226.9(c)(1). According to the Official Staff Commentary, "[n]o notice of change in terms need be given if the specific change is set forth initially. . . ."  12 C.F.R. pt. 226, Supp. I, § 226.9(c), cmt. 1 (Truth in Lending, Official Staff Commentary, 47 Fed. Reg. 41338, 41346 (Sept. 20, 1982)).  Plaintiff now argues that the default pricing event at issue here has been converted to a "change in terms" by way of the fact that, while Defendants' initial disclosures state that it *could* apply the default rate in the same month in which the default occurred (November), Defendants instead exercised their discretion and implemented default pricing in the following month (December).  (Recons., 5. ) As a result, according to Plaintiff, the implementation of default pricing was not specifically disclosed in the initial disclosures.  (*Id.*)

This is the same discretion argument Plaintiff's counsel employed in the Opposition, as well as a multitude of other cases.  It was rejected by this Court and has been rejected by every other court to address it.  *See, e.g., Penner v. Chase Bank USA, N.A.*, Case No. C06-5092, 2006

U.S. Dist. LEXIS 53197, *8-9 (W.D. Wash. Aug. 1 2006) (ruling that "[a] decision not to increase the interest rate to the maximum allowed has the same effect as a reduction in the maximum default to a lower rate" and therefore no notice is required under § 226.9(c)(2)); *Williams v. Wash. Mut. Bank*, Case No. 07-2418, 2008 U.S. Dist. LEXIS 5325, *7-8 (E.D. Cal. Jan. 11, 2008) ("because the Term Sheet allows defendant to increase the default APR to the maximum stated in the Term Sheet, defendant's decision not to do so is akin to a reduction of the consumer's finance charge, which does not require notice.")

The undisputed facts establish as a matter of law that Defendants complied with TILA. Plaintiff *admits* that she was specifically advised in the initial disclosures that going over limit twice within 12 consecutive billing cycles could result in the application of default pricing. Plaintiff *admits* she went over limit twice in August 2007 and November 2007. At the beginning of the next billing cycle, Defendants implemented default pricing. The Defendants' implementation of default pricing does not constitute a "change in terms" requiring additional notice, because the "specific change" was set forth initially—i.e., Plaintiff *admits* that she was informed upon account opening that going over limit twice within 12 consecutive billing cycles could result in default pricing being applied to her account.

Plaintiff's other arguments are also restatements of those made in her Opposition.

> **1.    Neither a 15-day nor a contemporaneous notice of the default pricing was required, because the application of default pricing in this case did not constitute a "change in terms."**

At page 6 of her motion, Plaintiff once again argues that additional written notice was required under § 226.9(c)(1) because the application of default pricing in December 2007 constituted a "change in terms." Plaintiff once again cites to Comments 1 and 3 for this interpretation. As this Court correctly ruled, Comment 1 is consistent with the Defendants' interpretation of Regulation Z as it confirms that "[n]o notice of a change in terms need be given if the specific change is set forth initially." (Order, 6-7) Further, Comment 3, which provides for a contemporaneous or 15-day notice of "change in terms", does not apply since the default pricing at issue here was *specifically disclosed* at the inception of the Account. (Order, 9.)

This Court's ruling is in accord *with every other district court to address the same argument.* *Chase Manhattan Bank USA*, Case No. C-05-3968, 2006 U.S. Dist. LEXIS 5259 (N.D. Cal. Jan 27, 2006) (ruling that additional notice is not required at the time default pricing is activated, where the triggers for default pricing were initially disclosed); *Penner v. Chase Bank USA, N.A.*, *supra*, 2006 U.S. Dist. LEXIS 53197, *8-9 ("the increase in rates based upon a cardmembers default is not a "change in terms" under the TILA because the rate increase has been previously disclosed"); *McCoy v. Chase Manhattan Bank USA*, Case No. 06-107, 2006 U.S. Dist. LEXIS 97257, *9 (C.D. Dist. LEXIS 97257) ("because [Chase] disclosed the basis on which it will increase interest rates due to default . . . an increase in the interest rate based on these specified circumstances is not a change in terms within the meaning of Regulation Z, and no additional notice to the cardmember is required"); *Williams v. Wash. Mut. Bank*, *supra*, 2008 U.S. Dist. LEXIS 5325, *7-8 ("defendant's practice of notifying consumers about default rate increases only in its initial disclosures does not violate TILA").[2]

