# EXHIBIT A

LEXSEE 2007 U.S. DIST. LEXIS 87468

**CANDACE FLORY, Plaintiff, v. BILL MAYS, Director of Community Health Services for the Lake County Health Department, DALE GALASSIE, Executive Director of Lake County Health Department, individually, and LAKE COUNTY HEALTH DEPARTMENT, Defendants.**

No. 06 C 3523

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

*2007 U.S. Dist. LEXIS 87468*

**November 26, 2007, Decided
November 26, 2007, Filed**

**COUNSEL:** [*1] For Candace Flory, Plaintiff: Edward M. Fox, LEAD ATTORNEY, Garrett W. Browne, Ed Fox & Associates, Chicago, IL.

For Bill Mays, Director of Community Health Services for the Lake County Health Department, Dale Galassie, Executive Director of Lake County Health Department, individually, Defendants: Jennifer Ehrmantraut McDonnell, LEAD ATTORNEY, Lake County State's Attorneys Office, Waukegan, IL; James C. Bakk, Law Office of James C. Bakk, Waukegan, IL.

For Lake County Health Department, Defendant: James C. Bakk, Law Office of James C. Bakk, Waukegan, IL; Jennifer Ehrmantraut McDonnell, Lake County State's Attorneys Office, Waukegan, IL.

**JUDGES:** William T. Hart, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** William T. Hart

**OPINION**

*OPINION AND ORDER*

Except for a seven-month period in 2005, plaintiff Candace Flory has been an employee of defendant Lake County Health Department (the "Department") since 1993. The Department is an Illinois local governmental entity. Plaintiff's claims concern losing her job for the seven-month period as a result of a reorganization. After losing her job as a Health Planner in Community Health Services ("CHS") and then pursuing a grievance, plaintiff was reinstated to a lower-graded position as [*2] a Public Health Assistant III in Primary Care Services ("PCS"). Plaintiff did not receive any backpay for the time she was not employed. In addition to suing the Department, named as defendants in their individual capacities are CHS Director Bill Mays and Department Executive Director Dale Galassie.

The First Amended Complaint sets forth three counts. Counts I and II are brought pursuant to *42 U.S.C. § 1983* and Count III is a supplemental state law claim. Count I is against the individual defendants and is labeled as a claim for violations of "substantive and procedural due process." Plaintiff contends defendants acted arbitrarily and capriciously and without just cause in wrongfully terminating her employment. It is also claimed that plaintiff was entitled to a pre-termination hearing. Additionally, it is claimed that plaintiff is entitled to backpay for the seven-month period that she was not employed and that she was not permitted to raise the backpay issue in a grievance proceeding. Count II is labeled as a "due process" claim against the Department based on the Count I allegations being pursuant to a policy or custom of the Department. Count III is a breach of contract claim based [*3] on termination without just cause. Defendants have moved for summary judgment dismissing all counts. Plaintiff has cross moved for partial summary judgment as to liability on the Count III contract claim.

On a motion for summary judgment, the entire record is considered with all reasonable inferences drawn in favor of the nonmovant and all factual disputes resolved in favor of the nonmovant. *Scott v. Harris, 127 S. Ct. 1769, 1774, 1776, 167 L. Ed. 2d 686 (2007)*; *Scaife v. Cook County, 446 F.3d 735, 738-39 (7th Cir. 2006)*. The burden of establishing a lack of any genuine issue of material fact rests on the movant. *Creditor's Committee*

of *Jumer's Castle Lodge, Inc. v. Jumer*, 472 F.3d 943, 946 (7th Cir. 2007); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). The nonmovant, however, must make a showing sufficient to establish any essential element for which he, she, or it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Jumer*, 472 F.3d at 946; *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006), *cert. denied*, 127 S. Ct. 2947, 168 L. Ed. 2d 272 (2007). The movant need not provide affidavits or deposition testimony showing the nonexistence of such essential elements. *Celotex*, 477 U.S. at 324. [*4] Also, it is not sufficient to show evidence of purportedly disputed facts if those facts are not plausible in light of the entire record. *See Yasak v. Retirement Board of Policemen's Annuity & Benefit Fund of Chicago*, 357 F.3d 677, 679 (7th Cir. 2004); *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 236 (7th Cir.), *cert. denied*, 515 U.S. 1104, 115 S. Ct. 2249, 132 L. Ed. 2d 257 (1995); *Covalt v. Carey Canada, Inc.*, 950 F.2d 481, 485 (7th Cir. 1991); *Collins v. Associated Pathologists, Ltd.*, 844 F.2d 473, 476-77 (7th Cir.), *cert. denied*, 488 U.S. 852, 109 S. Ct. 137, 102 L. Ed. 2d 110 (1988); *Shyman v. UNUM Life Insurance Co. of America*, 2004 U.S. Dist. LEXIS 4964, 2004 WL 609280 *2 (N.D. Ill. March 25, 2004), *aff'd*, 427 F.3d 452 (7th Cir. 2005). As the Seventh Circuit has summarized:

> The party moving for summary judgment carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (citation and internal quotation [*5] omitted)). The moving party may discharge this burden by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S. Ct. 2548. Once the moving party satisfies this burden, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." *Fed. R. Civ. P. 56(e)*. "The nonmovant must do more, however, than demonstrate some factual disagreement between the parties; the issue must be 'material.'" *Logan*, 96 F.3d at 978. "Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute." *Id.* (citation omitted). In determining whether the nonmovant has identified a "material" issue of fact for trial, we are guided by the applicable substantive law; "[o]nly disputes that could affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 298 (7th Cir. 1996) (citation omitted). Furthermore, a factual dispute is "genuine" for summary judgment purposes only when there is "sufficient evidence favoring the nonmoving party for a jury to [*6] return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Hence, a "metaphysical doubt" regarding the existence of a genuine fact issue is not enough to stave off summary judgment, and "the nonmovant fails to demonstrate a genuine issue for trial 'where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . .'" *Logan*, 96 F.3d at 978 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

*Outlaw*, 259 F.3d at 837.

The *§ 1983* claims will be considered first. Plaintiff is not moving for summary judgment on those claims. As to those claims, all reasonable inferences will be drawn and all genuine factual disputes will be resolved in plaintiff's favor. Before reciting the facts, certain procedural contentions of the parties will be addressed. Defendants complied with Local Rule 56.1(a) (3) by providing their statement of facts. Plaintiff complied with Local Rule 56.1(b)(3) by providing a response to that fact statement. Since plaintiff has cross moved for summary judgment on Count III, she has provided [*7] her own Local Rule 56.1(a)(3) statement in support of her cross motion. The cross motion concerns a count that is only against one defendant, the Department. However, defendants, who are all represented by the same attorneys, appropriately filed joint briefs. Also, even though the cross motion only concerns the Department, many of the facts contained in plaintiff's Rule 56.1(a)(3) statement are pertinent to Counts I and II as well. Since plaintiff did not file a separate Local Rule 56.1(b)(3)(C) statement of additional facts, her statement labeled as a 56.1(a) (3) statement will also be viewed as a 56.1(b)(3)(C) statement

pertaining to defendants' summary judgment motion. Defendants failed to provide a separate paragraph-by-paragraph response to plaintiff's statement as required by Local Rule 56.1(b)(3)(A)-(B), or as permitted in response to a 56.1(b)(3)(C) statement as provided in Local Rule 56.1(a) (last paragraph). In defendants' Reply Brief at 2-4, however, defendants identified paragraphs of plaintiff's statement with which they disagreed.