Finally, Defendant's decision to delay the application of default pricing until the next billing cycle is "akin to a reduction of the maximum default to a lower rate" and therefore no notice is required under § 226.9(c)(2). *See, e.g., Williams v. Wash Mut. Bank, supra.*

        **2.    That Defendants notified Plaintiff of the implementation of default pricing in the December 2007 account statement is immaterial.**

At page 7, Plaintiff argues that *because* Defendants provided a written notice in the December 2007 account statement, Defendants somehow invoked the "change in terms" notice requirements under § 226.9(c)(1) and thereby violated Regulation Z by not providing such notice before the effective date of the rate increase. This is merely a rehash of the discretion argument. As set forth above, no additional notice is required as a matter of law. Defendants cannot be penalized by giving information in addition to what is required under TILA.

---

[2] These authorities are attached to Defendants' Reply.

**3.    Plaintiff had an opportunity to address the Board's request for public comment in its Opposition, and in any event this material was only one of *several* bases for the Court's opinion.**

At page 8, Plaintiff argues that the Court's interpretation of the Board's June 2007 proposed amendment to Regulation Z is incorrect, that the commentary concerning the amendment is unreliable, and that Plaintiff was deprived of the opportunity to address it in her Opposition because Defendants raised the issue for the first time in their reply.    All three arguments are baseless.

First, the Board commentary in this regard is unambiguous: "no change-in-terms notice is required if the specific change is set forth initially by the creditor in the account-opening disclosures." Proposed Rule; Request for Public Comment, 72 FR 32948, 33009 (June 2007).

Second, Plaintiff's attack on the reliability of this commentary by the Board of Governors is inapposite.    Plaintiff provides no answer for why the Board would propose a rule implementing the *very* notice provision Plaintiff claims is already there.    Regardless, this commentary was only one of four bases for the Court's decision, which included the language of the regulation itself, the Official Commentary, as well as interpreting caselaw.  (Order, 10.)

Finally, Plaintiff *herself* made note of this official commentary to the proposed amendment to Regulation Z in *her Opposition* at footnote 4 when she referred to the decision in *Williams v. Wash. Mut., supra* as "relying a [sic] request for comments *on proposed changes to Regulation Z* that have not yet been adopted."  (Recons., 7) (emphasis added).  As the court noted in *Flory v. Mays*, Case No. 06C3523, 2007 U.S. Dist. LEXIS 87468 (N.D. Ill. Nov. 26, 2007)[3] concerning arguments raised in a reply, "it is not always clear what constitutes new issues and what constitutes an appropriate response to arguments raised in the answer brief. . . ."  *Id.* Here, Defendants cited *Williams* in their opening brief, and Plaintiff addressed its holding, *including its reliance upon the proposed rule change*, in her opposition.  As such, Plaintiff's claim that she had no opportunity before the reply to address the Board's commentary to the proposed amendments to Regulation Z is simply disingenuous.

---

[3] Attached hereto as <u>Exhibit A</u>.

**B.      Plaintiff's Remaining TILA Arguments Constitute A Blatant Rehash Of The Same Arguments Addressed In Her Opposition.**

Beginning at page 10 through 12, Plaintiff simply repeats and restates her arguments set forth in the Opposition concerning her interpretation of Regulation Z and her contention that the Defendants' discretion to implement default pricing somehow mandates additional notice. Defendants rely upon the above discussion as well as their opening brief and reply, which thoroughly address the substance of these arguments. Regardless, these arguments should be rejected outright as wholly inappropriate on a motion for reconsideration.