Since defendants did not literally comply with the requirements of Local Rule to file a separate paragraph-by-paragraph response, the facts [*8] set forth in plaintiff's 56.1(a)(3) statement could be deemed admitted for purposes of the pending motions. *See* Local Rule 56.1(b)(3)(C) (last sentence); 56.1(a) (last paragraph); *Banks v. Archer/American Wire, 2005 U.S. Dist. LEXIS 17448, 2005 WL 2007227 *1-2 (N.D. Ill. Aug. 17, 2005)*; *Best Vacuum, Inc. v. Ian Design, Inc., 2006 U.S. Dist. LEXIS 87260, 2006 WL 3486879 *2 (N.D. Ill. Nov. 29, 2006)*; *Apex Oil Co. v. Metropolitan Water Reclamation District of Greater Chicago, 2006 U.S. Dist. LEXIS 8867, 2006 WL 566451 *1 n.1 (N.D. Ill. March 3, 2006)*. While it is within the court's discretion to strictly apply the requirements of *Local Rule 56.1*, it is also within the court's discretion not to apply them literally. *See Bordelon v. Chicago School Reform Board of Trustees, 233 F.3d 524, 527 (7th Cir. 2000)*; *Winters v. Walsh Construction of Illinois, 2007 U.S. Dist. LEXIS 70596, 2007 WL 2848403 *1 (N.D. Ill. Sept. 20, 2007)*; *Best Vacuum, 2006 U.S. Dist. LEXIS 87260, 2006 WL 3486879 at *2-3*; *Perry v. Bodman, 2006 U.S. Dist. LEXIS 37228, 2006 WL 1460003 *2 (N.D. Ill. May 23, 2006)*. To the extent defendants have cited to sufficient conflicting factual support in their own Rule 56.1(a) statement or in their brief, the court will not ignore that evidence in ruling on summary judgment because defendants omitted responding directly to plaintiff's statement of facts. [*9] *Cf. Winters, 2007 U.S. Dist. LEXIS 70596, 2007 WL 2848403 at *1*; *Best Vacuum, 2006 U.S. Dist. LEXIS 87260, 2006 WL 3486879 at *3*; *Perry, 2006 U.S. Dist. LEXIS 37228, 2006 WL 1460003 at *2*; *Hunt v. Ameritech Services, Inc., 1996 U.S. Dist. LEXIS 17374, 1996 WL 680240 *3-4 (N.D. Ill. Nov. 21, 1996)*. [1] Counsel for defendants, however, is admonished to be careful to follow local rules in the future.

> 1   The court will not independently scour the entire record on defendants' behalf, *cf. Smith v. Lamz, 321 F.3d 680, 683 (7th Cir. 2003)*, but will look to the factual assertions contained in defendants' Rule 56.1 statement and brief and any accompanying citations to the record.

Defendants contend that the declaration submitted by plaintiff should not be considered because not in the form of an affidavit. Defendants apparently are unaware of *28 U.S.C. § 1746* which permits the use of declarations in place of affidavits in federal court. A declaration is appropriately submitted in response to a summary judgment motion. *Trapaga v. Central States Joint Board Local 10, 2007 U.S. Dist. LEXIS 23438, 2007 WL 1017855 *2 (N.D. Ill. March 30, 2007)*; *Murril v. M & M Mars Co., 2006 U.S. Dist. LEXIS 13070, 2006 WL 618898 *2 n.2 (C.D. Ill. March 9, 2006)*. The declaration will not be stricken.

Plaintiff was permitted to file a surreply. In the surreply, plaintiff also contends that defendants [*10] improperly raise new grounds for summary judgment in their reply brief. It is true that it is generally improper to raise new issues in a reply brief. However, it is not always clear what constitutes new issues and what constitutes an appropriate response to arguments raised in the answer brief or appropriate amplification of issues raised in the opening brief. Plaintiff was granted leave to file a surreply. The surreply provided plaintiff with the opportunity to respond to any new contentions contained in defendants' reply. While plaintiff did not avail herself of that opportunity--she only raised waiver regarding the purported new arguments--she did have an opportunity to respond to any new arguments that defendants may have made. Since plaintiff was permitted to file a surreply, no argument of defendants will be treated as waived for failure to raise it in the opening brief. *See Thomas v. Exxon Mobil Oil Corp., 2007 U.S. Dist. LEXIS 9689, 2007 WL 489225 *3 (N.D. Ind. Feb. 8, 2007)*; *Black & Decker, Inc. v. Robert Bosch Tool, 2006 U.S. Dist. LEXIS 94554, 2006 WL 3883937 *3 (N.D. Ill. Dec. 27, 2006)*; *Fletcher v. ZLB Behring LLC, 245 F.R.D. 328, 2006 U.S. Dist. LEXIS 94838, 2006 WL 3613312 *9 n.2 (N.D. Ill. Oct. 23, 2006)*; *Butler v. Corral, 1999 U.S. Dist. LEXIS 18177, 1999 WL 1069246 *2 n.3 (N.D. Ill. Nov. 22, 1999)*.