## II.      PLAINTIFF'S UNJUST ENRICHMENT CLAIM WAS PROPERLY DISMISSED.

Plaintiff focuses on only one aspect of the Court's order dismissing this claim, arguing that an unjust enrichment claim may be appropriate if the contract at issue were "illegal." In the first instance, Plaintiff's case authority does not stand for the proposition stated. The decision in *Hall v. Sprint Spectrum L.P.,* 876 N.E.2d 1036, 200 Ill. App. 3d 822 (5th Dist. 2007) did not address the issue presented by Plaintiff here. The court in *Bakerman v. Sydney Frank Importing Co., Inc.*, Case No. 1844-N, 2006 Del. Ch. LEXIS 180, *68 (Del. Ch. October 10, 2006) *dismissed* the unjust enrichment claim in that case on the grounds of an existing contract between the parties.

Regardless, the Court's order does not rely solely on the existence of a contract for its decision. The Court's order went much farther, correctly finding that the activities at issue here are in accord with TILA and Delaware law.[4] Thus, the contract is not "illegal" in the first instance.

Finally, as argued extensively by Defendants, Plaintiff's unjust enrichment claim is preempted by the National Bank Act and interpreting regulations in any event, as is further exemplified by the very recent decision of the Illinois Court of Appeal affirming the dismissal of just such a claim. *Johnson v. First Banks, Inc.,* 889 N.E. 2d 233, 2008 Ill. App. LEXIS 534 at *12 (5th Dist. 2008) ("Through the federal regulations, the OCC authorized the banks to exercise

---

[4] Plaintiff has never presented *any authority* for the proposition that Defendants' practices at issue in this case are specifically prohibited under Illinois state law.

a power, and a state may not infringe on that authorization.").

## III.  PLAINTIFF'S  CONSUMER  FRAUD  ACT  CLAIM  WAS  PROPERLY DISMISSED.

Finally, Plaintiff argues that its CFA claim should not have been dismissed because Defendants did not comply with TILA and because Defendants' conduct was not "specifically authorized." The first point is addressed by Defendants above.

Turning to the second point, Plaintiff cites *Price v. Phillip Morris, Inc.,* 848 N.E. 2d. 1, 219 Ill. 2d 182 (Ill. 2005). *Price* is not applicable here for two reasons. First, as set forth above and in Defendants' prior briefing, Defendants' conduct was authorized under TILA and Delaware law. Second, the Illinois Supreme Court in *Price* went to great lengths to distinguish the facts of the case, which involved consumer products (cigarettes), from a long line of Illinois authority to the contrary involving financial transactions. According to the court,

> We conclude that the present case can be distinguished from *Lanier v. Associates Finance, Inc.*, 499 N.E. 2d 440, 114 Ill. 2d 1 (Ill. 1986) and its progeny because it does not involve the alleged lack of disclosure in the context of loans, leases, or other transactions. Rather, this case involves the use of allegedly deceptive terms in the name and description of a consumer product.

*Id.* at 42.

Finally, as with the unjust enrichment claim, Plaintiff's CFA claim is preempted by the National Bank Act in any event.

## <u>CONCLUSION</u>

For the above-stated reasons, Plaintiff's Motion for Reconsideration should be summarily rejected as a blatant abuse of process. Plaintiff has not raised any new issues, and is instead simply asking the Court to rethink its previous order based upon the same arguments made in Plaintiff's Opposition. This is not an appropriate basis for a Motion for Reconsideration under even the most liberal interpretations of existing case law.

Dated:    August 8, 2008                    BANK OF AMERICA, N.A. and FIA CARD
                                            SERVICES, N.A.


Robert M. Dawson, Esq.
Brandon C. Fernald, Esq.
FULBRIGHT & JAWORSKI, L.L.P.                    ___/s/ Brandon C. Fernald_____
555 South Flower Street, 41st Floor             *One of the attorneys for Defendants*
Los Angeles, California  90071
Telephone:  (213) 892-9200
Facsimile:  (213) 892-9494

William J. McKenna, Esq.
Katherine E. Licup, Esq.
FOLEY & LARDNER LLP
321 North Clark
Suite 2800
Chicago, IL 60610
Telephone:  (312) 832-4541
Facsimile:  (312) 832-4700