In [*11] 1993, plaintiff began working for the Department as a Health Planner. She remained in that position until March 25, 2005, when her position was terminated as part of a reorganization. As of March 2005, plaintiff's Health Planner position was a Grade 12. As of that time, Victor Plotkin was plaintiff's immediate supervisor. As the Director of CHS, defendant Mays was also a supervisor of plaintiff. As Executive Director of the Department, Galassie supervises all public health services operations of the Department.

For the 2005 budget cycle, [2] Mays and Galassie decided to eliminate the Health Planner position in CHS and instead have a Continuous Quality Improvement ("CQI") specialist position. The CQI position was a Grade 14. On October 21, 2004, plaintiff had a meeting with Mays and first learned that her Health Planner position was being eliminated and replaced by the CQI position. She was informed that she could continue in her

position until a CQI was hired and was also advised that she could apply for the CQI position. [3] In December 2004, plaintiff applied for the CQI position in CHS and also applied for a Grade 14 CQI position in Behavioral Health Services ("BHS"). Prior to her Health [*12] Planner position being eliminated, these are the only new positions she applied for with the Department. She inquired about a position in Primary Care, but did not apply because she discovered she needed a nursing degree which she did not have. [4] The only other application she submitted during this time period was for a position with the Lake County Clerk's Office. Plaintiff was one of five finalists who interviewed for the CHS CQI position, but it was not offered to her.

> 2  The Department's fiscal year ends on November 30.
>
> 3  There is evidence that plaintiff was also advised regarding other openings, both at this time and later. Plaintiff denies receiving such advice and, on defendants' summary judgment motion, the genuine factual disputes must be resolved in plaintiff's favor.
>
> 4  Defendants contend there were at least three other open positions that plaintiff did not apply for. There, however, is no evidence presented that plaintiff was aware of those positions. Also, the supporting affidavit does not establish that the affiant had sufficient personal knowledge to make the statement that plaintiff qualified for those positions.

On January 18, 2005, plaintiff attempted to file, with Director [*13] of Human Resources Lorraine Harris, a grievance regarding the loss of her position. The grievance was not processed on the ground that it was premature since plaintiff had not yet been formally informed that her position would be eliminated. On February 23, 2005, Harris and Mays met with plaintiff and formally informed her she had not been hired for the CHS CQI position and that her Health Planner position would be eliminated. In addition to the discussions at the meeting, plaintiff was provided a 30-day written notice that her position would be eliminated as of March 25, 2005. The notice stated that her position was eliminated as a result of a reduction in force ("RIF"). (In this litigation, it is agreed that no RIF occurred, but rather a reorganization occurred that was not based on financial savings and that did not result in a net elimination of positions.) The written notice, which is in the form of a letter from Harris, includes this statement regarding a pre-termination hearing: "Although this is a reduction in force, if you wish to have a pre-termination hearing and have one more opportunity to explain why your position should not be eliminated, please contact me so that we [*14] may schedule one."

Plaintiff did not request a "pre-termination" hearing by that name. On March 3, 2005, plaintiff initiated a grievance proceeding in accordance with Department procedures. Among the issues raised in the grievance were that a reduction in force did not actually occur, proper personnel procedures were not followed, and plaintiff should have been given priority for a new position including the CQI position. On March 16, prior to her position being terminated, plaintiff's immediate supervisor Plotkin completed the first step of the grievance procedure by providing a written denial addressing the issues raised in the grievance. Thereafter, plaintiff proceeded through additional steps of the Department's grievance procedure. While the grievance was pending, plaintiff's employment was terminated effective March 25. Eventually, the Grievance Committee of the Board of Health issued a report and recommended decision for the Board of Health. At its August 17, 2005 meeting, the full Board of Health adopted the recommended decision of the Committee and sent notice to plaintiff dated August 23, 2005. By adopting the recommendation of the Committee, the Board found that the decision [*15] to eliminate the Health Planner position and replace it with a CQI position was an appropriate business decision and proper procedures for posting, interviewing, and selecting a person for the CQI position were followed. It was also found that there was a reorganization, not a RIF, and that plaintiff's termination was not correct because she should have been offered a transfer to a vacant Grade 12 position for which she qualified or a demotion to a lower graded position for which she qualified. Following the Committee's recommendation, the Board ordered that, within 14 days, the Department provide plaintiff a list of vacant positions at Grade 12 and below for which she qualified and that plaintiff would have 14 days after receiving notice to select one of those positions.

Plaintiff was provided a list of positions. Plaintiff eventually selected a Grade 7 Public Health Assistant III position in PCS. Plaintiff began working there on October 17, 2005.

During the Grievance Committee's deliberations, the issue of backpay was mentioned and the Committee chose not to make any decision as to backpay. In a September 1, 2005 letter to Harris in which plaintiff initially identified a selected position, [*16] plaintiff also requested backpay from her date of termination until reinstatement. Plaintiff also followed up with a letter to a member of the Grievance Committee. Harris declined to rule on plaintiff's backpay request, indicating both that she was deferring to the Board which had not said anything about backpay and that she was leaving that issue for a decision by counsel. Plaintiff followed up with a number of requests, but could not get a formal ruling from Harris or others regarding her request for backpay.

Case 1:08-cv-00184   Document 51-2   Filed 08/08/2008   Page 6 of 9

Page 5
2007 U.S. Dist. LEXIS 87468, *

Plaintiff has not been paid any backpay for the seven-month period between her termination and reinstatement.

When plaintiff was hired in 1991, she received a copy of the then-current 1991 Version of the Department Employee Handbook ("1991 Handbook"). The 1991 Handbook includes a disclaimer stating that the 1991 Handbook is not a contract. A new version of the Employee Handbook was issued in 2001 ("2001 Handbook"). The 2001 Handbook does not contain a disclaimer stating that it is not a contract. [5] Since 1980 or earlier, the Department has maintained a more detailed manual compiling personnel policies and procedures ("Policy Manual"). The Policy Manual is continually updated [*17] as new or changed policies and procedures are implemented. A number of amendments were made effective May 1, 1996. The Policy Manual and 2001 Handbook both note that the Handbook is a summary version of the official Policy Manual. Hard copies of the Policy Manual are to be kept by the Executive Director, Service Area Directors, Associate Directors, and supervisors designated by Service Area Directors. The 2001 Handbook advises employees that they may have access to these copies of the Policy Manual. Since 2002, the Policy Manual has been available to employees online. [6]

> 5  A new version of the Handbook apparently was issued in 2006. That version would be inapplicable to the events in this case which occurred in 2005 or earlier. The 2006 Handbook contains a disclaimer that it is not a contract.
> 6  The 2001 Handbook also states that the Policy Manual was then available to employees on an agency computer system. 2001 Handbook at 9.

The Policy Manual does not disclaim that it is a contract or mandatory. In the section entitled "Purpose of Policy Manual," it is stated that: "This Manual contains statements of personnel policies and procedures. It is designed to be the working guide for supervisors [*18] and staff in the day-to-day implementation of the Health Department's personnel program. All employees of the Health Department are subject to these policies and procedures, unless specifically excluded." Policy Manual § 1-1. In the section addressing "authority" of the Policy Manual, it is stated that the Policy "Manual is designed to: . . . 3. Provide recognized authority, consistent with applicable laws and Health Department policy, and to minimize the possibility of unauthorized personnel actions." *Id.* § 1.2. Provisions of the Policy Manual cannot be changed except by the Board at public meetings. *Id.* § 1-3.

The Policy Manual sets forth policies and procedures regarding dismissals, transfers, demotions, promotions, and RIFs. After serving a 12-month introductory period, a full-time employee becomes a "regular" employee. The "Dismissal" section of the Policy Manual provides in part: "Except for Direct Appointees of the Board of Health, no employee who has regular status shall be terminated except for just cause. . . . A regular employee is entitled to a pretermination hearing. An appropriate supervisor, must present the employee with a written notice of the charges against the employee, [*19] and explanation of the evidence and an opportunity for the employee to present their side of the story." *Id.* § 11-3. The section also defines just cause and provides that an employee may grieve a dismissal. The "Reduction in Work Force" section contains different procedures for persons terminated as a result of a RIF. *Id.* § 11-4.

In response to summary judgment, "plaintiff points out that due process claims (procedural and substantive) can be complicated, or at least can lack clear definition as to what issues are involved." Pl. Answer Br. at 16. While plaintiff does not attempt to clearly identify the due process deprivations that she contends occurred, her due process claims appear to be limited to two violations of procedural due process. First, plaintiff alleges she was improperly denied a pre-termination hearing. Second, plaintiff contends she was denied the opportunity to seek backpay in a grievance procedure. The latter, however, is not an appropriate due process contention. There is no federal due process right to particular procedures contained in local or state law or in a governmental employee's contract. *Hudson v. City of Chicago, 374 F.3d 554, 564 (7th Cir. 2004)*; *Martin v. Shawano-Gresham School District, 295 F.3d 701, 706-07 (7th Cir. 2002)*; [*20] *Fenje v. Feld, 301 F. Supp. 2d 781, 802-03 (N.D. Ill. 2003), aff'd, 398 F.3d 620 (7th Cir. 2005)*. Instead, the pertinent allegation of a due process deprivation would be that plaintiff was denied backpay without a constitutionally adequate post-deprivation procedure. It must be determined whether either of these claims survive summary judgment.

An essential component of plaintiff's procedural due process claims is that she had a property interest in her employment. *Salas v. Wisconsin Department of Corrections, 493 F.3d 913, 926 (7th Cir. 2007)*; *Minch v. City of Chicago, 486 F.3d 294, 302 (7th Cir. 2007)*. While the parties devote most of their briefs to the question of whether plaintiff had a contract of employment as represented by the Policy Manual and/or Handbooks, that issue need not be reached in order to determine whether plaintiff had a property interest in her employment. Defendants do not dispute that the Policy Manual, regardless of whether it is considered a contract, contains mandatory rules that are to be followed until amended by the Board of Health. Essentially, the Policy Manual is a codification of policies and rules passed by a local governmental entity, the Board of [*21] Health. Among

Case 1:08-cv-00184   Document 51-2   Filed 08/08/2008   Page 7 of 9

Page 6
2007 U.S. Dist. LEXIS 87468, *

those policies is a requirement that a regular employee not be terminated absent just cause. Whether based on contract, statute, ordinance, regulation, or governmental rule, *see Lawshe v. Simpson, 16 F.3d 1475, 1481 (7th Cir. 1994)*; *St. John v. Town of Ellettsville, 46 F. Supp. 2d 834, 844 & n.17 (S.D. Ind. 1999)*, a public employee who cannot be discharged absent cause generally has a property interest in her employment. *See Cleveland Board of Education v. Loudermill, 470 U.S. 532, 538-39, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985)*; *Salas, 493 F.3d at 927*. [7] On defendants' motion for summary judgment, it must be held that sufficient facts have been presented to support that plaintiff had a property interest in her employment. In any event, even if she did have a property interest, her due process claims fail for other reasons.

> 7   In a recent case, the Seventh Circuit held that a contractual provision that precluded discharge absent cause did not mean the employees had a property interest in not losing their jobs in circumstances other than a discharge. Thus, it was held that Chicago firefighters who could not be discharged absent cause did not have a property interest in continuing to work after age 63; due [*22] process protections did not apply to their mandatory retirement upon reaching that age. *See Minch, 486 F.3d at 302-05*. Here, the Policy Manual required just cause for dismissing plaintiff, but did not require cause in order to terminate her employment as part of a RIF. Analogous to the situation in *Minch*, plaintiff may not have had a property interest in continuing her employment following a RIF despite the fact that she could not be dismissed without just cause. However, that need not be decided. Although told her position was eliminated as part of a RIF, the undisputed facts are that no RIF occurred. The Policy Manual permits demotions as part of reorganizations, but not terminations of employment. *See* Policy Manual § 6-2.

The inquiry does not end with the question of whether plaintiff has a property interest. She must also show that she was denied adequate process. *Salas, 493 F.3d at 926*. The type of process that is due will depend on the particular circumstances. *See Halfhill v. Northeast School Corp., 472 F.3d 496, 502 (7th Cir. 2006)*; *Chicago United Industries, Ltd. v. City of Chicago, 445 F.3d 940, 944 (7th Cir. 2006)*; *Nalls v. Board of Trustees of Ill. Community College District No. 508, 2007 U.S. Dist. LEXIS 23878, 2007 WL 1031155 *3 (N.D. Ill. March 29, 2007)*. [*23] The amount of process due is a question of federal law, not state law. *Goros v. County of Cook, 489 F.3d 857, 859 (7th Cir. 2007)*; *Lalvani v. Cook County, Ill., 269 F.3d 785, 793 (7th Cir. 2001)* ("*Lalvani I*").

Defendants contend no hearing is required for loss of employment due to a RIF or reorganization. [8] However, the rule that significantly less process is due for a reorganization or RIF does not apply to situations such as the present one where an individual position or employee is targeted. *Id.; Accord Lalvani v. Cook County, 396 F.3d 911, 915 (7th Cir. 2005)* ("*Lalvani II*"). [9] The Seventh Circuit, though, has indicated that an adequate post-deprivation hearing may be all that is required where an employee loses his or her job in a RIF or reorganization. *Lalvani II, 396 F.3d at 916* (citing cases involving multiple employees losing their positions). The Seventh Circuit, however, did not reach that issue because, in *Lalvani II*, it held that the plaintiff did not receive adequate process taking into account both post-deprivation and pre-deprivation procedures. *Id. at 916*.

> 8   Plaintiff contends this is one of the arguments improperly raised for the first time in defendant's reply. As [*24] previously set forth, though, a necessary component of any argument that a party received adequate process is consideration of the circumstances of the property or liberty deprivation that occurred. Regardless, as previously discussed, plaintiff also had the opportunity to respond to this contention in her surreply. Additionally, the pre-termination hearing contention is also being rejected on other grounds.
>
> 9   There is also an exception for situations in which the RIF or reorganization is a subterfuge to avoid having to discharge an employee for cause.

Here, plaintiff was provided an adequate post-deprivation hearing in the form of her grievance proceeding which was ultimately successful in achieving reinstatement. (As is discussed below regarding backpay, plaintiff has other post-deprivation procedures available as well.) In light of *Lalvani II, 396 F.3d at 916*, arguably no pre-termination hearing was required. However, in light of the facts that plaintiff's position was the sole target of the reorganization and she was not offered priority for other positions, it will be assumed that she would have been entitled to a pre-termination hearing as well. But even if plaintiff was entitled [*25] to the same type of pre-termination hearing as she should receive in the event of a discharge for cause, she received an adequate pre-termination hearing. [10]

> 10   Plaintiff contends that defendants failed to adequately raise in their opening brief the issue of receiving an adequate pre-termination hearing, instead focusing on whether plaintiff had requested a pre-termination hearing. In response to that argument, though, plaintiff asserts that she was not actually provided a pre-termination opportunity to challenge the termination of her posi-

tion and that she was instead directed to pursue the grievance procedure. Pl. Answer Brief at 16-17. An argument in defendants' reply that plaintiff did indeed receive adequate pre-termination procedures appropriately responds to these contentions of plaintiff.

Since an adequate post-deprivation hearing in the form of the grievance procedure was available, only minimal pre-deprivation process could be required. *Halfhill, 472 F.3d at 502*. All that would be required would be oral or written notice of the reasons for the position being eliminated, an explanation of the supporting evidence, and an opportunity to present her side of the story. *Cf. id.* (quoting [*26] *Loudermill, 470 U.S. at 546*). This opportunity need only be provided prior to the actual termination; it need not be provided prior to the initial decision being made. *Halfhill, 472 F.3d at 502*. Here, Mays and Harris met with plaintiff when she was formally informed that her position was being eliminated and plaintiff was also provided an opportunity to speak at that meeting. Moreover, this was not plaintiff's only opportunity for a hearing prior to the termination of her position. Prior to the March 25 termination date, plaintiff was also able to complete the first step of her grievance procedure and the decision to terminate her employment was reaffirmed. The various issues that plaintiff was able to raise in her first step grievance filing show that she was provided constitutionally sufficient notice of the reasons for the elimination of her position. She was also informed that she could receive a pre-termination procedure if she so desired.[11] Although plaintiff had been told by Harris and Mays that her position was eliminated because of a reduction in force, plaintiff's March 3 grievance filing shows that prior to her termination she had been provided sufficient information to [*27] recognize that there had not actually been a reduction in force. The first step of the grievance procedure, the February 23 meeting with Mays and Harris, and the February 23 written notice from Harris are together more than adequate to satisfy the minimal level of due process required for a pre-termination hearing in plaintiff's situation. *Cf. Schacht v. Wisconsin Department of Corrections, 175 F.3d 497, 503 (7th Cir. 1999)*. Defendants are entitled to summary judgment dismissing plaintiff's federal claims that she was denied due process because of failure to provide an adequate pre-termination procedure.

> 11  Plaintiff contends that she understood the grievance procedure to be the only pre-termination hearing available to her. Regardless of whether some other type of hearing also would have been available, as is discussed herein, the first step of the grievance procedure, independently or in combination with other procedures actually provided, sufficed to satisfy any due process requirement of a pre-termination hearing.

Plaintiff's other claim is that she was denied adequate post-deprivation procedures to obtain backpay. The parties primarily focus on whether plaintiff was denied an opportunity [*28] to pursue a grievance on this issue and whether such a grievance would have been successful. The question, though, is not whether plaintiff was denied a particular procedure that may have been permitted by the Department's rules, but whether any procedure is or was available that would satisfy federal due process requirements. *See Hudson, 374 F.3d at 564*; *Martin, 295 F.3d at 706-07*; *Fenje, 301 F. Supp. 2d at 802-03*. Even assuming plaintiff has a property interest in backpay that is entitled to due process protections, adequate procedures are or were available to satisfy constitutional due process. In a case such as the present one, the right to backpay can only arise after termination and reinstatement, so there can be no pre-termination process, only post-deprivation process. *See Ellis v. Sheahan, 412 F.3d 754, 756-58 (7th Cir. 2005)*. Even if the Department previously refused and would continue to refuse to permit plaintiff to seek backpay through the grievance procedure, post-deprivation due process is satisfied by the fact that plaintiff can pursue backpay under Illinois's wage payment statute, *id. at 757-58*, or pursuant to a breach of contract action in state court, *see Dunn v. County of Erie, 1993 U.S. Dist. LEXIS 17047, 1993 WL 499694 *3 n.3 (W.D.N.Y. Nov. 24, 1993)*. [*29] The denial of backpay does not support a procedural due process claim.

For the foregoing reasons, defendants are entitled to summary judgment dismissing both federal counts. That leaves only Count III, a supplemental state law contract claim that has no independent basis for jurisdiction. When all federal claims are dismissed, the court ordinarily will not retain jurisdiction over supplemental claims. *28 U.S.C. § 1367(c) (3)*; *Williams Electronics Games, Inc. v. Garrity, 479 F.3d 904, 907 (7th Cir. 2007)*. There are three recognized situations in which it is appropriate to retain jurisdiction over the supplemental claims: (a) the statute of limitations will bar refiling; (b) substantial judicial resources have already been expended; and (c) it is obvious how the claims should be decided. *Id.* Here, resolution of the due process claims did not require resolving a central issue of the contract claim that is raised on summary judgment, whether a contract exists based on the Policy Manual or Handbooks. Also raised on summary judgment is the question of whether any breach occurred, including whether defendants improperly failed to consider backpay in a grievance and whether plaintiff would [*30] be entitled to raise backpay in a further grievance. Additionally, if the contract claim were to survive summary judgment, there would be additional issues to resolve at trial such as whether plaintiff

2007 U.S. Dist. LEXIS 87468, *

failed to mitigate her damages by not applying for additional positions that were open. Judicial economy does not favor retaining jurisdiction over the contract claim, even for the sole purpose of resolving summary judgment issues concerning that claim. Also, there is no statute of limitations problem since the supplemental jurisdiction statute contains a tolling provision, *28 U.S.C. § 1367(d)*; *Williams, 479 F.3d at 907*, as does Illinois law, *735 ILCS 5/13-217*; *Barron v. Lee Enterprises, Inc., 183 F. Supp. 2d 1077, 1090 (C.D. Ill. 2002)*. Count III will be dismissed without prejudice for lack of subject matter jurisdiction.

IT IS THEREFORE ORDERED that the motion for summary judgment [24] of defendants Mays and Galassie is granted. Defendant Lake County Health Department's motion for summary judgment [24] is granted in part and denied in part without prejudice. Plaintiff's partial motion for summary judgment [32] is denied without prejudice. The Clerk of the Court is directed to enter [*31] judgment in favor of defendants and against plaintiff dismissing plaintiff's cause of action with prejudice except that plaintiff's state law cause of action, Count III of the complaint, as against defendant Lake County Health Department is dismissed without prejudice for lack of subject matter jurisdiction.

William T. Hart

UNITED STATES DISTRICT JUDGE

DATED: NOVEMBER 26, 2007